1  Amy P. Lally (SBN 198555)
2  SIDLEY AUSTIN LLP
   1999 Avenue of the Stars, 17th Floor
3  Los Angeles, CA 90067
4  Email: alally@sidley.com
   Tel.: (310) 595-9500
5  Fax: (310) 595-9501

6
   Jonathan F. Cohn* (NY 2972578)
7  Joshua J. Fougere* (NY 4805214)
8  Madeleine Joseph*† (MA 703541)
   SIDLEY AUSTIN LLP
9  1501 K Street, N.W.
10 Washington, DC 20005
   Tel: (202) 736-8000
11 Fax: (202) 736-8711
12 Email:   jfcohn@sidley.com
            jfougere@sidley.com
13          mjoseph@sidley.com
14
   *Attorneys for Defendant Bayer Corporation*
15 (*Additional Attorney for Defendant on Subsequent Page*)

16
17            **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
18
19

| | |
|---|---|
| 20  EDISON CORPUZ, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-01085-MMA-JLB |
| 21                  Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |
| 22         v. | |
| 23  BAYER CORPORATION, | |
| 24                  Defendant. | No hearing date per court order[1] |
| 25 | |

26

27 ---
    [1] On September 12, 2022, the Court ordered a briefing schedule in this matter. ECF
28  No. 10. Chambers therefore does not require a hearing date.

---

MEMO. OF P&As IN SUPPORT OF                              Case No. 3:22-cv-01085
DEFENDANT'S MOTION TO DISMISS

*Additional Counsel for Defendant*

Michelle Ramirez* (IL 6301170)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel:  (312) 853-7000
Fax:  (312) 853-7036
Email:   michelle.ramirez@sidley.com

\* Admitted *pro hac vice*.
† Admitted only in Massachusetts; supervised by principals of the firm who are members in good standing of the D.C. Bar.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 7

II. BACKGROUND ................................................................................................. 7

III. LEGAL STANDARD .......................................................................................... 9

IV. ARGUMENT ..................................................................................................... 10

    A. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A CLAIM. .................... 10

        1. No Reasonable Consumer Would Expect a Multivitamin to be Produced Without Chemical Processing or Chemical Changes. ................................................................................. 10

        2. Even if the Word "Natural" is Ambiguous, Context Confirms that Plaintiff's Interpretation is Implausible. .................. 14

V. CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................... 3

*Becerra v. Dr. Pepper/Seven Up., Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ......................................................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................... 3

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................................. 9

*In re Gen. Mills Glyphosate Litig.*,
    No. CV 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ............................. 5

*Hairston v. S. Beach Beverage Co.*,
    No. CV 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012).................... 8, 9, 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................... 3, 4

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015).......................................................... 5, 8

*Kennard v. Kellogg Sales Co.*,
    No. 21-CV-07211-WHO, 2022 WL 4241659 (N.D. Cal. Sept. 14,
    2022) ............................................................................................................... 6

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ................................................................... 4, 5, 6, 9

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ...................................................... 1, 5, 7, 8

*Red v. Kraft Foods, Inc.*,
    No. CV 10–1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)............................. 6

*Rooney v. Cumberland Packing Corp.*,
    No. 12-CV-0033, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ........................ 7, 9

*Videtto v. Kellogg USA*,
   No. 2:08CV01324-MCEDAD, 2009 WL 1439086 (E.D. Cal. May 21,
   2009) .................................................................................................................... 6

*Weiss v. Trader Joe's*,
   838 F. App'x 302 (9th Cir. 2021) .................................................................... 5, 9

*Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456, 2010 WL 2673860
   (N.D. Cal. July 2, 2010) ...................................................................................... 6

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..................................................... 9, 10, 11

**Statutes**

7 U.S.C. § 6502 ............................................................................................................. 7

Pub. L. 115-334, sec. 10104 (2018) .............................................................................. 7

**Other Authorities**

21 C.F.R. § 101.9(k)(4) ................................................................................................ 3

21 C.F.R. § 184.1634 ................................................................................................... 2

21 C.F.R. § 184.1950(a)(2) .......................................................................................... 2

56 Fed. Reg. 60,421 (Nov. 27, 1991) ........................................................................... 2

58 Fed. Reg. 23,02 (Jan. 6, 1993) ................................................................................. 8

80 Fed. Reg. 69,905 (Nov. 12, 2015) ........................................................................ 2, 8

*Do Vitamins in Pills Differ From Those in Food*, Scientific American,
   https://tinyurl.com/2wdvbce2 .............................................................................. 2

FDA, *Use of the Term Natural on Food Labeling*,
   https://tinyurl.com/2hrhat95 ................................................................................ 3

Guidance Decision Tree for Classification of Materials as Synthetic or
   Nonsynthetic (Dec. 2, 2016), https://tinyurl.com/z5thtu65 .................................. 7

*Her Gummies*, Nature Made, https://tinyurl.com/msz9aebn; ...................................... 7

*How Are Multivitamins Made*, Tufts Health & Nutrition Letter,
   https://tinyurl.com/yc76mcew ....................................................................................... 2

Nat'l Center for Biotechnology Info., Dep't of Health and Hum. Servs.,
   Open Chemistry Database .......................................................................................... 2

USDA, *National Organic Program*, https://tinyurl.com/53kmd7bs .............................. 7

*Women's Multivitamin Gummies*, Nordic Naturals,
   https://tinyurl.com/2p83rbzc ....................................................................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff does not dispute that Bayer's One A Day "Natural Fruit Bites" contains natural fruit, just like the label says. Instead, Plaintiff complains that some of the vitamins in this multivitamin product underwent a "chemical process" or a "process that chemically changes a substance." Compl. ¶ 9. Of course, that is true with virtually *every* multivitamin on the market. After all, multivitamin pills and chewables do not grow "fully-formed" from vitamin "trees" or dietary-supplement "bushes." *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013). They are designed by scientists and created in a manufacturing facility. Through chemical processes, manufacturers construct and fuse together multiple vitamins and minerals into an ingestible form that can be readily absorbed by the body.

None of this should surprise a reasonable consumer. For two reasons, the Court should dismiss the complaint.

First, courts routinely dismiss complaints that are premised on a lack of common sense. Here, the core assumption underlying the complaint is implausible. Reasonable consumers would *not* expect the bite-sized, chewy, obviously-manufactured One A Day product—which is packed with seven vitamins and three minerals—to have been created solely by nature, without the use of some chemical process or chemical change (if the consumers thought about the issue at all).

Second, even if Plaintiff could plausibly allege that the word "natural" is ambiguous in isolation, the rest of the bottle easily dispels any confusion. "Natural" modifies "fruit," and the Fruit Bites' labels convey that the *fruit* ingredients, not the multivitamins themselves, are "natural."

## II. BACKGROUND

This case concerns a line of multivitamin products — Bayer's One a Day "Natural Fruit Bites." Compl. ¶ 1 & n.1. According to the complaint, Bayer falsely

markets the multivitamins as "natural" when they contain "synthetic" ingredients.[2] *Id.* ¶ 2. Plaintiff claims that he expects products that are "labeled as natural" to be 100% free from any "synthetic ingredient," and he "believes" an ingredient is "synthetic" if it is made using a "chemical process" or undergoes any "chemical[] changes." *Id.* ¶ 9; *see also id.* ¶ 19.

Significantly, Plaintiff does not allege that *any* multivitamin product on the market meets his extreme definition of "natural." This is no surprise. A synthetics-free multivitamin pill "would be the size of a golf ball." *Do Vitamins in Pills Differ From Those in Food*, Scientific American (Mar. 5, 2001), https://tinyurl.com/2wdvbce2. "Even those supplements that claim to have 'natural' ingredients contain some synthetic ingredients." *Id.*; *see also How Are Multivitamins Made*, Tufts Health & Nutrition Letter (updated Sept. 17, 2019), https://tinyurl.com/yc76mcew.

Plaintiff also fails to cite the Food and Drug Administration's (FDA's) "longstanding policy for the use of the term 'natural' on the labels of human food" and supplements. *Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments*, 80 Fed. Reg. 69,905, 69,906 (Nov. 12, 2015). FDA has not adopted Plaintiff's extreme view of the word "natural." Instead, the agency "consider[s] 'natural' to mean that nothing artificial or synthetic . . . is included in, or has been added to, the product *that would not normally be expected to be there*." *Id.* (emphasis added); *see also Proposed Rule: Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms*, 56 Fed. Reg. 60,421, 60,466

---

[2] Specifically, plaintiff objects to the inclusion of: (1) cholecalciferol, a form of vitamin D3, 21 C.F.R. § 184.1950(a)(2); (2) niacinamide, a form of vitamin B3, *see Niacinamide*, Nat'l Center for Biotechnology Info., Dep't of Health and Hum. Servs., Open Chemistry Database, https://tinyurl.com/efxymuc7; Compl. ¶ 16; (3) pyridoxine hydrochloride, a form of vitamin B6, *Pyridoxine Hydrochloride*, Nat'l Center for Biotechnology Info., Dep't of Health and Hum. Servs., Open Chemistry Database, https://tinyurl.com/4tmy3aae; Compl. ¶ 16; (4) D-biotin, a form of vitamin B7, *Biotin*, Nat'l Center for Biotechnology Info., Dep't of Health and Hum. Servs., Open Chemistry Database, https://tinyurl.com/2p94e63c; and (5) potassium iodide, a chemical compound that "occurs naturally in sea water and in salt deposits, but can be prepared by reacting hydriodic acid . . . with potassium bicarbonate." 21 C.F.R. § 184.1634.

(Nov. 27, 1991); *Final Rule: Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms*, 58 Fed. Reg. 23,02, 24,07 (Jan. 6, 1993) (reaffirming this policy but declining to undertake rulemaking). Although FDA has not promulgated regulations formally defining the term "natural," this policy represents the agency's considered judgment, after multiple rounds of comments. *See* 80 Fed. Reg. at 69,906 (explaining the policy's history); FDA, *Use of the Term Natural on Food Labeling*, https://tinyurl.com/2hrhat95 (requesting comments).

FDA recognizes that there is no functional difference between synthetic and food-derived forms of vitamins. Indeed, the agency considers a product "misbranded" if its label "represents, suggests, or implies" that a "natural vitamin in a food is superior to an added or synthetic vitamin." 21 C.F.R. § 101.9(k)(4).

## III.   LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This entails "more than a sheer possibility that a defendant has acted unlawfully" and demands allegations beyond mere "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 546). After stripping away the complaint's legal conclusions and other "conclusory statements," a court must rely on its "judicial experience and common sense," *id.* at 679, to decide if the remaining factual allegations "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

A complaint like this one alleging fraud-based claims must do more: Rule 9(b) demands that the allegations be "specific enough to give defendants notice of the particular misconduct," including "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993); and then quoting *Vess v. Ciba-Geigy Corp.*, USA, 317 F.3d 1097, 1106 (9th Cir. 2003)); *see also* Fed. R. Civ. P. 9(b). The Ninth Circuit has "specifically ruled that Rule 9(b)'s heightened

1 pleading standards apply to claims for violations of the CLRA and UCL." *Kearns*, 567
2 F.3d at 1125.

## IV. ARGUMENT

### A. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A CLAIM.

Plaintiff claims that he expected a small chewy "bite" containing large doses of multiple vitamins and minerals to be wholly free from anything synthetic, just because the word "natural" appeared next to the word "fruit" on the label. To survive a motion to dismiss, plaintiff must plausibly allege that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances," would share his expectation. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016)). "This is not a negligible burden." *Id.* Plaintiff needs to allege "more than a mere possibility" that the "label might conceivably be misunderstood by some few customers viewing it in a reasonable manner." *Id.* (quoting *Ebner*, 838 F.3d at 966). And "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels," dismissal is "justified." *Id.* at 882–83 (quoting *Bell v. Publix Super Markets Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)).

Considered in isolation or in the context of the Fruit Bites' whole packaging, plaintiff's alleged interpretation "is not just unreasonable or fanciful"—"[i]t is implausible." *Id.* (internal quotation marks omitted). This Court should dismiss his claim for two reasons.

#### 1. No Reasonable Consumer Would Expect a Multivitamin to be Produced Without Chemical Processing or Chemical Changes.

First, plaintiff's legal theory rests on his subjective belief that multivitamins "labeled as natural do not contain synthetic ingredients"—that is, anything "formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from natural[] . . . sources." Compl. ¶ 9; *see also id.* ¶ 19. Thus, according to plaintiff, Bayer promised that a composite of seven vitamins and three

minerals pressed into a flat square was mass produced without the help of a "chemical process" or any "chemical changes" to any ingredients.

But that promise would be ridiculous, because it is essentially impossible to fuse large quantities of vitamins and minerals into a "bite" or other form that can be chewed and absorbed, absent some "chemical process" or some "chemical changes." Reasonable consumers would grasp that an obviously processed flat square could not deliver the numerous nutrients otherwise. And they would not understand Bayer's use of the word "natural" "as promising" the "impossible." *Moore*, 4 F.4th at 883. "Simply put, a reasonable consumer does not check her common sense at the door of the store." *Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021).

For the same reason, courts have dismissed analogous claims against food "product[s] manufactured in mass" that do not resemble anything that can be hunted, farmed, or foraged. *Pelayo*, 989 F. Supp. 2d at 978 (dismissing deception claims against stuffed pastas labeled "natural"); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 760 (W.D. Mo. 2015) (same for potato chips); *In re Gen. Mills Glyphosate Litig.*, No. CV 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (same for granola bars). Here too plaintiffs' claims are defeated by the widespread understanding that the vitamins are "processed" and "manufactured in mass," *Pelayo*, 989 F. Supp. 2d at 978; *Kelly*, 81 F. Supp. 3d at 760, and "[i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule." *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6.

This general rule—that a deceptive advertising claim premised on an impossible assumption fails as a matter of law—is well settled in this Circuit. For example, in *Moore*, the Ninth Circuit held that the phrase "100% New Zealand Manuka Honey" could not convey that a jar of honey was "'100%' derived from Manuka flower nectar," 4 F.4th at 881, because a reasonable consumer would be familiar with the basics of honey production, "would know that it is impossible to produce honey that is derived

exclusively from a single floral source," and would not read a label "as promising something that is impossible to find," *id.* at 883.

If the claims in *Moore* could not survive, then neither can plaintiff's. Undoubtedly, a more significant percentage of consumers would grasp that a chewy, square-shaped dietary supplement does not come into being without some chemical processing. Plaintiff's claim is therefore like numerous others in this Circuit that have been dismissed because they can be dispelled by the basic "fact[s] of life" alone, without any particular knowledge about the product's production. *Red v. Kraft Foods, Inc.*, No. CV 10–1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (dismissing claims because "the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables"); *see, also e.g.*, *Videtto v. Kellogg USA*, No. 2:08CV01324-MCEDAD, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009) (rejecting allegations that "Froot Loops" box deceived consumers into thinking that "cereal in the shape of multi-colored rings, rings that do not resemble any known fruit" was made from fruit); *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456, 2010 WL 2673860, at *6 (N.D. Cal. July 2, 2010) (same for Cap'n Crunch); *Moore*, 4 F.4th at 883 (agreeing with these cases); *see also Kennard v. Kellogg Sales Co.*, No. 21-CV-07211-WHO, 2022 WL 4241659, at *3 (N.D. Cal. Sept. 14, 2022) (dismissing, "consistent with guidance from recent Ninth Circuit decisions" allegations that "do not support a reasonable inference that some significant portion of consumers would be misled into thinking the VEGGIE products are made primarily of vegetables as opposed to being vegetarian meat substitutes").

In any event, health-conscious consumers of multivitamins are "more likely to exhibit a higher standard of care" than consumers of "low-cost groceries" like sugary cereals. *Moore*, 4 F.4th at 884. And thus the reasonable multivitamin consumer "would likely know more than most about the production of the product," and would therefore appreciate that multivitamins typically contain synthetic ingredients—even when the label says "natural." Multivitamins with "natural" or "nature" on the label are sold

12

everywhere, and their ingredient lists plainly disclose the presence of synthetic ingredients, including cholecalciferol, niacinamide, and pyridoxine hydrochloride. *See, e.g.*, *Multivitamin for Her Gummies*, Nature Made, https://tinyurl.com/msz9aebn; *Women's Multivitamin Gummies*, Nordic Naturals, https://tinyurl.com/2p83rbzc. No reasonably attentive consumer would "simply assume" that Bayer's products are somehow different. *See Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (dismissing deceptive advertising claim where labeling comported with "common industry marketing of turbinado sugar as raw cane sugar").

Nothing alleged in the complaint can push plaintiff's claim into the realm of plausible. Alleging a "subjective definition," not "shared by the reasonable consumer," is not enough. *Pelayo*, 989 F. Supp. 2d at 980; *see also, e.g.*, *Becerra v. Dr. Pepper/Seven Up., Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019) (rejecting plaintiffs' definitions of "diet" as inconsistent with the "prevalent understanding" in the soft-drinks context).

Plaintiff offers no basis for his extreme definition of "natural." Instead, he relies on documents associated with the Department of Agriculture (USDA) program regulating "*organic*" "agricultural" products like "livestock." *See* Compl. ¶ 19 (citing statutory definition of "synthetic" for purposes of "organic certification" by USDA, 7 U.S.C. § 6502(22)); *id.* ¶ 18 (discussing draft guidance document)[3]; *see also* USDA, *National Organic Program*, https://tinyurl.com/53kmd7bs. But Bayer does not advertise its product as "organic," and, needless to say, multivitamin chewy squares are not agricultural products. Thus, the statutory definition of "synthetic" for purposes of

---

[3] The complaint cites to a previous version of this statutory provision, which was renumbered in 2018. *See* Compl. ¶ 19 (citing 7 U.S.C. § 6502(21)); *see also* Pub. L. 115-334, sec. 10104 (2018). In addition, the "draft" guidance document cited in the complaint was finalized in 2016. Compl. ¶ 18; *see* USDA, NOP 5033-1, Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Dec. 2, 2016), https://tinyurl.com/z5thtu65.

USDA "organic certification" is irrelevant. Compl. ¶ 19 (quoting 7 U.S.C. § 6502(21)); *see also id.* ¶ 18. As courts have held in analogous cases, when the products at issue "are not labeled as 'organic,' the definition of 'synthetic' under [USDA's organic program] does not apply." *Pelayo*, 989 F. Supp. 2d at 979 (dismissing "natural" deception claims premised on USDA's definition); *Kelly*, 81 F. Supp. 3d at 761 (same).

Tellingly, the complaint does not mention FDA's longstanding policy defining "natural" more broadly, even though that agency, not USDA, regulates dietary supplements. Under FDA's longstanding policy, the multivitamins *are* "natural," because "nothing artificial or synthetic . . . [has] been included in, or has been added *. . . that would not normally be expected to be*" in a multivitamin. 58 Fed. Reg. at 24,07 (emphasis added); *see also* 80 Fed. Reg. at 69,906. The synthetic ingredients to which plaintiff objects are essentially unavoidable in multivitamins, and any reasonable consumer would expect to find them in an obviously processed product that contains seven vitamins and three minerals.

Because the complaint alleges no plausible basis for plaintiff's belief that the multivitamin was made without the help of a "chemical process" or "chemical changes," his claim must be dismissed.

### 2. Even if the Word "Natural" is Ambiguous, Context Confirms that Plaintiff's Interpretation is Implausible.

Second, even if plaintiff could plausibly allege that the word "natural" read in isolation is ambiguous, context would easily dispel that ambiguity. Bayer "does not use the . . . natural language in a vacuum," and the Natural Fruit Bites' label as a whole plainly conveys that the *fruit* is "natural," not the whole multivitamin. *Hairston v. S. Beach Beverage Co.*, No. CV 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (cleaned up). It is undisputed that the fruit ingredients are natural.

As the Ninth Circuit has admonished, courts evaluating "deceptive advertising claims should take into account all the information available to consumers"—from the "physical label" to "contextual inferences regarding the product itself and its

1   packaging." *Moore*, 4 F.4th at 882. Where an aspect of a label may have more than
2   one meaning, a reasonable consumer should be expected to look at other representations
3   about the product to resolve any questions. *Id.* And the plaintiff's claim fails where
4   that context "dispel[s]" any "ambiguity that [the plaintiff] would read into any particular
5   statement." *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *see also, e.g.*,
6   *Rooney*, 2012 WL 1512106, at *4 (dismissing misleading labeling claim based on
7   clarifying representations throughout the packaging); *Workman v. Plum Inc.*, 141 F.
8   Supp. 3d 1032, 1035 (N.D. Cal. 2015) (holding that "any potential ambiguity" about
9   the challenged feature of the labels "could be resolved by the back panel of the
10  products"); *Weiss*, 838 F. App'x at 303 ("When considered within the context of the
11  water bottle packaging as a whole, the phrase 'ionized to achieve the perfect balance'
12  clearly refers to the water itself being balanced. No reasonable consumer would
13  interpret that statement to mean that the water itself will balance the consumer's own
14  pH levels.").

15       Applying this principle, courts have dismissed analogous claims involving the
16  word "natural" because the surrounding words, images, or ingredient list confirms that
17  the plaintiff's interpretation is implausible. For example, in *Bruton v. Gerber Products*
18  *Company*, the Court dismissed an analogous claim because the plaintiff "fail[ed] to
19  explain why a label claiming that a product is 'Made with 100% Natural Fruit' plausibly
20  implies that the *entire* product—which contains ingredients other than fruit—is free of
21  synthetic ingredients or ingredients not normally expected to be in food." 961 F. Supp.
22  2d 1062, 1098 (N.D. Cal. 2013), *rev'd on other grounds*, 703 F. App'x 468 (9th Cir.
23  2017). And in *Hairston v. South Beach Beverage Co.*, the plaintiff unreasonably
24  interpreted the phrase "all natural with vitamins" to convey that a beverage was entirely
25  free from synthetic vitamins. 2012 WL 1893818, at *5. Dismissing the plaintiff's
26  claim, the Court concluded that any ambiguity was "clarified by the detailed
27  information contained in the ingredient list, which explains the exact contents." *Id.*
28

As in these cases, plaintiff's "selective interpretation of [an] individual word[] from [the] product's labeling cannot support [his] CLRA" claim. *Hairston*, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (citing *Carrea v. Dreyer's Grand Ice Cream*, 475 F. App'x. 113 (9th Cir. 2012)). The complaint makes no attempt to explain why a reasonable consumer would read the word "natural" to modify the word "multivitamin," rather than "fruit." The word "natural" appears immediately above "fruit," and the labels display a large image of an apple still on the vine. The word "multivitamin" does not appear next to the word "natural" anywhere on the label. Plaintiff "fails to explain why a label" with these features "implies that the *entire* product"—and not just its fruit ingredients—is "natural." *Bruton*, 961 F. Supp. 2d at 1098 (emphasis in original).

Any remaining ambiguity about whether the fruit or the vitamins are "natural" is easily resolved by the "back panel of the products." *Workman*, 141 F. Supp. 3d at 1035.

**Supplement Facts**
Serving Size: 2 bites
Servings Per Container: 30

| | Amount Per Serving | % Daily Value |
|---|---|---|
| Calories | 20 | |
| Total Carbohydrate | 2 g | 1%* |
| Total Sugars | 2 g | ** |
| Includes 1g Added Sugars | | 2%* |
| Vitamin A (as retinyl palmitate) | 240 mcg | 27% |
| Vitamin D (as cholecalciferol) | 15 mcg (600 IU) | 75% |
| Vitamin E (as dl-alpha-tocopheryl acetate) | 4 mg | 27% |
| Niacin (as niacinamide) | 14 mg | 88% |
| Vitamin $B_6$ (as pyridoxine hydrochloride) | 1.3 mg | 76% |
| Vitamin $B_{12}$ (as cyanocobalamin) | 2.4 mcg | 100% |
| Biotin (as D-biotin) | 30 mcg | 100% |
| Iodine (as potassium iodide) | 30 mcg | 20% |
| Zinc (as zinc sulfate) | 2 mg | 18% |
| Potassium (as potassium iodide) | 5 mg | <1% |

*Percent Daily Values are based on a 2,000 calorie diet.
**Daily Value not established.

**Other Ingredients:** Apple Puree Concentrate, Apple Juice Concentrate, Pectin, Citrus Fiber, Natural Flavor, Water, High Oleic Sunflower Oil.

*See* Def's Mot. for Jud. Notice, Ex. K (requesting judicial notice of Women's Natural Fruit Bites Multivitamin supplement facts). There, prominently displayed, are the natural fruit ingredients—apple and apple juice concentrate (which constitute over 99% of the ingredients by weight). And the nutrition facts plainly disclose that the multivitamin is composed of commonplace synthetic versions of the vitamins (*e.g.*, "Vitamin $B_6$ *as* pyridoxine hydrochloride"). "Every reasonable shopper knows that the devil is in the details," and here the details confirm that plaintiff's interpretation of the Fruit Bites' labels is implausible as a matter of law. *Workman*, 141 F. Supp. 3d at 1035. The Court should dismiss.

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint in its entirety for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

Dated:  October 5, 2022                         Respectfully submitted,

*/s/ Amy P. Lally*
Amy P. Lally (SBN 198555)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Tel: (310) 595-9500
Fax: (310) 595-9501
Email:  alally@sidley.com

Jonathan F. Cohn* (NY 2972578)
Joshua J. Fougere* (NY 4805214)
Madeleine Joseph* † (MA 703541)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
Email:  jfcohn@sidley.com
             jfougere@sidley.com
             mjoseph@sidley.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Michelle Ramirez* (IL 6301170)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel:  (312) 853-7000
Fax:  (312) 853-7036
Email:  michelle.ramirez@sidley.com

*Attorneys for Defendant Bayer Corporation*

* Admitted *pro hac vice*.
† Admitted only in Massachusetts; supervised by principals of the firm who are members in good standing of the D.C. Bar.