**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Charles D. Moore (*pro hac vice* to be filed)
*cmoore@reesellp.com*
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff Edison Corpuz and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO DIVISION**

| | |
|---|---|
| EDISON CORPUZ, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>BAYER CORPORATION,<br><br>Defendant. | Case No. 3:22-cv-01085-MMA-JLB<br><br>**PLAINTIFF EDISON CORPUZ'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAYER CORPORATION'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date: Under Submission<br>Time: Under Submission<br>Place: Courtroom 3D<br>Judge: Honorable Michael M. Anello |

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 3

LEGAL STANDARD .......... 7

ARGUMENT .......... 8

I. The Complaint Is Plausible .......... 8

A. The Complaint Plausibly Alleges the "Natural" Representation Is Likely to Deceive a Reasonable Consumer .......... 11

B. Ninth Circuit Precedent Prohibits Bayer from Relying on the Back Labels of the Fruit Bites to Correct the Deceptive "Natural" Claim on the Front .......... 18

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 7, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ... 7, 8, 10

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020) ... passim

*Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062 (N.D. Cal. 2013) ... 19

*Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109 (S.D.N.Y. 2019) ... 21

*Dumont v. Reily Foods Co.*, 934 F.3d 35, 41 (1st Cir. 2019) ... 9, 17, 20

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) ... 7, 10

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ... 21

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-02413-RRM-RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ... 11

*In re General Mills Glyphosate Litigation*, No. 16-cv-02869-MJD-BRT, 2017 WL 2983877 (D. Minn. July 12, 2017) ... 13

*Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 968 (N.D. Cal. 2022) ... 15

*Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236 (Ct. App. 2007) ... 9

*Mantikas v. Kellogg Co.*, 910 F.3d 633, 638 (2d Cir. 2018) ... 9, 20

*McKinnis v. Kellogg USA*, No. 07-cv-02611-ABC-RCX, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ... 11

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ... 12

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) ... passim

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) ... 14

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) ... 15, 16

*Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ... 9, 11

*Salazar v. Target Corp.*, 299 Cal. Rptr. 3d 616 (Ct. App. 2022) ... 3, 9

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ... 7, 8, 10, 17

*Surzyn v. Diamond Foods, Inc.*, No. 14-cv-00136-SBA, 2014 WL 2212216, at *3–4 (N.D. Cal. May 28, 2014) .......... 15, 16

*Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456-SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) .......... 11

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .......... passim

**STATUTES**

California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9 .......... 7

Federal Rule of Civil Procedure 12(b)(6) .......... passim

Plaintiff Edison Corpuz ("Plaintiff" or "Corpuz") respectfully submits this memorandum of points and authorities in opposition to the motion to dismiss Plaintiff's Class Action Complaint filed by Defendant Bayer Corporation ("Defendant" or "Bayer"). *See* Notice Mot. & Mot. Dismiss, ECF No. 22; Mem. P. & A. Supp. Def.'s Mot. Dismiss Compl., ECF No. 22-1 ("Def.'s Mem.").

For the reasons below, Bayer's motion is meritless, and the Court should deny it in its entirety.

**INTRODUCTION**

Plaintiff brings a simple claim based on what he believed was simply a "Natural" product: Bayer exploits consumers' preference for natural multivitamins over multivitamins that are filled with synthetic and highly processed ingredients by prominently and uniformly describing its One a Day Natural Fruit Bite Multivitamins[1] as "Natural." "Natural" products are indeed what resonates with consumers today, and "Natural" is one of the most salient words on Bayer's packaging. By representing the Fruit Bites as "Natural," Bayer can, and does, charge a price premium for them. Unfortunately for consumers, however, the Fruit Bites are not actually natural as labeled. Instead, the Products all contain numerous ingredients that are synthetic. Thus, Bayer's description of the Fruit Bites as "Natural" is likely to deceive a reasonable consumer, and its deceptive labels violate California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA").

Bayer does not deny the Products are filled with unnatural, synthetic ingredients. Rather, it argues consumers should know that it did not mean what it represented and that all multivitamins are inherently synthetic. Defendant is wrong. Reasonable consumers believe Bayer's prominent representation that the Products are "Natural," which Bayer elected to place in bold, capitalized font on the front of

[1] The "Fruit Bites" and the "Products" are the One a Day Natural Fruit Bite Multivitamin varieties identified in the Complaint. Compl. ¶¶ 1, 1 n.1, ECF No. 1.

the packaging.

Bayer argues “virtually *every* multivitamin on the market” contains vitamins that “underwent a ‘chemical process’ or a ‘process that chemically changes a substance,’” Def.’s Mem. 1, but that is a straw man. Plaintiff’s case is not about other multivitamin products, which may or may not be labeled “Natural.” This case is about Bayer’s Fruit Bites, which Bayer advertises as “Natural” even though they contain numerous synthetic ingredients. Relatedly, Bayer contends “multivitamin pills and chewables do not grow ‘fully-formed’ from vitamin ‘trees’ or dietary-supplement ‘bushes.’” *Id.* This, again, is a non sequitur. The issue is not whether multivitamins emerge fully formed from the Earth. Instead, the question is whether the Complaint plausibly alleges the “Natural” label on the Fruit Bites is likely to deceive a reasonable consumer because the Fruit Bites incorporate multiple unnatural, synthetic substances.

Defendant’s contention that reasonable consumers understand the Fruit Bites are not created “solely” by nature also relies upon a misstatement of Plaintiff’s position. *See* Def.’s Mem. 1. Plaintiff alleges Defendant’s “Natural” promotion is deceptive because the Fruit Bites contain “a number of synthetic ingredients.” Compl. ¶ 15. His case is *not* that the “Natural” representation is deceptive because the Products contain a de minimis amount of synthetic ingredients. The question of whether the latter claim would survive dismissal is not before this Court.

In suggesting consumers may not think “at all” about whether the creation of the Fruit Bites involves “the use of some chemical process or chemical change,” Def.’s Mem. 1, Bayer ignores that Bayer itself invited consumers to consider this very issue when purchasing the Fruit Bites by prominently and conspicuously extoling them as “Natural.” Bayer should not be heard to argue that consumers do not consider whether the Products contain synthetic ingredients when Bayer itself chose to emphasize the Products’ lack of synthetic ingredients by emblazoning them with the word “Natural.” This is especially so because Bayer was certainly aware,

in crafting the marketing for the Fruit Bites and choosing to place the word "Natural" conspicuously on the front labeling, that consumers are willing to pay a premium price for multivitamins touted as "Natural," and to select such products over other competing multivitamins.

Bayer proposes that "even if . . . the word 'natural' is ambiguous in isolation, the rest of the bottle" may "easily dispel[] any confusion." Def.'s Mem. 1. Not so. This contention flies in the face of Ninth Circuit precedent and California state appellate authority applying the CLRA. *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008); *Salazar v. Target Corp.*, 299 Cal. Rptr. 3d 616 (Ct. App. 2022); *see also Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020) (cited with approval in *Salazar*). Under that authority, the question is whether the Product labels are likely to deceive reasonable consumers, not whether the labels are "ambiguous." And under that authority, reasonable consumers are not expected to look to the ingredient list on the back of the packaging to discover the truth about misleading representations on the front.

As Corpuz will ultimately prove, no reasonable consumer expects a Product described as "Natural" to be filled with unnatural, synthetic ingredients. The Court, however, need not resolve this fact question at this stage. Because Corpuz has plausibly alleged the "Natural" representation misleads consumers, the Court should deny Bayer's motion in full.

## FACTUAL BACKGROUND

The Complaint is brimming with facts about the Fruit Bites, including their labeling and ingredients and consumer reaction thereto. Below is a synopsis of Plaintiff's key allegations.

Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in, among other things, food products, and as a result, they have increasingly purchased products that are promoted as "Natural." Compl. ¶ 14. In 2015, sales of natural products grew 9.5% to $180 billion. *Id.*; *see also id.* at ¶ 14

n.2 (citing, *inter alia*, *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6, and *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NETWORK (Dec. 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017). A Kline Research study indicates that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. *Id.* at ¶ 14 n.2 (citing Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (Feb. 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp). The natural and organic personal care industry is on track to be worth $25.1 million by 2025. *Id.* Consumers value "Natural" products for important reasons, including because they believe "Natural" products are safer and healthier than alternative, non-natural products. *Id.* at ¶ 14.

To capitalize on consumers' desire for "Natural" products, Bayer prominently and conspicuously labels the Fruit Bites as "Natural" on the front of their packaging near the center, using bold, capitalized font. Images of the front labels of the Fruit Bites are below.






*Id.* at ¶ 15.

Unfortunately for consumers, however, the Fruit Bites are not "Natural" as advertised. *See* Compl. ¶ 16. Instead, they contain multiple synthetic ingredients, including the synthetic substances listed below. *Id.* The Complaint supplies substantial factual detail regarding the manufacturing processes used to synthesize each of the following ingredients, including citations to sources such as PubChem. *Id.* at pp. 6–12.

- Cholecalciferol (9,10-seco(5Z,7E,)-5,7,10(19)-cholestatrien-3-ol);
- Niacinamide (3-pyridinecarboxylic acid amide);
- Pyridoxine hydrochloride (3-hydroxy-4,5-dihydroxymethy-2-methylpyridine hydrochloride);
- D-biotin; and
- Potassium iodide.

To furnish additional factual support for his allegations that the foregoing ingredients are synthetic and that Bayer's "Natural" claim on the Fruit Bites is deceptive, Corpuz cites to the USDA Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic, Compl. ¶ 18, and the definition of "synthetic" set forth in 7 U.S.C. § 6502, Compl. ¶ 19.

Bayer's deceptive "Natural" representation is material in that a reasonable person would attach importance to such representation and would be induced to act upon it in deciding whether to purchase the Fruit Bites. Compl. ¶ 26. Had Bayer not made the false and misleading "Natural" representation, Plaintiff and the class members would not have been willing to pay the same amount for the Fruit Bites they purchased and/or would not have been willing to purchase the Fruit Bites at all. *Id.* at ¶¶ 31, 33.

Corpuz, a San Diego resident, purchased the Fruit Bites from San Diego retail outlets during the period from July 25, 2019, to the present. Compl. ¶ 8; *see also id.* at ¶ 34. Corpuz made his purchases based on the representations on the Fruit Bites' front labeling that the Products are natural. *Id.* at ¶ 9. He believes products labeled "Natural" do not contain synthetic ingredients, which he believes are ingredients that are formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. *Id.* Had Bayer not represented the Fruit Bites are "Natural," Corpuz would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. *Id.* at ¶ 10. However, Corpuz remains in the market for natural vitamins and continues to shop at retail locations where the Fruit Bites are sold. *Id.* at ¶ 9. If the Fruit Bites did not contain unnatural ingredients, he would purchase them again in the immediate future. *Id.* At present, he cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading. *Id.* As a result, cannot rely on the Product labeling. *Id.*

Seeking redress for Bayer's mendacious advertising, Corpuz brings claims on behalf of a California Class, Compl. ¶ 34, for violation of the CLRA. *Id.* at ¶¶ 37–53. He seeks monetary and injunctive relief and demands a jury trial. *Id.* at pp. 20–21.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, enough facts to "raise a right to relief above the speculative level," *id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The plausibility standard is not akin to a 'probability requirement' . . . ." *Iqbal*, 556 U.S. at 678. On the contrary, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

In evaluating a Rule 12(b)(6) motion, the court is required to "accept[] as true all well-pleaded allegations of material fact and constru[e] those facts in the light most favorable to the non-moving party." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022); *accord Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) ("*Mars Petcare US, Inc.*"). Dismissal is appropriate "only if it appears beyond doubt that [the] plaintiff can prove no set of facts in support of its claims which would entitle it to relief." *Ernst & Haas Mgmt. Co., Inc.*, 23 F.4th at 1199. "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Id.* The pleading "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[2]

[2] In the Legal Standard section of its brief, Bayer includes a general discussion of Federal Rule of Civil Procedure 9(b). Def.'s Mem. 9–10. However, Bayer does not offer any Rule 9(b) arguments that are specific to the Complaint at any point in its brief. *See generally id.* Merely mentioning the existence of Rule 9(b) is not sufficient to notify Plaintiff of the substance of any contentions Bayer may have regarding application of the Rule to this case. *See ReOpen San Diego v. City of San Diego*, No. 22-cv-00208-GPC-BGS, 2022 WL 3371340, at *2 (S.D. Cal. Aug. 16, 2022) (stating

In resolving a Rule 12(b)(6) motion, the Court is not to weigh the evidence or decide among competing versions of the facts. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr*, 652 F.3d at 1216. "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* "The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable." *Id.* at 1216–17. "The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Id.* at 1217. "As the [United States Supreme Court] wrote in *Twombly*, Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Id.*

## ARGUMENT

### I. The Complaint Is Plausible

Plaintiff alleges Defendant's deceptive "Natural" marketing violates one of California's consumer protection statutes, the CLRA. Compl. ¶¶ 37–53. Violation of the CLRA is tied to Defendant's false and misleading advertising of the "Natural" Fruit Bites Products. *Williams*, 552 F.3d at 938 ("The California Supreme Court has recognized 'that these laws prohibit "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a

---

that "[w]hile a plaintiff must plead sufficient factual allegations and present a plausible legal theory to *survive* a 12(b)(6) motion to dismiss, in bringing the motion, 'it is the defendant's burden to demonstrate that plaintiff has failed to state a claim,'" and collecting cases). Because Bayer has not stated the reasons why it contends the Complaint should be dismissed under Rule 9(b), it has failed to carry its burden on this motion. *Id.* at *3 (denying motion to dismiss and stating, "in bringing this motion to dismiss Defendant was required to state the reasons why the [complaint] must be dismissed"); *cf. Aquilina v. Certain Underwriters at Lloyd's*, 465 F. Supp. 3d 1088, 1099 (D. Haw. 2020) ("[A] party who fails to object to the manner in which fraud or mistake is pleaded at the pleading stage waives the specificity requirement set out in Rule 9(b).").

capacity, likelihood or tendency to deceive or confuse the public.""")). The question presented is whether Plaintiff has plausibly pled Defendant made material misrepresentations that were likely to deceive reasonable consumers, acting reasonably in the circumstances, when it marketed and sold the so-called "Natural" Fruit Bites. *See Mars Petcare US, Inc.*, 966 F.3d at 1017; *Williams*, 552 F.3d at 938.

Vitally, under the reasonable consumer standard, "'[w]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer' or motions to dismiss." *Mars Petcare US, Inc.*, 966 F.3d at 1017 (quoting *Williams*, 552 F.3d at 938); *accord Dumont v. Reily Foods Co.*, 934 F.3d 35, 41 (1st Cir. 2019) ("[W]e think it best that six jurors, rather than three judges, decide on a full record whether the challenged label 'has the capacity to mislead' reasonably acting, hazelnut-loving consumers."); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638 (2d Cir. 2018); *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236 (Ct. App. 2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.").

Indeed, under Ninth Circuit authority and California state appellate authority applying the CLRA, "whether a reasonable consumer is likely to be deceived as a matter of law may be decided 'only in "rare situation[s]."'" *Salazar*, 299 Cal. Rptr. 3d at 622 (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)); *accord Williams*, 552 F.3d at 939. "This is because '[w]hat matters . . . is how consumers actually behave—how they perceive advertising and how they make decisions.'" *Salazar*, 299 Cal. Rptr. 3d at 622. "These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." *Id.* (quoting *Bell*, 982 F.3d at 481).

According to the California appellate court in *Salazar*, "[c]ases in which the defendant's challenged advertising was properly found not deceptive as a matter of law at the pleading stage" are those where "the plaintiffs' claims were 'so facially

illogical, implausible, or fanciful that no reasonable consumer' would believe the plaintiffs' interpretation of the supposedly misleading advertising." *Id.* at 625 (quoting *Bell*, 982 F.3d at 493 (Kanne, J., concurring)). "The California breakfast cereal cases are good examples of this, where courts dismissed claims that the colorful rings and balls of cereal shown on 'Froot Loops' and 'Cap'n Crunch' boxes promised real fruit within." *Id.* "The trial courts properly dismissed those claims as ' "nonsense" ' that was 'not to be taken seriously.'" *Id.*

When Corpuz's allegations are accepted as true, construed in the light most favorable to him, and reasonable inferences are drawn therefrom, it is clear his claims are properly pled. Corpuz has sufficiently alleged the "underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *See Starr*, 652 F.3d at 1216. Bayer represented that the Fruit Bites are natural by denominating them as such using the bold, capitalized word "Natural" on the front and near the center of the packaging. Compl. ¶ 15. In truth, the Products contain numerous synthetic, non-natural ingredients. *Id.* at ¶ 16. Bayer simply affixed the word "Natural" to the labeling to make the Fruit Bites more appealing to the consuming public, thereby enabling it to charge a premium price. *See id.* at ¶¶ 10, 14. 29–33. Corpuz has not simply offered a generic conclusion that the Product labeling, including the term "Natural," is deceptive, but has alleged specific facts explaining how and why it is deceptive and caused consumers to pay higher prices compared to multivitamin products not promoted as being "Natural." *See Williams*, 552 F.3d at 939. This is not merely a "formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. This detailed pleading is in full compliance with Rule 8(a), *Twombly*, and *Iqbal*. The Court should accept Plaintiff's allegations as true, view them in the light most favorable to him, and hold that he has stated a plausible claim for relief. *Ernst & Haas Mgmt. Co.*, 23 F.4th at 1199; *Mars Petcare US, Inc.*, 966 F.3d at 1016.

### A. The Complaint Plausibly Alleges the "Natural" Representation Is Likely to Deceive a Reasonable Consumer

As discussed above, Corpuz pleads Bayer's "Natural" Product promotion is false and misleading because the Fruit Bites in fact contain numerous non-natural, synthetic ingredients, which the Complaint specifically identifies and discusses in detail. Compl. ¶ 16 (discussing in detail the synthetic manufacturing of cholecalciferol, niacinamide, pyridoxine hydrochloride, D-biotin, and potassium iodide).

Despite Bayer's protestations to the contrary, this case is not one of the "rare situation[s]," *Reid*, 780 F.3d at 958; *Williams*, 552 F.3d at 939, where the plaintiff's claims "border on fantasy," *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-02413-RRM-RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013), which allow the trial court to resolve the reasonable consumer question at the Rule 12(b)(6) stage as a matter of law, *see, e.g.*, *Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456-SBA, 2010 WL 2673860, at *4–5, *6 (N.D. Cal. July 2, 2010) (rejecting claim that label of "Cap'n Crunch" cereal containing "Crunch Berries" was deceptive because product did not derive nutrition from real berries or fruit); *McKinnis v. Kellogg USA*, No. 07-cv-02611-ABC-RCX, 2007 WL 4766060, at *3–5 (C.D. Cal. Sept. 19, 2007) (rejecting claim that brightly colored ring-shaped "Froot Loops" cereal label was deceptive because product did not contain actual fruit). Rather, where, as here, "a plaintiff's interpretation of a challenged statement is *not* facially illogical, implausible, or fanciful, then a court may *not* conclude that it is nondeceptive as a matter of law." *Bell*, 982 F.3d at 493 (Kanne, J., concurring).

Indeed, Plaintiff's case is no different from the plethora of cases that have held claims regarding deceptive "Natural" statements on food and cosmetic products survive dismissal at the Rule 12(b)(6) stage because it is plausible that the "Natural" representations are likely to mislead reasonable consumers into believing the products do not contain synthetic ingredients. *E.g.*, *Moore v. GlaxoSmithKline*

*Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 WL 3524047, at *8 (N.D. Cal. Aug. 6, 2021) ("Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' statements, including '100% natural,' 'natural,' and 'naturally-sourced,' to mean that a product does not contain any non-natural ingredients."); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 914 (E.D. Cal. 2020) ("[T]he court finds plaintiff's claim that a reasonable consumer would find the label 'natural' to be misleading, even with the qualifying language 'with added vitamins, minerals & nutrients,' to be plausible."); *Gregorio v. Clorox Co.*, No. 17-cv-03824-PJH, 2018 WL 732673, at *1, *4 (N.D. Cal. Feb. 6, 2018) (holding that the words "naturally derived" on labeling of multi-surface cleaners, toilet bowl cleaners, and cleaning wipes were plausibly deceptive where products contained synthetic ingredients); *Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-cv-04517-EMC, 2018 WL 534299, at *1, *3 (N.D. Cal. Jan. 24, 2018) (holding that complaint plausibly alleged the terms "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959" on deodorant products were likely to deceive a reasonable consumer where the products "actually use synthetic ingredients—namely, tocopheryl acetate, glycerin, and ethylhexylglycerin").[3] These decisions are directly on point and provide strong grounds for denial of Bayer's

---

[3] *Paulino v. Conopco, Inc.*, No. 14-cv-05145-JG-RML, 2015 WL 4895234, at *1, *4–6, *7 (E.D.N.Y. Aug. 17, 2015) (denying motion to dismiss CLRA claim because fact questions existed as to whether the term "Naturals" and accompanying natural imagery on the defendant's "Suave Naturals" brand shampoos, conditioners, and other personal care products were likely to mislead a reasonable consumer, when the products contained synthetic ingredients); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (question of fact sufficient to survive motion to dismiss existed as to whether the term "Active Naturals" on personal care products was likely to mislead a reasonable consumer, when the products contained synthetic ingredients); *Jou v. Kimberly-Clark Corp.*, No. 13-cv-03075-JSC, 2013 WL 6491158, at *1, *5–10 (N.D. Cal. Dec. 10, 2013) (denying motion to dismiss claims under CLRA that the defendant misrepresented its "Huggies" brand "pure & natural" diapers and "Natural Care" wipes as natural due to the presence of synthetic ingredients in the products, because "[t]he Court [was] not persuaded that, as a matter of law, no reasonable consumer could be deceived by the packaging of Defendant's diapers and wipes").

motion.

In challenging Plaintiff's well-pled allegations of deceptive conduct, Bayer repeatedly misstates, exaggerates, and distorts Plaintiff's allegations. According to Bayer, Plaintiff claims the "Natural" representation is deceptive because the Products are not "wholly free from anything synthetic." Def.'s Mem. 10; *see also id.* at 1 (indicating that Plaintiff's claim is that the "Natural" claim is deceptive because the Products were not "created solely by nature"); *id.* at 8 (asserting that "Plaintiff claims that he expects products that are 'labeled as natural' to be 100% free from any 'synthetic ingredient'"). Similarly, Bayer contends Corpuz claims the "Natural" statement means the Fruit Bites were "mass produced without the help of a 'chemical process' or any 'chemical changes' to any ingredients," *id.* at 11; *see also id.* at 12. Based on the foregoing arguments, Bayer repeatedly protests that Plaintiff's definition of "Natural" is "extreme," *id.* at 8, 13, and suggests that Plaintiff's claim is that Bayer promised the "impossible," *id.* at 11. As discussed above, however, Bayer's arguments do not accurately reflect Plaintiff's claims. Plaintiff alleges the Fruit Bites contain "a number of synthetic ingredients," Compl. ¶ 15, *not* that they contain only a de minimis amount of synthetic ingredients. The question of whether the pleading would state a claim if the Products only contained a de minimis amount of synthetic ingredients is simply not before this tribunal.[4] Instead, Plaintiff's claim is that despite the "Natural" labeling on the Fruit Bites, they are chock full of synthetics. This is not an "extreme" claim and, instead, is in accord with the approach taken by the plaintiffs in the numerous cases cited above in which courts have denied motions to dismiss claims regarding allegedly deceptive "Natural" labeling. *See*

[4] For this reason, *In re General Mills Glyphosate Litigation*, No. 16-cv-02869-MJD-BRT, 2017 WL 2983877 (D. Minn. July 12, 2017), upon which Bayer relies (Def.'s Mem. 6), is off point. In the *Glyphosate Litigation*, the plaintiffs alleged the defendant's "Natural" representation was deceptive because the products at issue "contain[ed] trace amounts of the chemical glyphosate," a "synthetic biocide." *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *1. By contrast, Plaintiff's claim is not about mere "trace" ingredients in the Fruit Bites, but instead concerns numerous ingredients which are central to the Products. *See* Compl. ¶¶ 15–16.

*supra* pp. 11–12, 12 n.3; *see, e.g.*, *Paulino*, 2015 WL 4895234, at *5 ("A reasonable juror could reach the conclusion that the label 'Naturals' means that the product is at least mostly comprised of natural ingredients."); *see also Gregorio*, 2018 WL 732673, at *4 ("It is not unreasonable as a matter of law to expect a product labeled 'naturally derived' to contain no synthetic ingredients.").

Bayer also argues that consumers should know that its "Natural" statement is false and misleading. Def.'s Mem. 12–13. According to Defendant, "even when the label says 'natural,'" consumers should know the Products are not in fact natural. *Id.* The Court should reject outright this counterintuitive position, which is inconsistent with the many cases cited above. *See supra* pp. 11–12, 12 n.3. In support of its argument, Bayer points to other multivitamin products and asserts that their "ingredient lists plainly disclose the presence of synthetic ingredients, including cholecalciferol, niacinamide, and pyridoxine hydrochloride." Def.'s Mem. 12–13. As discussed above, this argument is a straw man, as the products that Bayer has identified are not at issue in this case. What matters here is whether Plaintiff's Complaint plausibly alleges the "Natural" label on the Fruit Bites is likely to deceive a reasonable consumer, not what the labels on multivitamins that are not present in the pleadings state.

Bayer relies heavily on *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) ("*Trader Joe's Co.*"). Def.'s Mem. 10, 11, 12, 15. But *Trader Joe's Co.* is not like this case. There, the Ninth Circuit affirmed dismissal of a claim that the representation "100% New Zealand Manuka Honey" was deceptive because the product allegedly actually consisted of only between 57.3% and 62.6% honey derived from Manuka flower nectar. *Trader Joe's Co.*, 4 F.4th at 876–77. The court reasoned that "a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source"—"given the foraging nature of bees." *Id.* at 883. It further stated, "[a]lthough a reasonable consumer might not be an expert in honey production or beekeeping, consumers

would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant." *Id.* Unlike in *Trader Joe's Co.*, where the common knowledge that beekeepers cannot possibly control where bees forage played a key role in defeating the plaintiffs' claim, here, the precise capabilities of multivitamin manufacturers are not common knowledge. It is at least plausible that a reasonable, health-conscious consumer would believe that a multivitamin prominently labeled "Natural" would *not* be filled with numerous synthetic ingredients (especially synthetic vitamins), even if the manufacture of the multivitamin involved some level of processing. *See Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 968 (N.D. Cal. 2022) (rejecting defendant's reliance on *Trader Joe's Co.* because "it is not impossible to produce healthy drinks" as advertised). For these reasons, *Trader Joe's Co.* is off point.

Bayer also heavily relies on *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013), an outlier decision that numerous courts have criticized and declined to follow. *See* Def.'s Mem. 7, 11, 13, 14. For example, the court in *Surzyn v. Diamond Foods, Inc.* explained:

> Nothing in the FTC's analysis either directly or inferentially supports the *Pelayo* court's conclusion that it is "implausible" that consumers would be misled or confused by the use of "All Natural" on food product packaging. The FTC simply found that the meaning of "natural" is context-specific, and in the absence of contextualized evidence regarding consumer perceptions, it was inappropriate to provide specific guidance on the meaning of that term. Thus, rather than justifying the *Pelayo* court's dismissal of the action at the pleading stage, the FTC's observations support the conclusion that the question of whether consumers were deceived by an "All Natural" designation must be resolved based on consideration of evidence–and not at the pleading stage. *See Williams*, 552 F.3d at 939 (reversing the dismissal of UCL and false advertising claims, finding that "the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."); *accord Rojas v. Gen'l Mills, Inc.*, No. C 12–5099 WHO, 2014 WL 1248017, at *7–8 (N.D.Cal. Mar. 26, 2014) ("100% Natural" and "All Natural" representations on Nature Valley granola bars could mislead a reasonable consumer where the products contained genetically modified organisms, i.e., GMOs); *Parker v. J.M. Smucker Co.*, No. C 13–690 SC, 2013 WL 4516156, at *6 (N.D.Cal. Aug. 23, 2013) (plaintiff's allegations that a reasonable consumer would believe that a

> product labeled as "all natural" contained no bioengineered or chemically altered ingredients "cannot be resolved as a matter of law"); *Vicuna v. Alexia Foods, Inc.*, No. C 11–6119 PJH, 2012 WL 1497507, at *2 (N.D.Cal. Apr. 27, 2012) (same); *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10–4387 PJH, C 10–4937 PJH, 2011 WL 2111796, at *5–6 (N.D.Cal. May 26, 2011) (same).
>
> The Court concludes that *Pelayo* is not persuasive, and declines Defendant's invitation to follow it.

*Surzyn v. Diamond Foods, Inc.*, No. 14-cv-00136-SBA, 2014 WL 2212216, at *3–4 (N.D. Cal. May 28, 2014). For another example, in *Jou v. Kimberly-Clark Corp.*, the court "decline[d] to follow *Pelayo*'s holding" because its "conclusion is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit." *Jou*, 2013 WL 6491158, at *8; *see also Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1384–85 (S.D. Fla. 2014) ("[T]his Court rejects *Pelayo* and Defendants' reliance thereon. Plaintiffs' claims are not deficient for failure to offer an alternative definition of 'all natural.'"); *Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280-WHO, 2014 WL 1266848, at *7 (N.D. Cal. Mar. 26, 2014) (distinguishing *Pelayo*, reasoning that plaintiffs "offered definitions of 'natural' that are internally consistent and supported by applicable federal regulations and guidance").

In addition to ignoring the vast weight of authority, including the binding Ninth Circuit decision in *Williams v. Gerber Products Co.*, Bayer and *Pelayo* rely on straw man arguments. The court in *Pelayo* states that "the reasonable consumer is aware that Buitoni Pastas are not springing fully-formed from Ravioli trees and Tortellini bushes," *Pelayo*, 989 F. Supp. 2d at 978, a sentiment which Bayer echoes, Def.'s Mem. 7 (arguing that "multivitamin pills and chewables do not grow 'fully-formed' from vitamin 'trees' or dietary-supplement 'bushes'"). As discussed above, however, the issue is not whether finished multivitamins grow on trees. Rather, the issue on this motion is whether it is plausible that Bayer's representation that the Fruit Bites are "Natural" is likely to deceive a reasonable consumer due to the presence of numerous synthetic ingredients in the Products. For all the foregoing

reasons, this Court should not be persuaded by *Pelayo*. *See Dorsey v. Rockhard Lab'ys, LLC*, No. 13-cv-07557-DDP-RZ, 2014 WL 4678969, at *6 (C.D. Cal. Sept. 19, 2014) ("The Ninth Circuit appears to have rejected the simplistic approach to representations that a product is 'all natural' suggested by Defendants' interpretation of *Pelayo*."); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (recognizing disagreement with *Pelayo*).

Bayer argues its labeling of the Fruit Bites complies with the FDA's policy regarding the word "Natural" because "'nothing artificial or synthetic . . . [has] been included in [the Product], or has been added . . . *that would not normally be expected to be*' in a multivitamin." Def.'s Mem. 14. This, however, is simply Defendant's conclusory position. The Complaint does not allege that consumers would normally expect the so-called "Natural" Fruit Bites to be filled with numerous synthetic substances; instead, it alleges the opposite. *See* Compl. ¶¶ 14–19, 23. There are no facts properly before the Court supporting Bayer's bald assertions regarding what consumers would "*normally . . . expect*." Def.'s Mem. 14. Even if there were, however, that would at most give rise to a dispute of fact that the Court should not resolve on this motion. *Mars Petcare US, Inc.*, 966 F.3d at 1017; *Williams*, 552 F.3d at 938; *see also Dumont*, 934 F.3d at 41. Where there are competing versions of the facts, "one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr*, 652 F.3d at 1216.

Finally, in the Background section of its brief, Bayer attempts to inject facts into the record that are not properly before the Court. Specifically, Bayer states that "[a] synthetics-free multivitamin pill 'would be the size of a golf ball.'" Def.'s Mem. 8. The Complaint, however, includes no such allegation, and it does not incorporate the Scientific American article Bayer cites by reference. Bayer also cites a Tufts Health & Nutrition Letter that appears nowhere in the Complaint. *Id.* It is improper for Bayer to attempt to "insert [its] own version of events into the complaint to defeat

otherwise cognizable claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also id.* at 1003 ("Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts. Without that opportunity to respond, the defendant's newly-expanded version of the complaint—accepted as true at the pleading stage—can easily topple otherwise cognizable claims."). Because the Scientific American article and Tufts Health & Nutrition Letter are outside of the pleadings, the Court should reject Bayer's request to take judicial notice of both of these and, instead, disregard both of them as well as any reference by Bayer to any purported facts alleged therein, on this motion to dismiss under Rule 12(b)(6). *Id.*

For all of the foregoing reasons, the Court should hold that Plaintiff has plausibly alleged the "Natural" statement on the Fruit Bites is likely to deceive a reasonable consumer, and that ultimate resolution of the reasonable consumer inquiry is a fact question for a later stage of the case. *Williams*, 552 F.3d at 939.

### B. Ninth Circuit Precedent Prohibits Bayer from Relying on the Back Labels of the Fruit Bites to Correct the Deceptive "Natural" Claim on the Front

Bayer's second argument for dismissal is equally unsupportable. It argues the word "Natural" appears near the word "Fruit" on the Product labels, and therefore the word "Natural" modifies only the word "Fruit" as opposed to being part of the name of the Product, i.e., "Natural Fruit Bites Multivitamins" (or alternatively "One a Day Natural Fruit Bites Multivitamins [Men's] Dietary Supplement"). Def.'s Mem. 14–16. This argument is nonsensical and ignores the visual presentation of the label. As the images of the Product labels show, the words "Fruit" and "Bites" are the same size, which visually ties them together. Compl. ¶ 15. The word "Natural" is on a separate line and is a different size than the words "Fruit Bites." Visually,

this presentation does not suggest that "Natural" only modifies the word "Fruit." It is more reasonable to read the word "Natural" to be a part of the entire name of the Product, "Natural Fruit Bites Multivitamins" (or alternatively "One a Day Natural Fruit Bites Multivitamins [Men's] Dietary Supplement"), and therefore to indicate the Product as a whole is natural, not merely the fruit. At minimum, the Court should not hold that Defendant has shown what it needs to show to prevail on this motion, namely, that no reasonable consumer could view the word "Natural" to modify anything other than the word "Fruit." Review of the labels themselves demonstrates that it simply is not reasonable to conclude that the only way to read the label is the way for which Bayer advocates. Rather, Bayer's arguments give rise, at most, to fact questions which the Court should not resolve on this motion to dismiss.[5] *Williams*, 552 F.3d at 939.

Bayer also argues "[a]ny remaining ambiguity" is "easily resolved" by the back panel of the Products. Def.'s Mem. 16. This argument contradicts governing Ninth Circuit precedent, under which:

> [R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box . . . certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams*, 552 F.3d at 939–40; *accord Bell*, 982 F.3d at 476 ("[A]n accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers."); *Mars Petcare US, Inc.*, 966

[5] *Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062 (N.D. Cal. 2013), is inapposite. *See* Def.'s Mem. 15. There, the representation at issue was "Made with 100% Natural Fruit." *Bruton*, 961 F. Supp. 2d at 1098. Here, the representation is "Natural Fruit Bites Multivitamins." Compl. ¶ 15. "Made with" is not present. The Court should reject Bayer's invitation to read the word "Multivitamins" out of the label and to ignore the visual presentation and relative sizes of the words.

F.3d at 1017 ("If, however, 'a back label ingredients list . . . conflict[s] with, rather than confirm[s], a front label claim,' the plaintiff's claim is not defeated."); *Mantikas*, 910 F.3d at 637 ("We conclude that a reasonable consumer should not be expected to consult . . . the side of the box to correct misleading information set forth in large bold type on the front of the box.").

Defendant sends the message to reasonable consumers that the Products are "Natural" by describing them as such on the front of the packaging. Compl. ¶ 15. Under *Williams* and *Mars Petcare US, Inc.*, Defendant may not mislead reasonable consumers into believing the Products are natural on the front label and then correct the deceptive statement by divulging they are in fact composed of numerous synthetic, unnatural ingredients by means of the ingredient list on the back. *Williams*, 552 F.3d at 939–40.

Furthermore, even if consumers were to view the ingredient list, the list fails to neutralize the false and misleading "Natural" claim. Contrary to Defendant's argument, the ingredient list does not specify which ingredients are natural and which are synthetic. Instead, it is an often-inscrutable enumeration of long scientific and chemical names. The reasonable consumer, however, is not someone with an advanced understanding of chemistry; instead, it is the ordinary consumer. *See, e.g.*, *Dumont*, 934 F.3d at 40 ("Our dissenting colleague envisions a more erudite reader of labels, tipped off by the accent grave on the word 'crème,' and armed perhaps with several dictionaries, a bit like a federal judge reading a statute."). By listing the ingredients by the chemical name, Defendant has made it difficult, if not impossible, to distinguish between ingredients which are natural and those which are synthetic.

Moreover, the list does not describe how the ingredients were created. Thus, a consumer would have to conduct detailed research on each ingredient to ascertain whether it was created by nature or in a laboratory—and even then, the consumer may not be completely certain as to the method used. Consumer protection laws, however, "do not impose on average consumers an obligation to question the labels

they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Bell*, 982 F.3d at 476. "[A] parent walking down the [] aisle in a [retail] store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures . . . . Nor does the law expect this of the reasonable consumer." *Id.* (quoting *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019)). Defendant's argument relies on the premise that the reasonable consumer has a level of sophistication and knowledge regarding chemistry that is much greater than the ordinary consumer, or, alternatively, is willing to devote the time (perhaps via smartphone internet searches) while perusing the aisle of a retail store that it takes to attempt to obtain such knowledge. Defendant's conception of the reasonable consumer contradicts the law.[6]

Finally, at the motion to dismiss stage, the likely impact of ingredient list on a reasonable consumer is a factual issue, not determinable on the pleadings. *See Williams*, 552 F.3d at 938.

## CONCLUSION

For the foregoing reasons, the Court should deny Bayer's motion to dismiss in full. If the Court grants any part of the motion, Corpuz respectfully requests leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); FED. R. CIV. P. 15(a)(2).

Date: November 16, 2022

Respectfully submitted,

**REESE LLP**

By: *\/s/ George V. Granade*
George V. Granade (SBN 316050)
*ggranade@reesellp.com*

[6] Defendant also improperly attempts to inject facts into the record that are not before the Court. Def.'s Mem. 17. Defendant claims the apple and apple juice concentrate ingredients "constitute over 99% of the ingredients by weight," but that purported fact appears nowhere in the pleading or on the back label of the Product. The Court should therefore disregard it. *See Khoja*, 899 F.3d at 1002–03.

8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
Sue J. Nam (SBN 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Charles D. Moore
(*pro hac vice* to be filed)
*cmoore@reesellp.com*
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff Edison Corpuz and the Proposed Class*