Amy P. Lally (SBN 198555)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Email: alally@sidley.com
Tel.: (310) 595-9500
Fax: (310) 595-9501

Jonathan F. Cohn* (NY 2972578)
Joshua J. Fougere* (NY 4805214)
Madeleine Joseph*† (MA 703541)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
Email: jfcohn@sidley.com
jfougere@sidley.com
mjoseph@sidley.com

*Attorneys for Defendant Bayer Corporation*
(*Additional Attorney for Defendant on Subsequent Page*)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

EDISON CORPUZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BAYER CORPORATION,

Defendant.

Case No. 3:22-cv-01085-MMA-JLB

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

No hearing date per court order[1]

[1] On September 12, 2022, the Court ordered a briefing schedule in this matter. ECF No. 10. Chambers therefore does not require a hearing date.

*Additional Counsel for Defendant*

Michelle Ramirez* (IL 6301170)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
Email: michelle.ramirez@sidley.com

* Admitted *pro hac vice*.
† Admitted only in Massachusetts; supervised by principals of the firm who are members in good standing of the D.C. Bar.

## I. INTRODUCTION

The complaint rests on the ridiculous assumption that consumers would expect bite-sized fruit chews packed with seven vitamins and three minerals to be produced without any "chemical process" or "chemical changes"—simply because the word "natural" appears on the Fruit Bites' label. Nothing plaintiff says now can salvage his extreme theory. Indeed, he abandons it.

Plaintiff cannot dispute that the ingredients he objects to are ubiquitous in multivitamins on the market, *including* multivitamins labeled "natural." Nor can he dispute that a "reasonable, health-conscious consumer" would know that the "manufacture of [a] multivitamin involve[s] some level of processing." Opp. 15. These undisputed facts render plaintiff's claim implausible. Armed with common sense and knowing these realities, reasonable consumers would *not* believe that a small, vitamin-packed, obviously processed chewy product was created entirely by nature, if those consumers thought about the issue at all.

So plaintiff pivots, using his opposition brief to rewrite the complaint. Plaintiff now suggests that reasonable consumers would expect a product that uses "natural" on its label to contain *some*, but just not *too many*, synthetic substances. *Id.* at 2, 13, 15–17. He makes no attempt to identify how much chemical processing or how many chemical changes reasonable consumers would expect. And he fails to identify any definition that is shared by "a significant portion of the general consuming public or of targeted consumers," *Moore v. Trader Joe's Co.*, 4 F. 4th 874, 882 (9th Cir. 2021)—which is probably why he pled his categorical theory to begin with. The complaint says up and down that reasonable consumers understand "natural claims to mean" that products are "natural and *do not contain synthetic ingredients*." Compl. ¶ 23 (emphasis added). Plaintiff cannot now walk away from this all-or-nothing understanding of the term "natural." Because that interpretation is implausible, the complaint should be dismissed. *See, e.g. Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012).

Even if plaintiff could plausibly allege that the word "natural" is ambiguous in isolation, the complaint still fails to state a claim. The Fruit Bites' label conveys that the *fruit* is "natural," not the whole multivitamin. Plaintiff still does not dispute that the "bites" contain natural fruit. The back of the label, including the ingredient list, plainly confirms that it is the fruit that is "natural," and the opposition's feeble attempts to argue otherwise are unconvincing. The Court should dismiss.

## II. ARGUMENT

### A. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A CLAIM.

The complaint should be dismissed because it rests on an implausible interpretation of the Fruit Bites' label. Viewed in isolation or in context, the label's use of the word "natural" would not deceive a reasonable consumer.

#### 1. No Reasonable Consumer Would Expect that the Fruit Bites Were Produced Without Chemical Processing or Chemical Changes.

Plaintiff does not dispute that it is virtually impossible to manufacture a multivitamin without the help of any "chemical process" or any "chemical changes" to any ingredients. Nor does he dispute that a "reasonable, health-conscious consumer" would appreciate this reality—that is, that "the manufacture of [a] multivitamin involve[s] some level of processing." Opp. 15. These undisputed facts are fatal to plaintiff's complaint. Reasonable consumers would not expect from a multivitamin what they know to be impossible, simply because the word "natural" appears on the product's label. Plaintiff's various efforts to defend his implausible claim fall short.

Plaintiff attempts to dodge the Ninth Circuit precedent foreclosing deceptive-advertising claims premised on impossible assumptions, but he misses the point. *See* Mem. 10–12 (discussing *Moore*, 4 F.4th at 882–83). According to the opposition, *Moore* is "not like this case" because "the precise capabilities of multivitamin manufacturers are not common knowledge," while the practices of the beekeepers relevant in *Moore* are supposedly "generally know[n]." Opp. 14–15. Bayer's argument, however, does not depend on the notion that consumers have any special

insight into dietary-supplement production. It depends on the notion—which plaintiff nowhere disputes—that reasonable consumers, drawing on common knowledge and sense, would grasp that a broad array of seven vitamins and three minerals could not be transformed into a chewy "bite" without some chemical processing (if the consumers thought about the issue at all). *See* Mem. 10–12. And because reasonable consumers (not just "expert[s] in [multivitamin] production") would "generally know that it is impossible" to manufacture a multivitamin that satisfies the complaint's extreme definition of "natural," plaintiff's claim fails as a matter of law. *Moore*, 4 F.4th at 883.

In any event, plaintiff agrees that "health-conscious" multivitamin consumers are the focus here, Opp. 15; Compl. ¶ 2, and those consumers are "undoubtedly more likely to exhibit a higher standard of care" than consumers of "low-priced, everyday items," *Moore*, 4 F.4th at 884. The reasonable, "health conscious" consumer highlighted in plaintiff's complaint allegedly "desire[s]" and "value[s]" products with natural "ingredients" because they are "safer and healthier than alternative" or "comparable products." Compl. ¶¶ 2, 14, 29. In other words, the consumers at issue comparison shop and are attentive to a product's ingredients. These careful consumers can be expected to understand a basic fact about the multivitamin market: Multivitamins, *including* those labeled "natural," contain synthetic ingredients; they do not grow on trees or in fields, and are not made from ingredients that do. *See* Mem. 12–13, 8.[2] This fact is at least as commonly known as the flight habits of New Zealand honey bees.

---

[2] Plaintiff does not object to Bayer's request for judicial notice of the labels of two other "natural" multivitamins. *See* Dkt. No. 22-1, Exs. G, H. Also unchallenged are Bayer's requests for notice of the back of the Fruit Bites' label, Ex. K; of government webpages about synthetic vitamins, Exs. C–E; and of Food and Drug Administration and Department of Agriculture regulatory documents, Exs. F, I–J. As plaintiff apparently concedes, judicial notice of these documents is appropriate. Plaintiff's argument against judicial notice of Bayer's articles about multivitamin production is off the mark. Bayer does not seek judicial notice of these articles on the ground that they appear in or are incorporated into the complaint. *See* Opp. 17–18. Rather, as Bayer explained, judicial notice is appropriate to establish "what was in the public realm at the time" plaintiff purchased the products. Dkt. No. 22-1 at 3 (quoting *Von Saher v. Norton Simon*

Turning his back on his own allegations, plaintiff now claims that this market reality is a "non sequitur" or a "straw man." Opp. 2, 14. But, as the Ninth Circuit has repeatedly stressed, a plaintiff's interpretation of a term must be "consider[ed] … in its proper context," and that context includes the "prevalent understanding of the term" in the relevant "marketplace." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019) (holding that reasonable consumers would understand "diet" on soda label to carry meaning "prevalent" on soft drinks); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (holding that reasonable consumers would not be misled by product that operated like others "commonplace in the market"). These cases hold that if a term is "common in the marketplace" (and "natural" is) and there is a "prevalent understanding" of that term (and there is), then a plaintiff cannot plausibly allege that he was deceived based on an unreasonable, subjective belief that the term means something different. *See, e.g.*, *Becerra*, 945 F.3d at 1230 ("Just because some consumers may unreasonably interpret the term differently [from the market] does not render the use of 'diet' in a soda's brand name false or deceptive."); *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012). "Simply because" he "unreasonably assumed" that "natural" on the Fruit Bites' label signaled the absence of synthetic ingredients "does not make it so." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020).

And the complaint's extreme and idiosyncratic definition of "natural" is unreasonable. *See* Mem. 13–14. The opposition accuses Bayer of "misstat[ing], exaggerate[ing], and distort[ing]" the complaint's allegations. Opp. 13; *see id.* at 2. But the complaint speaks for itself, and its theory is unequivocal and categorical: "Plaintiff believes that products that are labeled as natural *do not contain synthetic ingredients*." Compl. ¶ 9 (emphasis added); *see also id.* ¶ 23 (claiming that a reasonable consumer would be misled because he would "understand[] [Bayer's] natural claims to mean that

---

*Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)). Bayer's request for judicial notice should be granted in full.

the Products are natural and do not contain synthetic ingredients"); *id.* ¶¶ 2, 15–16, 42–44, 47. Now, all of a sudden, the opposition announces that plaintiff's "case is *not* that the 'Natural' representation is deceptive because the products contain a *de minimis* amount of synthetic ingredients." Opp. 2 (second emphasis added).

Instead, according to the opposition, plaintiff was deceived because the multivitamins have *too many* synthetic ingredients. *Id.* at 13 (complaining that the multivitamins are "chock full of synthetics"); *see also id.* at 15–17 (complaining about "numerous" synthetic ingredients). This ill-defined, late-breaking theory, among other problems, raises more questions than it answers. How do reasonable consumers measure "amounts" of synthetic ingredients? And where on the broad spectrum between "de minimis" and "chock full" does a product become "unnatural"? Plaintiff's opposition does not say. More importantly, neither does the complaint.[3] "The 'new' allegations contained in the [plaintiff's] opposition motion" are thus "irrelevant" for evaluating Bayer's motion to dismiss. *Schneider v. Calif. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Bayer rightly took plaintiff's complaint as written, and as written it fails to state a claim.

Unsurprisingly, in trying to rewrite his complaint, plaintiff all but abandons the irrelevant materials from the Department of Agriculture (USDA) "organic" program from which he copy-pasted his alleged "belie[f]" about the meaning of "natural." *See* Compl. ¶¶ 19 (citing USDA definition), 9 (adopting this as what plaintiff "believes"). As Bayer's motion explained, the USDA definition "does not apply" because the Fruit Bites are not "organic" and are quite unlike the "organic" agricultural products, such as

[3] Plaintiff quotes the complaint's statement that the Fruit Bites contain "a number of synthetic ingredients." Opp. 2, 13 (quoting Compl. ¶ 15). However, this statement is a description of the multivitamins, not an allegation related to deception. *See* Compl. ¶ 15 ("Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as being natural.").

livestock, that USDA regulates. *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C. D. Cal. 2013); *see also* Mem 13–14.[4] The opposition has no response. Opp. 5.

What is more, plaintiff cannot explain why he allegedly "believes" that "natural" is defined based on a USDA definition for the word "synthetic," while ignoring the guidance on "natural" claims from the Food and Drug Administration (FDA), the agency that does regulate dietary supplements. *See* Mem. 8–9. Plaintiff does not dispute that FDA's policy governs, and indeed the complaint concedes that "one can look to the regulatory agencies for their guidance" about what a "reasonable consumer believes the term natural means." Compl. ¶ 17. In other words, the complaint roots its definitions in regulatory guidance, yet it ignores the regulatory guidance that matters. Under the FDA policy, the Fruit Bites are "natural" because they do not contain synthetic ingredients "*that would not normally be expected to be*" in multivitamins. Mem. 14 (quoting FDA regulatory documents). Plaintiff no longer disputes that, contrary to his complaint, multivitamin consumers may "normally … expect[]" some amount of chemical processing or chemical changes. Under the proper regulatory guidance, that is fatal.

Finally, plaintiff purports to have found a "plethora" of cases about "natural" products, but none is "directly on point" and none supplies "grounds for denial of Bayer's motion." Opp. 12–13. None of his cases is binding, unlike *Moore* and Bayer's Ninth Circuit cases. *See supra*, at 2–3. None even acknowledges *Moore*; indeed, all the cases, save one, were written before it. This Court, however, has the benefit of the "recent Ninth Circuit decisions" emphasizing that a complaint cannot survive a motion to dismiss where "'contextual inferences regarding the product'" belie the plaintiff's

[4] Attempting to distinguish *Pelayo*, plaintiff puzzlingly refutes an argument about a Federal Trade Commission report that Bayer never mentions. *See* Opp. 15–16. *Pelayo* is persuasive on two points that plaintiff does not refute. *See* Mem. 13, 14. First, *Pelayo* applies the decisive principle that alleging a "subjective definition of the term" "natural" is not enough. 989 F. Supp. at 980. Second, as stated above, *Pelayo* holds that USDA's materials about "organic" products do not apply in cases like this one. *Id.* at 979.

interpretation. *Kennard v. Kellogg Sales Co.*, No. 21-CV-07211-WHO, 2022 WL 4241659, at *3–4 (N.D. Cal. Sept. 14, 2022) (quoting *Moore*, 4 F.4th at 882); *see also, e.g.*, *Thomas v. Costco Wholesale Corp.*, No. 21-55335, 2022 WL 636637, at *2 (9th Cir. Mar. 4, 2022) (affirming dismissal based on *Moore*); *Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021) (affirming dismissal after considering phrase "in its full context"); *Kim v. Blue Triton Brands*, No. 2:22-CV-01907-JLS-KS, 2022 WL 17061085, at *4 (C.D. Cal. Nov. 1, 2022) (dismissing claims based on *Moore*).

Plaintiff's "natural" cases are unpersuasive anyway. They involve pet food, lip balm, and personal care products—but not multivitamins. And nothing in plaintiff's opposition, or in the cases themselves, suggests that those products are analogous to multivitamins in the key respect: Virtually all multivitamins contain synthetic vitamins, because a pill, gummy, or chewable "bite" could not deliver high doses of multiple vitamins and minerals otherwise. So it may well be reasonable for a consumer to expect her "natural" pet food to be free from chemical processing or chemically altered ingredients. But for the reasons already discussed, no reasonable consumer would presume the same about a small, obviously processed square that contains, among other nutrients, 100% of the daily values of vitamin $B_{12}$ and biotin. Because plaintiff's contrary assumption is implausible, this Court should dismiss.

**2. Context Shows that Plaintiff's Interpretation is Implausible.**

The complaint should be dismissed for a second reason. The Natural Fruit Bites' label clearly conveys that the *fruit* is "natural," not the whole multivitamin, and plaintiff does not dispute that the "bites" contain natural fruit. *See* Mem. 16–17. Even if the complaint plausibly alleged that the word "natural" is ambiguous, the rest of the label, including the ingredients list, would "quickly dissuade[]" any "reasonable consumer … from Plaintiff['s] 'unreasonable [and] fanciful' interpretation" of the term. *Moore*, 4 F.4th at 883; *see also* Mem. 14–16. Plaintiff's responses are unconvincing.

He first insists that "[i]t is more reasonable to read the word 'natural' to be a part of the entire name of the product" and to "indicate the Product as a whole is natural."

Opp. 19. That cannot be right. The label places "natural" immediately above "fruit," *not* next to the word "multivitamin," which appears on an entirely separate line below the product name. Further, the label features a large image of an apple as it grows in nature, on a vine, confirming that the focus is on the natural fruit. *See* Compl. ¶ 15; *see also* Mem. 16–17. The bottle contains "60 bites," which contain natural fruit, so the label is not misleading.

At best for plaintiff, the use of "natural" on the Fruit Bites' label is ambiguous, and the back of the label clarifies that "natural" means "natural fruit," *not* that the multivitamins are totally synthetics-free. *See* Mem. 16–17. Plaintiff maintains that this argument about the back of the Fruit Bites' label "contradicts governing Ninth Circuit precedent," but he misunderstands that authority. Opp. 19 (discussing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008) and quoting *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020)). *Williams*, the Court of Appeals has explained, "stands for the proposition that *if* the defendant commits an act of deception" on the front of a label, "the presence of" disclosures elsewhere "revealing the truth is insufficient to dispel that deception." *Ebner*, 838 F.3d at 966 (emphasis in original).[5] But when the front label is ambiguous, courts turn to the back label. The information "on the back of a label or in ingredient lists" defeats a claim of deception where that context "confirm[s]," rather than "conflict[s] with," a "front label claim." *Mars Petcare*, 966 F.3d at 1017 (cleaned up); *see also Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1187 (N.D. Cal. 2021) ("Without a deceptive act or statement, *Williams* does not apply."). Bayer's argument is a straightforward application of this rule.

Applying this principle, the complaint should be dismissed. *See* Mem. 14–17.

[5] The out-of-circuit cases plaintiff cites, *see* Opp. 19–20, stand for the same principle, *see Moore*, 4 F.4th at 882 (discussing *Bell v. Publix Super Markets Inc.*, 982 F.3d 468 (7th Cir. 2020)); *Steinberg v. Icelandic Provisions, Inc.*, No. 21-CV-05568-EMC, 2022 WL 220641, at *7 n.3 (N.D. Cal. Jan. 25, 2022) (explaining that *Mantikas* adopted *Williams* and that "courts in the Second Circuit have declined to extend *Mantikas*'s holding to situations where the front label … makes 'ambiguous' statements").

"[W]hile reasonable consumers are not 'expected to look beyond misleading representations on the front of'" a package, *Martinez v. Mead Johnson & Co., LLC*, No. 5:22-CV-00213-JWH-SHK, 2022 WL 15053334, at *6 (C.D. Cal. Oct. 22, 2022) (quoting *Williams*, 552 F.3d at 939), here, plaintiff cannot plausibly plead that "there is [any] deceptive act" on the front of the bottle that needs "to be dispelled," *Ebner*, 838 F.3d at 966. To survive, then, the complaint "would need to allege, plausibly, why" the rest of the label "fails to provide reasonable consumers with enough context clues to clarify any unlikely ambiguity surrounding" the term natural. *Martinez*, 2022 WL 15053334, at *6 (citing *Moore* 4 F.4th at 882). The complaint does not clear this bar. It says nothing at all about how reasonable consumers would interpret *any* part of the label beyond the word "natural."

Ultimately, this case is unlike the ones plaintiff relies on, *see* Opp. 19–20, and like numerous others in which courts have dismissed deceptive-advertising claims because the surrounding text, images, or ingredient disclosures confirm that plaintiff's interpretation is implausible, *see* Opp. 15 (citing cases). Tellingly, plaintiff makes no attempt to distinguish the most analogous case. *Hairston v. S. Beach Beverage Co*. rejected a claim that the phrase "all natural with vitamins" on a beverage signaled the absence of synthetic vitamins, where any ambiguity was "clarified by the detailed information contained in the ingredient list, which explain[ed] the exact contents." 2012 WL 1893818, at *5.[6] It cannot be that a label using the phrase "Natural Fruit Bites

---

[6] *See also, e.g., Kennard*, 2022 WL 4241659, at *4–5 (dismissing claim that "VEGGIE" means "made primarily from vegetables" in part because "any ambiguity is dispelled by the packaging," including "the ingredient list"); *Martinez*, 2022 WL 15053334, at *6 (dismissing claim that "milk-based" means that milk is the primary ingredient because "[c]onsumers could easily turn the bottle around to read the ingredient label, whereupon they would see that milk *is* an ingredient, even though it is not the first ingredient listed"); *Puri v. Costco Wholesale Corp*., No. 5:21-CV-01202-EJD, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) ("The representations … would not deceive a reasonable consumer, who can always consult the ingredients list for 'more

Multivitamin" misleads consumers to believe that the vitamins are synthetics-free, while one using the phrase "*all* natural *with* vitamins" does not.

In contending that the rest of the Fruit Bites' label "fails to neutralize" any confusion about the term "natural," plaintiff succeeds only in reinforcing how extreme his own position is. Plaintiff would require food and dietary-supplement manufacturers who use the word "natural" on the front of a label to "describe" on the back "how [the product's] ingredients were created" and to state expressly which of the ingredients are synthetic and which are natural. Opp. 20. That is preposterous, especially in light of FDA's policy (which plaintiff nowhere acknowledges) that a product is "misbranded" if its label so much as "suggests" or "implies" that a "natural vitamin in food is superior to an added or synthetic vitamin," Mem. 9 (quoting 21 C.F.R. § 101.9(k)(4)).

In the end, plaintiff himself implicitly recognizes that the Fruit Bites' ingredient list and supplement facts inform consumers that the multivitamins contain synthetic ingredients, and thus resolve any ambiguity about the meaning of "natural." The opposition emphasizes that the back of the label displays an "enumeration of long scientific and chemical names." Opp. 20. That is exactly right, and the supplement facts also explicitly disclose that those complex chemicals are common synthetic forms of the vitamins—for example, Vitamin D (*as* cholecalciferol). Opp. 14. It does not take "an advanced understanding of chemistry" to grasp that those "inscrutabl[y]" named chemicals, *id.* at 20, are not ingredients that grow in fields or forests, or that otherwise occur in nature. The context thus defeats plaintiff's claim that the term "natural" on the Fruit Bites' label is deceptive, and the Court should dismiss.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint in its entirety for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

---

detailed information about the product that confirms other representations on the packaging.' (quoting *Williams*, 552 F.3d at 939)).

Dated: December 16, 2022

Respectfully submitted,

*/s/ Amy P. Lally*
Amy P. Lally (SBN 198555)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Tel: (310) 595-9500
Fax: (310) 595-9501
Email: alally@sidley.com

Jonathan F. Cohn* (NY 2972578)
Joshua J. Fougere* (NY 4805214)
Madeleine Joseph* † (MA 703541)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
Email: jfcohn@sidley.com
jfougere@sidley.com
mjoseph@sidley.com

Michelle Ramirez* (IL 6301170)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
Email: michelle.ramirez@sidley.com

*Attorneys for Defendant Bayer Corporation*

* Admitted *pro hac vice*.
† Admitted only in Massachusetts; supervised by principals of the firm who are members in good standing of the D.C. Bar.