# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDISON CORPUZ, *individually and on behalf of all others similarly situated*,<br><br>                            Plaintiff,<br>v.<br>BAYER CORPORATION,<br>                            Defendant. | Case No. 22-cv-1085-MMA (JLB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 22] |

      On July 25, 2022, Edison Corpuz ("Plaintiff"), on behalf of himself and all others similarly situated, filed a putative class action complaint against Defendant Bayer Corporation ("Defendant"). Doc. No. 1 ("Compl."). On October 5, 2022, Defendant filed a motion to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 22. Plaintiff filed an opposition, Doc. No. 23, to which Defendant replied, Doc. No. 24. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 25. For the reasons set forth below, the Court **DENIES** Defendant's motion to dismiss.

# I. B<span style="font-variant:small-caps">ackground</span>[1]

Defendant sells the popular "One A Day" ("OAD") line of multivitamins. Compl. ¶¶ 1, 12. Plaintiff purchased Defendant's OAD Natural Fruit Bites Multivitamin products[2] (the "Products") in July 2019 from retail outlets in San Diego, California. *Id.* ¶¶ 8, 34. Plaintiff alleges Defendant's "advertising and marketing campaign is false, deceptive, and misleading" because it holds its Products out as "natural" even though they "contain non-natural, synthetic ingredients." *Id.* ¶¶ 1–2. Plaintiff bought Defendant's Products because he believed they were natural based on the Products' packaging, which displays the word "natural" on the front labels. *Id.* ¶¶ 9, 15. However, the ingredient list on the back of the Products included cholecalciferol, niacinamide, pyridoxine hydrochloride, D-biotin, and potassium iodide. *Id.* ¶ 16. Plaintiff alleges that these are "synthetic" ingredients because they are "formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from natural[] . . . sources." *See id.* ¶¶ 9, 16. Plaintiff further alleges that "[c]onsumers would not know the true nature of the ingredients merely by reading the ingredients label" because "the ingredient list does not disclose the manufacturing process for each ingredient." *Id.* ¶ 20. If Defendant's Products did not contain the phrase "natural" on the labels, Defendant would not have paid the same price and "would not have been willing to purchase the Products." *Id.* ¶ 9. Although Plaintiff alleges he would not buy Defendant's Products again if they contain "synthetic" ingredients, he would like to buy them in the future if they were truly "natural" as advertised. *Id.*

Based on the foregoing, Plaintiff brings this putative class action on behalf of himself and other members of a proposed class defined as "[a]ll consumers within the

---

[1] Reviewing Defendant's motion to dismiss, the Court accepts as true all facts alleged in the complaint and construes them in the light most favorable to Plaintiff. *See Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

[2] Plaintiff alleges that Defendant's Products include "four varieties: Men's, Women's, Men's 50+, and Women's 50+." *Id.* ¶ 1 n.1.

State of California who purchased the Products from July 25, 2019 through the date of entry of class certification for their personal use, rather than for resale or distribution." *Id.* ¶ 34. In his sole cause of action, Plaintiff alleges Defendant violated California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*. *Id.* ¶¶ 37–53.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly—Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), superseded by statute on other grounds).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), cert. denied, 502 U.S. 921 (1991)).

### III. REQUEST FOR JUDICIAL NOTICE

As an initial matter, Defendant asks the Court to take judicial notice of Exhibits A through K in support of its motion to dismiss. *See* Doc. Nos. 22-2, 22-3. The exhibits include the following: two articles containing general information about multivitamins and their manufacturing process (Exhibits A and B); information and documents found on the websites of the Department of Health and Human Services ("DHHS"), the Food and Drug Administration ("FDA"), and the U.S. Department of Agriculture ("USDA")

(Exhibits C through F, I, and J); an image of the supplement facts from one of the Products (Exhibit K); and images of the labels from two other multivitamin brands (Exhibits G and H).  *See* Doc. No. 22-3.

   While the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted).  Furthermore, courts may take judicial notice of publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) (citing *Premier Growth Fund v. All. Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)); *see also Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) ("The Court also grants Defendants' request [for judicial notice] as to Exhibits 31 through 47, Yahoo! Press releases, news articles, analyst reports, and third party press releases to which the SAC refers, but not for the truth of their contents").

   Here, Plaintiff only objects to Exhibits A and B.  Doc. No. 23 at 21–22.[3]  Plaintiff argues that judicial notice of these exhibits is inappropriate because Defendant uses them "to inject facts into the record that are not properly before the Court." *Id.* at 21.  Defendant responds that all of its exhibits are judicially noticeable as public records.  *See* Doc. No. 24 at 5 n.2.

   As to the undisputed exhibits, courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging.  *See, e.g.*, *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1100 (N.D. Cal. 2012) ("The

---

[3] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Court takes judicial notice of the packaging of Fruit Roll–Ups and Fruit by the Foot, examples of which were filed with the Court by General Mills."); *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106, at *2 (S.D. Cal. Apr. 16, 2012) (taking notice of reproductions of the panels of two boxes of Sugar in the Raw). Accordingly, the Court **GRANTS** Defendant's request for judicial notice as to Exhibits G, H, and K, which feature product labels. In addition, judicial notice of information available online is appropriate if "it was made publicly available by [a] government entit[y] . . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein." *Daniels-Hall*, 629 F.3d at 998–99. Plaintiff does not dispute the accuracy or the authenticity of the information and documents Defendant provides from the FDA, USDA, and DHHS. Therefore, the Court also **GRANTS** Defendant's request for judicial notice as to Exhibits C through F, I, and J.

As to the disputed exhibits, which Defendant references in its motion to dismiss for the propositions that "[a] synthetics-free multivitamin pill 'would be the size of a golf ball'" and "[e]ven those supplements that claim to have 'natural' ingredients contain some synthetic ingredients," Doc. No. 22-1 at 8, the Court finds that it need not determine if judicial notice is appropriate as they do not bear on the Court's analysis below. As such, the Court **DENIES** Defendant's request for judicial notice as to Exhibits A and B.

## IV. D<small>ISCUSSION</small>

California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. In order to state a claim under the CLRA, a plaintiff must allege facts demonstrating that a "reasonable consumer" would likely be deceived. *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). "Likely to deceive" requires "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Instead, a plaintiff must demonstrate that the advertising is "such that it is probable that a significant portion of

the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* A plaintiff's own "unreasonable assumptions" about a product's label or desire to take the label out of "its proper context" will not suffice. *Becerra v. Dr. Pepper/Seven Up., Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019); *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (affirming "general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used"). However, whether advertising is deceptive is generally a fact intensive inquiry inappropriate for decision on a motion to dismiss. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)) (holding it is a "rare situation" in which dismissal of a false advertising claim is appropriate at the 12(b)(6) stage).

Here, Plaintiff alleges that Defendant's use of the phrase "natural" on the front labels of its Products leads reasonable consumers to believe that the Products will not contain "non-natural, synthetic ingredients." Compl. ¶¶ 2, 9. Plaintiff goes on to state that the Products are "not natural" because they contain ingredients such as niacinamide and D-biotin, which are manufactured by complex chemical processes. *See id.* ¶¶ 16, 18, 32. Therefore, Plaintiff argues these "synthetic" ingredients render Defendant's "natural" labeling false and misleading. *Id.* ¶¶ 21, 23, 26–33. Defendant, on the other hand, argues that "[r]easonable consumers would *not* expect the bite-sized, chewy, obviously manufactured [OAD] product . . . to have been created solely by nature, without the use of some chemical process," Plaintiff's definition of "natural" is "extreme" and implausible, and that "even if Plaintiff could plausibly allege that the word 'natural' is ambiguous in isolation, the rest of the bottle easily dispels any confusion." Doc. No. 22-1 at 7 (emphasis in original).

Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer would understand similar labeling involving "natural" to mean that a product does not contain any non-natural ingredients. *See Madenlian v. Flax USA Inc.*, No.

SACV 13-01748 JVS, 2014 WL 7723578, at *3 (C.D. Cal. Mar. 31, 2014) (collecting cases). However, Defendant relies on *Moore*, a recent Ninth Circuit case, to support its claim that reasonable consumers would not be misled by the word "natural" on the front label of its Products. Doc. No. 22-1 at 11–12. In *Moore*, the court found that Trader Joe's use of the term "100% New Zealand Manuka Honey" to market Manuka honey that was not "100% derived from a single, floral source" was not deceptive because (1) reasonable consumers know that bees are "foraging" creatures and that "it is impossible to produce honey that is derived exclusively from a single floral source[,]" (2) the price was relatively low, and (3) the "10+" on the label indicated something about the product and would lead consumers to investigate the product's purity. 4 F.4th at 882–86. The Court finds *Moore* distinguishable because there are not similar "contextual" clues on Defendant's Products' labels that would alert consumers to the possibility that the Products may be unnatural due to synthetic ingredients. Moreover, the court in *Moore* relied on the FDA's Honey Guidelines in determining that Trader Joe's label stating "100% New Zealand Manuka Honey" was accurate, and therefore, not deceptive. *See* 4 F.4th at 881. Here, Defendant concedes that the FDA "has not promulgated regulations formally defining the term 'natural,'" *see* Doc. No. 22-1 at 9, which "merely demonstrates that the extent to which a particular use of the phrase 'natural' deceives consumers is a fact-intensive determination that depends upon the specific circumstances of each individual case." *Madenlian*, 2014 WL 7723578, at *4.

The Court is also not persuaded by Defendant's reliance on *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013). *See* Doc. No. 22-1 at 11, 13–14. In *Pelayo*, the district court rejected several definitions of "natural" offered by plaintiffs in part based on a report by the Federal Trade Commission ("FTC") that "declined to adopt a definition of 'natural'" because the word "may be used in numerous contexts and may convey different meanings depending on that context." 989 F. Supp. 2d at 979. The court's reasoning in *Pelayo* has been heavily criticized by other courts. *See, e.g.*, *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1384–85 (S.D. Fla. 2014) (noting that "no subsequent

case has adopted *Pelayo*'s position" and declining to do so); *Surzyn v. Diamond Foods, Inc.*, No. C 14-0136 SBA, 2014 WL 2212216, at *3 (N.D. Cal. May 28, 2014) (stating the FTC's analysis, "rather than justifying the *Pelayo* court's dismissal . . . support[s] the conclusion that the question . . . must be resolved based on consideration of evidence—and not at the pleading stage"); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013) (stating the *Pelayo* holding "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit"). The Court agrees and declines to adopt the reasoning in *Pelayo*.

Defendant further argues Plaintiff's citation to the USDA definitions of "synthetic" and "natural" are "irrelevant" because the definitions apply to the USDA's program "regulating '*organic*' 'agricultural' products like 'livestock'" and that its Products are not advertised as "organic" nor are they agricultural products. Doc. No. 22-1 at 13 (emphasis in original). However, Plaintiff looks to the USDA only for guidance as to what reasonable consumers would consider natural, Compl. ¶¶ 17–18, and alleges that a reasonable consumer would consider products labeled "natural" to be free of "synthetic ingredients." *Id.* ¶ 9. Furthermore, Plaintiff needs not allege that "every consumer shares the same definition of 'natural,'" only that "a reasonable consumer—regardless of the precise definition of natural to which that consumer adheres—could . . . be misled" by the use of "natural" on Defendant's labels. *Garrison v. Whole Foods Market Grp., Inc.*, No. 13-cv-05222-VC, 2014 WL 2451290, at *2 (N.D. Cal. June 2, 2014).

Finally, Defendant cannot, as a matter of law, demonstrate that the ingredient list on the back packaging of the relevant Products defeats Plaintiff's claims. *See* Doc. No. 22-1 at 14–17. The Ninth Circuit generally prohibits the use of ingredient lists as a "shield for liability" in deceptive advertising cases. *Williams*, 552 F.3d at 939. However, where there has been "no deceptive act to be dispelled," ingredient lists may be considered in determining whether a reasonable consumer would be misled by a product's packaging. *Ebner*, 838 F.3d at 966. Here, the Ninth Circuit's general

prohibition on using an ingredient list to correct a misleading claim applies because Plaintiff sufficiently alleges that the Products' labels are deceptive rather than "ambiguous." *See* Compl. ¶¶ 17–33.  Therefore, although it is certainly possible that looking to the ingredient list on the back of a multivitamin bottle sufficiently explains (or disclaims) the word "natural" to a reasonable consumer, this is an issue that should ultimately be decided by the factfinder.  The mere presence of such additional information is not enough to dismiss Plaintiff's claims as a matter of law.  *See Williams*, 552 F.3d at 939 (stating that manufacturers cannot "mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception").

Accordingly, the Court finds that Plaintiff alleges with sufficient plausibility that a reasonable consumer is likely to be deceived by the term "natural," and **DENIES** the motion to dismiss on these grounds.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED**.

Dated:  February 28, 2023

HON. MICHAEL M. ANELLO
United States District Judge