**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Charles D. Moore (admitted *pro hac vice*)
*cmoore@reesellp.com*
121 N. Washington Ave., 4th Floor
Minneapolis, Minnesota 55401
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO DIVISION**

| | |
|---|---|
| EDISON CORPUZ, DENIECE DRAKE, DEBORAH BOWLING, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER CORPORATION,<br><br>Defendant. | Case No. 3:22-cv-01085-MMA-JLB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAYER CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: Under Submission<br>Time: Under Submission<br>Place: Courtroom 3D<br>Judge: Honorable Michael M. Anello |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 4

LEGAL STANDARD .......... 6

ARGUMENT .......... 7

I. *McGinity* is readily distinguishable from the case at bar .......... 7

A. *McGinity* was a decision on the facts, so the law remains undisturbed. .......... 7

B. *McGinity* addressed the phrase "Nature Fusion," not "natural," and the two are different phrases. .......... 8

C. *McGinitiy* relied on a survey to help establish the phrase "Nature Fusion" was ambiguous. .......... 11

D. *McGinity* relied on additional statements to determine the label was not misleading, but no such statements are present here. .......... 12

1. The words "fruit bites" and apple do not modify the word "natural." .......... 13

2. The ingredient list does not clarify which ingredients are synthetic. .......... 15

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adler v. Altstep, LLC*,
2023 WL 3080757 (C.D. Cal. Feb. 7, 2023) ........ 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Balser v. Hain Celestial Group, Inc.*,
640 F.App.'x 694 (9th Cir. 2016) ........ 10, 11, 16

*Barton v. Pret A Manager (USA) Ltd*,
535 F.Supp.3d 225 (S.D.N.Y. 2021) ........ 9, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Brady,*
26 Cal.App.5th 1156 (Cal. Ct. App. 2018) ........ 11, 16, 17, 18

*Briseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ........ 14

*Brown v. Hain Celestial Group, Inc.*,
913 F.Supp.2d 881 (N.D. Cal. 2012) ........ 17

*Bruno*,
2022 WL 17224716 (C.D. Cal. Aug. 25, 2022) ........ 8, 9

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........ 7

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*,
23 F.4th 1195 (9th Cir. 2022) ........ 6, 7

*Foman v. Davis*,
371 U.S. 178 (1962) ........ 19

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........ 3

*Gregorio v. Clorox Co.*,
2018 WL 732673 (N.D. Cal. Feb. 6, 2018) .......... 3

*In re GNC Corp.*,
789 F.3d 505 (4th Cir. 2015) .......... 12

*Janney*, *Janney v Mills*,,
944 F.Supp.2d 806 (N.D. Cal. 2013) .......... 11, 14

*Jou v. Kimberly-Clark Corp.*,
2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .......... 3, 10

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir.2009) .......... 10

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020) .......... 7, 15

*Madenlain v. Flax USA Inc.*,
2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) .......... 2, 4

*McGinity v. Procter & Gamble Co*,
2021 WL 3886048 (N.D. Cal. Aug. 31, 2021) .......... 8

*McGinity v. Procter & Gamble*,
69 F.4th 1093 (9th Cir. 2023) .......... passim

*Michael v. Honest Co.*,
2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) .......... 17

*Moore v. EO Products*,
2023 WL 6391480 (N.D. Cal. Sept. 29, 2023) .......... 16

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) .......... 2, 9

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) .......... 6

*Paulino v. Conopco, Inc.*,
2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .......... 3, 9

*Pecanha v. The Hain Celestial Grp., Inc.*,
2018 WL 534299 (N.D. Cal. Jan. 24, 2018) .......... 3, 17

*POM Wonderful LLC v. Purely Juice, Inc.*,
2008 WL 4222045 (C.D. Cal. July 17, 2008) .......... 12

*Przybylakv. Bissell Better Life LLC*,
2019 WL 8060076 (C.D. Cal. July 19, 2019) .......... 16

*Roper v. Big Heart Pet Brands, Inc.*,
510 F. Supp. 3d 903 (E.D. Cal. 2020) .......... 3

*Souter v. Edgewell Personal Care Co.*,
2023 WL 5011747 (9th Cir. Aug. 7, 2023) .......... 7, 15, 16

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 7

*Takano v. Procter & Gamble Co.*,
2018 WL 5304817 (E.D. Cal. Oct. 24, 2018) .......... 9

*VBS Dist., Inc. v. Nutrivita Lab. Inc.*,
2017 WL 2404919 (C.D. Cal. Jan. 19, 2017) .......... 14

*Williams v. Gerbers Products. Co.*,
552 F.3d 934 (9th Cir. 2008) .......... 7, 14, 15

**STATUTES**

7 U.S.C. § 6502 .......... 6
California Civil Code § 1750 .......... 1
New York's General Business Law §§ 349 and 350 .......... 1

**RULES**

Federal Rule of Civil Procedure 9 .......... 10
Federal Rule of Civil Procedure 12 .......... 6, 7, 10
Federal Rule of Civil Procedure 15 .......... 19

Plaintiffs Edison Corpuz, Deniece Drake, and Deborah Bowling (collectively "Plaintiffs") respectfully submit this memorandum of points and authorities in opposition to the motion to dismiss Plaintiffs' First Amended Class Action Complaint filed by Defendant Bayer Corporation ("Defendant" or "Bayer"). *See* Notice Mot. & Mot. Dismiss, ECF No. 70; Mem. P. & A. Supp. Def.'s Mot. Dismiss Compl., ECF No. 70-1 ("Second Motion").

For the reasons below, Bayer's motion is meritless, and the Court should deny it in its entirety.

## INTRODUCTION

Plaintiffs bring a simple claim based on what they believed was simply a "Natural" product: Bayer exploits consumers' preference for natural multivitamins over multivitamins that are filled with synthetic and highly processed ingredients by prominently and uniformly describing its One a Day Natural Fruit Bite Multivitamins[1] as "Natural." "Natural" products are indeed what resonates with consumers today, and "Natural" is one of the most salient words on Bayer's packaging. By representing the Fruit Bites as "Natural," Bayer can and does charge a price premium for them. Unfortunately for consumers, the Fruit Bites are not natural as labeled. Instead, the Products contain numerous synthetic ingredients. Thus, Bayer's description of the Fruit Bites as "Natural" is likely to deceive a reasonable consumer, and its deceptive labels violate California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA"), and New York's General Business Law §§ 349 and 350.

This is the second time Defendant has moved to dismiss these claims. Despite losing the previous motion, Defendant presents the same arguments today that it made in its initial motion, namely, that no reasonable consumer could be confused

[1] The "Fruit Bites" and the "Products" are the One a Day Natural Fruit Bite Multivitamin varieties identified in the Complaint. Compl. ¶¶ 1, 1 n.1, ECF No. 1.

by its inclusion of the word "natural" on the front label of its product. *Compare* Second Motion at 5-9 *with* Memorandum (ECF No. 22-1) ("First Motion") at 10-17. For example, Defendant argues now, just as it did then, that "[t]he word 'natural' appears immediately above 'fruit,' and the labels display a large image of an apple still on the vine indicating that the product contains natural fruit (a fact Plaintiffs do not dispute)." Second Motion at 6; *see* First Motion at 7 ("Bayer's One a Day 'Natural Fruit Bites' contains natural fruit, just like the label says.").

Similarly, it argues now, just as it did then, that the back label clarifies any confusion. *Compare* Second Motion at 7 ("As in *McGinity*, the back panel prominently displays the natural ingredients—here, apple puree and apple juice concentrate") *with* First Motion at 17 ("There, prominently displayed, are the natural fruit ingredients—apple and apple juice concentrate (which constitute over 99% of the ingredients by weight").

Despite these arguments, the Court rightfully denied the First Motion. *See* Order Denying Defendant's Motion to Dismiss ("Order") (ECF No. 26). The Court correctly observed that "[n]umerous courts in the Ninth Circuit have found it plausible that a reasonable consumer would understand similar labeling involving 'natural' to mean that a product does not contain any non-natural ingredients." Order at 7-8 (citing *Madenlain v. Flax USA Inc.*, 2014 WL 7723578, at *3 (C.D. Cal. Mar. 31, 2014) (gathering cases)). In so doing, the Court joined with a long and distinguished list of cases.[2]

---

[2] *See also Adler v. Altstep, LLC*, 2023 WL 3080757, at *6 (C.D. Cal. Feb. 7, 2023) (" It is plausible that a reasonable consumer would not expect a "natural" sleep aid product to contain as many synthetic ingredients as Adler alleges the Products contain"); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 WL 3524047, at *8 (N.D. Cal. Aug. 6, 2021) ("Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' statements, including '100% natural,' 'natural,' and 'naturally-sourced,' to mean that a product does not contain any non-

The Court also correctly distinguished the holding in *Moore v. Trader Joe's Co.*, F.4th 874, 882 (9th Cir. 2021), stating, "[t]he Court finds *Moore* distinguishable because there are not similar 'contextual' clues on Defendant's Products' labels that would alert consumers to the possibility that the Products may be unnatural due to synthetic ingredients." Order at 8. The Court also distinguished *Moore* on the basis that the FDA "has not promulgated regulation formally defining the term "natural,""

---

natural ingredients."); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 914 (E.D. Cal. 2020) ("[T]he court finds plaintiff's claim that a reasonable consumer would find the label 'natural' to be misleading, even with the qualifying language 'with added vitamins, minerals & nutrients,' to be plausible."); *Gregorio v. Clorox Co.*, No. 17-cv-03824-PJH, 2018 WL 732673, at *1, *4 (N.D. Cal. Feb. 6, 2018) (holding that the words "naturally derived" on labeling of multi-surface cleaners, toilet bowl cleaners, and cleaning wipes were plausibly deceptive where products contained synthetic ingredients); *Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-cv-04517-EMC, 2018 WL 534299, at *1, *3 (N.D. Cal. Jan. 24, 2018) (holding that complaint plausibly alleged the terms "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959" on deodorant products were likely to deceive a reasonable consumer where the products "actually use synthetic ingredients—namely, tocopheryl acetate, glycerin, and ethylhexylglycerin"). *Paulino v. Conopco, Inc.*, No. 14-cv-05145-JG-RML, 2015 WL 4895234, at *1, *4–6, *7 (E.D.N.Y. Aug. 17, 2015) (denying motion to dismiss CLRA claim because fact questions existed as to whether the term "Naturals" and accompanying natural imagery on the defendant's "Suave Naturals" brand shampoos, conditioners, and other personal care products were likely to mislead a reasonable consumer, when the products contained synthetic ingredients); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (question of fact sufficient to survive motion to dismiss existed as to whether the term "Active Naturals" on personal care products was likely to mislead a reasonable consumer, when the products contained synthetic ingredients); *Jou v. Kimberly-Clark Corp.*, No. 13-cv- 03075-JSC, 2013 WL 6491158, at *1, *5–10 (N.D. Cal. Dec. 10, 2013) (denying motion to dismiss claims under CLRA that the defendant misrepresented its "Huggies" brand "pure & natural" diapers and "Natural Care" wipes as natural due to the presence of synthetic ingredients in the products, because "[t]he Court [was] not persuaded that, as a matter of law, no reasonable consumer could be deceived by the packaging of Defendant's diapers and wipes").

[citation omitted] which 'merely demonstrates that the extent to which a particular use of the phrase "natural" deceive consumers is a fact-intensive determination that depends upon the specific circumstances of each individual case.'" *Id.* (quoting *Madenlian*, 2014 WL 7723578, at *4).

Since the Court's correct ruling, there have been no intervening changes to the label or formulation, thus the fact pattern remains the same. Nor have there been any intervening FDA regulations. Nor any intervening change by the California legislature or California Supreme Court that would change the correctness of the Court's previous decision. The only intervening change is a decision by the Ninth Circuit affirming the dismissal of a separate fact pattern.

In moving to dismiss, Defendant contends that the Ninth Circuit decision in *McGinity v. Procter & Gamble*, 69 F.4th 1093 (9th Cir. 2023) is so dispositive of the current case that the Court should reverse its previous—and correct—ruling. But as discussed below, *McGinity* is readily distinguishable and does not yield a different result.

## **FACTUAL BACKGROUND**

The Complaint is brimming with facts about the Fruit Bites, including their labeling, ingredients, and consumer reaction to it. Below is a synopsis of Plaintiffs' key allegations.

Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in, among other things, food products. As a result, they have increasingly purchased products that are promoted as "Natural." Compl. ¶ 20. In 2015, sales of natural products grew 9.5% to $180 billion. *Id.*; *see also id.* at ¶ 20 n.2.

To capitalize on consumers' desire for "Natural" products, Bayer prominently and conspicuously labels the Fruit Bites as "Natural" on the front of their packaging near the center, using bold, capitalized font. Images of the front labels of the Fruit Bites are below.




*Id.* at ¶ 21.

Unfortunately for consumers, the Fruit Bites are not "Natural" as advertised. *See* Compl. ¶ 22. Instead, they contain multiple synthetic ingredients, including the following synthetic substances: *Id.*

- Cholecalciferol (9,10-seco(5Z,7E,)-5,7,10(19)-cholestatrien-3-ol);
- Niacinamide (3-pyridinecarboxylic acid amide);
- Pyridoxine hydrochloride (3-hydroxy-4,5-dihydroxymethy-2-methylpyridine hydrochloride);
- D-biotin; and

- Potassium iodide.

The Complaint supplies substantial factual details regarding the manufacturing processes used to synthesize these ingredients, including citations to sources such as PubChem. *Id.* To furnish additional factual support for their allegations that these ingredients are synthetic and that Bayer's "Natural" claim is deceptive, Plaintiffs cite the USDA Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic, Compl. ¶ 24, and the definition of "synthetic" set forth in 7 U.S.C. § 6502, Compl. ¶ 25.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, enough facts to "raise a right to relief above the speculative level," *id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The plausibility standard is not akin to a 'probability requirement' . . . ." *Iqbal*, 556 U.S. at 678. To the contrary, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

In evaluating a Rule 12(b)(6) motion, the court is required to "accept[] as true all well-pleaded allegations of material fact and constru[e] those facts in the light most favorable to the non-moving party." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022); *accord Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) ("*Mars Petcare US, Inc.*"). Dismissal is appropriate "only if it appears beyond doubt that [the] plaintiff can prove no set of facts in support of its claims which would entitle it to relief." *Ernst & Haas Mgmt. Co., Inc.*, 23 F.4th at 1199. "It is axiomatic that the motion to dismiss . . . is viewed

with disfavor and is rarely granted." *Id.* The pleading "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

"At the motion to dismiss stage, it [is] improper for the district court to select between competing plausible interpretation of an ambiguous term." *Souter v. Edgewell Personal Care Co.*, 2023 WL 5011747, at *3 (9th Cir. Aug. 7, 2023); *see Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ("[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion"). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Starr*, 652 F.3d at 1216.

## ARGUMENT

### I. *MCGINITY* IS READILY DISTINGUISHABLE FROM THE CASE AT BAR

To convince the Court to overturn its previous decision, Defendant relies entirely on the Ninth Circuit's recent decision in *McGinity v. Procter & Gamble*. But *McGinity* is readily distinguishable on several vital points.

#### A. McGinity was a decision on the facts, so the law remains undisturbed.

*McGinity* did not change any law. Instead, it merely assessed the facts presented to the district court based on current law. *See McGinity*, 69 F.4th at 1097 It relied on *Williams v. Gerbers Products. Co.*, 552 F.3d 934 (9th Cir. 2008) and *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) in establishing the reasonable consumer standard; both predating the Court's previous decision by several years.

*McGinity* also relied heavily on *Moore v. Trader Joe's Co. Id.* But in its previous decision, the Court distinguished *Trader Joe's* on the facts of the case. *See* Order at 8. As such, *McGinity* does not change the legal framework under which these decisions are made, including the Court's previous Order. That Order still rests on good law and sound reasoning; thus, the same result should lie.

**B. McGinity addressed the phrase "Nature Fusion," not "natural," and the two are different phrases.**

The phrase at issue in *McGinity* was "Nature Fusion," not "natural." *See McGinity*, 69 F.4th at 1095-96. In its motion, Defendant attempts to conflate the words "nature" and "natural," claiming—incorrectly—that *McGinity* "drew a clear distinction between products that use the terms 'nature' or 'natural' and products that claim to be '100% natural' or 'all natural.'" Second Motion at 8. But this is not true. *McGinity* did not discuss the word "natural" in this quoted context; instead, its discussion was limited to the phrase "Nature Fusion." *See id* at 1097.

In fact, the *McGinity* District Court went out of its way to distinguish the two phrases, stating:

> Moreover, P&G's lack of use of the word "Natural" in its labeling and packaging is significant. Plaintiff relies on a handful of cases finding that other defendants' use of the word "Natural" in labeling actionable under various consumer protection statutes. In citing those cases, plaintiff asks the Court to consider plaintiff's use of the word "Nature" as synonymous with the word "Natural." The facts of those cases are different and therefore do not persuade the Court that an extension in this case is appropriate.

*McGinity v. Procter & Gamble Co*, 2021 WL 3886048, at *3 (N.D. Cal. Aug. 31, 2021) ("*McGinity* District Court Decision").

The *McGinity* District Court is not alone in recognizing this difference. In *Bruno v. Burt's Bees, Inc.*, the defendant pointed to the *McGinity* district court decision to claim its "100% Natural" statement was ambiguous. *See Bruno*, 2022 WL 17224716, at *4 (C.D. Cal. Aug. 25, 2022). But the *Bruno* court rejected this, noting "[t]he Northern District Court in *McGinty* rested its finding in large part on the ambiguity of the word 'fusion,'" and "because of this ambiguity, the Court found reasonable consumers would not assume the total absence of synthetic ingredients and would instead look to the ingredient list." *Id.* In rejecting the comparison, the court held, "Defendants have not convincingly stated that '100% Natural" is

similarly ambiguous.'" *Id.*

But the critical difference between "Nature Fusion" and "natural" does not end there. In attempting to conflate the terms, Defendant leans on the Ninth Circuit's statement that:

> Unlike a label declaring that a product is "100% natural" or "all natural," the ***"Nature Fusion"*** label does not promise that the product is wholly natural. Although the front label represents that something about the product bears a relationship to nature, the front label does not make any affirmative promise about what proportion of the ingredients are natural. Instead, as the parties point out, ***"Nature Fusion"*** could mean any number of things: that the products are made with a mixture of natural or synthetic ingredients, that the products are made of a mixture of different natural ingredients or something else entirely.

*McGinity*, 69 F.4th at 1098 (emphasis added).

Defendant analogizes to this statement to claim, "[t]he label nowhere declares that the *entire 'product* is "100% natural" or "all natural."'" *See* Second Motion at 6 (emphasis in original). But Defendant ignores the fact that the statement is made about "Nature Fusion," not the phrase "natural." Defendant fails to explain why the two are the same, but as the *McGinty* District Court pointed out, they are not.

Defendant's conflation of the terms is significant, as "[n]umerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' statements, including '100% natural,' 'natural,' and 'naturally-sourced,' to mean that a product does not contain any non-natural ingredients." *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2021 WL 3524047, at *8.[3]

[3] *See also Barton v. Pret A Manager (USA) Ltd*, 535 F.Supp.3d 225, 243 (S.D.N.Y. 2021) ("the fact that Defendant's products were not labeled as "all natural" or "100% natural" does not preclude a reasonable juror from concluding that the product is composed of non-synthetic products"); *Takano v. Procter & Gamble Co.*, 2018 WL 5304817, at *6 (E.D. Cal. Oct. 24, 2018) (rejecting argument that "natural" does not mean "all natural" or "100% natural"); *Paulino*, 2015 WL 4895234, at *5 ("That the

Rather than *McGinity,* which addressed the phrase "Nature Fusion," the more appropriate Ninth Circuit decision is *Balser v. Hain Celestial Group, Inc.,* which addressed the use of the word "natural." In *Balser*, consumers brought a class action for using the word "natural" on personal care products containing synthetic ingredients. *See Balser v. Hain Celestial Group, Inc.*, 640 F.App.'x 694, 696 (9th Cir. 2016). The Ninth Circuit stated in relevant part:

> Plaintiffs pleaded their claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). First, Plaintiffs adequately alleged "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir.2009) (citation omitted). They provided a definition of "natural," and explained that "natural" means free of synthetic ingredients. Plaintiffs also alleged Hain used the phrase "100% Vegetarian" on the back of the products' packaging, which, the complaint avers, means products derived from plants. These allegations are sufficient plausibly to allege a reasonable consumer's understanding of "natural" as used on Hain's packaging, and so are adequate under California law.

*Id.* at 695-96.

The same holds true here where Plaintiffs provide a nearly identical definition of the term "natural" (i.e. that they do not contain synthetic ingredients). Per *Balser*, this definition is sufficient to survive a motion to dismiss.

---

label makes no explicit claim of being 'All Natural,' '100% natural,' or 'free from synthetics' is beside the point. A reasonable juror could reach the conclusion that the label 'Naturals' means that the product is at least mostly comprised of natural ingredients"); *Jou*, 2013 WL 649115, at *6 (Whether one labels a product 'natural' or 'all natural,' the same plausible inference can be drawn—that the product is natural, meaning it is not made with any non-natural ingredients. While the use of 'all' in 'all natural' may make the inference *even more* plausible than the inference arising from the use of just 'natural,' the use of 'natural' still provides the plausible inference required to defeat a Rule 12(b)(6) motion").

### C. *McGinitiy* relied on a survey to help establish the phrase "Nature Fusion" was ambiguous.

The *McGinity* decision rested, in part, on a consumer survey—presented as part of the complaint—that showed a 50/50 split on whether the phrase "Nature Fusion" meant either: a) the product contained a mixture of natural and non-natural ingredients; or b) contained all or substantially all natural ingredients. *See McGinity*, at 1097-98. The survey also showed that "nearly 70% of survey respondents said yes when asked whether the phrase meant that the products contain both natural *and* synthetic ingredients." *Id.* (emphasis in original). The *McGinity* Court found that this survey confirmed that "Nature Fusion" was ambiguous. *Id.*

By contrast, there is no similar survey showing consumer confusion on the term "natural." And numerous courts, including this Court in its previous Order, have said a reasonable consumer could adopt Plaintiffs' definition of the term "natural." *See* Order at 7; *see also Balser*, 640 F.App.'x at 696; *supra* fns. 2, 3.

This lack of ambiguity in the word "natural" finds additional support in California appellate precedent. In *Brady v. Bayer Corp.*, a consumer brought a class action against Defendant for its One-a-Day gummies for deceiving consumers into believing they could take one gummy instead of two based on the name of the product. *See Brady* 26 Cal.App.5th 1156, 1159-60 (Cal. Ct. App. 2018). The California Court of Appeals reversed the district court's demurrer. In so doing, it observed,

> But there is no protection for literal falseness. We note that even as plastic a term as "natural" could not excuse the uses of high fructose corn syrup, high maltose corn syrup or maltodextrin in five named granola bars in *Janney*, *supra*, 944 F.Supp.2d 806, 817-818 [denying 12(b)(6) motion with regard to plaintiffs' fraud claims based on those products].

*Id.* at 1167.

The *Brady* Court called out "natural"—despite containing non-natural

ingredients—as "literal falseness." Under that precedent, Defendant's statement on the label is "literally false" and therefore "necessarily misleading within the meaning of the statutes." *In re GNC Corp.*, 789 F.3d 505, 514 (4th Cir. 2015); *see POM Wonderful LLC v. Purely Juice, Inc.*, 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008) (under the Lanham Act, "[w]here, as in this case, an advertisement is demonstrated to be literally false, the Court does not need to inquire into whether consumers were deceived or misled").

**D. *McGinity* relied on additional statements to determine the label was not misleading, but no such statements are present here.**

*McGinity* did ***not*** find the phrase "Nature Fusion" to be non-deceptive as a matter of law. Rather, *McGinity* merely concluded that the phrase "Nature Fusion" was ambiguous, and therefore, the Court could look to the back label to clarify that phrase. *See McGinity* at 1097-98. Upon reviewing the statements on the back, the *McGinity* court held that a reasonable consumer could not be confused by the "Nature Fusion" statement into believing the product only contained natural ingredients. The Court noted that "[i]n addition to the ingredient lists, the back labels of the Nature Fusion shampoo and conditioner contain the phrases 'Smoothness Inspired by Nature' and 'NatureFusion Smoothing System with Avocado Oil.'" *Id.* at 1099. It then concluded that "[u]pon seeing the back labels, it would be clear to a reasonable consumer that avocado oil is the natural ingredient emphasized in P&G's labeling and marketing." *Id.*

The same cannot be said of the present label. As the Court noted in its first decision, "there are not similar 'contextual' clues on Defendant's Products' labels that would alert consumers to the possibility that the Products may be unnatural due to synthetic ingredients." *See* Order at 8. There is no statement similar to "Smoothness Inspired by Nature" and "NatureFusion Smoothing System with Avocado Oil" that could provide clarity to what Defendant meant by the word "natural" on the front label.

***1. The words "fruit bites" and apple do not modify the word "natural."***

Unlike *McGinity,* in which the "NatureFusion Smoothing System with Avocado Oil" drew a direct line between the "Nature Fusion" statement on the front and its limitation to just avocado on the back, *see McGinity* at 1099, there is no similar statement linking "natural" to apple puree concentrate or apple juice concentrate. *See* Def. Mot. Judicial Notice, ECF No. 70-3, Ex. F.

Defendant attempts to draw that line by claiming the word "natural" modifies the word "fruit," not the whole product. *See* Second Motion at 6. To achieve this, Defendant's brief continually refers to the at-issue phrase as "Natural Fruit Bites." *See e.g. id.* at 6-8. It also points to the apple and claims that these items, in conjunction, mean the reasonable consumer could *only* interpret the word "natural" to mean the products contain natural apples. *Id.* at 6.

But this framing does not accurately portray the language as it appears on the label.




*See e.g.* Am. Compl. ⁋ 21.

As seen above, the word "Natural" is a different font size and on a different line than the phrase "fruit bites." As written, it exists in a series of lines of descriptive statements about the products, including "natural," "fruit bites," "multivitamins," "men's," "dietary supplement," and "60 bites." The word "natural" can be read as naturally—forgive the pun—as an independent statement about the product compared to a statement conjoined with the surrounding words. This is particularly so, given Defendant's decision to separate the word "natural" from "fruit bites" by placing them on different lines and making them different font sizes.

Likewise, the picture of the apple could easily be seen as the product's flavor, not what the word "natural" is modifying. *C.f. Willaims*, 552 F.3d at 939 ("The product is called 'fruit juice snacks' and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product").

Further undermining Defendant's interpretation, in Exhibit F, there is a small window with the phrase "Good stuff you want. Free of stuff you don't." followed by circles with slashes over words such as "high fructose corn syrup," "synthetic colors," "gelatin," "artificial flavors or sweeteners," "gluten," and "GMOs." *See* ECF No. 70-3, Ex. F. Many of these items have been the subject of deceptive advertising actions for using the word "natural." *See e.g. Janney*, *Janney v. Mills*, 944 F.Supp.2d 806 (N.D. Cal. 2013) (litigation over "natural" and "high fructose corn syrup"); *Briseno v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021) (litigation over "100% natural" and GMOs); *VBS Dist., Inc. v. Nutrivita Lab. Inc.*, 2017 WL 2404919, at *1 (C.D. Cal. Jan. 19, 2017) (litigation over "100% natural herbal" and gelatin). If "natural" could *only* reasonably be interpreted to modify the word fruit, as Defendant claims, there would be no need to provide this graphic to consumers.

Critically, for the present motion, for Defendant's theory to hold, the Court *must* adopt its interpretation as the *only* interpretation reasonable consumers could take. But merely because Defendant's interpretation may be reasonable—which

remains to be seen—the Court cannot make this determination at this stage. *See Souter*, 2023 WL 5011747, at *3 ("At the motion to dismiss stage, it was improper for the district court to select between competing plausible interpretation of an ambiguous term"); *Lynch*, 952 F.3d at 75 ("[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion"). Instead, this is the realm of the survey experts presently working hard to say how reasonable consumers interpret this label.

But even if, *arguendo*, the Court were to adopt Defendant's interpretation that "natural" only modifies the subsequent phrase—something Plaintiffs contest for the reasons just stated—it still does not lead to the conclusion Defendant posits. That is because the phrase is "fruit bites," not just "fruit." As any parent can attest—to the dismay of children everywhere—"fruit bites" are not the same thing as fruit. *See Williams*, 552 F.3d at 939. For Defendant's interpretation to hold, the Court must separate the word "fruit" from "bites" and limit the word "natural" to just the former. This is a highly unnatural interpretation of the language, much less an interpretation the Court can say is the *only* reasonable interpretation as a matter of law.

### ***2. The ingredient list does not clarify which ingredients are synthetic.***

Nor does the presence of the ingredient list clarify the matter. As Plaintiff alleges in the Amended Complaint:

> Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label. This is because the ingredient list does not disclose the manufacturing process for each ingredient. As the citations in paragraph [22] make clear, it takes dedicated research of the scientific, manufacturing, and regulatory literature to ascertain the manufacturing process for each ingredient, and thereby ascertain whether the ingredient is a synthetic substance.

Am. Compl. ⁋ 26.

The Amended Complaint further alleges,

> Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that [of] the everyday knowledge of the average consumer. This is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients list, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

*Id.* ⁋ 27.

Finally, Plaintiffs allege,

> Defendant did not disclose that the above listed ingredients are synthetic ingredients. A reasonable consumer understands Defendant's natural claims to mean that the Products are natural and do not contain synthetic ingredients.

*Id.* ⁋ 29.

Thus, even though the ingredients were listed on the back, that does not mean that Plaintiffs or other reasonable consumers knew they were synthetic. *See Souter*, 2023 WL 5011747, at *2 (quoting *Brady*, 26 Cal.App.5th at 1174) ("The ordinary reasonable consumer has 'very little scientific background'"); *see also Balser*, 640 F.App.'x at 696 ("Moreover, *Williams* is clear that an ingredient list does not correct, as a matter of law, misrepresentations on the product's label. Rather, the likely impact of such a list on a reasonable consumer is a factual issue, not determinable on the pleadings"). [4]

---

[4] *See also Barton*, 535 F. Supp. 3d at 237 ("disclosures on the back of a package, such as an ingredient label, or a panel with other facts about the nutritional content of a product, do not necessarily render a plaintiff's allegations of deception implausible"); *Moore v. EO Products*, 2023 WL 6391480, at *6 (N.D. Cal. Sept. 29, 2023) ("Defendants' argument is insufficient "at this juncture of the proceedings because, as Plaintiffs point out, it is not readily apparent that the ingredient list would be helpful—*i.e.*, it is not clear that a reasonable consumer would be able to determine whether the ingredients on the ingredient list were" plant-based or not"); *Przybylak v. Bissell Better Life LLC*, 2019 WL 8060076, at *6 (C.D. Cal. July 19, 2019)

Again, the California Court of Appeals decision in *Brady* is instructive. In evaluating the front-back dichotomy, the *Brady* Court discussed favorably the decision in *Brown v. Hain Celestial Group, Inc.*, 913 F.Supp.2d 881 (N.D. Cal. 2012) in which the words "organic" appeared in the name of the cosmetic, as well as the tagline "pure, natural and organic." *Brady*, 26 Cal.App.5th at 1168. Despite this, the back label included a list of ingredients that were not predominately organic. *Id.* The *Brady* Court emphasized "a back label ingredients list that conflicted with, rather than confirming, a front label claim could not defeat an action." *Id.*

In applying this front-back dichotomy to Defendant's One-a-Day product, the *Brady* Court found:

> The front of the product makes no attempt to warn the consumer that a one-a-day jar of gummies is in fact full of two-a-day products. One must look at the back of the jar, in small print in the upper right hand corner, to receive the direction to "**Chew**: two gummies daily," making a "Serving Size" is indeed two gummies. And unlike the billboard, sunburst-backed brand name print, that information is printed in nano-type.
>
> Bayer tries to turn the "serving size" fine print on the back into a virtue by asserting that *of course* the customer must look at the back because

---

("Moreover, Plaintiffs plausibly allege that consumers would understand Defendant's statements to mean that they do not contain any unnatural or synthetic ingredients or cleaning agents, and that consumers 'would not know the true nature of the ingredients merely by reading the ingredients label'"); *Pecanha*, 2018 WL 534299, at *5 (Finally, even crediting Defendants' ambiguity argument, Defendants still would not prevail at this juncture of the proceedings because, as Plaintiffs point out, it is not readily apparent that the ingredient list would be helpful—*i.e.*, it is not clear that a reasonable consumer would be able to determine whether the ingredients on the ingredient list were natural or synthetic. The ingredient list provided by Defendants lists many chemicals but a chemical is not necessarily synthetic. Hence, the inclusion of an ingredient list does not warrant, at this 12(b)(6) juncture, judgment as a matter of law"); *Michael v. Honest Co.*, 2016 WL 8902574, at *23 (C.D. Cal. Dec. 6, 2016) (denying motion to dismiss, stating "The outcome is not changed because the list of ingredients on the Natural Products includes those that form the basis for the present claims").

> "The only place to learn about the serving size, the vitamins, or the amount of vitamins is on the back." We are unpersuaded. That might be the case if this product were called Gazorninplat Gummies or Every Day Gummies. But it is most decidedly not the case here. The front label fairly shouts that one per day will be sufficient.
>
> Bayer feels the reasonable consumer will be so motivated to ascertain the precise amounts of vitamins that *of course* he or she will scrutinize the back. We don't think such a conclusion can be made as a matter of law at the pleading stage. Nothing in law or logic suggests consumers will take such a belt and suspenders approach, and Bayer's argument runs counter to an important insight from the *Williams* opinion: You cannot take away in the back fine print what you gave on the front in large conspicuous print. The ingredient list must *confirm* the expectations raised on the front, not contradict them.

*Id.* at 1172 (emphasis in original).

The same reasoning applies here. If the term "natural" has the meaning Plaintiffs put forward (i.e., contains no synthetic ingredients), then the inclusion of synthetic ingredients on the back label contradicts, rather than confirm the "natural" statement on the front, in violation of *Williams* and *Brady*.

The *Brady* Court confirmed this reasoning when it stated, "[i]ndeed, the use of the procrustean concept of 'serving size' to disguise the amount needed strikes us as similar to the use of the word 'natural' in *Janney*; stretched beyond what the rest of the product explicitly or impliedly offers." *Id.* at 1173.

This precedent is in keeping with the Court's previous decision in which it held, "the Ninth Circuit's general prohibition on using an ingredient list to correct a misleading claim applies because Plaintiff sufficiently alleges that the Products' labels are deceptive rather than ambiguous." Order at 9-10. Nothing has changed since the Court made this accurate ruling, so the same result should lie.

## CONCLUSION

*McGinity* does not represent a change in the law. *McGinity* was a purely factually driven analysis based on a different factual pattern. It did not, as Defendant

claims, address the phrase "natural," much less the phrase "natural" as it appears on the present label. The Court's previous decision still stands on good law and sound reasoning, and as such, it should reach the same conclusion. The Court should deny Defendant's motion to dismiss in full.

If the Court grants any part of the motion, Plaintiffs respectfully request leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); FED. R. CIV. P. 15(a)(2).

Date: October 6, 2023

Respectfully submitted,

**REESE LLP**

By: _/s/ Charles D. Moore_

Charles D. Moore
(admitted *pro hac vice*)
*cmoore@reesellp.com*
121 N. Washington Ave., 4th Floor
Minneapolis, Minnesota 55401
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
Sue J. Nam (SBN 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (SBN 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*