Jonathan F. Cohn* (NY 2972578)
Shannon Grammel* (KS 29105)
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave., NW
Washington, DC 20001
Email: jon@lkcfirm.com
Tel.: (512) 693-8350
Fax: (833) 233-2202

Katherine C. Yarger* (CO 40387)

LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Tel.: (512) 693-8350
Fax: (833) 233-2202

*Attorneys for Defendant Bayer Corporation*
(*Additional Attorney for Defendant on Subsequent Page*)

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONIECE DRAKE, DEBORAH BOWLING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BAYER HEALTHCARE LLC,<br><br>Defendant. | Case No. 3:22-cv-01085-MMA-JLB<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Defendant Bayer Corporation ("Bayer"), responds as follows to Plaintiffs Doniece Drake and Deborah Bowling's ("Plaintiffs") Second Amended Class Action Complaint for Damages and Equitable, Declaratory, and Injunctive Relief and Demand for Jury Trial (the "Complaint"):

## SUMMARY OF THE ACTION[1]

1. This action seeks to remedy the deceptive and misleading business practices of Bayer Healthcare LLC (hereinafter "Defendant") with respect to the marketing and sales of Defendant's One a Day Natural Fruit Bites products[2] that represent that they are natural ("Products").

**ANSWER:** Bayer admits that the action purports to seek the remedy described. Bayer also admits that it markets and sells the Products, and that the labels in Paragraph 15 of the Complaint depict the four varieties of the Product identified in Footnote 1. Bayer admits that those labels display the word "natural," but it otherwise denies any factual allegation in Footnote 1. Bayer denies the remaining allegations in Paragraph 1, including the allegation that Bayer engages in false and misleading practices.

2. Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Products are natural; however, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain non-natural, synthetic ingredients.

**ANSWER:** Bayer admits that it manufactures, sells, and distributes the Products. It denies the remaining allegations in Paragraph 2.

[1] For purposes of its response, Bayer has copied herein the headings Plaintiff used in his Complaint. To the extent the headings are intended to be factual allegations, Defendant denies all such allegations.

[2] The Products currently come in four varieties: Men's, Women's, Men's 50+, and Women's 50+. All make the "natural" claim. The Products would also include any additional One a Day Natural Fruit Bites introduced into the market during the Class Period that make a "natural" claim. [Inserted by Plaintiff].

3. Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are natural when purchasing the Products. Plaintiff and Class Members paid a premium for the Products based upon their natural representation. Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are natural, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

**ANSWER:** Bayer lacks information and knowledge sufficient to form a belief as to what Plaintiff and other consumers "relied on" when making purchases and as to what Plaintiff and other consumers "based" their purchases on, and therefore denies the same. Bayer denies that class certification is appropriate, and any other allegations in Paragraph 3.

4. Defendant's conduct violated and continues to violate, *inter alia*, California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 et al. Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

**ANSWER:** Paragraph 4 states legal conclusions to which no response is required. To the extent Paragraph 4 contains any allegations in addition to legal conclusions, Bayer denies those allegations. Bayer denies that class certification is appropriate, denies any implication that it acted unlawfully or improperly in any way, and denies any implication that it is liable in any way.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff Bowling is a citizen of the State of California, Defendant Bayer Healthcare is a citizen of the States of Delaware and New Jersey, and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

**ANSWER:** Paragraph 5 contains legal conclusions about subject matter jurisdiction to which no response is required. Bayer lacks information or knowledge sufficient to form a belief about the citizenship of Plaintiff. Bayer states that Bayer Corporation is incorporated in Indiana with its principal place of business in Whippany, New Jersey. To the extent Paragraph 5 contains any additional factual allegations, Bayer denies those allegations.

6. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contract [*sic*] to supply goods within the State of California, and supply [*sic*] goods within the State of California, including the Products.

**ANSWER:** Paragraph 6 states a legal conclusion about personal jurisdiction to which no response is required.

7. Venue is proper because a substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

**ANSWER:** Paragraph 7 states legal conclusions to which no response is required. To the extent Paragraph 7 contains any allegations in addition to legal conclusions, Bayer denies those allegations. Bayer denies any implication or allegation that it acted unlawfully or improperly in any way and denies any implication that it is liable in any way.

**PARTIES**

8. Plaintiff Drake is a citizen of New York, residing in Queens, New York. Plaintiff Drake purchased the product from retail outlets in Queens, New York, during the class period.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about the citizenship and residence of Plaintiff, or about Plaintiff's purchasing behavior.

9. Plaintiff Drake purchased the Product because she believed the Product was natural based on the representations on the principal display panel of the Product. The packaging of the Product Plaintiff Drake purchased contained the representation

that it was natural. Plaintiff Drake believes that products that are labeled as natural do not contain synthetic ingredients. Plaintiff Drake believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. Plaintiff Drake remains in the market for natural vitamins, and continues to shop at retail locations where the Products are sold. If the Products did not contain unnatural ingredients, Plaintiff Drake would purchase the Product again in the immediate future. If the Court were to issue an injunction ordering Defendant to comply with the state and federal laws, and prohibiting Defendant's use of the deceptive practices discussed herein, Plaintiff Drake would likely purchase the Products again in the near future. At present, however, Plaintiff Drake cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading. As a result, Plaintiff Drake cannot rely on the labels of the Products.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about what Plaintiff "believed" about the Products and what Plaintiff "believes" about synthetic ingredients. Bayer similarly lacks information or knowledge sufficient to form a belief about what Plaintiff "remains in the market for" or what Plaintiff would purchase in the future. Bayer therefore denies these allegations. Bayer denies the remaining allegations in Paragraph 9, including any allegation that the Products' labels are not truthful or are misleading.

10. Had Defendant not made the false, misleading, and deceptive representation that the Products were natural, Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of and/or paid more for, the Products than he would have had he known the truth about the Products. The Product Plaintiff received was worth less than the Product for which he paid. Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**ANSWER:** The final sentence of Paragraph 10 states a legal conclusion to which no response is required. Bayer lacks information or knowledge sufficient to form a belief about Plaintiffs' purchasing preferences, what Plaintiff might have known, and what he would have been willing to pay; Bayer therefore denies the same. Plaintiff denies all other allegations in Paragraph 10, including the allegation that Bayer made a false, misleading, or deceptive representation.

11. Plaintiff Bowling is a citizen of California, residing in Riverside County, California. Plaintiff Bowling purchased the product from retail outlets in Los Angeles County, California, during the class period.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about the citizenship and residence of Plaintiff, or about Plaintiff's purchasing behavior.

12. Plaintiff Bowling purchased the Product because she believed the Product was natural based on the representations on the principal display panel of the Product. The packaging of the Product Plaintiff Bowling purchased contained the representation that it was natural. Plaintiff Bowling believes that products that are labeled as natural do not contain synthetic ingredients. Plaintiff Bowling believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. Plaintiff Bowling remains in the market for natural vitamins, and continues to shop at retail locations where the Products are sold. If the Products did not contain unnatural ingredients, Plaintiff Bowling would purchase the Product again in the immediate future. If the Court were to issue an injunction ordering Defendant to comply with the state and federal laws, and prohibiting Defendant's use of the deceptive practices discussed herein, Plaintiff Bowling would likely purchase the Products again in the near future. At present, however, Plaintiff Bowling cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading. As a result, Plaintiff Bowling cannot rely on the labels of the Products.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about what Plaintiff "believed" about the Products and what Plaintiff "believes" about synthetic ingredients. Bayer similarly lacks information or knowledge sufficient to form a belief about what Plaintiff "remains in the market for" or what Plaintiff would purchase in the future. Bayer therefore denies these allegations. Bayer denies the remaining allegations in Paragraph 12, including any allegation that the Products' labels are not truthful or are misleading.

13. Had Defendant not made the false, misleading, and deceptive representation that the Products were natural, Plaintiff Bowling would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff Bowling purchased, purchased more of and/or paid more for, the Products than she would have had she known the truth about the Products. The Product Plaintiff Bowling received was worth less than the Product for which she paid. Plaintiff Bowling was injured in fact and lost money as a result of Defendant's improper conduct.

**ANSWER:** The final sentence of Paragraph 13 states a legal conclusion to which no response is required. Bayer lacks information or knowledge sufficient to form a belief about Plaintiffs' purchasing preferences, what Plaintiff might have known, and what he would have been willing to pay; Bayer therefore denies the same. Plaintiff denies all other allegations in Paragraph 13, including the allegation that Bayer made a false, misleading, or deceptive representation.

14. Defendant Bayer Healthcare LLC is a limited liability company with its principal place of business in Whippany, New Jersey. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States, including in the District. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

**ANSWER:** Bayer states that Bayer Healthcare LLC is incorporated in Delaware with its principal place of business in Whippany, New Jersey. Bayer denies that it

created or authorized any false, misleading, or deceptive advertisements, packaging or labeling.

15. Defendant manufactures, markets, advertises and sells vitamins, including the Products, one or more of which were purchased by Plaintiff and members of the proposed Class. Defendant manufactured, marketed, advertised, distributed and sold its Products widely throughout the State of California and the Southern District of California during the Class Period.

**ANSWER:** Bayer admits that it manufactures, markets, advertises and sells the Products. Bayer also lacks information or knowledge sufficient to form a belief about the purchasing behavior of Plaintiff and other consumers. Bayer also lacks information or knowledge sufficient to form a belief as to how Plaintiff construes the phrase "sold its Products widely," and therefore denies the same.

16. On information and belief, in committing the wrongful acts alleged herein, Defendant, in connection with its subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent acts and omissions.

**ANSWER:** Paragraph 16 states legal conclusions to which no response is required. To the extent Paragraph 16 contains any allegations in addition to legal conclusions, Bayer denies those allegations. Bayer denies any implication that it acted unlawfully or improperly in any way and denies any implication that it is liable in any way.

## FACTS COMMON TO ALL CAUSES OF ACTION

17. Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products. Companies such as Defendant, have capitalized on consumers' desire for purportedly "natural products." Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain

synthetic ingredients. In 2015, sales of natural products grew 9.5% to $180 billion.[3] Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about consumers' "concerns," about what they are "willing to, and have paid," and about why consumers "value natural products," and therefore denies the same. Bayer admits that the labels on the Products displayed in Paragraph 17 display the word "natural," but it otherwise denies any factual allegation that it "capitalized on consumers' desire" for "natural" products. Bayer denies all other allegations in Paragraph 17.

---

[3] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017. [Inserted by Plaintiff]

18. Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as being natural. Below are the Products' labeling at issue:












**ANSWER:** Bayer admits that the labels on bottles for the Products pictured in Paragraph 18 display the word "natural." Bayer denies the remaining allegations in Paragraph 18.

19. Defendant's representations that the Products are natural, are false, misleading, and deceptive because all the Products contain same ingredients that are, as explained below, synthetic.

a. **Cholecalciferol** (9,10-seco(5Z,7E,)-5,7,10(19)-cholestatrien-3-ol) is a synthetic substance. It is manufactured by ultraviolet irradiation of 7-dehydrocholesterol produced from cholesterol. *See* 21 C.F.R. § 184.1950(a)(2). It is then purified by crystallization. *Id.*

b. **Niacinamide** (3-pyridinecarboxylic acid amide)[4] is a synthetic substance. Niacinamide, as known as nicotinamide,[5] is manufactured in several ways, each of which is a chemical process that chemically changes substances into niacinamide:[6]

i. 2-Methylglutaronitrile, a byproduct of adiponitrile production, is converted to 2-methyl-1, 5-diaminopentane. Cyclic hydrogenation gives 3-methylpiperidine. Dehydrogenation yields 3-methylpyridine, which is then ammoxidated and partly hydrolyzed to nicotinamide;

ii. In a multitubular reactor 3-methylpyridine, air, ammonia, and hydrogen react at ca. 350 °C and moderate pressure to give 3-cyanopyridine. Heterogeneous catalysts containing oxides of antimony, vanadium, and titanium, antimony, vanadium, and uranium or antimony-vanadium-titanium catalyst are highly effective. For instance, with a vanadium, titanium, zirconium,

[4] *See* 21 C.F.R. § 184.1535.
[5] NAT'L CTR. FOR BIOTECHNOLOGY INFO., U.S. DEP'T OF HEALTH & HUMAN SERVS., *Open Chemistry Database: Nicotinamide: 4.2. Synonyms* PUBCHEM.NCBI.NLM.NIH.GOV.
[6] *Id.* at *10.2 Methods of Manufacture*.

molybdenum catalyst, a reactor temperature of 340 °C, and a molar feed ratio of 3-methylpyridine: ammonia: oxygen of 1:1.3:40 yields 95% of 3-cyanopyridine. 3-Cyanopyridine is converted to nicotinamide by alkaline hydrolysis. This reaction has the advantage that saponification to the amide is fast compared to total hydrolysis to nicotinic acid. The hydrolysis to the amide is normally carried out with catalytic amounts of bases, mainly sodium hydroxide, at 130-150 °C;

iii. In the Lonza process, 3-cyanopyridine is converted to nicotinamide by means of an immobilized microorganism of the genus Rhodococcus. Heterogeneous catalysts are also mentioned. A copper-chromium oxide catalyst, manganese dioxide, or manganese dioxide with chromium-nickel oxide, chromium-cobalt oxide, or manganese dioxide with titanium-silicon dioxide give good yields of nicotinamide; or

iv. Nicotinic acid is melted and reacted with ammonia gas to yield nicotinamide. The reaction is catalyzed by the presence of ammonium salts. After distillation, nicotinamide is dissolved in water, purified by the addition of activated carbon, filtered, recrystallized and centrifuged. The nicotinamide contained in the mother liquor is reclaimed by a special recovery operation. The wet pure nicotinamide filter cake is dried under vacuum in a rotary vacuum drier.

c. **Pyridoxine hydrochloride** (3-hydroxy-4,5-dihydroxymethy-2-methylpyridine hydrochloride) is prepared by chemical synthesis[7], and is therefore synthetic substance. Pyridoxine hydrochloride is

[7] 21 C.F.R. § 184.1676.

manufactured in several ways, each of which is a chemical process that chemically changes substances into pyridoxine hydrochloride:[8]

i. Synthesis by condensation of cyanoacetamide & ethoxyacetylacetone;

ii. Synthesis from 2-butanon-1,4-diol & alpha-methyliminopropionitrile; or

iii. Synthesis from ethyl pyruvate, ethyl glycinate, and 1,4-diethoxy-2-butanone.

d. **D-biotin** is a synthetic substance. Di-biotin, as known as biotin,[9] is manufactured in several ways, each of which is a chemical process that chemically changes substances into niacinamide:[10]

i. The Hoffman-La Roche industrial synthesis of biotin starts with fumaric acid. The sequence of bromination, replacement of dibromide with benzyl-bromide, and ring closure with phosgene gives the imidazole cis-dicarboxylic acid. The corresponding anhydride is opened with cyclohexanol to the racemic monoester which is resolved with (+)-ephedrine in high yield. The enantiomer is recycled back to the anhydride. Lithium borohydride reduces only the ester group of (+)-ephedrine, thus producing the lactone with the desired absolute configuration. Sulfur is then introduced by treatment with potassium thioacetate to give the thiolactone. The side chain is introduced in two phases. The first three carbons are attached by a Grignard reaction. Dehydration and

[8] NAT'L CTR. FOR BIOTECHNOLOGY INFO., U.S. DEP'T OF HEALTH & HUMAN SERVS., *Open Chemistry Database: Pyridoxine hydrochloride: 10.2 Methods of Manufacture* PUBCHEM.NCBI.NLM.NIH.GOV.

[9] NAT'L CTR. FOR BIOTECHNOLOGY INFO., U.S. DEP'T OF HEALTH & HUMAN SERVS., *Open Chemistry Database: Biotin: 2.4.2. Depositor-Supplied Synonyms* PUBCHEM.NCBI.NLM.NIH.GOV.

[10] *Id.* at *10.2 Methods of Manufacture.*

hydrogenation over Raney nickel establishes the third chiral center stereo specifically. The last two carbons are then added by reaction of the cyclic sulfonium cation with sodium dimethylmalonate. Hydrolysis of the ester groups of decarboxylation, and didebenzylation occur during heating with aqueous HBr to produce the optically pure biotin in a more than 25% overall yield;

ii. Sumitomo produces biotin by an efficient asymmetric conversion of the prochiral cis-acid to the optically active lactone. The acid reacts with the optically active dihydroxy amine to give quantitatively the chiral imide. Sodium borohydride reduces stereoselectively the pro-R carbonyl group to give, after recrystallization, the optically pure hydroxy amide. Hydrolysis then yields the lactone; or

iii. The stereocontrolled formation of all chiral centers of biotin can be achieved in three syntheses by means of 1,3-dipolar nitrone-olefin cycloadditions and in two syntheses by (2+2) cycloaddition methods.

e. **Potassium iodide** is prepared by reacting hydriodic acid with potassium biocarbonate,[11] and is therefore a synthetic substance. Other methods of manufacturing include a chemical process that chemically changes substances into potassium iodide:[12]

i. Prepared from HI and KHCO3. Purification by melting in dry hydrogen ... Continuous electrolytic process for large scale industrial preparation;

---

[11] 21 C.F.R. § 184.1634.

[12] NAT'L CTR. FOR BIOTECHNOLOGY INFO., U.S. DEP'T OF HEALTH & HUMAN SERVS., *Open Chemistry Database: Potassium iodide: 10.2 Methods of Manufacture* PUBCHEM.NCBI.NLM.NIH.GOV.

ii. A hot aqueous solution of potassium hydroxide is treated with iodine ... to form mixture of KI & potassium iodate. Solution is concentrated by heating ... then an excess of powdered charcoal is added ... Mixture is evaporated to dryness, then ignited. Charcoal ... reduces iodate to iodide and all of the iodine is thus obtained as potassium iodide;

iii. Prepared by first forming ferrosoferric iodide through reaction between iron wire and iodine in presence of water. A solution of pure potassium carbonate ... added until solution is faintly alkaline, boiled for few moments, and filtered; filtrate is concentrated and set aside to crystallize. KI ... is crystallized from an alkaline solution;

iv. Most USA production involves absorption of iodine in KOH. Approximately 80 wt % of the potassium iodate ... crystallizes from the reaction mixture and is separated for sale. Of the remainder, 90 wt % is removed by evaporation, fusion, and heating to about 600 °C. The iodate is a poison /and/ ... must be completely removed frequently by a final reduction with carbon. After re-solution in water, further purification is carried out before recrystallization. Iron, barium, carbonate, and hydrogen sulfide are used to effect precipitation of sulfates and heavy metals; or

v. Made by (1) Reaction of HI & KCl, followed by distillation of HCl, (2) Reaction of iodine with KOH or K2CO3 in solution, (3) Reaction of ferrous/ferric iodide with K2CO3, and (4) Evaporation of natural brines.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about the allegations in subparagraphs (a) through (e). Bayer denies the allegations in

the first sentence of Paragraph 19 and any implication that Bayer's representations are false, misleading, and deceptive or that the Products are not natural or are synthetic.

20. Whether Defendant's labeling of the Products as natural is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

**ANSWER:** Paragraph 20 calls for a legal conclusion as to the definitions of "reasonable person" and "reasonable consumer," and as to where one may "look" to learn what a "reasonable consumer believes." Bayer therefore denies the same and otherwise denies the allegations in Paragraph 20.

21. In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about the allegation in the first sentence of Paragraph 21. The remainder of Paragraph 18 calls for a legal conclusion that does not require a response.

22. Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

**ANSWER:** Bayer admits that 7 U.S.C. § 6502 (21) as of March 27, 2023 contains the words that Plaintiff quotes. Bayer denies any implication or allegation that this definition is relevant to this case.

23. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label. This is because the ingredient list does not disclose the manufacturing process for each ingredient. As the citations in paragraph 7 make clear, it takes dedicated research of the scientific, manufacturing, and regulatory literature to ascertain the manufacturing process for each ingredient, and thereby ascertain whether the ingredient is a synthetic substance.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about consumers' "ability" to "test" or "verify" the characteristics of a product, about what consumers would "know," or about what it would "take" to understand the points alleged. Bayer therefore denies the same, and Bayer likewise denies all allegations in Paragraph 23.

24. Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that the everyday knowledge of the average consumer. This is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients list, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

**ANSWER:** Bayer lacks information and knowledge sufficient to form a belief about what consumers would "understand" or are "expected to understand," or about what it would "require" to understand the points alleged. Bayer therefore denies the same. Further, the allegation in the second sentence of Paragraph 24 about what "reasonable consumers" understand or would be expected to understand calls for a legal

conclusion to which no response is required. Bayer denies all other allegations in Paragraph 24.

25. Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent claims and representations that the Products are natural.

**ANSWER:** Paragraph 25 calls for a legal conclusion to which no response is required. Plaintiff does not define "prominent," and Bayer therefore lacks information or knowledge sufficient to form a belief as to how Plaintiff construes that term and therefore denies the same. Bayer denies all other allegations in Paragraph 25.

26. Defendant did not disclose that the above listed ingredients are synthetic ingredients. A reasonable consumer understands Defendant's natural claims to mean that the Products are natural and do not contain synthetic ingredients.

**ANSWER:** Plaintiff does not define "disclose," and Bayer therefore lacks information or knowledge necessary to form a belief as to how Plaintiff defines the term, and therefore denies the same. Bayer also lacks information and knowledge sufficient to form a belief about what "reasonable consumer[s] understand[]." Bayer denies all other allegations in Paragraph 26.

27. Defendant has thus violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to its knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

**ANSWER:** Bayer denies the allegations in Paragraph 27.

28. Consumers rely on label representations and information in making purchasing decisions.

**ANSWER:** Bayer lacks information and knowledge sufficient to form a belief about what consumers "rely on" in "making purchasing decisions." Bayer denies the allegations in Paragraph 28.

29. The marketing of the Products as natural in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that natural claims are material to consumers.

**ANSWER:** Paragraph 29 contains a legal conclusion about materiality that does not require a response. Further, Plaintiff does not define "prominent," and Bayer therefore lacks information or knowledge sufficient to form a belief as to how Plaintiff construes that term and therefore denies the same. Bayer denies the allegations in Paragraph 25.

30. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

**ANSWER:** Paragraph 30 contains a legal conclusion about materiality that does not require a response. Bayer also lacks information or knowledge sufficient to form a belief as to what a "reasonable person" would find "important[t]" and would "be induced to act upon." Bayer denies all allegations in Paragraph 29, including the allegation that Bayer made any deceptive representations or omissions.

31. Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

**ANSWER:** Paragraph 31 contains a legal conclusion about reliance that does not require a response. Further, Bayer lacks information or knowledge sufficient to form a belief about what Plaintiff and other consumers rely on. Bayer denies all allegations in Paragraph 30, including the allegation that Bayer made misleading representations and omissions. Bayer further denies that class certification is appropriate.

32. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

**ANSWER:** Paragraph 32 contains legal conclusions to which no response is required. To the extent the remainder of Paragraph 32 contains any factual allegations, Bayer denies those allegations, including the allegation that Bayer made any misrepresentations or omissions. Bayer further denies that class certification is appropriate.

33. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled as being natural over comparable products not so labeled.

**ANSWER:** Bayer denies the allegations in Paragraph 33.

34. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

d. Ingested a substance that was of a different quality than what Defendant promised; and

e. Were denied the benefit of the beneficial properties of the natural supplements Defendant promised.

**ANSWER:** Bayer denies the allegations in Paragraph 34, and further denies that class certification is appropriate.

35. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about what Plaintiff and other consumers would be "willing to pay." Bayer denies all allegations in Paragraph 35, and further denies that class certification is appropriate.

36. Plaintiff and the Class members paid for Products that are natural but received Products that are not natural. The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

**ANSWER:** Bayer denies all allegations in Paragraph 36 as well as any suggestion that class certification is appropriate.

37. Plaintiff and the Class members all paid money for the Products; however, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, and/or paid more for the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about what Plaintiffs or other consumers knew and what they "would have" done. Bayer denies all allegations in Paragraph 37.

**CLASS ALLEGATIONS**

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following class ("Class" or "California Class") defined as follows:

> All consumers within the State of California who purchased the Products from July 25, 2019 through the date of entry of class certification for their personal use, rather than for resale or

> distribution. Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

("California Class"); and

> All consumers within the State of New York who purchased the Products from May 31, 2020 through the date of entry of class certification for their personal use, rather than for resale or distribution. Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiffs and Defendant; and the judicial officer to whom this lawsuit is assigned.

("New York Class");

(New York Class and California Class collectively the "Class").

**ANSWER:** Bayer admits that Plaintiff seeks to define a proposed class as outlined in Paragraph 38. Bayer denies that class certification is appropriate.

39. The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

A. <u>Numerosity:</u> The members of the class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that it is in the thousands.

B. <u>Commonality</u>: There are questions of law and fact that are common to the class members and that predominate over individual questions. These include the following:

i. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

ii. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair,

fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

iii. Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

iv. Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public; and

v. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

C. Typicality: Plaintiff's claims are typical of the claims of the class members because Plaintiff suffered the same injury as the class members—i.e., Plaintiff purchased the Products based on Defendant's misleading misrepresentations, omissions, and non-disclosures that the Products did not contain benzene.

D. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the members of each class. Plaintiff does not have any interests that are adverse to those of the class members. Plaintiff has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

E. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

**ANSWER:** Bayer denies the allegations in Paragraph 39, including the allegation in subparagraph C that Bayer made any representations about benzene. Bayer further denies that class certification is appropriate.

40. The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant had acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive or equitable relief with respect to each class as a whole.

**ANSWER:** Bayer denies the allegation in Paragraph 40 and further denies that class certification is appropriate under Fed. R. Civ. P. 23(b)(2). Bayer further denies that Plaintiff is entitled to any equitable or injunctive relief.

**FIRST CAUSE OF ACTION**
**Violation of the Consumers Legal Remedies Act**
**California Civ. Code § 1750 *et seq.***
**(on Behalf of the Class)**

41. Plaintiff incorporates by reference the allegations set forth above.

**ANSWER:** Bayer incorporates each and every response to the allegations contained in Paragraphs 1 through 40 above. Bayer denies any independent allegations made in Paragraph 41.

42. Plaintiff Bowling and the California Class members is a "consumer" under the California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1761(d).

**ANSWER:** Paragraph 42 contains only a legal conclusion to which no response is required. To the extent Paragraph 42 contains any allegations in addition to the legal conclusion, Bayer denies those allegations.

43. The Products are "goods" under California Civil Code section 1761(a).

**ANSWER:** Paragraph 43 contains only a legal conclusion to which no response is required. To the extent Paragraph 42 contains any allegations in addition to the legal conclusion, Bayer denies those allegations

44. The purchases by Plaintiff Bowling and the California Class members of the Products are "transactions" under California Civil Code section 1761(e).

**ANSWER:** Paragraph 44 contains only a legal conclusion to which no response is required. To the extent Paragraph 44 contains any allegations in addition to the legal conclusion, Bayer denies those allegations.

45. Under section 1770 of the CLRA:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> * * * * *
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> * * * * *
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> * * * * *
>
> (9) Advertising goods or services with intent not to sell them as advertised.
>
> * * * * *
>
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

*Id.* § 1770.

**ANSWER:** Bayer admits that Cal Civ. Code section 1770 as of March 27, 2023 contains the language quoted in Paragraph 45.

46. As alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(5) by representing the Products have characteristics, uses, benefits, and qualities which they do not. Specifically, Defendant represents the Products are natural, when, in fact, the Products contained unnatural ingredients.

**ANSWER:** The first sentence of Paragraph 46 contains a legal conclusion to which no response is required. Bayer denies all allegations in Paragraph 46.

47. Further, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(7) by representing the Products are of a particular standard or quality when they are of another. Specifically, Defendant represents the Products are natural, when, in fact, the Products contained unnatural ingredients.

**ANSWER:** The first sentence of Paragraph 47 contains a legal conclusion to which no response is required. Bayer denies all allegations in Paragraph 47.

48. Further, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(9) by advertising the Products are natural, when, in fact, the Products contained unnatural ingredients.

**ANSWER:** Paragraph 48 contains a legal conclusion to which no response is required. Bayer denies all allegations in Paragraph 48.

49. Finally, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(16) by representing that the Products it sold Plaintiff and the Class members are natural, when, in fact, they are not.

**ANSWER:** Paragraph 49 contains a legal conclusion to which no response is required. Bayer denies all allegations in Paragraph 49.

50. Plaintiff Bowling and the California Class members believed the Products were natural based on the Products' label. Plaintiff Bowling and the California Class members would not purchase the Products, but for Defendant's misleading misrepresentations, omissions, and non-disclosures.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about what Plaintiff and other consumers "believed" or about their purchasing behavior.

Bayer denies all allegations in Paragraph 50, including the allegation that Bayer made any misleading misrepresentations, omissions, or non-disclosures. Bayer further denies that class certification is appropriate.

51. Plaintiff Bowling and the California Class members are injured in fact and lose money as a result of Defendant's conduct. Plaintiff Bowling and the California Class members pay for Products that are natural but do not receive such Products because the Products contained unnatural ingredients.

**ANSWER:** Bayer denies all allegations in Paragraph 51.

52. On information and belief, Defendant's actions were willful, wanton, and fraudulent.

**ANSWER:** Bayer denies the allegations in Paragraph 52.

53. On information and belief, officers, directors, or managing agents at Defendant authorized the use of the misleading statements about the Products.

**ANSWER:** Bayer denies the allegations in Paragraph 53.

54. On May 13, 2022, Plaintiff Bowling sent a letter to Defendant pursuant to Cal. Civ. Code §1782 that provided Defendant notice of the misconduct and requested that Defendant cure its misconduct within 30 days (the "CLRA Notice").

**ANSWER:** Bayer denies the allegations in Paragraph 54.

55. Defendant has not corrected or remedied the unlawful conduct after receiving the CLRA Notice, and Defendant continues to engage therein.

**ANSWER:** Bayer denies the allegation in Paragraph 55.

56. Pursuant to Civil Code sections 1780 and 1782, Plaintiff Bowling and California Class members seek an injunction to bar Defendant from continuing their deceptive advertising practices, and reasonable attorneys' fees and costs.

**ANSWER:** Bayer denies that Plaintiff is entitled to any of the relief he seeks, or to attorneys' fees and costs. Bayer further denies that class certification is appropriate.

57. In addition to injunctive relief, Plaintiff seeks damages for Defendant's violation of the CLRA.

**ANSWER:** Bayer denies that Plaintiff is entitled to damages.

**SECOND CAUSE OF ACTION**
**Violation of the New York GBL § 349**
**(On Behalf of the New York Class)**

58. Plaintiff Drake incorporates by reference the allegations set forth above.

**ANSWER:** Bayer incorporates each and every response to the allegations contained in Paragraphs 1 through 57 above. Bayer denies any independent allegations made in Paragraph 58.

59. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

**ANSWER:** Bayer admits that GBL § 349 as of February 1, 2024, contains the language quoted in Paragraph 59.

60. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Drake and the New York Class Members seek monetary damages and the entry of preliminary against Defendant.

**ANSWER:** Bayer denies the allegation in Paragraph 60.

61. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

**ANSWER:** Bayer denies the allegation in Paragraph 61.

62. Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being natural —is misleading in a material way in that it, inter alia, induced Plaintiff Drake and the New York Class Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

**ANSWER:** Bayer denies the allegation in Paragraph 62.

63. Plaintiff Drake and the New York Class Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not natural. Accordingly, Plaintiff Drake and the New York Class Members received less than what they bargained and/or paid for.

**ANSWER:** Bayer denies the allegation in Paragraph 63.

64. Defendant's advertising and Products' packaging and labeling induced Plaintiff Drake and the New York Class Members to buy Defendant's Products and to pay a premium price for them.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about what Plaintiff's purchasing behavior. Bayer denies all allegations in Paragraph 64, including the allegation that Bayer made any misleading misrepresentations, omissions, or non-disclosures. Bayer further denies that class certification is appropriate.

65. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff Drake and the New York Class Members have been damaged thereby.

**ANSWER:** Bayer denies the allegation in Paragraph 65.

66. As a result of Defendants' recurring deceptive acts and practices, Plaintiff Drake and other New York Class Members are entitled to monetary and compensatory damages, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

**ANSWER:** Bayer denies the allegation in Paragraph 66.

## THIRD CAUSE OF ACTION
## Violation of the New York GBL § 350
## (On Behalf of the New York Class)

67. Plaintiff Drake incorporates by reference the allegations set forth above.

**ANSWER:** Bayer incorporates each and every response to the allegations contained in Paragraphs 1 through 66 above. Bayer denies any independent allegations made in Paragraph 67.

68. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

**ANSWER:** Bayer admits that GBL § 350 as of February 1, 2024, contains the language quoted in Paragraph 68.

69. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

**ANSWER:** Bayer admits that GBL § 350-A(1) as of February 1, 2024, contains the language quoted in Paragraph 69.

70. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are natural.

**ANSWER:** Bayer denies the allegation in Paragraph 70.

71. Plaintiff Drake and the New York Class Members have been injured inasmuch as they viewed the labeling, packaging, and advertising and paid a premium for the Products which were—contrary to Defendant's representations— not natural. Accordingly, Plaintiff Drake and the New York Class Members received less than what they bargained and/or paid for.

**ANSWER:** Bayer denies the allegation in Paragraph 71.

72. Defendant's advertising, packaging, and products' labeling induced Plaintiff Drake and the New York Class Members to buy Defendant's Products.

**ANSWER:** Bayer lacks information or knowledge sufficient to form a belief about what Plaintiff's purchasing behavior. Bayer denies all allegations in Paragraph 72, including the allegation that Bayer made any misleading misrepresentations, omissions, or non-disclosures. Bayer further denies that class certification is appropriate.

73. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

**ANSWER:** Bayer denies the allegation in Paragraph 73.

74. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

**ANSWER:** Bayer denies the allegation in Paragraph 74.

75. Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' packaging and labeling.

**ANSWER:** Bayer denies the allegation in Paragraph 75.

76. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

**ANSWER:** Paragraph 76 states legal conclusions to which no response is required. To the extent Paragraph 76 contains allegations in addition to legal conclusions, Bayer denies those allegations. Bayer further denies that class certification is appropriate.

77. As a result of Defendant's recurring acts and practices in violation of GBL § 350, Plaintiff Drake and New York Class members are entitled to monetary and

compensatory damages, interest, and attorneys' fees and costs, as well as statutory damages of $500 per Product purchased.

**ANSWER:** Bayer denies the allegation in Paragraph 77.

## AFFIRMATIVE DEFENSES

1. Bayer specifically reserves all separate or affirmative defenses that it may have against each putative class member, including without limitation any state-specific separate or affirmative defenses. It is not necessary at this time for Bayer to delineate such defenses against the putative class members because no class has been certified and the putative class members are not parties to the litigation.

2. This Answer is made without any waiver of any jurisdictional defenses or rights to arbitrate that may exist between the parties.

3. Bayer reserves the right to amend this Answer.

4. By alleging the affirmative defenses set forth below, Bayer does not intend to modify or alter the burden of proof and/or burden of going forward with evidence that governs with respect to any particular issue at law or equity. All of the affirmative defenses pleaded herein are pleaded in the alternative, and none constitutes an admission of liability, or an admission that Plaintiff is entitled to any of the relief sought.

5. As separate and affirmative defenses to the Complaint, Bayer alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State Claims / Due Process)[13]

6. To the extent Plaintiff fails to demonstrate that every putative class member relied on Bayer's representations, any finding of liability on a class-wide basis would violate Bayer's rights under the due process clause of the U.S. Constitution and any applicable state constitution.

---

[13] Headings are provided as a convenience. They are not intended to limit or affect the interpretation of the listed defenses.

7. To the extent Plaintiff fails to demonstrate that Bayer failed to perform with respect to themselves and every putative class member, any finding of liability on a class-wide basis would violate Bayer's rights under the due process clause of the U.S. Constitution and any applicable state constitution.

8. To the extent Plaintiff fails to demonstrate that Plaintiff and every putative class member sustained cognizable damages because of Bayer's actions, any finding of liability on a class-wide basis would violate Bayer's rights under the due process clause of the U.S. Constitution and any applicable state constitution.

9. The recovery of restitution by Plaintiff or putative class members who were not subject to any alleged misconduct by Bayer or for whom any alleged misconduct by Bayer did not cause any injury violates Bayer's right to due process under the U.S. Constitution and any applicable state constitution.

10. To the extent that Plaintiff or putative class members do not introduce evidence as to each and every class members' individual claims, any finding of liability on a class-wide basis would violate Bayer's rights under the U.S. Constitution and any applicable state constitution.

11. Plaintiff and some or all putative class members cannot establish a violation of the state laws alleged in the Complaint.

12. To the extent Plaintiff is seeking statutory damages, Plaintiff has failed to plead facts sufficient under the law to justify such an award.

13. Plaintiff is not entitled to equitable relief because there is an adequate remedy at law.

14. Any liability found on the part of Bayer, and any damages awarded in favor of Plaintiff and putative class members, are subject to the pure comparative fault rules of California and Bayer cannot be liable for more than its proportionate share of any damages awarded. Further, pursuant to any applicable state law, any damages awarded to Plaintiff and putative class members are subject to apportionment by the

jury of the total fault of all participants in the incidents, including Plaintiff and non-parties.

15. Bayer's conduct is affirmatively permitted by law.

16. Bayer performed any promises made to Plaintiff.

17. To the extent Plaintiff and putative class members assert claims based upon alleged misrepresentations to third persons, including others who purchased Bayer's products, or retailers or distributors, some putative class members do not have standing, and their claims are therefore barred.

18. The Complaint fails to state a claim upon which relief may be granted.

19. Neither Plaintiff, nor any members of the purported class, nor any member of the general public, has suffered any injury or damages whatsoever, and Bayer is not liable to any such person for any injury or damage claimed or for any injury or damage whatsoever.

20. Plaintiff's claims, and those of the purported class, are barred, in whole or in part, because Bayer's conduct is protected commercial speech and / or to the extent that the relief sought would violate the First Amendment's protection thereof.

21. Equitable considerations and / or the public interest counsel against affording relief.

22. The relief sought by the Complaint is barred, in whole or in part, because Bayer acted in good faith and in reliance on procedures reasonably adopted to avoid error, and in compliance with the FDA's regulations, including but not limited to 21 C.F.R. §§ 101.36, 101.9, and because at the time Bayer made the representations complained of, to the extent such representations were made, Bayer believed the representations were true.

23. Bayer's labels are not unfair, deceptive, untrue, or misleading within the meaning of any applicable state law. Any statements made by Bayer were truthful and accurate and were not fraudulent or likely to mislead or deceive Plaintiff, the purported class, or members of the general public.

24. Plaintiff's claims are barred, in whole or in part, because Bayer's representations regarding its products complied with all applicable codes, standards, and regulations established, adopted, promulgated, or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

25. The FDA, and / or other applicable federal and state agencies, have primary jurisdiction over the issues raised in this case.

26. Plaintiff's causes of action, and those of the purported classes, are barred because the alleged representations made by Bayer, to the extent such representations were made, were not the proximate cause of Plaintiff's or putative class members' alleged damages.

27. Plaintiff's and putative class members' causes of action are barred because they had equal or superior knowledge of relevant facts.

**SECOND AFFIRMATIVE DEFENSE**

**(Voluntary Payment / Release and Accord / Satisfaction)**

28. The claims of Plaintiff and some or all of putative class members are barred by the voluntary payment doctrine because Plaintiff and putative class members voluntarily paid for the products about which they now complain, with full knowledge of the facts and circumstances pursuant to which such amounts were paid.

29. In the ordinary course of business, Bayer may have resolved claims with some putative class members as part of the refund process. Such claims are barred in whole or in part by the doctrine of accord and satisfaction, or by written releases executed by some putative class members.

30. Bayer may have resolved claims with some putative class members through prior class action settlements. Such claims are barred by the terms of those settlements or by written releases executed by some putative class members.

**<u>THIRD AFFIRMATIVE DEFENSE</u>**

**(Lack of Standing)**

31. Some or all of the claims set forth in the Complaint, including claims made on behalf of the putative plaintiff class, are barred because Plaintiff and members of the putative plaintiff class lack standing.

32. Plaintiff and some or all putative class members are not subject to any threat of future injury, and lack standing to seek or obtain injunctive relief.

**<u>FOURTH AFFIRMATIVE DEFENSE</u>**

**(Mitigation)**

33. Plaintiff and some or all putative class members have failed to mitigate their damages.

**<u>FIFTH AFFIRMATIVE DEFENSE</u>**

**(Damages / Set-Off)**

34. Plaintiff and some or all putative class members are not entitled to recover because their damages, if any, are too speculative.

35. Plaintiff and putative class members must elect their remedies. They cannot recover breach of warranty damages and then seek restitution damages based upon the price of the contract. Plaintiff and putative class members are not entitled to recover twice for the same alleged damages.

36. Bayer is entitled to any set-offs or reductions in liability from collateral sources available to Plaintiff and putative class members. Pursuant to C.C.P. § 877 and *Rashidi v. Moser*, 60 Cal. 4th 718 (2014), a non-settling tortfeasor is allowed to set off the amount of a jointly liable tortfeasor's settlement against damages awarded at trial.

**<u>SIXTH AFFIRMATIVE DEFENSE</u>**

**(Non-Actionable Representations)**

37. Plaintiff's and some or all putative class members' claims are barred, in whole or in part, because the representations relating to the generic term "natural," if

any, were not false or misleading, and therefore constitute protected commercial speech under the applicable provisions of the U.S. Constitution.

38. Plaintiff's and some or all putative class members' claims are barred, in whole or in part, because the representations regarding the generic term "natural" complied with all applicable codes, standards, and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any State, and any agency thereof.

39. Plaintiff's and some or all putative class members' causes of action are barred because at the time Bayer made the representations complained of, if any such representations were made, Bayer believed the representations were true.

40. Plaintiff's and some or all putative class members' causes of action are barred because the representations complained of, if any such representations were made, were not material and did not induce Plaintiff to enter into the transaction.

41. Plaintiff's and some or all of putative class members' causes of action are barred because Plaintiff did not reasonably or justifiably rely on the representations of Bayer.

42. Plaintiff's and putative class members' causes of action are barred because they had equal or superior knowledge of relevant facts.

43. Plaintiff's and some or all putative class members' claims are barred because they are based on alleged omissions.

## SEVENTH AFFIRMATIVE DEFENSE

**(Laches)**

44. Some or all of the claims set forth in the Complaint, including claims made on behalf of the putative plaintiff class, are barred by the doctrine of laches.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Waiver and Estoppel)**

45. Some or all of the claims set forth in the Complaint, including claims made on behalf of the putative plaintiff class, are barred by the doctrines of waiver and estoppel.

**NINTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

46. Some or all of the claims set forth in the Complaint, including claims made on behalf of the putative plaintiff class, are barred by the doctrine of unclean hands.

**TENTH AFFIRMATIVE DEFENSE**

**(Additional Affirmative Defenses)**

47. Bayer alleges that it presently has insufficient information or knowledge upon which to form a belief as to whether there are additional, yet unstated, affirmative defenses available. Bayer expressly and specifically reserves the right to amend this Answer to add, delete and / or modify affirmative defenses based upon legal theories, facts and / or circumstances, which may or will be developed through discovery and / or through further legal analysis of their position in this action.

**PRAYER**

WHEREFORE, Bayer respectfully requests that this Court:

1. Disallow the case to continue as a purported class action;
2. Enter judgment in favor of Bayer and against Plaintiff;
3. Dismiss Plaintiff's Complaint and each cause of action with prejudice;
4. Award Bayer attorneys' fees and costs of suit incurred in defense of this action;
5. Grant a jury trial on all issues so triable; and
6. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Bayer demands a trial on all issues so triable.

Dated: February 6, 2024

Respectfully submitted,

*/s/ Jonathan F. Cohn*
Jonathan F. Cohn* (NY 2972578)
Shannon Grammel* (KS 29105)
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave., NW
Washington, DC 20001
Email: jon@lkcfirm.com
Tel.: (512) 693-8350
Fax: (833) 233-2202

Katherine C. Yarger* (CO 40387)
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Tel.: (512) 693-8350
Fax: (833) 233-2202

Leah F. Bower* (TX 24107585)
LEHOTSKY KELLER COHN LLP
919 Congress Ave, Suite #1100
Austin, TX 78701
Email: leah@lkcfirm.com
Tel.: (512) 693-8350
Fax: (833) 233-2202

*Attorneys for Defendant Bayer Corporation*
* Admitted *pro hac vice*.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have e-mailed the foregoing document to the non-CM/ECF participants indicated on the Manual Notice List.

Date: February 6, 2024

By: */s/ Shannon Grammel*

Shannon Grammel