1  **REESE LLP**
2  Michael R. Reese (SBN 206773)
   100 West 93rd Street, 16th Floor
3  New York, New York 10025
   Telephone: (212) 643-0500
4  Email: *mreese@reesellp.com*
5
6  [Additional Counsel on Signature Page]
7  *Counsel for Plaintiffs Doniece Drake and*
   *Deborah Bowling and the Proposed Class*
8
9
10        **IN THE UNITED STATES DISTRICT COURT**
11        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13 | Case No. <u>3:22-cv-01085-MMA-JLB</u> |
| 14 DONIECE DRAKE and DEBORAH BOWLING, individually and on behalf of all others similarly situated, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| 15 | |
| 16 | |
| 17                Plaintiffs, | **[UNREDACTED – CONDITIONALLY LODGED UNDER SEAL]** |
| 18    v. | |
| 19 | Date: To be determined |
| 20 BAYER HEALTHCARE LLC, | Time: To be determined |
| 21                Defendant. | Place: Courtroom 3C Judge: Honorable Michael M. Anello |
| 22 | |
| 23 | Complaint filed: July 25, 2022 |
| 24 | Trial date: Not set |

25    **MAY NOT BE EXAMINED WITHOUT COURT ORDER CONTAINS**
26    **MATERIAL FROM CONDITIONALLY SEALED RECORD**
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................... - 1 -

SUMMARY OF THE COMMON CLASSWIDE EVIDENCE ......................... - 2 -

    A.    Defendant Exploited Consumers' Desires for Natural Vitamins ..... - 2 -

    B.    The Same "NATURAL" Representation is on the Front Label of All Products - and the Synthetic Vitamins Are in All Products ...... - 5 -

    C.    Consumers' Perception of the "NATURAL" Claim on the Product Labels and Its Importance to Consumers ........................... - 7 -

    D.    Defendant's Sales of the Products in California and New York ..... - 7 -

PROPOSED CLASSES ........................................................................... - 8 -

ELEMENTS OF THE CAUSES OF ACTION ............................................. - 9 -

    A.    California's Consumers Legal Remedies Act ................................. - 9 -

    B.    New York General Business Law Sections 349 and 350 ................. - 9 -

LEGAL STANDARD .............................................................................. - 10 -

ARGUMENT ........................................................................................ - 11 -

    A.    The Class Satisfies Federal Rule of Civil Procedure 23(a) ............ - 11 -

        1.    Numerosity ................................................................. - 11 -

        2.    Commonality ............................................................... - 11 -

        3.    Typicality .................................................................... - 19 -

        4.    Adequacy .................................................................... - 21 -

    B.    The Class Satisfies Federal Rule of Civil Procedure 23(b)(3) ....... - 22 -

        1.    Predominance .............................................................. - 22 -

        2.    Superiority .................................................................. - 24 -

CONCLUSION ..................................................................................... - 25 -

1
2

# TABLE OF AUTHORITIES

**Page(s)**

3

## CASES

4
5
*A. B. v. Hawaii State Dep't of Educ.*,
   30 F.4th 828 (9th Cir. 2022) ...................................................................11

6
7
*Alcantar v. Hobart Serv.*,
   800 F.3d 1047 (9th Cir. 2015) ................................................................13

8
9
*Allen v. Similasan Corp.*,
   306 F.R.D. 635 (S.D. Cal. 2015) ............................................................22

10
*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)................................................................ 10, 13, 23

11
12
*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ............................................................12

13
14
*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390 (N.D. Cal. 2021) ...................................................... passim

15
16
*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ..................................................................9

17
18
*Broomfield v. Craft Brew Alliance*,
   2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ................................. 15, 16, 18, 19

19
20
*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ............................................................21

21
*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004).................................................................25

22
23
*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ............................................................12

24
25
*Clay v. CytoSport, Inc.*,
   2018 WL 4283032 (S.D. Cal. Sept. 7, 2018).......................................... 8, 24

26
27
*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018) ......................................................... 20, 25

28

Case No. 22cv1085

1

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................................24

2

*Gunaratna v. Dennis Gross Cosmetology LLC*,
   2023 WL 5505052 (C.D. Cal. Apr. 4, 2023) .........................................17

3

4

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) .................................. 17, 18, 19

5

6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................19

7

8

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) ............................... passim

9

10

*Holt v. Noble House Hotels & Resort, LTD*,
   2018 WL 5004996 (S.D. Cal. Oct. 16, 2018) ............................... passim

11

*Johnson v. City of Grants Pass*,
   72 F.4th 868 (9th Cir. 2023) ............................................ 10, 11, 19

12

13

*Koch v. Acker, Merrall & Condit Co.*,
   967 N.E.2d 675 (N.Y. 2012) ............................................ 10, 15

14

15

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ....................................... 18, 25

16

17

*Krueger v. Wyeth, Inc.*,
   310 F.R.D. 468 (S.D. Cal. 2015) ..........................................23

18

19

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ...........................................10

20

21

*Kwikset Corp. v. Superior Ct.*,
   246 P.3d 877 (Cal. 2011) ................................................15

22

23

*Lytle v. Nutramax Lab. Inc.*,
   2022 WL 1600047 n.21 (C.D. Cal. May 6, 2022) ............................17

24

25

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018)..............................................12

26

27

28

Case No. 22cv1085

*McMorrow v. Mondelēz International, Inc.*,
   2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ................................................... passim

*Nathan Gordon Trust v. Northgate Exploration, Ltd.*,
   148 F.R.D. 105 (S.D.N.Y. 1993) ........................................................................22

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ...................................................................... 12, 23

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ...............................................................................10

*Owino v. CoreCivic, Inc.*,
   60 F.4th 437 (9th Cir. 2022) ..............................................................................23

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ..............................................................................19

*Pettit v. Procter & Gamble Co.*,
   2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) ................................................ 20, 21

*Schwartz v. System Software Associates, Inc.*,
   138 F.R.D. 105 (N.D. Ill. 1991) .........................................................................22

*Sharpe v. A&W Concentrate Co.*,
   2021 WL 3721392 (E.D.N.Y. July 23, 2021) ............................................... passim

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..............................................................................21

*Steroid Hormone Prod. Cases*,
   104 Cal. Rptr. 3d 329 (Ct. App. 2010) .................................................................9

*Tan v. Quick Box, LLC*,
   2024 WL 150611 ..................................................................................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ...................................................................................... 22, 23

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ..............................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................... 11, 12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ..............................................................20

*Zeiger v. WellPet LLC*,
   2021 WL 756109 (N.D. Cal. Feb. 26, 2021) .......................................25

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ..............................................................10

## **STATUTES**

California Civil Code § 1750 ...................................................................2
California Civil Code § 1770(a) ...............................................................9
New York General Business Law ("GBL") sections 349 and 350.............. 2, 7, 8, 9

## **RULES**

Federal Civil Procedure Rule 23(a) .................................................. 10, 11
Federal Civil Procedure Rule 23(a)(1).....................................................11
Federal Civil Procedure Rule 23(a)(2).....................................................11
Federal Civil Procedure Rule 23(a)(3).....................................................19
Federal Civil Procedure Rule 23(a)(4).....................................................21
Federal Civil Procedure Rule 23(b).........................................................10
Federal Civil Procedure Rule 23(b)(3) .............................. 10, 22, 23, 24
Federal Civil Procedure Rule 30(b)(6) .....................................................3

Case No. 22cv1085

1    Plaintiffs Doniece Drake ("Drake") and Deborah Bowling ("Bowling")
2  (together, "Plaintiffs") respectfully submit this memorandum of points and
3  authorities in support of their Motion for Class Certification.

4    **INTRODUCTION**

5    Defendant Bayer Healthcare LLC ("Bayer" or "Defendant") took advantage
6  of consumers' desire for "natural" products and created a line of One-A-Day Natural
7  Fruit Bites multivitamins in Men's, Women's, Men's 50+, and Women's 50+
8  varieties (collectively, the "Products"). Bayer placed the word "NATURAL" on the
9  front of each Product label, above the sub-brand (Fruit Bites). As the example label
10  below shows, only the brand name (One-A-Day) was listed before the word
11  "NATURAL."



Case No. 22cv1085

Despite this front-label statement that the Products are "NATURAL," *all* of the vitamins in these multivitamins are synthetic. Plaintiffs brought the present suit to remedy this deception. Plaintiff Bowling seeks to represent a class of California consumers (defined below) for claims under California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"). Plaintiff Drake seeks to represent a class of New York consumers (defined below) for claims under New York General Business Law ("GBL") sections 349 and 350. Plaintiffs seek monetary and statutory damages based on the price premium they and the class members paid.

This matter is a textbook case for class certification. All consumers in the proposed classes bought one or more of the Products with the same "NATURAL" statement on the Products' front label throughout the class period. All consumers received the same thing—Products that contained synthetic vitamins. Whether Defendant's "NATURAL" front-label representation was misleading, and whether it was material to consumers, will be determined by reference to the objective "reasonable consumer" standard and, thus, will be established by common, class-wide proof. The classes' monetary injury likewise is susceptible to class-wide proof in the form of Plaintiffs' proposed conjoint price premium methodology, as explained in the expert report of Dr. William Robert Ingersoll. These issues concerning liability and damages are common to the class and predominate over any individualized issues that Bayer may conjure up.

Accordingly, Plaintiffs respectfully request that the Court grant their Motion for Class Certification.

## SUMMARY OF COMMON CLASSWIDE EVIDENCE

### A. DEFENDANT EXPLOITED CONSUMERS' DESIRES FOR NATURAL VITAMINS

Case No. 22cv1085



This strategy was confirmed by Defendant during the Federal Civil Procedure Rule 30(b)(6) deposition of its corporate representative, who testified as follows:

Q. At the top it says natural is, quote "natural is critical to category growth." Do you see that?

A. I do.

Q. What is meant by that?

A. So, again, I think more and more the trend is consumers are looking for products that are free of these baddies. And that is a growing trend, right, and where there is potential growth in the [vitamins minerals supplements] category as consumers are starting to look for products that don't have these artificial flavor, colors[,] sweeteners, etc.

* * * * *

Q. So if I'm understanding this correctly, this [is] what I'm trying to understand. Bayer saw that the consumers were looking for this naturals category and this is saying that Bayer is now developing a naturals line as a pillar to satisfy that consumers desire. Do I have that correct?

A. Yes, whenever we are creating new innovation, new products innovation, it is always consumer led. So as consumers are telling us that they are looking for products that are free of baddies, free of those artificial flavors, colors, sweeteners, high-fructose corn syrup, right, that fulfill those desires and those needs based on what consumers are

Case No. 22cv1085

telling us.

We take pride in listening to our consumers and what they are looking for and designing products for them.

Q. You're trying to fulfill the consumer desire in essence?

A. New product innovation is always designed with the consumer in the center and to give them a product that they are looking for.

* * * * *

Q. So am I putting this together correctly that the Fruit Bites were the solution to the natural category?

A. The brand's innovation strategy was to develop a natural platform as we discussed. The One-A-Day Natural Fruit Bites was the first I'll call it product line launched under that idea of this platform. That's what you're seeing here.

Q. So putting all of this together, Bayer saw a consumer desire for natural and said we're going to create a pillar under this naturals category and the product that came out of that pillar was the Fruit Bites; is that correct?

A. Consumers express a desire for products that were free from those baddies, right. So to meet the consumer desire and the need we developed a platform and associated products in what they were looking for, yes.

Transcript of deposition of Defendant's 30(b)(6) witness attached as Exhibit 2 to the Moore Declaration ("30(b)(6) Dep. Tr.") at 94:6-18; 103:9-104:9; 105:11-106:6.

Case No. 22cv1085

- 4 -



Indeed, a few days after the regulatory department expressed its opposition to use of the term "NATURAL," Bayer's Vice President of Marketing Teresa Gonzales Ruiz stated in an email in discussing the decision of the marketing department to go ahead and use the term "NATURAL": "I would keep to test . . . Consumers loved those words . . . ." Moore Decl. Ex. 6.

### B. THE SAME "NATURAL" REPRESENTATION IS ON THE FRONT LABEL OF ALL PRODUCTS - AND THE SYNTHETIC VITAMINS ARE IN ALL PRODUCTS

Defendant, through its corporate representative, testified both that it intended for consumers to read the label and that the information on the label is intended to describe the Products:

Case No. 22cv1085

Q. Does Bayer intend for consumers to read the labels of the products?

A. Yes. We know that consumers read the labels of our products.

* * * * *

Q. The labeling of the products is directed at the consumers?

A. Yes, our labels are designed to give information that consumers are looking for as they are selecting a product.

* * * * *

Q. Is all of the information on the label important?

 * * * * *

A. So I'm not exactly sure what you mean by important. But it is always our intention to include information on the label that would help consumers understand the product.

Q. So the information is there - - what is on the label you intend to convey that information to the consumer?

A. Yes, the goal is to always include information that helps consumers understand what is in the product as they are shopping and making decisions.

Moore Decl., Ex. 2 (30(b)(6) Dep. Tr.) at 29:13-25; 59:2-17.

Defendant produced two types of labels during the class period. The first set of labels was distributed to retailers starting in March 2020, and the second set was distributed to retailers starting in November and December 2021. *See* Moore Decl. Ex. 7 (response to Interrogatory No. 25); Exs. 8-15 (corresponding Product labels). All labels contained the "NATURAL" claim in the same location on the front label, and all contained the same synthetic vitamins.[1] Moore Decl. Exs. 8-15. Additionally, Defendant has confirmed in discovery that *all* of the vitamins in each and every

---

[1] The only deviation in the vitamins between the varieties of Products was the quantities of each vitamin in each Product.

Case No. 22cv1085

- 6 -

Product are synthetic. *See* Moore Decl. Ex. 2 (30(b)(6) Dep. Tr.) at 227:15-229:8; Ex. 17 (response to Interrogatory Nos. 4-8).

### C. CONSUMERS' PERCEPTION OF THE "NATURAL" CLAIM ON THE PRODUCT LABELS AND ITS IMPORTANCE TO CONSUMERS

The Expert Report of Dr. Andrea Lynn Matthews ("Matthews Report") shows that more than half of consumers who viewed either the first version of the Products' labels (*i.e.*, March 2020 to December 2021) or the second version of the Products' labels (*i.e.*, December 2021 onward) believed that the Products contained only natural ingredients, as opposed to "both natural and synthetic ingredients" or "only synthetic ingredients." *See* Matthews Report, ¶¶ 33-34; 193-194.

The Matthews Report also shows that 87.7% of consumers prefer to purchase Vitamin Fruit Bites products that contain only natural ingredients. *See* Matthews Report, ¶ 73, 196. Finally, the Matthews Report shows that no less than 76.9% of consumers "would prefer to purchase a Bayer One a Day Fruit Bites Multivitamin Dietary Supplement that was labeled as 'Natural,'" compared with the same label without the word "NATURAL." *Id.* at ¶¶ 78, 80, 197.

### D. DEFENDANT'S SALES OF THE PRODUCTS IN CALIFORNIA AND NEW YORK

Sales figures for the Products in California and New York were produced in this litigation by third-party Circana, Inc., and evidence ▮▮▮▮▮▮▮ of units sold in each state during the proposed class period. Moore Decl., Ex. 16. According to the Circana data, the Products were sold in California and New York between March 2020 and May 2023. *Id.*

To quantify the premium paid by consumers because of the "NATURAL" representation on the Products' front labels, Dr. William Robert Ingersoll ("Ingersoll Report") has proposed running a choice-based conjoint analysis, using the 60 unit count, and the sales prices from the Circana data. *See* Ingersoll Report, ¶¶ 10-31.

Under New York GBL sections 349 and 350, consumers may recover the greater of actual damages or statutory damages. N.Y. GBL § 349(h) (statutory

damages are $50 per violation); N.Y. GBL § 350-e(3) ($500 per violation). Since statutory damages are greater here, each New York class member has the same type of damages – *i.e.*, statutory damages under New York GBL sections 349 and 350.

## **PROPOSED CLASSES**

A class definition must allow the court to readily identify the class members by reference to objective criteria, *e.g.*, whether they purchased the relevant products. *Clay v. CytoSport, Inc.*, 2018 WL 4283032, at *3 (S.D. Cal. Sept. 7, 2018).

Plaintiff Bowling seeks certification of the following class under Rule 23(a) and (b)(3) for violations of the CLRA:

> ***California Class***. All persons who purchased at least one of the following Products in the State of California from March 1, 2020, to May 30, 2023:[2]
> - One-A-Day Natural Fruit Bites Women's
> - One-A-Day Natural Fruit Bites Men's
> - One-A-Day Natural Fruit Bites Women's 50+
> - One-A-Day Natural Fruit Bites Men's 50+

Plaintiff Drake seeks certification of the following class under Rule 23(a) and (b)(3) for violations of New York GBL sections 349 and 350:

> ***New York Class***. All persons who purchased at least one of the following Products in the State of New York from May 31, 2020, to May 30, 2023:
> - One-A-Day Natural Fruit Bites Women's
> - One-A-Day Natural Fruit Bites Men's
> - One-A-Day Natural Fruit Bites Women's 50+
> - One-A-Day Natural Fruit Bites Men's 50+

Together, the California Class and the New York Class are the "Class" or the "Classes." Excluded from the Classes are officers and directors of Defendant and of

---

[2] Per the Circana data, the Products were last sold in May 2023. Moore Decl. Ex. 16. As a result, Plaintiffs are seeking this class period to cover any lagging sales. Equally, this is why Plaintiffs are no longer seeking injunctive relief.

Case No. 22cv1085

any entity in which Defendant currently has or had a controlling interest, and Defendant's legal representatives, heirs, successors, and assigns.

The Classes are objectively defined and will allow the Court to readily identify members. Accordingly, the Classes are properly defined. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017).

## ELEMENTS OF THE CAUSES OF ACTION

### A. CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT

"The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices' in commercial transactions." *Tan v. Quick Box, LLC*, 2024 WL 150611, at \*10 (quoting Cal. Civ. Code § 1770(a)). Under the CLRA, "[c]ausation as to the entire class may be established by showing that material misrepresentations were made to the class members." *Id*. "A misrepresentation or omission is material if a reasonable consumer 'would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Id.* (quoting *Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329, 338 (Ct. App. 2010)).

"Under the . . . CLRA, individual proof of deception, reliance, and injury is not required because these claims look instead to the objective reasonable consumer test to determine whether misrepresentations and omissions about the [] products were material and likely to deceive a reasonable consumer." *Tan*, 2024 WL 150611, at \*11. "Because the reasonable consumer test is objective, the essential elements of the cause of action are capable of being established through a common body of evidence applicable to the whole class." *Id.*

### B. NEW YORK GENERAL BUSINESS LAW SECTIONS 349 AND 350

GBL section 349 "prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce.'" *Sharpe v. A&W Concentrate Co.*, 2021 WL 3721392, at \*1 (E.D.N.Y. July 23, 2021) (quoting statute). Section 350 "bans 'false advertising.'" *Id.* (same). "Liability under these sections requires 'that a defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that

Case No. 22cv1085
- 9 -

1  (3) plaintiff suffered injury as a result.'" *Id.* (quoting *Orlander v. Staples, Inc.*, 802

2  F.3d 289, 300 (2d Cir. 2015)).

3      "The second element – whether a practice is materially misleading – assesses

4  whether the practice 'is likely to mislead a reasonable consumer acting reasonably

5  under the circumstances.'" *Sharpe*, 2021 WL 3721392, at *2.

6      "Justifiable reliance by the plaintiff is not an element of the statutory claim."

7  *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012). "That

8  means liability 'does not depend on whether class members relied upon the

9  [mis]representation when they purchased the [product at issue], nor does it depend

10 on whether the product met their personal, subjective expectations.'" *Sharpe*, 2021

11 WL 3721392, at *2 (modification in original) (quoting *Kurtz v. Kimberly-Clark*

12 *Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017)).

13                          **LEGAL STANDARD**

14     A case should be certified and proceed as a class action if the four

15 requirements of Federal Civil Procedure Rule 23(a) - numerosity, commonality,

16 typicality, and adequacy of representation – are met, and one of the requirements of

17 Rule 23(b) is also met. *Johnson v. City of Grants Pass*, 72 F.4th 868, 885 (9th Cir.

18 2023). Plaintiffs here seek certification under Rule 23(b)(3), which requires the court

19 to find that common questions of law or fact predominate over any individual

20 questions and that a class action is superior to other available methods for fair and

21 efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

22      "Rule 23 grants courts no license to engage in free-ranging merits inquiries

23 at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S.

24 455, 466 (2013). "Merits questions may be considered to the extent—but only to the

25 extent—that they are relevant to determine whether the Rule 23 prerequisites for

26 class certification are satisfied." *Id.* If a court concludes that the moving party has

27 met its burden of proof, then the court has broad discretion to certify the class. *Zinser*

28 *v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Case No. 22cv1085

1    **ARGUMENT**

2    **A. THE CLASS SATISFIES FEDERAL RULE OF CIVIL PROCEDURE 23(A)**

3    **1. Numerosity**

4    Rule 23(a)(1) requires the class to be "so numerous that joinder of all members

5    is impracticable." Fed. R. Civ. P. 23(a)(1). "For purposes of this requirement,

6    "'impracticability" does not mean "impossibility," but only the difficulty or

7    inconvenience of joining all members of the class.'" *Johnson*, 72 F.4th at 886.

8    "There is no specific number of class members required." *Id.* "However, proposed

9    classes . . . of more than sixty are sufficiently large." *Id.*; *accord A. B. v. Hawaii*

10   *State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022). "A court may reasonably

11   infer based on the facts of each particular case to determine if numerosity is

12   satisfied." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *3 (S.D.

13   Cal. Nov. 29, 2018) (granting certification of CLRA class).

14   Here, sales figures for the Products in California and New York reflect ███

15   ████████ of units sold in each state during the proposed class period. Moore

16   Decl., Ex. 16. Even if individuals purchased multiple units of the Products during

17   the class period, the named Plaintiffs still seek to represent a proposed class of

18   ██████ of class members. As such, this element is met.

19   **2. Commonality**

20   "A class satisfies Rule 23's commonality requirement if there is at least one

21   question of fact or law common to the class." *Johnson*, 72 F.4th at 887. "What

22   matters to class certification . . . is not the raising of common 'questions'—even in

23   droves—but rather, the capacity of a class-wide proceeding to generate common

24   *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*,

25   564 U.S. 338, 350 (2011). Class members' claims "must depend upon a common

26   contention," which "must be of such a nature that it is capable of classwide

27   resolution—which means that determination of its truth or falsity will resolve an

28   issue that is central to the validity of each one of the claims in one stroke." *Id.* Even

"a single common question will do." *Id.* at 359 (cleaned up). In determining whether commonality is met, "a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666-67 (9th Cir. 2022) ("*Olean*"). "In misbranding or false advertising cases, courts routinely find that commonality has been satisfied." *Hilsley*, 2018 WL 6300479, at *4 (citing *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501-20 (S.D. Cal. 2013), and *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010)).

### a. Defendant's Conduct Was Consumer-Oriented

The first element of the GBL claims is that Defendant's conduct was "consumer-oriented."[3] *See Sharpe*, 2021 WL 3721392, at *3 (certifying class of beverage purchasers who bought products labeled as being "made with aged vanilla" that instead contained synthetic vanilla substitutes). Here, the deception at issue is the "NATURAL" representation on the Products' labels, which Defendant admits are directed to consumers and the general public, and the Products are made available to consumers and the general public. *See* Moore Decl., Ex. 2 (30(b)(6) Dep. Tr.) 29:17-30:20. As such, Defendant's testimony makes clear that the deceptive act was consumer-oriented, and common evidence supports this finding.

### b. Reasonable Consumers Were Likely to Be Misled.

Both the CLRA and GBL claims are governed by the objective reasonable consumer standard. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) ("To state a claim for false advertising or deceptive business practices under New York or California law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the

---

[3] This is not an element of the CLRA claim.

Case No. 22cv1085

1  circumstances.'"). "And when an element follows an objective standard, it typically

2  'can be proved through evidence common to the class' and presents 'a common

3  question.'" *Sharpe*, 2021 WL 3721392, at *3 (quoting *Amgen*, 588 U.S. at 467).

4        Whether a reasonable consumer would be deceived by the "NATURAL"

5  representation is an objective question for the jury to answer. Regardless of whether

6  the jury ultimately determines that the answer to that question is "yes" or "no," the

7  answer will affect all class members equally. Thus, this common question has a

8  common answer. *See Hilsley*, 2018 WL 6300479, at *5 (certifying class and holding

9  that "[a]s directed by the Ninth Circuit in *Alcantar*, the Court's focus is on whether

10  Plaintiff has presented a common contention capable of class wide resolution, not

11  whether Plaintiff has provided evidence [to prove that contention on the merits] that

12  fumaric and malic acids are flavors. Instead, whether fumaric and malic acids, as

13  used in Defendants' Products, act as flavor ingredients is one contention common to

14  the class") (citing *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015),

15  reversing district court decision denying certification and holding that "[w]e

16  conclude that the district court erred in denying class certification because it

17  evaluated the merits rather than focusing on whether the questions presented—

18  meritorious or not—were common to the class")).

19        A host of evidence common to all class members supports a finding that the

20  label is, in fact, likely to mislead. *First*, Defendant produced two types of labels

21  during the class period, all of which contained the relevant "NATURAL" claim in

22  the same location and in the same font size. *See* Moore Decl. Ex. 7 (response to

23  Interrogatory No. 25); Exs. 8-15. Thus, the label at issue is the same for all class

24  members. *See Sharpe*, 2021 WL 3721392, at *4 (certifying class and finding that

25  "the 'made with aged vanilla' claim appears on bottles and cans alike – in the same

26  font, the same format, and roughly the same size. That is enough for a finding of

27  commonality").

28

*Second*, all of the Products contained synthetic vitamins. *See* Moore Decl. Exs. 8-15; Ex. 17 (response to Interrogatory Nos. 4-8); Ex. 2 (30(b)(6) Dep. Tr.) at 227:15-229:8. Thus, any determination based on the presence of synthetic ingredients is common to all class members.

*Third*, the Matthews Expert Report shows a majority of consumers who viewed the "NATURAL" claim on the Products' labels believed that the Products contained only natural ingredients, as opposed to "both natural and synthetic ingredients" or "only synthetic ingredients." *See* Matthews Expert Report, ¶¶ 33-34; 193-194. As with the previous evidence, these findings apply to all consumers and thus, provide common evidence.



Based on these facts, the jury could determine: a) that reasonable consumers believe the "NATURAL" representation on the Product label means the Products do not contain synthetic ingredients; and b) that the presence of synthetic ingredients rendered the label misleading to the reasonable consumer. Critically, for the present motion, both of these questions are objective thereby rendering a common answer, and all of this evidence is common to all class members.

### c. The "NATURAL" Claim on the Product Label Is Material to Reasonable Consumers

Under the CLRA,[4] "[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Holt v. Noble House Hotels & Resort, LTD*, 2018 WL 5004996, at *6 (S.D. Cal. Oct. 16, 2018) (Anello, J.) (quoting *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 892 (Cal. 2011)) (granting motion for class certification). "Plaintiffs are 'not required to prove that the challenged [natural] statements were the sole or even the predominant or decisive factor influencing the class members' decisions to buy the challenged products.'" *McMorrow v. Mondelēz International, Inc.*, 2021 WL 859137, at *13 (S.D. Cal. Mar. 8, 2021) (certifying class). Rather, "Plaintiffs 'need only make an objective showing of a probability that a significant portion of the relevant consumers acting reasonably could be misled by the challenged statements.'" *Id.*

"A plaintiff does not need to demonstrate individual reliance." *Hilsley*, 2018 WL 6300479, at *11. In fact, "the question of individual consumer preferences and beliefs is irrelevant to the question of materiality and reliance under California consumer protection laws." *Broomfield v. Craft Brew Alliance*, 2018 WL 4952519, at *18 (N.D. Cal. Sept. 25, 2018) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)) (granting motion for class certification). "[T]he question at this stage is not whether Plaintiffs have successfully proven materiality, but rather whether the materiality inquiry is a common question susceptible to common proof that helps to establish predominance." *Id.* at *11. "Therefore, [this] cause[ ] of action requiring an objective test make[s] such claims amenable to class actions." *Hilsley*, 2018 WL 6300479, at *11.

---

[4] As discussed previously, "[j]ustifiable reliance by the plaintiff is not an element of the [GBL] claim." *Koch*, 967 N.E.2d at 676.

1    "In sum, because deception and materiality under the CLRA are objective

2    questions, they are ideal for class certification because they will not require the court

3    to investigate class members' individual interaction with the challenged products."

4    *McMorrow*, 2021 WL 859137, at *13 (internal edits and quotations omitted).

5         The same holds true here, where the jury will be asked to determine whether

6    a reasonable consumer would consider the "NATURAL" claim on the Products'

7    labels to be material. This objective answer is common to all class members. *See*

8    *Broomfield*, 2018 WL 4952519, at *11 ("Because materiality is an objective

9    question based on the reasonable consumer, it is common to the class and 'ideal for

10   certification.'").

11        Moreover, there is common evidence to support a finding that the

12   "NATURAL" representation on the Product label was material.

13        *First*, per the Matthews Report, 87.7% of consumers prefer to purchase a

14   Vitamin Fruit Bites product that contains only natural ingredients. *See* Matthews

15   Report, ¶ 73, 196. The Matthews Report also shows that between 76.9% and 82.5%

16   of consumers "would prefer to purchase a Bayer One a Day Fruit Bites Multivitamin

17   Dietary Supplement that was labeled as 'Natural.'" *See id.* ¶¶ 78, 80, 197.

18        *Second*, Defendant's internal documents and corporate testimony support the

19   fact that consumers seek out products that are labeled as "natural." Defendant's Rule

20   30(b)(6) representative testified that the labels are important and intended to

21   communicate what is in the Products. Moore Decl. Ex. 2 (30(b)(6) Dep. Tr.) at 59:2-

22   17.

23

24                                                                This was all confirmed by

25   Defendant's 30(b)(6) corporate representative. Moore Decl. Ex. 2 at 103:9-104:9,

26   105:11-106:6. Finally, internal emails from the individual in charge of the "Brand"

27   expressed that "Consumers loved those words," *i.e.*, "natural." Moore Decl. Ex. 6.

28

                                                        Case No. 22cv1085

These internal documents, as well as the Rule 30(b)(6) corporate testimony, make clear that Defendant wanted consumers to focus on the "NATURAL" representation on the Products. Critically for the present motion, all of these documents and testimony apply to all class members equally.

*    *    *    *    *

In light of the objective standard, and the above evidence, whether the "NATURAL" representation on the Products' labels is material to consumers is both a common question with a common answer and is supported by common evidence. *See McMorrow*, 2021 WL 859137, at *13 (certifying class, holding that "[t]o be clear, it is the jury who will make the ultimate factual determination on whether the term . . . was material to the reasonable consumer, weighing Plaintiffs' evidence against [Defendant]'s").

### d. There Exists a Common Method for Calculating Damages

At this stage, Plaintiffs need only demonstrate the existence of a viable damages model that makes use of common, class-wide evidence. To this end, "[s]everal courts have rejected [the argument] that the damages model must be conducted prior to class certification." *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 5505052, at *19 (C.D. Cal. Apr. 4, 2023); *Lytle v. Nutramax Lab. Inc.*, 2022 WL 1600047, at *18 n.21 (C.D. Cal. May 6, 2022) ("To the extent defendants contend that plaintiffs' damages model cannot satisfy *Comcast* 'because they have not run their damages models[,]' defendants' argument is unfounded." (citation omitted)); *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 408 n.14 (N.D. Cal. 2021) ("A plaintiff is not required to actually execute a proposed conjoint analysis to show that damages are capable of determination on a class-wide basis with common proof."); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1103 (N.D. Cal. 2018) (granting class certification motion in part where expert proposed to run conjoint analysis damages model but had not yet run it).

Case No. 22cv1085

Here, Plaintiffs' theory of liability is that Defendant misrepresented that the Products are "natural," that is, they do not contain synthetic ingredients, and that this alleged misrepresentation caused consumers to pay a higher price for the Products. To measure the value of an individual product attribute, such as a specific understanding of the label, Plaintiffs' expert, Dr. Ingersoll, proposes a choice-based conjoint survey methodology. *See* Ingersoll Report, ¶¶ 10-31. Dr. Ingersoll's proposed conjoint methodology has been used for decades by academic researchers, industry marketing departments, and government agencies to determine the price premium attributable to particular product attributes, such as label claims. *Id*. at ¶ 21. Choice-based conjoint analysis, which is the specific methodology Dr. Ingersoll will use, is the most widely used type of conjoint survey. *Id*.

Numerous courts have approved choice-based conjoint analysis as a methodology to determine the price attributable to a misrepresentation on a product label. *See, e.g.*, *Hilsley*, 2018 WL 6300479, at *16 (accepting conjoint analysis methodology and certifying class); *Bailey*, 338 F.R.D. at 409 (accepting methodology and certifying class, stating that "[i]n mislabeling cases where the injury suffered by consumers was in the form of an overpayment resulting from the alleged misrepresentation at issue, such as here, courts routinely hold that choice-based conjoint models that are designed to measure the amount of overpayment satisfy *Comcast*'s requirements"); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 575 (N.D. Cal. 2020) (stating "conjoint surveys and analyses have been accepted against *Comcast* and *Daubert* challenges by numerous courts in consumer protection cases challenging false or misleading labels," accepting methodology, and certifying class); *Hadley*, 324 F. Supp. 3d at 1105-06; *Broomfield*, 2018 WL 4952519, at *18-20 (accepting conjoint analysis methodology and certifying class).

Illustrative of this broad-based acceptance, the process presented by Dr. Ingersoll matches that accepted by the court in *Hadley* where "[s]urvey respondents are . . . asked to choose between different sets of product attributes, the responses

- 18 -

Case No. 22cv1085

are aggregated, and statistical methods are then used to determine the value (often termed 'partworth') that consumers attach to each specific attribute." *Hadley*, 324 F. Supp. 3d at 1103. Dr. Ingersoll proposes to use the same methodology where she would ask questions of the participants on different attributes, then the results would be aggregated and analyzed using statistical methods such as hierarchical Bayes regression analysis. *See* Matthews Report ¶¶ 16-19, 26, 29, 30.

To account for supply-side factors, Dr. Ingersoll proposes using prices from Circana sales data that reflect real-world prices and quantities for the Products sold in California and New York during the proposed class period. *See id.* at ¶¶ 12, 26; Moore Decl. Ex. 16. Courts have repeatedly accepted this method to account for the supply-side factors in conjoint analysis. *See, e.g.*, *Hadley*, 324 F. Supp. 3d at 1105 ("[C]ourts have also found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period."); *Hilsley*, 2018 WL 6300479, at *15 (same); *Broomfield*, 2018 WL 4952519, at *19 (same); *McMorrow*, 2021 WL 859137, at *15 (same).

### 3. **Typicality**

Typicality requires "the claims or defenses of the representative parties" to be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality is a 'permissive standard[ ].'" *Johnson*, 72 F.4th at 888. It "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Typicality is satisfied if the

named plaintiff's claims stem from the same practice or course of conduct that forms the basis of the class's claims and are based upon the same legal remedial theory. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Plaintiffs' claims are typical of those of the other Class members. They, like all class members: a) purchased the Products during the class period that Defendant had labeled as natural; b) believed, based on the "NATURAL" representation on the Product's label, that the Products did not contain synthetic ingredients; c) paid a price premium based on the "NATURAL" representation; and d) seek damages. *See* Moore Decl. Exs. 18, 19 (Plaintiffs' responses to Defendant's Interrogatory No. 1); Second Am. Compl. ¶¶ 8-13, Prayer for Relief, ECF No. 85. The "NATURAL" representation appeared on the front labels of all Products, and all of the vitamins were synthetic throughout the class period. *See* Moore Decl. Ex. 7 (response to Interrogatory No. 25); Exs. 4-11, Exs. 8-15; Ex. 17 (response to Interrogatory Nos. 4-8); Ex. 2 (30(b)(6) Dep. Tr.) at 227:15-229:8.

Courts routinely find similar facts sufficient for typicality. *See, e.g.*, *Bailey*, 338 F.R.D. 404-06; *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *4 (N.D. Cal. Aug. 3, 2017) ("Pettit's claims are typical of the putative class claims; she claims to have purchased Freshmates under the apprehension they were appropriate for flushing down the toilet, and now alleges she is owed restitution of the price premium she paid for an ostensibly 'flushable' product because P&G's 'flushable' label was false."); *Sharpe*, 2021 WL 3721392, at *4 (finding typicality where "[e]ach product contained the same 'made with aged vanilla' claim, and plaintiffs will use the same evidence and arguments as other class members to show that this claim was materially misleading").

Differences in the specific purchase experience of the plaintiffs do not defeat typicality. *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 326 F.R.D. 592, 609 (N.D. Cal. 2018) (rejecting argument that the plaintiff was not typical because she likes the flavor and taste of the product and still would have

Case No. 22cv1085

bought it even without the "Made From Real Ginger" claim); *Pettit*, 2017 WL 3310692, at *4 ("Pettit's personal experience with [the product at issue] is not crucial to her typicality."); *Sharpe*, 2021 WL 3721392, at *4 (referring to differences in "exposure" to the deceptive claim as "another attempt to sneak in reliance"). As this Court has recognized:

> [W]hether class members saw the disclosure and their responses to the disclosure is irrelevant because 'a plaintiffs' [sic] individual experience with the product is irrelevant where, as here, the injury under the UCL . . . and CLRA is established by an objective test. Specifically, this objective test states that injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that 'members of the public are likely to be deceived.'"

*Holt*, 2018 WL 5004996, at *6 (quoting *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011)). As a result, individual inquiries into Plaintiffs' understanding of the "NATURAL" representation on the Products' labels do not affect their typicality.

### 4. **Adequacy**

Rule 23(a)(4) requires that the class representative and class counsel "fairly and adequately protect the interests of the class." In the Ninth Circuit, this is satisfied if (1) neither the representative plaintiff nor her counsel "have any conflicts of interest with other class members," and (2) the representative plaintiff and her counsel will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiffs have no conflict with other class members. They will fairly and adequately protect the interests of the members of the Class because it is in their best interest to prosecute the claims alleged in the complaint to obtain full compensation due to all members for the illegal conduct of which they complain. They stand in the same shoes as all other members of the Class, seek the same relief as other Class members, and have a common interest in obtaining all of the relief sought.

Case No. 22cv1085

Further, Plaintiffs have remained engaged in the litigation. Each has responded to multiple discovery requests and sat for full-day depositions. Moore Decl. at ⁋ 23. These have required their efforts to gather documents, discuss responses with Plaintiffs' counsel, as well as review those responses. *Id.* Plaintiffs have both shown a clear understanding of the products at issue and the underlying claims (*i.e.*, deception based on the presence of synthetic ingredients). *Id. See Schwartz v. System Software Associates, Inc.*, 138 F.R.D. 105, 107 (N.D. Ill. 1991) (holding class representative was adequate where she understood the nature of the suit and "responded to written discovery, produced documents, and attended her deposition"); *see also Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 107 (S.D.N.Y. 1993) ("Also, it is familiar law that a class representative need not have personal knowledge of the evidence and the law involved in pursuing a litigation. It is the lawyer's task to prepare the case both on the facts and the law"); *Allen v. Similasan Corp.*, 306 F.R.D. 635, 646-47 (S.D. Cal. 2015); 1 Newberg and Rubenstein on Class Actions § 3:67 (6th ed.) ("A proposed representative's knowledge of the case need not be robust")*.*

Plaintiffs' counsel also will adequately protect the interests of the class. Plaintiffs have retained counsel highly experienced in class-action litigation. *See* Moore Decl. Ex. 20. Reese LLP does not have any conflicts of interest with members of the class. Moore Decl. at ¶ 24. Both Plaintiffs and their counsel have and will prosecute the action vigorously on behalf of the class. Moore Decl. at ¶10-11. Plaintiffs have sufficiently established adequacy of representation. *See, e.g.*, *Bailey*, 338 F.R.D. at 406.

**B. THE CLASS SATISFIES FEDERAL RULE OF CIVIL PROCEDURE 23(B)(3)**

**1. Predominance**

**a. Common Questions Predominate**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v.*

1  *Bouaphakeo*, 577 U.S. 442, 453 (2016); *accord Owino v. CoreCivic, Inc.*, 60 F.4th

2  437, 444 (9th Cir. 2022). "This calls upon courts to give careful scrutiny to the

3  relation between common and individual questions in a case." *Tyson Foods, Inc.*,

4  577 U.S. at 453. "An individual question is one where members of a proposed class

5  will need to present evidence that varies from member to member, while a common

6  question is one where the same evidence will suffice for each member to make a

7  prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.*

8  (internal quotations and edits omitted). "The predominance inquiry asks whether the

9  common, aggregation-enabling, issues in the case are more prevalent or important

10 than the non-common, aggregation-defeating, individual issues." *Id.* "When one or

11 more of the central issues in the action are common to the class and can be said to

12 predominate, the action may be considered proper under Rule 23(b)(3) even though

13 other important matters will have to be tried separately, such as damages or some

14 affirmative defenses peculiar to some individual class members." *Id.* "If common

15 questions present a significant aspect of the case and they can be resolved for all

16 members of the class in a single adjudication, then a clear justification exists for

17 handling the dispute on a representative rather than on an individual basis, and the

18 predominance test is satisfied." *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 479 (S.D.

19 Cal. 2015) (internal quotations omitted).

20      Predominance "begins . . . with the elements of the underlying cause of

21 action."[5] *Olean*, 31 F.4th at 665. As this Court has previously held, the CLRA

22 "allows Plaintiff[ ] to establish the required elements of reliance, causation, and

23 damages by proving that Defendant[ ] made what a reasonable person would

24 consider a material misrepresentation." *Holt*, 2018 WL 5004996, at *9 (quoting

25

26

27 [5] "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove

28 that each 'element of her claim is susceptible to classwide proof.'" *Amgen*, 568 U.S. at 469 (cleaned up).

Case No. 22cv1085

*Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014)). Under the CLRA, the "focus is on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Clay*, 2018 WL 4283032, at *6. The same reasonable consumer standard applies to the GBL claims. *See Sharpe*, 2021 WL 3721392, at *1. When the question is whether a reasonable consumer would likely be misled by the challenged deceptive representation, and the question can be answered through common proof, then common issues predominate.

As discussed above in the commonality section, ***all*** of the elements of the CLRA and GBL claims ask common questions and can be answered with common evidence. There are no individualized questions that infect, much less predominate, this inquiry. As such, this element is met.

## 2. <u>Superiority</u>

The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(b)(3) enumerates four factors to consider on "superiority": "(A) the interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

"Where damages suffered by each putative class member are not large, [the first] factor weighs in favor of certifying a class action." *Holt*, 2018 WL 5004996, at *11. Here, the Products cost between $4.38 and $15.99. *See* Moore Decl. Ex. 16. As Judge Posner rightfully stated,

> The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for

Case No. 22cv1085

$30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all.

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

"The second and third factors also weighs in favor of certification because concentrating the litigation in a single forum is appropriate where the recovery of an individual plaintiff will be small and because [Plaintiffs are] not aware of any other litigation concerning [the Products]." *Holt*, 2018 WL 5004996, at *11.

"Fourth, because the [GBL] and CLRA are essentially indistinguishable in terms of proof, 'the cases would not appear unmanageable based on the legal theories and claims at issue.'" *Id.*

Simply put, certification is appropriate because this case can be tried in a more efficient and practical manner on a class-wide basis. *See Zeiger v. WellPet LLC*, 2021 WL 756109, at *23 (N.D. Cal. Feb. 26, 2021) ("Based on the amount at stake for any individual, it would be impracticable for them to carry out a full consumer protection case, especially given the expertise required in this one. A class action, on the other hand, would permit a jury to determine essentially all of the important questions in the suit on a class-wide basis."); *Bailey*, 338 F.R.D. at 411 (finding class action treatment superior); *Fitzhenry-Russell*, 326 F.R.D. at 616 (same); *Krommenhock*, 334 F.R.D. at 567 (same); *McMorrow*, 2021 WL 859137, at *17 (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for class certification certifying the California and New York Classes. Plaintiffs further request that the Court appoint (1) Plaintiff Bowling as the class representative for the California Class on the CLRA claim, (2) Plaintiff Drake as the class representative for the New York Class on the GBL claims, and (3) Reese LLP as counsel for the Classes.

Case No. 22cv1085

Date: February 20, 2024

Respectfully submitted,

**REESE LLP**

 */s/ Charles D. Moore*

Charles D. Moore (admitted *pro hac vice*)
121 N. Washington Ave., 4th Floor
Minneapolis, MN 55401
Telephone: 212-643-0500
Facsimile: 212-253-4272
Email: *cmoore@reesellp.com*

**REESE LLP**

Michael R. Reese (SBN 206773)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

**REESE LLP**

George V. Granade (SBN 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272
Email: *ggranade@reesellp.com*

*Counsel for Plaintiffs Doniece Drake and
Deborah Bowling and the Proposed Class*

Case No. 22cv1085