1  Jonathan F. Cohn* (NY 2972578)
2  Shannon Grammel* (KS 29105)
3  LEHOTSKY KELLER COHN LLP
   200 Massachusetts Ave., NW
4  Washington, DC 20001
   Email: jon@lkcfirm.com
5  Tel.: (512) 693-8350
6  Fax: (512) 727-4755

7  *Attorneys for Defendant*
8  (*Additional Attorneys for Defendant on Subsequent Page*)

9
10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| DONIECE DRAKE, DEBORAH BOWLING, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER HEALTHCARE LLC,<br><br>Defendant. | Case No. 3:22-cv-01085-MMA-JLB<br><br>**DEFENDANT BAYER HEALTHCARE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br><span style="color:red">**REDACTED - FILED PROVISIONALLY UNDER SEAL**</span><br><br>Date: Not set<br>Time: Note set<br>Courtroom: 3C<br>Judge: Honorable Michael M. Anello<br><br>Complaint filed: July 25, 2022<br><br>Trial Date: Not Set |

*Additional Counsel for Defendant*

Katherine C. Yarger* (CO 40387)
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Tel: (512) 693-8350
Fax: (512) 727-4755

Alexis Swartz* (TX 24122045)
LEHOTSKY KELLER COHN LLP
408 W. 11th St. 5th Floor
Austin, TX 78701
Email: alexis@lkcfirm.com
Tel: (512) 693-8350
Fax: (512) 727-4755

* Admitted *pro hac vice*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................. 1

II.  BACKGROUND ................................................................................ 2

    A. The Natural Fruit Bites ........................................................... 2

    B. Procedural Background ............................................................ 3

III. ARGUMENT ...................................................................................... 7

    A. Plaintiffs Cannot Meet the Requirements of Rule 23(A) ......................... 7

        1. Plaintiffs Are Inadequate and Atypical ........................................ 8

        2. Plaintiffs' Counsel Are Inadequate ............................................. 11

        3. Plaintiffs Have Not Shown Commonality ..................................... 13

    B. Certification: Under Rule 23(b)(3) Should Be Denied ........................... 14

        1. Common Liability Questions Do Not Predominate ..................... 14

            a. Plaintiffs Cannot Show Classwide Deception ................. 14

            b. Plaintiffs Cannot Show Classwide Materiality ................ 17

        2. Common Damages Questions Do Not Predominate ..................... 20

IV.  CONCLUSION .................................................................................. 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,

5      No. ML 13-2438 PSF, 2017 WL 2559615 (C.D. Cal. 2017) ............................ 17

6

*Adams v. Target Corp.*,

7      No. CV 13-5944-GHK, 2014 WL 12558858 (Nov. 25, 2014) ......................... 22

8

*Al Haj v. Pfizer Inc.*,

       No. 17-CV-6730, 2020 WL 1330367 (N.D. Ill. Mar. 23, 2020) ....................... 10

9

*Algarian v. Maybelline, LLC*,

10      300 F.R.D. 444 (S.D. Cal. 2014) ..................................................................... 15

11

*Arabian v. Sony Elec.'s, Inc.*, No. 05-cv-1741, 2007 WL 627977 (S.D.

12      Cal. Feb. 22, 2007) ............................................................................................ 7

13

*Astiana v. Kashi Co.*,

14      291 F.R.D. 493 (S.D. Cal. 2013) ..................................................................... 17

15

*Bodner v. Oreck Direct, LLC*,

16      No. C 06-4756 MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007)............... 11

17

*Cabrera v. Bayer Healthcare, LLC*,

18      No. 2:17-cv-08525-JAK-JPR (C.D. Cal. Feb. 23, 2024) ................................. 10

19

*Coleman v. Quaker Oats Co.*,

20      232 F.3d 1271 (9th Cir 2000) ............................................................................ 6

21

*Comcast Corp. v. Behrend*,

       569 U.S. 27 (2013) ................................................. 7, 14, 20, 22, 23, 24

22

*Ebner v. Fresh, Inc.*,

23      838 F.3d 958 (9th Cir. 2016) ........................................................................... 14

24

*Edwards v. First Am. Corp.*,

25      798 F.3d 1172 (9th Cir. 2015) ........................................................................... 7

26

*Ellis v. Costco Wholesale Corp.*,

27      657 F.3d 970 (9th Cir. 2011) ............................................................................ 7

28

*In re Facebook, Inc. PPC Advert. Lit.*,
    282 F.R.D 446 (N.D. Cal. 2012) ........................................................................ 11

*Gonzalez v. Chattem, Inc.*,
    No. 23-cv-00102-HSG, 2023 WL 810192 (N.D. Cal. Nov. 21, 2023) .............. 13

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................... 1, 8

*Harris v. Vector Mktg. Corp.*,
    753 F. Supp. 2d 996 (N.D. Cal. 2010) ................................................................ 8

*Holt v. Noble House Hotels & Resort, LTD*,
    No. 17-CV-2246, 2018 WL 5004996 (S.D. Cal. Oct. 16, 2018) ....................... 10

*Jones v. ConAgra Foods, Inc.*,
    No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) . 14, 15, 16,
    17, 19

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................... 11

*Miller v. Fuhu Inc.*,
    No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. Dec. 1,
    2015) ................................................................................................................. 22

*Miller v. Sanofi Consumer Healthcare*,
    No. 22 CIV. 574 (LLS), 2023 WL 112553 (S.D.N.Y. Jan. 5, 2023) ................ 13

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F. Supp. 3d 1050 (C.D. Cal. 2015) ........................................................... 24

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ............................................................. 17

*Pierce-Nunes v. Toshiba Am. Info. Sys. Inc.*,
    No. CV 14-7242-DMG, 2016 WL 5920345 (C.D. Cal. June 23,
    2016) ................................................................................................................. 17

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
    84 F.3d 629 (2d Cir. 1996) ........................................................................ 14, 17

*Saavedra v. Eli Lilly & Co.*,
   No. 2:12-CV-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18,
   2014) ................................................................................................................ 24

*Stiner v. Brookdale Senior Living, Inc.*,
   665 F. Supp. 3d 1150 (N.D. Cal. 2023) ............................................... 14

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ................................. 14, 15, 17

*Viveros v. VPP Grp., LLC*,
   No. 12-CV-129-BBC, 2013 WL 3733388 (W.D. Wis. July 15,
   2013) ................................................................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................... 7, 8, 14

*Werdebaugh v. Blue Diamond Growers*,
   No. 12-cv-02724, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)...... 22

*White v. Experian Info. Sols.*,
   993 F. Supp. 2d 1154 (C.D. Cal. 2014) ............................................... 12

*Woodhams v. Glaxosmithkline Consumer Healthcare Holdings (US) LLC*,
   No. 18-CV-3990, 2024 WL 1216595 (S.D.N.Y. Mar. 21, 2024) ....... 9

*Zakaria v. Gerber Prod. Co.*,
   755 F. App'x 623 (9th Cir. 2018) ....................................................... 23

**Other Authorities**

7 C.F.R. § 205.301(b) ............................................................................... 20

21 C.F.R. § 101.9(k)(4) ............................................................................. 3

Fed. R. Civ. P. 23 ..................................... 7, 8, 11, 12, 13, 14, 20, 23, 24

iv

## I.     INTRODUCTION

The motion for class certification is meritless and contradicted by Plaintiffs' own survey expert. Plaintiffs claim the word "Natural" on the Natural Fruit Bites label caused consumers to think "that the Products are natural and do not contain synthetic ingredients." ECF 85 ¶ 26. Plaintiffs argue the word is misleading because "the vitamins in these multivitamins are synthetic," and the word made consumers believe "the Products contained only natural ingredients." Mot, ECF 90-1 at 1-2, 7, 14.

But Plaintiffs' survey expert, Dr. Andrea Lynn Matthews, conclusively disproved these claims. Her "gold standard" survey showed there is "***no evidence that any consumers are confused by the word 'natural' on the Bayer label***." Ex. B at 201:1-5; 207:17-20 (emphasis added). The word has "***no impact whatsoever***" on consumers' perceptions of the ingredients. *Id.* at 221:17-20. She reiterated this finding ***58 times*** during her deposition. *See* Ex. A. She also agreed that Plaintiffs' class certification motion misrepresented her report and needed to be corrected. Ex. B at 322:16-18.

Because Plaintiffs' motion is baseless, misleading, and contradicted by Plaintiffs' own expert, Bayer has served on Plaintiffs' counsel a Rule 11 motion. Bayer intends to file that motion should Plaintiffs continue prosecuting this frivolous class action. Regardless, the Court should deny class certification for two reasons.

*First*, Plaintiffs are inadequate and atypical, and so are their counsel. Both named plaintiffs present Bayer with "defenses unique to [them]." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Neither bought the product. Neither had any evidence of purchase, and neither could remember much about it. But, even if Plaintiffs had bought the product, neither was deceived. Plaintiff Drake had no expectation the product was 100 percent natural. Ex. C at 134:8-13, 20-22. She "had no idea what percentage . . . was natural." *Id*. at 70:9-11. It "was not

something [she] thought about" or "cared about." *Id.* at 70:12-14; 23-25. Plaintiff Bowling does not care at all about natural vitamins. She takes a multivitamin product with synthetic vitamins, as well as a host of artificial colors, and she could not recall what basis, if any, she had for accusing Bayer of fraud. Ex. D at 195:12-16.

Likewise, Plaintiffs' counsel are inadequate. They made material misrepresentations throughout this lawsuit (and in other cases), including by distorting the results of Dr. Matthews' survey and by misrepresenting to Judge Burkhardt their communications with their client. They also failed to communicate discovery preservation obligations with their clients, and they misspelled their own client's name.

*Second*, Plaintiffs have not established that common questions predominate. Dr. Matthews testified that consumers are unquestionably heterogenous—they look at and care about different things. For instance, some might not even notice the word "Natural," and those who do notice it likely understand it differently.

More importantly, Dr. Matthews proved there was *no* deception. She found "no evidence that the word 'natural' confused a single soul anywhere in this world." Ex. B at 210:2-5 ("Q. You have no evidence that the word 'natural' confused a single soul anywhere in this world, right? A. Correct."). Her report and deposition testimony are very clear: Consumers are not confused by the word "Natural" on Bayer's label. Plaintiffs' own expert defeats the class.

## II.    BACKGROUND

### A.    The Natural Fruit Bites

Bayer launched a new multivitamin product—the Natural Fruit Bites—around March 2020. Ex. E at 30:24-25. Consumers had expressed a desire for a chewable multivitamin product without the "baddies" typically found in gummies, such as artificial flavors, colors, and sweeteners. *Id*. at 128:4-6. Bayer listened and delivered. The Natural Fruit Bites were a line of chewable multivitamins that were *over 95*

*percent natural*. Ex. G at 15. They were made primarily of apples, Ex. E at 217:9-11; Ex. I, and they contained none of the "baddies." As the label states, there were no artificial flavors, colors, or sweeteners in the product; nor were there any GMOs, gelatin, or high-fructose corn syrup. *See* E at 128:4-6; Ex. I.

Like virtually every multivitamin on the market, the vitamins themselves—the micronutrients in the product—are synthetic.[1] Bayer's research showed that consumers do not care about whether the vitamins are synthetic. Ex. E at 206:12-14 ("Q: To what extent . . . do consumers care about synthetic vitamins? A: Not at all, as far as I can tell."); *see also id.* at 206:17-20. The Food and Drug Administration also prohibits companies from saying that natural vitamins are better than synthetic vitamins. 21 C.F.R. § 101.9(k)(4). And it would be nearly impossible to make a commercially viable multivitamin without synthetic vitamins. Ex. E at 214:13-19 (noting "stability and consistency issues," "product quality issues," an "enormous" serving size, and a hefty price).

Bayer offered the Natural Fruit Bites from March 2020 until they were discontinued in March 2022. Ex. H at 5-6. There is no dispute that—for the entire time the product was on the market—it was over 95% natural. Nor is there any dispute that the only ingredients in the product that were not "natural" were the synthetic vitamins.

**B.    Procedural Background**

The original Plaintiff in this case, Edison Corpuz, sued Bayer on July 25, 2022, after the product was already off the market. ECF 1. He was subsequently dismissed from the case, and Plaintiffs Doniece Drake and Deborah Bowling were added. The original complaint and the subsequent amended complaints allege that

---

[1] Plaintiffs have used the term "vitamins" to cover vitamins and minerals, *see* Mot., ECF 90-1 at 2, so Bayer does not distinguish them here.

Bayer's labeling of the Natural Fruit Bites as "Natural" was misleading because the products contain synthetic vitamins. *Id*. ¶¶ 15-16; ECF 69 ¶¶ 21-22; ECF 85 ¶¶ 18-19.[2] Allegedly, "a reasonable consumer understands Defendant's natural claims to mean that the Products are natural and do not contain synthetic ingredients." ECF 85 ¶ 26. Plaintiffs further allege that the word "Natural" was "material" to consumers, and that they would only purchase multivitamin products that were all natural. ECF 85 ¶¶ 9-13; *see also* Ex. J at 6; Ex. K at 6 (discovery responses).

The Plaintiffs' depositions made clear that neither had a basis to bring this lawsuit. As an initial matter, neither named Plaintiff appears to have bought the product. Neither one produced any proof of purchase, and neither could identify basic attributes of the product. The Natural Fruit Bites had a distinct look and flavor: they were square, brownish red, apple-flavored chewable vitamins, yet neither named Plaintiff could remember much, if anything. Ex. P. For instance, Plaintiff Drake testified as follows:

Q. What colors of the fruit bites did you get?

A. I don't remember.

. . .

Q. Do you have any recollection what shape it was?

A. No.

. . .

Q. And what flavor did you get?

A. That I do not remember.

Ex. C at 135:1-136:1. Later she said: "The only thing that I can remember is that they were round. That's it. A little round, like, about this big maybe. That's it." *Id.* at

---

[2] The operative complaint is the Second Amended Complaint, ECF 85.

136:14-19. But the fruit bites were not round; they were square.[3] Defendant Bowling thought the product was "multiflavored" and multicolored," both of which are incorrect. Ex. D at 30:20-21; 30:9; 30:18.

Both Plaintiffs also revealed they were not deceived and that the word "Natural" was not material. Plaintiff Drake testified that she did not ever think the product was 100 percent natural. She "had no idea what percentage . . . was natural." Ex. C at 70:9-11. It simply "was not something [she] thought about" or "cared about." *Id.* at 70:12-14; 23-25. Plaintiff Bowling likewise does not care whether her vitamins are all-natural. All the vitamin products she recalled taking contain synthetic vitamins. She could not "remember" why she never shopped for all-natural multivitamins. Ex. D at 109:1-9, 236:21-238:25, 257:9-11. Plaintiff Bowling also had no recollection of any basis for suing Bayer. *Id.* at 140:4-7 ("Q. And sitting here today, you can't identify what it is that makes the Bayer product unnatural under your definition of natural, correct? A. Right.").

Despite Plaintiffs' own testimony undercutting their claims, Plaintiffs' counsel moved for class certification, relying on a report by Dr. Matthews that further undercuts their case. Dr. Matthews performed a purported "gold standard" survey to assess whether removing the word "Natural" "changed consumer expectations regarding the type of ingredients found in the Products." ECF 90-23 ¶¶ 17, 103. Plaintiffs' class certification motion makes no mention of this survey. It is no mystery why. Dr. Matthews found—in no uncertain terms—that "*for all consumers of vitamin dietary supplements, there is no statistical impact of removing a 'Natural' label from the product on consumer belief that the Product only contained natural ingredients*." *Id.* ¶ 37 (emphasis added).

---

[3] Plaintiff Drake likely said "round" because she was describing the red oval pill featured in the Plaintiffs' counsel's advertisement recruiting class members. Ex. Q.

Dr. Matthews discussed the results of her survey throughout her deposition, testifying—***58 times***—that she had no evidence "of a single consumer on Earth who thinks the vitamins in the product are natural." Ex. B at 122:7-10. There is no evidence that the word "Natural" or "any other element of the Bayer label" caused any confusion. *Id*. at 255:6-10. A complete compilation of this testimony is provided in Exhibit A.

Dr. Matthews informed Plaintiffs' counsel of her results showing no consumer deception. Ex. B at 256:13-21. She said her findings and opinions were "very clear," *id*. at 276:23-277:2, and was surprised to learn that Plaintiffs' counsel had not mentioned those results in their class certification motion. She agreed that "the lack of statistical significance of this particular test should be communicated." *Id.* at 223:5-18. She accordingly believed that the class certification motion needed to be corrected. *Id.* at 322:13-18 (Q. "[Y]ou agree that an errata at least needs to be filed, correct? A. Yes."). Plaintiffs' damages expert, Dr. William Ingersoll, fared no better, testifying that he will not measure any relevant damages to this litigation. *See infra* Part B.2.

On April 19, 2024, Defendant served a Rule 11 motion on Plaintiffs. A few hours after that—and less than one business day before this opposition brief was due—Plaintiffs filed an "errata," attempting to correct their class certification motion. ECF 93. This "errata," however, does not correct the misleading statements in Plaintiffs' class certification motion. Plaintiffs *still* fail to mention that Dr. Matthews found that the word "Natural" does not cause consumer confusion. Ex. B at 255:6-10. The motion also fails to mention that the named Plaintiffs' own testimony shows they were not deceived.[4]

---

[4] To the extent Plaintiffs' errata evinces any intent to change the theory of this case, that would be improper. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93

## III.    ARGUMENT

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). Rule 23(a) requires a plaintiff to show "(1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (citation omitted). After that, a plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The plaintiff seeking class certification "bears the burden of establishing" that these requirements are satisfied. *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). Plaintiffs have not carried that burden.

### A.    PLAINTIFFS CANNOT MEET THE REQUIREMENTS OF RULE 23(A).

Courts must conduct a "rigorous analysis" to ensure "that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 351 (citation omitted). Failure to meet any element of Rule 23(a) precludes certification. *Arabian v. Sony Elec.'s, Inc.*, No. 05-cv-1741, 2007 WL 627977, at *6 (S.D. Cal. Feb. 22, 2007). Plaintiffs here fail to meet several.

---

(9th Cir 2000) (improper for plaintiffs to introduce new theories of liability late in litigation after discovery). Plaintiffs' motion makes clear that this case is, and always has been, about the word "Natural." Mot., ECF 90-1 at 2 ("Despite this front-label statement that the Products are 'NATURAL,' *all* of the vitamins in these multivitamins are synthetic."); *id*. at 12 ("[T]he deception *at issue* is the 'NATURAL' representation on the Products' labels.") (emphasis added)).

### 1.    Plaintiffs Are Inadequate And Atypical.

A class representative must present claims or defenses that are "typical of the claims or defenses of the class" and must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). Class certification should thus be denied "if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [her].'" *Hanon*, 976 F.2d at 508 (citation omitted). Likewise, "the honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (cleaned up). Both Plaintiffs fall short of these prerequisites for three reasons.

*First*, it is unlikely that either Plaintiff is part of a class of "consumers . . . who ***purchased*** the Products." ECF 85 ¶ 38 (emphasis added). Neither appears to have bought the product. *Dukes*, 564 U.S. at 348-49 ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (cleaned up)).

The Natural Fruit Bites had a distinct shape, color, and taste—they are square, brownish red, and apple-flavored. Ex. P. Plaintiff Drake testified that she took the product for a year, yet she could not remember a single attribute of the product. Ex. C at 134:23-25. She thought the product was "round." *Id*. at 136:14-19. She could not remember its flavor, texture, or color. *Id*. at 135:1-136:16. She could not remember where she purchased it. *Id*. at 137:2-20. She saved no bottles or receipts. *Id*. at 136:23-137:1. She frequently called it the wrong name, often referring to it as "One A Day Women's Gummies—fruit bites." *Id*. at 11:14-19. Likewise, Plaintiff Bowling testified that she took Natural Fruit Bites for a "couple of years" and bought them "once a month." Ex. D at 30:23-25. But she misidentified them as "multiflavored" and "multicolored." *Id*. at 30:9, 30:18. She also did not produce any

receipts to prove purchase. *Id*. at 38:5-7, 165:10.

Such disputes of fact about whether the named Plaintiffs purchased the product will distract from the litigation on the merits. Plaintiffs "would have to devote substantial attention to overcoming their damaging testimony and addressing concerns regarding their credibility on material facts, including whether they even purchased" the product. *Woodhams v. Glaxosmithkline Consumer Healthcare Holdings (US) LLC*, No. 18-CV-3990, 2024 WL 1216595, at *11-12 (S.D.N.Y. Mar. 21, 2024) (denying certification given plaintiffs' "inconsistent testimony" and "lack of evidence" that they purchased product at issue).

*Second*, assuming Plaintiffs did in fact purchase the product, they disavowed the core allegations underlying their claims. Plaintiff' testimony showed that the word "Natural" was not material to their purchasing decisions and that they were not deceived by the word "Natural."

Plaintiff Drake admitted that she never thought the product was 100 percent natural and that she never cared about the word "Natural" on the label:

Q. You had no idea what percentage it was natural, right?

A. Correct.

Q. It was not something you thought about at the time, was it?

A. Correct. . . .

Q. It was not something on your mind, right?

A. Correct.

Q. It was not something you cared about, correct?

A. At the time. Correct.

Ex. C at 70:9-25. It was not until the day of her deposition that Plaintiff Drake ever thought about whether the product was 100 percent natural. *See id.* at 134:8-13, 20-22 ("Q. And until this deposition, whether it's 100 percent natural didn't cross your mind, right? A. Correct.").

9

Plaintiff Bowling likewise admitted that the word "Natural" is not deceptive or material to her. She could not identify what it is that makes the Natural Fruit Bites "unnatural." Ex. D at 140:4-7 ("Q. And sitting here today, you can't identify what it is that makes the Bayer product unnatural under your definition of natural, correct? A. Right."). She could not identify a *single* vitamin product she has purchased that is "Natural." She admitted to taking a large, turquoise CVS vitamin that contained synthetic vitamins and artificial colors. *Id*. at 236:21-238:25. She still regularly buys several multivitamin products that all contain synthetic vitamins. *Id*. at 257:9-11 ("Q. Every other product that you've taken since [the Natural Fruit Bites], every other vitamin product, has synthetic ingredients, right? A. Right.").

Named plaintiffs are inadequate where, as here, they have disavowed their own claims. *See Cabrera v. Bayer Healthcare, LLC*, No. 2:17-cv-08525-JAK-JPR, ECF 224 at 7 (C.D. Cal. Feb. 23, 2024) (purported named plaintiff challenging "Complete" multivitamins was inadequate because she testified she did not rely on the word "Complete" when purchasing, repeatedly purchased similar vitamins, and had no specific understanding of "Complete"); *see also Al Haj v. Pfizer Inc.*, No. 17-CV-6730, 2020 WL 1330367, at *1-4 (N.D. Ill. Mar. 23, 2020) (consumer plaintiff challenging "Maximum Strength" cough syrup labeling inadequate where she testified to having purchased product with no understanding it contained greater concentrations of active ingredients than other cough syrups). Even if it were *possible* for Plaintiffs to overcome their self-defeating testimony, "[a] defense unique to a proposed class representative need not be a sure bet to defeat adequacy; rather, it need only be 'arguable.'" *Al Haj*, 2020 WL 1330367, at *4 (internal citation omitted).[5]

---

[5] Plaintiffs' reliance on *Holt v. Noble House Hotels & Resort, LTD*, No. 17-CV-2246, 2018 WL 5004996 (S.D. Cal. Oct. 16, 2018), is inapt. *Holt* was not a deceptive

*Third*, Plaintiffs' deposition testimony revealed "undeniable and overwhelming ignorance regarding the nature of this action, the facts alleged, and the theories of relief." *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (denying class certification where it was "clear from the record that plaintiff's counsel, and not plaintiff, is the driving force behind this action"). Plaintiff Drake had no idea whom she was suing, whether this case involved other products, whether there was another plaintiff, or where this case was pending. Ex. C at 25:11-23. She could not recall ever seeing the complaint, and, in fact, her attorney misspelled her name in the First Amended Complaint. *Id.* at 55:19-25; 56:4-15. Plaintiff Bowling could not identify any basis she had for accusing Bayer of fraud and bringing this lawsuit. Ex. D at 195:12-16 ("Q. So when you accused Bayer of fraud, what basis, if any, did you have for thinking these chemical processes are unnatural? . . . [A.] I don't know. I can't remember."). Plaintiffs know "essentially nothing" about their case. *In re Facebook, Inc. PPC Advert. Lit.*, 282 F.R.D 446, 454 (N.D. Cal. 2012). They should not be allowed to serve as class representatives.

## 2. Plaintiffs' Counsel Are Inadequate.

The Reese Law Firm, and lead counsel Mr. Charles Moore, should not be permitted to litigate this action on behalf of a class. *See* Fed. R. Civ. P. 23(a); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (Rule 23(a)'s adequacy requirement applies to class counsel). Plaintiffs' counsel have not been forthcoming with the Court, have failed to adhere to their discovery obligations, and have submitted expert reports that refute their own clients' claims. Plaintiffs'

---

labeling case, and there was no dispute over purchase or reliance. *Id.* at *1, 5-6. Here, both purchase and reliance are disputed as to both Plaintiffs.

counsel has been so egregious that Defendant's counsel has taken the rare step[6] of preparing and serving upon Plaintiffs' counsel a Rule 11 motion that Defendant will file with this Court should Plaintiffs refuse to withdraw their class certification motion.

*First*, Plaintiffs' counsel have demonstrated a pattern of being less than forthcoming. *See White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1170 (C.D. Cal. 2014) ("[A] lawyer's unethical conduct, both before and during the litigation in question, is relevant to determining whether counsel is adequate under Rule 23."); *Viveros v. VPP Grp., LLC*, No. 12-CV-129-BBC, 2013 WL 3733388, at *11 (W.D. Wis. July 15, 2013) (counsel who made misrepresentation to the court inadequate).

Mr. Moore previously misrepresented to Judge Burkhardt that he had authority to settle on behalf of the original named Plaintiff, Edison Corpuz, in this action, when he in fact did not. Earlier in this litigation, Judge Burkhardt had set an Early Neutral Evaluation Conference, and Mr. Corpuz failed to appear. ECF 40. Accordingly, Judge Burkhardt set a show cause hearing, and required Mr. Corpuz to appear. ECF 41. Mr. Corpuz testified that he had had no contact with Mr. Moore for nearly a year (since the original complaint had been filed). Ex. L at 3:21-4:4. Yet, during this time when he had no contact with his client, Mr. Moore had represented to the Court that he had authority to settle on Mr. Corpuz's behalf. *Id*. at 9:23-10:14. Judge Burkhardt was "very concerned" given that Mr. Moore's representations to the Court "***could not possibly be true***." *Id*. (emphasis added).

Judge Burkhardt is not the only one who agrees Plaintiffs' counsel has made misrepresentations to this Court. Plaintiffs' own expert, Dr. Matthews, testified that Plaintiffs' counsel needed to correct the record with an "errata at least." Ex. B at

---

[6] Defendant's counsel has never before served a Rule 11 motion. They did so here only because of the extreme nature of Plaintiffs' misrepresentations in this case.

322:13-18. She agreed that if "one wanted to understand . . . 'Consumer Perception of the Natural Claim,'" a topic addressed in the motion, "[they] can't just look at the test group" but would also need "to look at the control group." *Id*. at 268:11-16. But the class certification motion hides the ball. *Id*. at 268:17-19. She felt that "the lack of statistical significance of this particular test should be communicated," so she agreed that "an errata at least needs to be filed" correcting the motion. *Id*. at 223:16-18, 322:16-18.[7]

*Second*, Plaintiffs' counsel have failed to live up to their most basic discovery obligations, and have likewise failed to keep their clients apprised of their discovery obligations. Plaintiff Bowling testified that her counsel never informed her of her discovery obligations to preserve documents. Ex. D at 165:21-23 ("Q. Did your lawyers tell you you had a legal obligation to preserve documents? A. No."). Plaintiff Bowling's discovery responses failed to disclose that she took other multivitamin products, all of which contained synthetic vitamins. *Id*. at 49:24-25, 54:21-25. Plaintiff Drake also testified that she took other multivitamin products containing synthetic vitamins and which she failed to disclose in her initial discovery responses. Ex. C at 199:19-200:3.

Plaintiffs' counsel are inadequate to represent a class.

### 3.  Plaintiffs Have Not Shown Commonality.

Rule 23(a)(2) requires a showing there are one or more "questions of law or fact common to the class." Plaintiffs have not made that showing. *See infra* Part B.

---

[7] Such unscrupulous litigation tactics are hardly a surprise from the Reese Law Firm. *See, e.g.*, *Gonzalez v. Chattem, Inc.*, No. 23-cv-00102-HSG, 2023 WL 810192, at *4 (N.D. Cal. Nov. 21, 2023) (reminding the Reese Law Firm to "carefully consider their Rule 11 obligations" when named plaintiff did not purchase the product at issue); *Miller v. Sanofi Consumer Healthcare*, No. 22 CIV. 574 (LLS), 2023 WL 112553, at *2 (S.D.N.Y. Jan. 5, 2023) (Plaintiff, represented by the Reese Law Firm, "misrepresent[ed]" product label).

13

**B.    CERTIFICATION UNDER RULE 23(b)(3) SHOULD BE DENIED.**

Plaintiffs need "evidentiary proof" to satisfy "at least one of the provisions of Rule 23(b)." *Comcast*, 569 U.S. at 33. Plaintiffs' efforts fail because they cannot show that common questions predominate for either deception or materiality and because they have no viable damages model.

**1.    Common Liability Questions Do Not Predominate.**

Rule 23(a)(2)'s (commonality) and (b)(3)'s (predominance) requirements are related. "What matters" under subsection (a)(2) "is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Rule 23(b)(3) requires "evidentiary proof" that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Comcast*, 569 U.S. at 33 (quoting Rule 23(b)(3)). "Rule 23(b)(3)'s predominance requirement is more stringent than Rule 23(a)(2)'s commonality requirement." *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014). Neither is satisfied here.

**a.    Plaintiffs Cannot Show Classwide Deception.**

Plaintiffs allege that whether the word "Natural" is "likely to deceive a reasonable consumer" is subject to classwide proof. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1044 (C.D. Cal. 2018); *see S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996); Mot., ECF 90-1 at 12-14. But "the question of likely deception does not automatically translate into a class-wide question." *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1205 (N.D. Cal. 2023) (citation omitted). There must be "more than a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)

(citation omitted). Rather, Plaintiffs must offer evidence that it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Townsend*, 303 F. Supp. 3d at 1044. That evidence does not exist here.

*First*, Plaintiffs' expert has offered no proof of deception whatsoever— classwide or otherwise. Dr. Matthews opined that consumers are *not* deceived by the product's use of the word "Natural." Her report concluded that "there is no statistical impact of removing a 'Natural' label from the product on consumer belief that the Product only contained natural ingredients." ECF 90-23 ¶ 37. Put otherwise, the word "Natural" does not influence consumer beliefs. In her deposition, Dr. Matthews more than doubled down on this result. All told, Dr. Matthews testified **58 times** that she has "no evidence that any consumer is likely to be deceived or confused by the word 'natural' on the label." Ex. B at 238:4-11; *see also* Ex. A. She has "no evidence that the word 'natural' by itself, when popped on and off, makes a difference on this label." Ex. B at 220:5-12; *see id.* at 210:2-5 (similar). Because there is "objective evidence showing that there was a substantial number of class members who were not misled by the ['Natural] claim," deception "is not subject to common proof on a classwide basis." *Algarian v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014).

*Second*, the depositions have provided no evidence of common proof of deception. Plaintiffs themselves testified that they were not deceived. *See supra* p.9-10. And they also testified as to their differing definitions of the word "Natural." Plaintiff Drake believes "something is not natural if it's made in a factory." Ex. C at 73:9-11. But Plaintiff Bowling understands "Natural" to include "natural chemical process[es]," regardless of where they occur. Ex. D at 188:16-17. "[T]here is no fixed meaning for the word 'natural.'" *Jones*, 2014 WL 2702726, at *17.

This tracks Plaintiffs' experts' testimony. Both experts testified that

consumers are "heterogeneous." Ex. B at 126:2; Ex. F at 133:3-10. "Some" review the supplement facts on the back of the label, and "some do not."[8] *See* Ex. B at 192:14-18. Plaintiffs' experts had no opinion on how many view the supplement facts and how many do not. *Id.* at 23:16-21; Ex. F at 105:22-25. Some consumers recognize the vitamins listed in the supplement facts as synthetic, and some do not. *See, e.g.*, Ex. D at 214:3-5. Again, Plaintiffs' expert had no opinion on how many. Ex. B at 24:13-16 ("Q. So you have no opinion on the percentage of consumers who recognize those vitamins as being synthetic, right? A. Correct."). Some notice the word "Natural," and "some" may not. *Id.* at 314:11-13. Once again, neither expert had any opinion on how many. *Id.* at 21:4-7 ("Q. You have no opinion on whether consumers notice the word 'natural' on the product's label before buying it, correct? A. Correct."); Ex. F at 105:17-19 ("Q. And you don't have an opinion about the percentage of consumers who notice the word 'natural' on a label, right? A. I do not.").

Consumers also do not share a common understanding of the word "Natural." As Dr. Matthews explained, "literature shows that consumers have different definitions of the word natural." Ex. B at 125:24-126:1. "Some consumers believe that the word 'natural' means minimally processed. Some consumers believe that the word 'natural' means coming from a natural source originally. Some consumers conflate the word 'natural' with the word 'organic.'" *Id.* at 126:6-10. And "[t]hose are just a few examples." *Id.* at 126:10-11. Other "consumers are skeptical of natural claims" or "think it's just a marketing term." *Id.* at 131:24-132:4. And still others "think natural does not mean anything at all." *Id.* at 132:5-6. "Consumers think a

---

[8] Plaintiff Bowling testified that she "read[s] the ingredients on everything. When [she's] in the grocery store, it takes [her] hours to grocery shop because [she] read[s] everything." Ex. D at 75:22-24.

wide variety of things." *Id.* at 127:23-24.

The lack of a common understanding of the meaning of "Natural" makes this case inappropriate for class certification. *See, e.g.*, *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML 13-2438 PSF, 2017 WL 2559615, at *8-9 (C.D. Cal. 2017) ("Predominance . . . fails for lack of a common definition for the term 'energy.'"); *Pierce-Nunes v. Toshiba Am. Info. Sys. Inc.*, No. CV 14-7242-DMG, 2016 WL 5920345, at *7 (C.D. Cal. June 23, 2016) (plaintiff could not "demonstrate with common proof, even under a reasonable consumer standard, that each class member had the same understanding of the product labeling"). And courts have denied class certification in cases like this one involving the term "Natural." *See, e.g.*, *Jones*, 2014 WL 2702726, at *14 (finding predominance lacking where there was "no fixed meaning for the word 'natural'"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 507-08 (S.D. Cal. 2013) (denying class certification in part because "food producers, consumers, and the Food and Drug Administration all fail to define 'natural' in any definite manner'); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978-79 (C.D. Cal. 2013) (similar). This Court should do the same here. Neither Plaintiffs' expert report, nor their own testimony, nor any other document provides proof of deception, much less common proof. The absolute lack of common proof on this central element of Plaintiffs' claims renders this case inappropriate for class certification.

### b.    Plaintiffs Cannot Show Classwide Materiality.

Materiality requires Plaintiffs to "demonstrate that the statements were a factor in consumers' purchasing decision." *Townsend*, 303 F. Supp. 3d at 1045; *see S.Q.K.F.C.*, 84 F.3d at 636-37. A survey "needs 'to assess whether the challenged statements were in fact material to [consumers'] purchases, as opposed to, or in addition to, price, promotions, retail positioning, taste, texture or brand recognition.'" *Townsend*, 303 F. Supp. 3d at 1045. If it turns out that a statement is

17

"not material as to all class members," then "the issue of reliance would vary from consumer to consumer and the class should not be certified." *Id*. at 1043. That variance exists here.

*First*, Plaintiffs' own testimony makes clear that the word "Natural" is not material to them when they make purchasing decisions. Plaintiff Drake testified that whether the product was 100% natural "was not something [she] cared about." Ex. C at 70:23-25; *id.* at 134:20-22. Plaintiff Bowling could not identify a *single* vitamin product she has purchased that is "Natural." Ex. D at 257:9-11 ("Q. Every other product that you've taken since [the Natural Fruit Bites], every other vitamin product, has synthetic ingredients, right? A. Right."). In fact, there is not a single person who has been deposed in this litigation who has expressed a material preference for "natural" versus synthetic vitamins, including Plaintiffs' own experts. Ex. B at 182:8-14 (whether a vitamin is natural or synthetic does not matter to Dr. Matthews); Ex. F at 122:19-21 (similar testimony from Dr. Ingersoll). With materiality lacking as to even the named Plaintiffs, this case is not amenable to classwide adjudication.

*Second*, the report of Dr. Ran Kivetz also proves that the word "Natural" on the product's label is not material to consumers. Dr. Kivetz conducted four empirical consumer materiality surveys. Ex. M ¶¶ 24-25. Each survey used a control—randomly assigning half of the participants to a test group that saw the bottle with the word "Natural" and the other half assigned to a control group that saw a revised bottle without the word "Natural." *Id.* ¶ 26. Dr. Kivetz then asked participants their likelihood of purchase. *Id.* ¶ 40. Those results were clear and definitive: there is ***no statistically significant difference*** between test and control participants regarding the likelihood of purchasing the product. *Id.* ¶¶ 21, 55. The word "Natural" makes no difference. Across all four surveys, consumers' purchase intentions were similar whether shown a bottle with "Natural" versus one without the word. *Id.* ¶ 55.

18

Dr. Matthews did not test materiality, as she admitted in her deposition. Ex. B at 278:16-24. Her preference surveys tested just that—*preference*, not *materiality*. That a consumer may prefer—by a miniscule amount—one product over another does not mean the difference between the products is material. *See, e.g.*, *Jones*, 2014 WL 2702726, at *15 ("A misrepresentation is material 'if a reasonable man would attach *importance* to its existence or nonexistence in determining his choice of action in the transaction in question.'" (emphasis added) (citation omitted)).

Further, Dr. Matthews did not even test whether consumers prefer natural *vitamins* to synthetic vitamins. Her survey asked consumers about products with "natural *ingredients*" and "synthetic ingredients." As Dr. Matthews recognized, natural ingredients include far more than just natural vitamins. They include "natural flavors" and "natural colors," Ex. B at 284:17-25, which consumers indisputably care about. Dr. Matthews admitted she has "no idea if anyone has a preference for natural vitamins." *See id*. at 285:21-23.

Dr. Matthews's surveys suffer from numerous other flaws, as discussed in Dr. Kivetz's report. If need be, and at the appropriate time, Bayer will file a *Daubert* motion discussing these flaws. But, at this time, none of them is relevant because Dr. Matthews admitted she did not test materiality and did not test whether consumers have a preference for natural vitamins.

*Third*, consistent with their pattern of being less than forthcoming, *see supra* p.12-13, Plaintiffs' counsel misrepresent the evidence. Plaintiffs suggest that Bayer's Rule 30(b)(6) witness, Ms. McCarthy, indicated that consumers seek out vitamins that are all-natural. *See* Mot., ECF 90-1 at 16-17. She did not. Ms. McCarthy testified—repeatedly—that consumers *do not* care about natural vitamins. *See* Ex. E at 80:13-14 ("Generally speaking, I've never heard of consumers car[ing] about synthetic vitamins."); *id*. at 81:11-13 (similar); *id*. at 206:12-14 (similar); *id*. at 206:17-20 (similar); *id*. at 206:23-207:4 (similar). What consumers *do* care about

19

is that multivitamin products are free of the "baddies" found in other products—such as artificial flavors, colors, sweeteners. *See id.* at 83:14-16 ("[W]hat consumers are looking for when they say natural it is free of those baddies."); *id.* at 93:13-15 (similar); *id.* at 94:11-13 (similar); *id.* at 102:10-12 (similar); *id.* at 211:2-4 (similar).

Plaintiffs' counsel also misrepresent the views of Bayer's "regulatory department." Mot., ECF 90-1 at 5. No member of Bayer's regulatory team voiced any concern that consumers would be confused by the product's use of the word "Natural." ███████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████ For instance, a company can call a product "organic" if it is 95% organic. 7 C.F.R. § 205.301(b).██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████

### 2. Common Damages Questions Do Not Predominate.

Plaintiffs seeking class certification under Rule 23(b)(3) must also provide a model that "measure[s] only those damages attributable to" their theory of liability. *Comcast*, 569 U.S. at 35. In this case, that theory of liability is that the product's use of the word "Natural" causes consumers to believe that the product does not contain synthetic vitamins. ECF 85 ¶ 19 (listing the synthetic ingredients in the product as cholecalciferol, niacinamide, pyridoxine hydrochloride, D-biotin, and potassium iodide); *see* Mot., ECF 90-1 at 12 ("[T]he deception at issue is the 'NATURAL' representation on the Products' labels."). Plaintiffs have provided no model that measures damages attributable to this theory.

*First*, as a matter of common sense, there cannot possibly be damages. Any proof of damages attributable to the word "Natural" would necessarily require proof that consumers (1) noticed the word "Natural" and (2) were deceived by the word "Natural." But neither Dr. Matthews nor Dr. Ingersoll has offered any proof that consumers notice the word "Natural" on the label. *See* Ex. B at 21:4-7 ("Q. You have no opinion on whether consumers notice the word 'natural' on the product's label before buying it, correct? A. Correct."); Ex. F at 105:17-19 ("Q. And you don't have an opinion about the percentage of consumers who notice the word 'natural' on a label, right? A. I do not."). Both of their reports specifically drew consumers' attention to the word in a way that does not occur in the marketplace. *See* Ex. B at 313:11-13 ("Q. And you told the consumers to focus on the word 'natural,' right? A. Yes."); Ex. F at 108:12-15 (Q. "[Y]ou're just telling consumers that a hypothetical product will either have only natural ingredients or natural and synthetic ingredients, right? A. Those are the proposed levels currently, yes."). Moreover, as discussed, Dr. Matthews' survey shows that consumers were ***not*** deceived by the word "Natural." *See supra* p.5-6.

But, even assuming consumers were deceived by the word "Natural" on the product's label, there cannot logically have been damages because that word did not drive the price of the product. Bayer never charged any price premium for the word "Natural." ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

1 ██████████████████████████████████████████

2 ████████████████

3      *Second*, Plaintiffs have not offered any common proof of classwide damages.

4 All Plaintiffs have offered is a "copy and paste" report from Dr. Ingersoll that took

5 a meager "two or three hours" to compile showing that it is possible to do a

6 "conjoint" analysis. Ex. F at 60:10, 61:6-11. A "conjoint" is a type of survey that

7 measures consumers' preference for different product attributes. Ex. M ¶ 217. But

8 class certification requires more than the mere possibility of doing a conjoint. Courts

9 weighing class certification are "obligated to do more than rubberstamp a proposed

10 damages class merely because a plaintiff's expert purports to have used a peer-

11 reviewed methodology." *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724,

12 2014 WL 7148923, at *14 (N.D. Cal. Dec. 15, 2014); *Miller v. Fuhu Inc.*, No. 2:14-

13 CV-06119-CAS-AS, 2015 WL 7776794, at *22 (C.D. Cal. Dec. 1, 2015) (denying

14 class certification where proposed conjoint had "few concrete details" and was "too

15 vague"); *Adams v. Target Corp.*, No. CV 13-5944-GHK , 2014 WL 12558858, at *3

16 (Nov. 25, 2014) (rejecting conjoint from expert who had them accepted in other

17 cases).

18      The relevant question for class certification purposes is whether the plaintiff

19 has offered "evidentiary proof" of a viable measure of classwide damages. *Comcast*,

20 569 U.S. at 27. On that question, Dr. Ingersoll was clear: he does not yet have "a

21 professional opinion" on whether "there's a price premium consumers place on

22 products with only natural ingredients versus natural and synthetic ingredients." Ex.

23 F at 99:9-15. His proposed conjoint "hasn't been run" or even "designed yet." *Id.* at

24 100:18-19; *see also id.* at 34:10-12. He has "no data" and no "opinion yet on the

25 survey." *Id.* at 34:19, 56:17-19.

26      Dr. Ingersoll's report also fails to provide classwide proof of damages because

27 it "identifies damages that are not the result of the wrong." *Comcast*, 569 U.S. at 37.

28

Dr. Ingersoll's proposed conjoint analysis refers to "natural ingredients" writ large rather than "natural vitamins." ECF 90-24 ¶ 26. He therefore has no opinion—and will have no opinion—on Plaintiffs' theory of the case, which is specifically tied to natural *vitamins*. *See* ECF 85 ¶ 19. Dr. Ingersoll agreed that any conjoint he may ultimately run will "not captur[e] the willingness to pay for natural vitamins versus synthetic vitamins." Ex. F at 156:21-22; *id.* at 128:25-129:3 (Q. "[Y]ou are not measuring consumers' willingness to pay for natural vitamins versus synthetic vitamins, correct? A. I can't isolate it on its own, correct."). And he explained that "if people do care about, you know, the colors being natural or synthetic, I mean, that would be picked up" in any price premium he may ultimately find. *Id.* at 155:9-11. Any purported price premium he might find could be explained by preferences for other ingredients not at issue here. *Id.* at 160:1-4 ("I wouldn't know how to attribute the amount that I might find specifically to the vitamin issue as opposed to broadly people not wanting any synthetic ingredients in there at all.").

Rule 23 requires that any purported damages model "measure only those damages attributable to [the plaintiff's] theory." *Comcast*, 569 U.S. at 35. If a model, like Dr. Ingersoll's, does not do that, then "it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*

Similarly, a conjoint analysis cannot prove damages if it does not "reflect supply-side considerations and marketplace realities." *Zakaria v. Gerber Prod. Co.*, 755 F. App'x 623, 624 (9th Cir. 2018). That is precisely the case here. Dr. Ingersoll's proposed conjoint purports to take into account supply-side considerations simply through "the use of real-world price and quantity data." ECF 90-24 ¶ 12. That's it. His proposal does not account for the "but-for" world where the product's label does not have the word "Natural." Ex. M ¶¶ 289-95. It incorrectly solely relies upon historical pricing and quantity data, and incorrectly assumes that Bayer's

23

competitors would not have reacted at all to any drop in demand due to the removal of the word "Natural." *Id.*; *see also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1120-21 (C.D. Cal. 2015) (denying class certification where conjoint ignored supply-side factors); *Saavedra v. Eli Lilly & Co.*, No. 2:12-CV-9366-SVW, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014) (deeming conjoint "highly flawed" because it "look[ed] only to the demand side of the market equation."). For this reason, too, Dr. Ingersoll's proposed conjoint analysis does not suffice to satisfy Rule 23(b)(2)'s "demanding" predominance requirement. *Comcast*, 569 U.S. at 34.

## IV.  CONCLUSION

This Court should deny class certification.

Dated: April 22, 2024                    Respectfully submitted,


                                         */s/ Jonathan F. Cohn*
                                         Jonathan F. Cohn* (NY 2972578)
                                         Shannon Grammel* (KS 29105)
                                         LEHOTSKY KELLER COHN LLP
                                         200 Massachusetts Ave., NW
                                         Washington, DC 20001
                                         Email: jon@lkcfirm.com
                                         Tel.: (512) 693-8350
                                         Fax: (512) 727-4755

                                         Katherine C. Yarger* (CO 40387)
                                         LEHOTSKY KELLER COHN LLP
                                         700 Colorado Blvd., #407
                                         Denver, CO 80206
                                         Email: katie@lkcfirm.com
                                         Tel: (512) 693-8350
                                         Fax: (512) 727-4755

                                         Alexis Swartz* (TX 24122045)
                                         LEHOTSKY KELLER COHN LLP
                                         408 W. 11th St. 5th Floor
                                         Austin, TX 78701
                                         Email: alexis@lkcfirm.com
                                         Tel: (512) 693-8350
                                         Fax: (512) 727-4755

                                         *Attorneys for Defendant*
                                         * Admitted *pro hac vice*.

25