# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

EDISON CORPUZ, DENIECE [sic] DRAKE, DEBORAH BOWLING, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BAYER CORPORATION,

Defendant.

Case No. 3:22-cv-01085-MMA-JLB

VIDEOCONFERENCE DEPOSITION OF

DONIECE DRAKE

DATE: Friday, January 19, 2024

TIME: 9:03 a.m.

LOCATION: Prevail Testimony Management Platform

Shirley, New York 11967

REPORTER: Janet Wallravin

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS EDISON CORPUZ, DONIECE DRAKE, DEBORAH BOWLING:

CHARLES D. MOORE, ESQUIRE
Reese LLP
100 South Fifth Street, Suite 1900
Minneapolis, Minnesota 55402
cmoore@reesellp.com
212-643-0500

ON BEHALF OF PLAINTIFFS EDISON CORPUZ, DONIECE DRAKE, DEBORAH BOWLING:

GEORGE V. GRANADE, ESQUIRE
Reese LLP
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
ggranade@reesellp.com
310-393-0070

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANT BAYER CORPORATION:

JONATHAN F. COHN, ESQUIRE
Lehotsky Keller Cohn LLP
200 Massachusetts Avenue, Northwest
Washington, DC 20001
jon@lkcfirm.com
512-693-8350

ON BEHALF OF DEFENDANT BAYER CORPORATION:

ALEXIS SWARTZ, ESQUIRE
Lehotsky Keller Cohn LLP
919 Congress Avenue
Austin, Texas 78701
alexis@lkcfirm.com
512-693-8350

ON BEHALF OF DEFENDANT BAYER CORPORATION:

KATHERINE C. YARGER, ESQUIRE
Lehotsky Keller Cohn LLP
700 Colorado Boulevard, Suite 407
Denver, Colorado 80206
katie@lkcfirm.com
512-693-8350

deposition today?
A. No.
Q. Do they know you're being deposed today?
A. No.
Q. Have you spoken with any of them about this case you have against Bayer?
A. No.
Q. Do any of them know you have filed a case against Bayer?
A. No.
Q. Have you spoken with any of them about the product at issue?
A. No.
Q. What is the product at issue?
A. One A Day women's gummies -- fruit bites.
Q. Could you say that again?
A. The One A Day women's fruit bites.
Q. Did you say "gummies"?
A. Yeah. Fruit bites.
Q. Okay. Have you done anything to prepare for this deposition today?
A. Yes.
Q. Aside from talking to your attorneys, what did you do?
A. I got rest.

Q. Have you published anything else?
A. No.
Q. What is this lawsuit about?
A. It's about, I believe, the misleading of the ingredients.
Q. Is it about a particular product or products?
A. Yeah, it's about the -- the One A Day for Women's fruit bites.
Q. Do you know who makes the One A Day fruit bites?
A. I believe it's Bayer.
Q. Are you suing Bayer?
A. I don't know.
Q. What other products does this case involve?
A. I don't know.
Q. Do you know if there are other plaintiffs in this case?
A. No.
Q. Do you know where the case is pending, what court it's pending in?
A. No.
Q. Do you know the cases in California?
A. That, I -- I have no idea. I'm sorry.
Q. Have you ever been to California?
A. No.

Q. It's pretty gross at that point, right?
A. Yes.
Q. You wouldn't put that apple in your mouth, would you?
A. No.
Q. You wouldn't swallow it, would you?
A. No.
Q. You'd probably get sick if you did, right?
A. Yes.
Q. You'd probably have some gastrointestinal disorder, correct?
MR. MOORE: Object to form and foundation.
You can answer.
THE WITNESS: Most likely, yes.
BY MR. COHN:
Q. You might have to get hospitalized, right?
A. Most likely, yes.
MR. MOORE: Object to form and -- object to form and foundation.
You can answer.
BY MR. COHN:
Q. You can answer the question, Ms. Drake.
A. Most likely, yes.
Q. Do you know if -- what is the product at issue today?

A. One A Day Women's fruit bites.
Q. Do you know if -- when you bought the product, did you think it had any fruit inside of it?
A. That's what it said on the label.
Q. What fruit did you think was inside of it?
A. That I do not know.
Q. Did you think it had any apples in it?
A. I just read the label, and it said it had fruit in it.
Q. You don't recall it indicating any particular fruit?
A. No.
Q. You recall nothing about apples, correct?
A. I -- I do not know.
Q. How about blackberries? Did you think it had blackberries?
A. I don't know.
Q. Did you think it had grapes?
A. I don't -- I don't know.
Q. Did you think it had watermelon?
A. I don't know.
Q. You had no idea what fruit it had inside, correct?
A. It just said it has -- it was fruit bites, you know.

BY MR. COHN:

Q. Ms. Drake, do you have the FedEx box?

A. Yes.

Q. Could you open the FedEx box?

A. Yes.

Q. Let me know when you opened it. Great. Do you see a binder?

A. Yes.

Q. Can you open the binder?

A. Okay. Yes, it's open.

Q. Can you turn to tab one?

A. Okay. Some of the pages are out of the binder.

Q. Okay. Hopefully, that's not going to be an issue. Do you see on page one, in the middle of the page, it says "In the United States District Court for the Southern District of California"?

A. Yes.

Q. Do you see below that, on the right, it says "First Amended Class Action Complaint"?

A. Yes.

Q. Have you seen this document before?

A. I don't know.

Q. You don't recall?

A. Yeah, I don't remember.

Q. Do you see on the left, it says "Edison Corpuz"?
A. Yes.
Q. Do you see it then says "Deniece [sic] Drake"?
A. Yes. My name is spelled incorrectly.
Q. Did you tell your lawyer how to spell your name?
MR. MOORE: Object to -- object. Privilege. And I'm going to instruct you not to answer that.
BY MR. COHN:
Q. Your name is not Deniece [sic] Drake, is it?
A. Correct.
Q. Do you know any Deniece [sic] Drakes?
A. No.
Q. Let's turn to page seven.
MR. MOORE: Hold -- I'm going to pause.
SESSION MANAGER: Did you want me to present this on the screen? Whoops, sorry.
MR. MOORE: Go ahead, Janet.
SESSION MANAGER: Did you want me to present this on the screen?
MR. COHN: Yes, please.
SESSION MANAGER: Did -- okay. And mark it as Exhibit 1.

BY MR. COHN:
Q. Did you -- possibly? It could have been only 10 percent natural, right?
MR. MOORE: Object to form and foundation.
You can answer.
THE WITNESS: I don't know how much, you know, percentage was it -- you know, it was natural.
BY MR. COHN:
Q. You had no idea what percentage it was natural, right?
A. Correct.
Q. It was not something you thought about at the time, was it?
A. Correct.
Q. It was not something that you researched, right?
A. Correct.
Q. It was not something you talked to people about, right?
A. Correct.
Q. It was not something on your mind, right?
A. Correct.
Q. It was not something you cared about, correct?
A. At the time. Correct.

BY MR. COHN:
Q. You may answer.
A. Yeah, it's almost the same as a lab, in my --
Q. So something is not natural --
A. -- opinion.
Q. I'm sorry, I cut you off. My bad.
A. No, no, it's -- it's okay. It's okay.
Q. So, Ms. Drake, if I understand correctly, in your view, something is not natural if it's made in a factory, correct?
A. Yes.
Q. And you had no idea whether the One A Day fruit bites were made in a factory, right?
MR. MOORE: Object to form and foundation.
You can answer.
THE WITNESS: No. At the time, I just read on the bottle, and it said "natural fruit bites." So that's what I went off of.
BY MR. COHN:
Q. Did you have any idea on how the fruit bites were made?
MR. MOORE: Object to form and foundation.
A. No.
Q. It wasn't something you cared about, right?
MR. MOORE: Object to form.

think whether it was 100 percent natural, did you?
A. I saw that it was certified organic.
Q. That wasn't my question. When you bought the product, you didn't think whether it was 100 percent natural, did you?
A. I didn't know. I just bought it based on what the bottle said.
Q. In fact, you didn't know whether it was 100 percent natural, right?
A. Correct.
Q. In fact, you still don't know whether it's 100 percent natural, right?
A. Correct.
Q. Because you've done no research into that issue, have you?
A. Correct.
Q. You've asked no one about that issue, have you?
A. Correct.
Q. And until this deposition, whether it's 100 percent natural didn't cross your mind, right?
A. Correct.
Q. The Bayer natural fruit bites, you said you consumed them for about a year, right?
A. Yes.

Q. What colors of the fruit bites did you get?
A. I don't remember.
Q. Did you get the red ones?
A. I don't remember.
Q. The green ones?
A. I don't remember.
Q. Do you have any recollection which colors you got?
A. No.
Q. Do you have any recollection what shape it was?
A. No.
Q. Were they the gummy bears?
A. Trying remember the texture. Gummy bears? I don't -- I don't remember if they were gummy bears.
Q. Were they the round ones?
A. It could have been.
Q. Were they the ones that are shaped like clovers?
A. I don't remember.
Q. You have no recollection what they look like, right?
A. No. They might -- they could have been round. That's the only thing I can remember.
Q. And what flavor did you get?

A. That I do not remember.
Q. The banana ones?
A. I don't remember.
Q. Peach?
A. I don't remember.
Q. Blue raspberry?
A. I don't remember.
Q. What is a blue raspberry, anyway?
A. Yeah. I don't -- was it a flavor?
Q. Yeah. But you don't recall if you got the blue raspberry ones, right?
A. I don't recall. I don't remember.
Q. Do you recall anything about the product?
A. The only thing that I can remember is that they were round. That's it. A little round, like, about this big maybe. That's it.
Q. Mm-hm. Nothing else? You remember nothing else about it, right?
A. No.
Q. And you didn't talk about these with anyone, did you?
A. No.
Q. And you didn't save the bottles, right?
A. Correct.
Q. And you didn't save the receipts, right?

A. Right.
Q. Where did you buy these?
A. Oh, boy. Most likely -- most likely any store that sold vitamins or other things.
Q. Yeah. Walmart?
A. No.
Q. Walgreens?
A. Probably.
Q. CVS?
A. Most likely.
Q. Rite Aid?
A. Probably.
Q. Gas stations?
A. No.
Q. What other stores do you buy them at?
A. Let's -- let's guess probably from CVS. Most likely CVS. There wasn't -- I think the Rite Aid is still there. There used to be a route, I think. Did Hurricane Sandy wash it away? I'm sorry. I'm sorry. Most likely CVS, Walgreens, and a Rite Aid.
Q. Okay. Did you ever buy the sour ones?
A. That I -- I don't believe I have.
Q. How about the -- the pear sugary ones?
A. I don't believe I have.
Q. You have no recollection which flavor you

to agreement of the parties in the last five years to the best of her recollection." Okay. I -- I read it.

Q. So you see it says, "see document"?

A. Where?

Q. Under "Supplemental response. Confidential. Plaintiff incorporates." Do you see that response?

A. Okay. That's line 19.

Q. It says "confidential" at line 19, correct?

A. Confidential, line 19. Yes, I see it.

Q. Tell me if I'm reading this correctly. "Plaintiff incorporates the objections and statements above and additionally responds pursuant to agreement to the parties in the last five years, to the best of her recollection, pursuant to 30 -- rule 33D. See document Corpuz 000086." Do you see that?

A. Yes.

Q. Did I read that correctly?

A. Yes.

Q. I'm going to stipulate that that Corpuz 000086 is the sea moss front label. You would agree that this response doesn't mention the folic acid or the magnesium, correct?

A. My response?

Q. Correct.

A. And what was the question again? I'm sorry.

Q. Your response makes no mention of folic acid or magnesium, correct?
A. Correct.
Q. Okay. Let's turn now to the last page, page 12.
A. Okay. Mm-hm. Okay.
Q. Do you see page 12?
A. Yes.
Q. Do you see where it says, "Verification of plaintiff, Doniece Drake"?
A. Yes.
Q. Do you see a little below that there's a signature for Doniece Drake?
A. Yes.
Q. Did you sign that?
A. Yes.
Q. Do you see the paragraph right above your signature?
A. Yes.
Q. Do you see that in that paragraph you were declaring under penalty of perjury of the laws of the United States of America that your supplemental responses were true and correct to the best of your knowledge, information, and belief?
A. Yes.

CERTIFICATE OF ELECTRONIC COURT REPORTER

I, JANET WALLRAVIN, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

JANET WALLRAVIN,
Court Reporter
New York Notary
Commission No. 01WA634911B
Expiration: 10/17/2024

CERTIFICATE OF ELECTRONIC COURT REPORTER

I, JANET WALLRAVIN, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Janet E. Wallravin

JANET WALLRAVIN,
Court Reporter
New York Notary
Commission No. 01WA634911B
Expiration: 10/17/2024

CERTIFICATE OF TRANSCRIBER

I, ANDREA BEILKE, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Andrea Beilke

ANDREA BEILKE,
Certified Electronic
Transcriber, CET-1235
Florida Notary