Jonathan F. Cohn* (NY 2972578)
Shannon Grammel* (KS 29105)
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave., NW
Washington, DC 20001
Email: jon@lkcfirm.com
Tel.: (512) 693-8350
Fax: (512) 727-4755

*Attorneys for Defendant*
(*Additional Attorneys for Defendant on
Subsequent Page*)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DONIECE DRAKE, DEBORAH BOWLING, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-01085-MMA-JLB |
| Plaintiffs, | **DEFENDANT BAYER HEALTHCARE LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS** |
| v. | |
| BAYER HEALTHCARE LLC, | Date: June 24, 2024 |
| Defendant. | Time: 2:30 p.m. |
|  | Courtroom: 3C |
|  | Judge: Honorable Michael M. Anello |
|  | Complaint filed: July 25, 2022 |
|  | Trial Date: Not Set |

*Additional Counsel for Defendant*

Katherine C. Yarger* (CO 40387)
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Tel: (512) 693-8350
Fax: (512) 727-4755

Alexis Swartz* (TX 24122045)
LEHOTSKY KELLER COHN LLP
408 W. 11th St. 5th Floor
Austin, TX 78701
Email: alexis@lkcfirm.com
Tel: (512) 693-8350
Fax: (512) 727-4755

* Admitted *pro hac vice*.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.    INTRODUCTION.................................................................................1

II.   BACKGROUND...................................................................................2

III.  ARGUMENT .......................................................................................7

  A.   Plaintiffs had no basis to file their Motion for Class Certification. ..................8

    1.   Plaintiffs' expert confirms that consumers are not deceived by the product's use of the word "Natural."....................................................................8

    2.   Plaintiffs' testimony and evidence show they neither bought nor were deceived by the product.........................................................................10

  B.   Plaintiffs' counsel has exhibited a pattern of lack of diligence. .....................12

IV.   CONCLUSION...................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Estate of Blue v. County of Los Angeles*,
   120 F.3d 982 (9th Cir. 1997) ............................................................ 12

*Byrnes v. Lockheed Martin Corp.*,
   257 F. App'x 34 (9th Cir. 2007) ....................................................... 10

*Byrnes v. Lockheed-Martin, Inc.*,
   No. C-04-03941 RMW, 2005 WL 3555701 (N.D. Cal. Dec. 28,
   2005) ................................................................................................. 10

*Compass Bank v. Morris Cerullo World Evangelism*,
   104 F. Supp. 3d 1040 (S.D. Cal. 2015) ............................................ 13

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ............................................................................ 8

*Copple v. Astrella & Rice, PC*,
   281 F. App'x 675 (9th Cir. 2008) ..................................................... 12

*Franklin v. Pinnacle Ent., Inc.*,
   No. 4:12-CV-307 CAS, 289 F.R.D. 278 (E.D. Mo. Dec. 28, 2012) ................. 13

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005) ....................................................... 8, 12

*Lewis v. Casey*,
   518 U.S. 343 (1996) .......................................................................... 10

*Rachel v. Banana Republic, Inc.*,
   831 F.2d 1503 (9th Cir. 1987) ............................................................ 7

*Surowiec v. Cap. Title Agency, Inc.*,
   790 F. Supp. 2d 997 (D. Ariz. 2011) ................................................ 13

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir.1990) .............................................................. 7

**Other Authorities**

Fed. R. Civ. P. 11(b) ................................................................................ 10

1

Fed. R. Civ. P. 26(a)(2)(B).........................................................................................12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The class certification motion and class action complaint are frivolous. Plaintiffs egregiously misrepresented the evidence, including their own expert's opinions and the named Plaintiffs' testimony. Worse, the misrepresentations are not simply due to a lack of diligence. Plaintiffs' expert informed Plaintiffs' counsel about her "very clear" findings and opinions, Ex. B at 276:23-277:1, and counsel simply chose to tell the Court the opposite of what she said. For three reasons, this Court should impose sanctions under Federal Rule of Civil Procedure 11.

First, Plaintiffs' survey expert—Dr. Andrea Lynn Matthews—testified there is "***no evidence*** that any consumers are confused by the word 'natural' on the Bayer label." *Id.* at 207:17-20 (emphasis added). Plaintiffs rely on this survey expert in claiming the word "Natural" misled consumers, but Dr. Matthews unequivocally determined the word has "***no impact whatsoever***" on consumers' perceptions of the ingredients. *Id.* at 230:13-17 (emphasis added). Plaintiffs hide the ball and misrepresent Dr. Matthews' conclusion, which she reiterated 58 times in her deposition: her "gold standard" survey showed the word "Natural" does not cause any consumer confusion. 141:9-11, 218:16-20 (no evidence word "caused anyone in the world to be confused"); *see also* Ex. A (compilation of all the times Dr. Matthews testified that there was no evidence of consumer confusion over the word "Natural").

Second, neither named Plaintiff was deceived. Indeed, neither presented any evidence she ever bought the product, and neither could recall what it looked or tasted like. But even if they had bought the product, they were not deceived. Plaintiff Doniece Drake admitted she had no "expectation" the product was 100 percent natural. Ex. C at 209:21-210:2. The thought never "cross[ed] [her] mind," *id*. at 134:20-22, and she never "cared" whether the product was all natural. *Id*. at 70:23-25. Plaintiff Deborah Bowling's testimony similarly revealed she was never deceived.

Third, Plaintiffs' counsel knew about these fatal flaws to their case and chose to ignore them. They knew they had no basis to pursue this lawsuit. They knew their own expert found no evidence of confusion. But instead of dismissing their class action complaint, they filed a frivolous class certification motion, blatantly misrepresenting the evidence. The motion argues that the survey evidence shows that consumers were deceived when, in fact, the exact opposite is true. And the motion never acknowledges that the named Plaintiffs themselves revealed they were not deceived. Unfortunately, this is part of a pattern of behavior throughout this case and other cases filed by the same counsel.

Accordingly, the Court should impose sanctions under Rule 11, dismissing Plaintiffs' class action complaint and awarding Bayer its attorneys' fees.

## II.   BACKGROUND

**A.** Bayer's Natural Fruit Bites were a chewable multivitamin launched in March 2020 and discontinued in March 2022. Ex. F at 5-6. They had a distinctive color (brownish red), taste (apple), and shape (flat square) because they were made from real apples. *See* Ex. M. The Natural Fruit Bites were over 95 percent natural, and the fruit was all natural. Ex. G at 15.

It is undisputed that the product contained none of the "baddies" consumers seek to avoid, such as artificial colors, sweeteners, or flavors. Ex. E at 79:19-21. The only ingredients in the product that were not natural were the vitamins and minerals themselves. As with almost all multivitamins on the market, these were synthetic. Ex. G at 5-7.

**B.** The original Plaintiff in this lawsuit, Mr. Edison Corpuz, filed a class action complaint on July 25, 2022. ECF 1. According to Mr. Corpuz, a reasonable consumer understands the word "Natural" to mean the product was all-natural and does not contain any synthetic ingredients. *Id.* ¶ 23. Mr. Corpuz voluntarily dismissed his claims, ECF 84, but two other Plaintiffs were added: Doniece Drake and Deborah Bowling. ECF 85. These Plaintiffs similarly alleged that the word "Natural" is

1  misleading because of the synthetic vitamins in the product. *Id.* ¶ 26. They seek to

2  represent New York and California classes and allege violations of New York General

3  Business Law and the California Consumer Legal Remedies Act. *Id.* ¶¶ 38, 41-80.

4      **C.** Both Plaintiffs were deposed. Their testimony revealed that neither ever

5  purchased the product. Neither Drake nor Bowling produced any receipts, bottles, or

6  other proof of purchase. Ex. H at 6; Ex. I at 6. And neither could remember basic

7  information about the product, such as its distinctive appearance or taste. For instance,

8  Ms. Drake testified as follows:

9          Q. What colors of the fruit bites did you get?

10         A. I don't remember.

11         . . .

12         Q. Do you have any recollection what shape it was?

13         A. No.

14         . . .

15         Q. And what flavor did you get?

16         A. That I do not remember.

17  Ex. C at 135:1-136:1. Later she said: "The only thing that I can remember is that they

18  were round. That's it. A little round, like, about this big maybe. That's it." *Id.* at

19  136:14-16. The product, however, is square. Ex. M. Ms. Drake was not describing

20  Bayer's Natural Fruit Bites but instead, it seems, the little oval pill in the attorney

21  advertisement she received from Plaintiffs' counsel recruiting her into the case. Ex.

22  N. Curiously, Plaintiffs' counsel did not include a picture of the Natural Fruit Bites in

23  the advertisement but rather some other unidentified product.

24         Similarly, Ms. Bowling could not remember much about the product: "I – I

25  don't remember what they – what they look like or what they – what colors they

26  were." Ex. D at 30:20-21. She thought the "gummies" were "multicolored," and

27

28

"multi-flavored"—even though the product was brownish red and apple-flavored. Ex. D at 24:3, 30:9-10, 18.[1]

Plaintiffs' testimony also showed, even if they had bought the product, they were not deceived by the word "Natural" on the label. Ms. Drake testified that, when she purchased the product, she did not think it was 100 percent natural and had no expectation it would be 100 percent natural. Ex. C at 70:9-11 ("Q. You had no idea what percentage it was natural, right? A. Correct."); *id.* at 134:8-13, 20-22 ("Q. And until this deposition, whether it's 100 percent natural didn't cross your mind, right? A. Correct."); *id.* at 209:21-24 ("Q. You didn't have an expectation of whether it was 20 percent natural or 100 percent natural, right? A. I just thought it was natural. I didn't know the percentage of it."). Nor did Ms. Drake care whether the product was 100 percent natural. *Id.* at 70:23-25 ("Q. [What percentage was natural] was not something you cared about, correct? A. At that time. Correct."); *see also id.* at 210:3-8, 211:21-212:2.

Ms. Bowling was not deceived either. Although she claimed she cared about natural vitamins, every vitamin product she ever bought contained synthetic vitamins. *See* Ex. D at 257:9-11 ("Q. Every other product that you've taken since [the Natural Fruit Bites], every other vitamin product, has synthetic ingredients, right? A. Right."). In fact, the day of the deposition, she was taking a big, turquoise CVS pill that contained not only synthetic vitamins but also three artificial colors. *Id.* at 236:21-238:25. She could not "remember" why she never shopped for an all-natural product. *Id.* at 109:1-9.

**D.** Despite the testimony of the named Plaintiffs, their counsel moved for class certification on February 20, 2024. ECF 90. The motion relies heavily on the expert report and survey of Dr. Matthews—but only by misrepresenting her conclusions. *See* Ex. J, ECF 90-23.

_____

[1] Although she did "think they were square," she "c[ould]n't remember exactly." Ex. D at 29:19-20.

Dr. Matthews opined that consumers are *not* deceived by the product's use of the word "Natural." Dr. Matthews found that the word "Natural" has **no effect at all** on consumers' beliefs regarding the types of ingredients (natural or synthetic) in the product. She tested two versions of the Natural Fruit Bites' label, one with the phrase "Fruit Is the First Ingredient" and one without.[2] *Id.* ¶ 16. For each version, she tested the original label with the word "Natural" and an edited "control" label that omitted the word "Natural." *Id.* ¶ 17. This controlled survey, Dr. Matthews explained, would determine whether the word "Natural" "changed consumer expectations regarding the type of ingredients found in the Products." *Id.*

Her survey results proved that it did not. For the first version of the label (with "Fruit Is the First Ingredient"), 55.6% of respondents shown the original label with the word "Natural" believed the product contained only natural ingredients. *Id.* ¶ 33. That number *increased* to 58.9% when the word "Natural" was removed. *Id.* ¶ 35. For the second version of the label (without "Fruit Is the First Ingredient"), 60.4% of respondents shown the original label with the word "Natural" believed the product contained only natural ingredients. *Id.* ¶ 34. That number decreased only slightly to 56.3% when the word "Natural" was removed. *Id.* ¶ 36. The decrease, Dr. Matthews determined, was not statistically significant. These results led Dr. Matthews to conclude that, "for all consumers of vitamin dietary supplements, ***there is no statistical impact of removing a 'Natural' label from the product on consumer belief that the Product only contained natural ingredients***." *Id.* ¶ 37 (emphasis added).

Plaintiffs conveniently ignored this conclusion in their class certification motion. Memo in Support of Mot. for Class Cert., ECF 90-1, at 7. Claiming the word "Natural" is "deceptive," Plaintiffs make no mention of Dr. Matthews' opinion that

---

[2] Bayer started shipping the original version of the label, with "Fruit Is the First Ingredient" in March 2020. ECF 90-9 at 4-6. Bayer started shipping the revised version of the label, without "Fruit Is the First Ingredient" in November 2021. *Id.* Plaintiffs have made no allegations relating to the original label's "Fruit Is the First Ingredient" representation.

5

there was no deception at all. They ignore the control group and Dr. Matthews' actual findings. Instead, Plaintiffs brazenly claim that "the Matthews Expert Report shows a majority of consumers who viewed the 'NATURAL' claim on the Products' labels believed that the Products contained only natural ingredients." *Id.* at 14.

**E.** Dr. Matthews reiterated her findings during her deposition. She testified that ***she has no evidence "of a single consumer on Earth who thinks the vitamins in the product are natural*.**" Ex. B at 122:7-10. She reiterated that she used a control group to measure the impact of the word "Natural" on consumer perceptions, which is the "gold standard" for assessing causation in deceptive advertising. *Id.* at 141:12-14. Her control revealed that there is no evidence that the word "Natural" has any effect on consumer's perception of the ingredients in the product. *Id.* at 218:16-20 ("So . . . you have . . . no evidence whatsoever the word 'natural' caused anyone in the world to be confused, right? A. Correct."); 220:13-15 ("Q. You take the word 'natural,' it has no impact, right? A. Correct."); 221:17-20 ("Q. . . . So we can agree for this product, for this label, the word 'natural' has no impact whatsoever, whether it's label A or label B, correct? A. It did not in the study."); 92:17-20 (similar); 200:2-8 (similar); 203:14-204:11 (similar); 220:20-24 (similar); 231:5-9 (similar); 234:9-17 (similar); 237:16-24 (similar) 238:4-14 (similar); 255:6-10 (similar); 262:14-18 (similar); 266:16-24 (similar). In total, Dr. Matthews testified ***58 times*** that she had no evidence of consumer deception from the word "Natural." An exhibit compiling this deposition testimony is attached as Exhibit A.

Dr. Matthews has no evidence that any consumer would believe the word "Natural" "means the products do not contain synthetic ingredients." *Id.* at 272:21-25. And Dr. Matthews has no evidence that any consumer cares about natural versus synthetic vitamins. *Id.* at 287:16-288:1. Dr. Matthews does not care herself about whether her vitamins are natural or synthetic. *Id.* at 286:6-7.

Dr. Matthews made Plaintiffs' counsel aware of her opinion that "adding or removing the word 'natural' had no impact on consumer perceptions." *Id.* at 256:16-

21. She always tells her clients about her survey results and opinions, and she did so here. *Id.* at 48:24-25. Her report also fully discloses her results and opinions, which were "very clear," *id.* at 276:23-277:1, and she gave that report to Plaintiffs' counsel, *id.* at 256:13-15.

But Plaintiffs failed to disclose her findings in their class certification motion. At the deposition, Defendant's counsel showed Dr. Matthews Plaintiffs' motion, which she had never seen before. *Id.* at 256:1-3. She acknowledged that the motion neglects to mention her conclusions or the control. *Id.* at 268:17-19 ("Q. . . . [W]here here do you see any reference to the control group? A. There is none."). During a break, she talked with Plaintiffs' counsel about the motion. *Id.* at 322:13-15. When the parties came back on the record, she agreed that the motion needed to be corrected. *Id.* at 322:16-18 ("Q. . . . [Y]ou agree that an errata at least needs to be filed, correct? A. Yes.").

**F.** Dr. Matthews' deposition laid bare the complete lack of support for Plaintiffs' class certification motion and class claims. But Plaintiffs refused to withdraw their motion or dismiss their claims. Accordingly, sanctions are necessary.

## III.   ARGUMENT

"Rule 11 is intended to be applied 'vigorously' by district courts to curb the abuse of filing frivolous pleadings." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987) (citation omitted). Under Ninth Circuit precedent, "sanctions must be imposed on the signer of a paper if . . . the paper is 'frivolous,'" meaning it "is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990) (en banc) (citation omitted).

Rule 11 "creates and imposes upon counsel an affirmative duty of investigation both as to law and fact before filing." *Rachel*, 831 F.2d at 1508. Attorneys must "conduct[] a reasonable inquiry" and "determine[] that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper

purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (cleaned up). In deciding whether to impose Rule 11 sanctions, district courts consider "(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citation omitted).

Rule 11 sanctions are warranted for three reasons:

***First***, Plaintiffs' survey expert confirms there is absolutely no evidence that the word "Natural" has confused or deceived anyone. Dr. Matthews shared this information with Plaintiffs' counsel, but they willfully chose to misrepresent her survey results and to file a frivolous class certification motion.

***Second***, the named Plaintiffs were not deceived. It appears neither one even bought the product. But even assuming they did, their testimony confirms they were not deceived. Plaintiffs' counsel willfully ignored their own clients' testimony.

***Third***, Plaintiffs' counsel failed to conduct even the most basic inquiry necessary to ascertain whether their motion had merit. And what they did know, they concealed from the Court. This conduct, unfortunately, is part of a broader pattern of Plaintiffs' counsel failing to exercise reasonable diligence and to be candid with the Court.

**A. Plaintiffs had no basis to file their Motion for Class Certification.**

Plaintiffs' own expert has made clear that the class certification motion and class action complaint are frivolous.  There is "no evidence that any consumers are confused by the word 'natural' on the Bayer label." Ex. B at 207:17-20. Because Plaintiffs' counsel ignored this conclusion—which Dr. Matthews reiterated dozens of times, *see* Ex. A—and misrepresented it to the Court, they should be sanctioned.

**1. Plaintiffs' expert confirms that consumers are not deceived by the product's use of the word "Natural."**

Plaintiffs' sole basis for liability is that the word "Natural" on the Bayer Natural Fruit Bites label was allegedly deceptive. *See* ECF 85 ¶ 26 ("A reasonable consumer

1    understands Defendant's natural claims to mean that the Products are natural and do

2    not contain synthetic ingredients."). The class certification motion reiterates this

3    theory, *see* Memo in Support of Mot. for Class Cert., ECF 90-1, at 2 ("Despite this

4    front-label statement that the Products are 'NATURAL'. . . ."); *id.* ("Whether

5    Defendant's 'NATURAL' front-label representation was misleading . . . ."), relying

6    on "the Matthews Expert Report," *id.* at 7, 14.

7        But Dr. Matthews reached the exact opposite conclusion. Plaintiffs fail to

8    mention that Dr. Matthews ran a control group and concluded that "***there is no***

9    ***statistical impact of removing a 'Natural' label from the product on consumer belief***

10   ***that the Product only contained natural ingredients***[.]" Ex. J, ECF 90-23 ¶ 37

11   (emphasis added). The word "Natural" does not "change[] consumer expectations

12   regarding the type of ingredients found in the Products." *Id.* ¶ 17. "[F]or all consumers

13   of vitamin dietary supplements, there is *no statistical impact* of removing a 'Natural'

14   label from the product on consumer belief that the Product only contained natural

15   ingredients." *Id.* ¶ 37 (emphasis added). A "statistically similar" number of people

16   think the product is natural when without the word "Natural" as with it. *Id.* ¶ 195.

17       Dr. Matthews' report could not be more clear: any confusion over the label has

18   nothing to do with the word "Natural." She agreed her conclusion was "very clear" in

19   her report, Ex. B at 276:23-277:1, and she reiterated it 58 times in her deposition, Ex.

20   A. She determined there is "no evidence that any consumers are confused by the word

21   'natural' on the Bayer label." Ex. B at 207:17-20; *id.* at 218:16-20 ("So . . . you have

22   . . . no evidence whatsoever the word 'natural' caused anyone in the world to be

23   confused, right? A. Correct."); 220:13-15 ("Q. You take the word 'natural,' it has no

24   impact, right? A. Correct."); 221:17-20 ("Q. . . . So we can agree for this product, for

25   this label, the word 'natural' has no impact whatsoever, whether it's label A or label

26   B, correct? A. It did not in the study."); 92:17-20 (similar); 200:2-8 (similar); 203:14-

27   204:11 (similar); 220:20-24 (similar); 231:5-9 (similar); 234:9-17 (similar); 237:16-

28   24 (similar) 238:4-14 (similar); 255:6-10 (similar); 262:14-18 (similar); 266:16-24

9

(similar). Dr. Matthews agreed that Plaintiffs' class certification motion misrepresents her report and that Plaintiffs' counsel needed to inform the Court about their error. *Id*. at 322:16-18 ("Q. . . . [A]nd you agree that an errata at least needs to be filed, correct? A. Yes.").[3]

Dr. Matthews' report and survey contradict Plaintiffs' claims that the word "Natural" causes consumers to believe that the product contains only natural ingredients. Rule 11 requires Plaintiffs' counsel "to review, examine, and re-evaluate [their] position as the facts of the case come to light." *Byrnes v. Lockheed-Martin, Inc.*, No. C-04-03941 RMW, 2005 WL 3555701, at *9 (N.D. Cal. Dec. 28, 2005), *aff'd sub nom. Byrnes v. Lockheed Martin Corp.*, 257 F. App'x 34 (9th Cir. 2007). At the very least, once Plaintiffs' counsel received Dr. Matthews' report and survey, Rule 11 imposed a duty on them to withdraw their class action motion and class complaint. Fed. R. Civ. P. 11(b). But Plaintiffs' counsel failed to do so, ignoring the evidence and instead choosing to misrepresent their expert's findings and opinions.

### 2. Plaintiffs' testimony and evidence show they neither bought nor were deceived by the product.

Plaintiffs' own testimony and evidence likewise confirms the baselessness of their claims. That testimony shows that neither Plaintiff bought Natural Fruit Bites, and neither was deceived by the word "Natural." Thus, neither Plaintiff has standing. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured." (cleaned up)).

Ms. Drake could not remember a single attribute of the product despite testifying that she took it for an entire year. Ex. C at 134:23-25. She said she thought the product was "round." *Id*. at 136:14-16. It is not (it is square). *See* Ex. M. She admitted she could remember "nothing else" about it—not its flavor, size, or color.

---

[3] Hours after Bayer served an initial version of this Rule 11 motion, Plaintiffs filed an errata. ECF 93. It does not fix the problem. Like Plaintiffs' class certification motion, the errata does not mention the control or Dr. Matthews' conclusion that there is no evidence of confusion. Bayer subsequently re-served this motion the same day.

Ex. C at 136:17-19. Ms. Drake saved no bottles, produced no receipts, has no recollection of the product, and does not even remember where she bought it. *Id*. at 136:23-137:20.

Ms. Bowling similarly testified that she took Natural Fruit Bites for a "couple of years" and bought the product "once a month." Ex. D at 30:23-24. Yet she could not remember much about the product either. She misidentified it as "multiflavored," "multicolored," and "gummy." *Id*. at 30:9, 30:18, 114:22-23. She likewise produced no receipts or credit card statements showing she had ever purchased the product. *Id*. at 38:5-7; 165:10.

But even if Plaintiffs had bought the product, neither was deceived by the word "Natural." Ms. Drake could not have been more definitive in her testimony: she never thought the product was "100 percent natural" when she supposedly purchased it. Ex. C at 69:3-8 ("Q. [Y]ou didn't think it was 100 percent natural, did you? . . . A. I wasn't thinking about that."); *id*. at 70:23-25 ("Q. It was not something you cared about, correct? A. At the time. Correct."); 134:20-22 ("Q. And until this deposition, whether it's 100 percent natural didn't cross your mind, right? A. Correct.").

Ms. Bowling's testimony showed she does not care about all-natural vitamins. Every vitamin product she bought contains synthetic vitamins. The multivitamin she took the day of the deposition includes three artificial colors in addition to synthetic vitamins. And she could not "remember" why she never shopped for an all-natural multivitamin. Ex. D at 109:1-9, 236:21-238:25, 257:9-11.

She also testified she "can't identify what it is that makes the Bayer product unnatural under [her] definition of natural." *Id*. at 140:4-7. She could not remember what factual basis she had, if any, for suing Bayer. *Id*. at 195:12-16 ("Q. So when you accused Bayer of fraud, what basis, if any, did you have for thinking these chemical processes are unnatural? . . . A. I don't know. I can't remember.").

Rule 11 required Plaintiffs' counsel to conduct a reasonable investigation into whether either of his clients ever purchased the Product and were, in fact, deceived

by the word "Natural." *See Copple v. Astrella & Rice, PC*, 281 F. App'x 675, 676 (9th Cir. 2008) (affirming Rule 11 sanctions where class counsel "did not conduct a pre-filing investigation and filed the complaint without any evidence of a violation of law"); *Holgate*, 425 F.3d at 676 (affirming Rule 11 sanction for filing legally frivolous complaint); *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (affirming Rule 11 sanctions where "reasonable investigation" would have revealed claims were barred). They did not do so here.

### B. Plaintiffs' counsel has exhibited a pattern of lack of diligence.

Plaintiffs' counsel has exhibited a broader pattern of lack of diligence and candor in this case. In Judge Burkhardt's words, Plaintiffs' counsel's conduct in this case has been "particularly concerning." Ex. K at 10:4-5.

Prior to the Early Neutral Evaluation Conference, Plaintiffs' counsel represented to the Court that he had authority to settle on behalf of the original named Plaintiff in this case, Mr. Corpuz. *Id*. at 9:23-10:14. That was not true. In fact, Plaintiffs' counsel had not spoken to Mr. Corpuz since the month the original complaint was filed. *Id*. Judge Burkhardt concluded that Plaintiffs' counsel's representation, therefore, "*could not possibly be true*" because "Mr. Corpuz didn't even know there was a settlement conference coming up in this case." *Id*. at 10:10-13.

Plaintiffs' counsel Mr. Moore has made other misrepresentations to Defendant's counsel. After Plaintiffs' counsel filed their class certification motion along with "supporting expert reports" per this Court's scheduling order, ECF 81, Defendant's counsel asked Mr. Moore to "confirm that both of your experts have fully complied with FRCP 26(a)(2)(B)." Ex. L at 1. Mr. Moore responded: "I can confirm the reports are complete pursuant to the rule, with the note that we intended to provide the Excel sheet—provided last week—as part of the report." *Id*. This was not true. During her deposition, Dr. Matthews disclosed that she had conducted an additional survey that was not included in her report. Ex. B at 11:11-14.

Plaintiffs' counsel's missteps do not end there. He also failed to inform Plaintiffs of their discovery obligations. Litigants have an obligation to preserve evidence "[they] know[] or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015). And attorneys have a fundamental duty to inform their clients of this obligation and ensure their clients do not destroy evidence. *See Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1006 (D. Ariz. 2011) ("The preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." (cleaned up). Yet Ms. Bowling testified that counsel *never* informed her of her duty to preserve documents and update her discovery responses. Ex. D at 165:21-23; 174:21-23; *see also id*. at 166:17-25; 179:14-16.

Ms. Bowling also testified that she failed to conduct searches in response to document requests, *id.* at 167:24-168:1, 169:13-14, and that she did not disclose in her discovery responses that she took other multivitamin products, all of which contain synthetic vitamins, *id*. at 49:24-25, 54:21-25. Ms. Drake similarly testified that she took other multivitamin products, which likewise contain synthetic vitamins, that she did not disclose in her initial discovery responses. Ex. C at 199:19-200:3.[4]

Plaintiffs' counsel's law firm is no stranger to skirting the line when it comes to complying with their obligations as officers of the Court. There are at least three other cases in which Charles Moore or his law firm have been reprimanded by courts for engaging in improper litigation tactics. *See, e.g.*, *Miller v. Sanofi Consumer Healthcare*, No. 22 CIV. 574 (LLS), 2023 WL 112553, at *2 (S.D.N.Y. Jan. 5, 2023)

---

[4] Plaintiffs' counsel also misnamed one of their clients in filing their First Amended Complaint. Ex. C at 55:19-56:13; *see also Franklin v. Pinnacle Ent., Inc.*, No. 4:12-CV-307 CAS, 289 F.R.D. 278, 284-85, 290-91 (E.D. Mo. Dec. 28, 2012) (imposing Rule 11 sanctions where, among other things, lawyer misspelled the name of one of the plaintiffs).

(Plaintiff, represented by Charles Moore, "misrepresent[ed]" product label); *Gonzalez v. Chattem, Inc.*, No. 23-cv-00102-HSG, 2023 WL 8101923, at *4 (N.D. Cal. Nov. 21, 2023) (finding that named Plaintiff in class action labeling lawsuit brought by Reese Law Firm could not have actually purchased product at issue and reminding Plaintiffs' counsel to "carefully consider their Rule 11 obligations"); *Davis v. Pinterest, Inc.*, No. 19-cv-07650-HSG(TSH), 2021 WL 3045878, at *1 (N.D. Cal. July 20, 2021) (calling motion to compel filed by Reese Law Firm "problematic"). Unfortunately, the pattern continues. The Court should award sanctions.

## IV.    CONCLUSION

The Court should grant this Rule 11 motion and award sanctions, including dismissing the case with prejudice and awarding Bayer reasonable attorney fees.

Dated:  May 13, 2024                          Respectfully submitted,


                                              */s/ Jonathan F. Cohn*
                                              Jonathan F. Cohn* (NY 2972578)
                                              Shannon Grammel* (KS 29105)
                                              LEHOTSKY KELLER COHN LLP
                                              200 Massachusetts Ave., NW
                                              Washington, DC 20001
                                              Email: jon@lkcfirm.com
                                              Tel.: (512) 693-8350
                                              Fax: (512) 727-4755

                                              Katherine C. Yarger* (CO 40387)
                                              LEHOTSKY KELLER COHN LLP
                                              700 Colorado Blvd., #407
                                              Denver, CO 80206
                                              Email: katie@lkcfirm.com
                                              Tel: (512) 693-8350
                                              Fax: (512) 727-4755

                                              Alexis Swartz* (TX 24122045)
                                              LEHOTSKY KELLER COHN LLP
                                              408 W. 11th St. 5th Floor
                                              Austin, TX 78701
                                              Email: alexis@lkcfirm.com
                                              Tel: (512) 693-8350
                                              Fax: (512) 727-4755

                                              *Attorneys for Defendant*
                                              * Admitted *pro hac vice*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 19, 2024, in accordance with Federal Rule of Civil Procedure 11(c)(2), I served the foregoing on Charles D. Moore via electronic service as previously agreed by the parties.


Date: May 13, 2024

                  By: */s/ Jonathan F. Cohn*

                      Jonathan F. Cohn

16