**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**REESE LLP**
Charles D. Moore (admitted *pro hac vice*)
*cmoore@reesellp.com*
121 N. Washington Ave., 4th Floor
Minneapolis, Minnesota 55401
Telephone: (212) 643-0500

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
## SAN DIEGO DIVISION

| | |
|---|---|
| DONIECE DRAKE, DEBORAH BOWLING, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER HEALTHCARE LLC,<br><br>Defendant. | Case No. 3:22-cv-01085-MMA-JLB<br><br>**DECLARATION OF CHARLES D. MOORE IN SUPPORT OF PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS**<br><br>Date:<br>Time:<br>Place: Courtroom 3C<br>Judge: Honorable Michael M. Anello<br><br>Complaint filed: July 25, 2022<br>Trial Date: Not Set |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I, Charles D. Moore, pursuant to 28 U.S.C. §1746 and under penalty of perjury, hereby declare as follows.

1.      I am a Partner at Reese LLP, counsel representing Plaintiffs Doniece Drake ("Drake") and Deborah Bowling ("Bowling") (together, "Plaintiffs") in this litigation. I am a member in good standing of the bar of the United States District Courts for the Eastern District of New York, Southern District of New York, Western District of New York, Northern District of Illinois, and District of Minnesota, and the state bars of New York and Minnesota. I am admitted pro hac vice in the above-captioned action.

2.      I respectfully submit this declaration in support of the Plaintiffs' motion for sanctions pursuant to Fed. R. Civ. P. 11. Except as otherwise noted, the facts set forth in this declaration are based in part upon my personal knowledge, and I would competently testify to them if called upon to do so.

3.      On April 3, 2024, during a break in the deposition of Dr. Andrea Lynn Matthews, Defendant's counsel threatened Rule 11 sanctions against me and my firm if Plaintiffs did not dismiss their action.

4.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the transcript of the deposition of Plaintiff's expert, Dr. Andrea Lynn Matthews.

5.      Attached hereto as Exhibit 2 is a true and correct copy of excerpts of the transcript of the deposition of Plaintiff Drake.

6.       Attached hereto as Exhibit 3 is a true and correct copy of excerpts of the transcript of the deposition of Plaintiff Bowling.

1       I declare under penalty of perjury under the laws of the United States of

2 America that the foregoing is true and correct.

3       Executed on April 30, 2024, in Hennepin County, Minnesota.

4

5                                 */s/ Charles D. Moore*

6                                 Charles D. Moore

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DENIECE DRAKE, DEBORAH
BOWLING, individually and on
behalf of all others
similarly situated,

Case No.
     Plaintiffs,         3:22-cv-01085-MMA-JLB

vs.

BAYER HEALTHCARE, LLC,

     Defendants.
_____/

DR. ANDREA LYNN MATTHEWS

Wednesday, April 3, 2024
8:55 a.m. - 4:47 p.m.

LOCATION:  Prevail Testimony Management Platform

2

```
 1    APPEARANCES:

 2        ON BEHALF OF THE PLAINTIFFS:

 3                    REESE, LLP
                      100 West 93rd Street, 16th Floor
 4                    New York, New York  10025

 5                    BY:  CHARLES D. MOORE, ESQUIRE
                      212.643.0500
 6

 7        ON BEHALF OF THE DEFENDANT:

 8                    LEHOTSKY KELLER COHN, LLP
                      200 Massachusetts Avenue Northwest
 9                    Washington, DC  20001

10                    BY:  JONATHAN F. COHN, ESQUIRE
                           SHANNON GRAMMEL, ESQUIRE
11                    512.693.8350

12

13    ALSO PRESENT:  Joey Bosco, Session Manager
                      Jeff Wilhite, Videographer
14                    Takisha Clark, Notary Public

15

16

17

18

19

20

21

22

23

24

25
```

3

1                         I N D E X

2   DR. ANDREA LYNN MATTHEWS

3       Direct Examination by Mr. Cohn              5
        Declaration                              332
4       Certificate of Oath                      333
        Certificate of Reporter                  334
5

6

7                      E X H I B I T S

8   Exhibit Number 1      Notice of Deposition      8
    Exhibit Number 2      Declaration              10
9   Exhibit Number 3      Reference Manual        165
    Exhibit Number 4      Chapter 12              169
10  Exhibit Number 5      Complaint               227
    Exhibit Number 6      Memorandum              255
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

15

1    was illegal, would you do it?

2        A.    No.

3        Q.    How would you proceed if your

4    attorney -- not your attorney, your client sitting next

5    to you -- asked you to do something illegal?

6        A.    If I knew that it was illegal, I would

7    not do it.

8        Q.    Have you looked at Federal Rule of Civil

9    Procedure 26, the one -- the rule that's cited here in

10   the Notice?

11       A.    Yes.

12       Q.    Have you spoken to an attorney about your

13   obligations under that Federal Rule?

14       A.    Not with regard to this matter.

15       Q.    So the answer is no, you've not?

16       A.    No.

17       Q.    Do you plan to?

18       A.    I don't know.

19       Q.    Do you understand your personal liability

20   if you violate that rule intentionally?

21       A.    I have not considered it, but I imagine

22   it would be similar to other consequences for

23   violating --

24       Q.    I would strongly advise that you hire an

25   attorney before listening to Mr. Moore ask me to

16

1    violate Federal Rule 26.

2              MR. MOORE:  Counsel, that is

3         inappropriate.

4              MR. COHN:  No, Charlie, what you did is

5         utterly inappropriate, in violation of the rules.

6         We will be seeking sanctions against you later on

7         today.  You might want to call your partners and

8         let them know.

9    BY MR. COHN:

10        Q.    All right.  I am not going to depose you

11   based on -- upon a report you've not yet written.  You

12   understand that, right?

13        A.    Yes.

14        Q.    I'm not going to depose you based upon a

15   mumble of an Excel spreadsheet that you produced to us

16   last night.  You understand that, right?

17        A.    Yes.

18        Q.    You're not going to say a single word

19   about that unwritten report today, are you?

20        A.    I -- if requested to do so, I will not.

21        Q.    I'm requesting you not to violate the

22   rules.  Do you understand that?

23        A.    Yes.

24        Q.    So when I ask you about your opinions,

25   it'll be the opinions that you have already produced to

272

1      A.      Correct.

2      Q.      All right.  And -- and, again, you see no

3  reference here to your control anywhere in this

4  discussion, do you?

5      A.      I do not.

6      Q.      Okay.  Let's go to the last paragraph:

7  Based on these facts -- based on these facts, the jury

8  could determine, A, that reasonable consumers believe

9  the natural representation on the product label means

10 the products do not contain synthetic ingredients.  Did

11 I read that correctly?

12     A.      Yes, you did.

13     Q.      You're aware, as we discussed, like,

14 about 115 times now -- you're not aware of any evidence

15 that the word "natural" has any impact in consumer

16 perceptions of the types of ingredients, right?

17     A.      My study did not show that.

18     Q.      And, as you said, you're not aware of any

19 other evidence, right?

20     A.      I'm not.

21     Q.      You're not.  Okay.  So based on what you

22 know, you have no reason to believe that reasonable

23 consumers believe the "natural" word means the products

24 do not contain synthetic ingredients, correct?

25     A.      Based on this report, that is correct.

273

1    Q.    And the other evidence that you know,

2  right?  You -- because you said you've not seen any

3  other evidence, right?

4    A.    You told me not to talk about the other

5  study.

6    Q.    Oh, the other study.  Well, the other

7  study isn't even concerned with the -- the Bayer label,

8  right?

9          But I'm talking about the only report

10  that you have looked at and all the studies that you've

11  done and all the other evidence that you've seen,

12  you're not aware of any evidence that would allow a

13  jury to determine that reasonable consumers believe the

14  natural representation means the products contain no

15  synthetic ingredients, correct?

16    A.    I have not seen additional evidence.

17    Q.    Great.  And you would not say that your

18  report is such evidence, correct?

19    A.    Correct.

20    Q.    Insofar as Plaintiffs have been saying

21  that your report supports them on this, they are

22  incorrect about that, right?

23          MR. MOORE:  Object to form.

24          THE DEPONENT:  I believe that my report

25      shows materiality.

275

1    colleagues at Phillips Fractor the same thing, right?

2        A.       Yes.

3        Q.       You'd probably want to talk to your dad

4    about the propriety or impropriety of supporting a

5    lawyer who's making a false claim to a Court, correct?

6                 MR. MOORE:  Objection.  That's

7        argumentative.  That's inappropriate.

8    BY MR. COHN:

9        Q.       You can answer the question.

10       A.       I would definitely want to follow proper

11   procedures and channels.  I would assume that my

12   clients are honest and would -- if they misunderstood

13   what was in my report or if they made a mistake, that

14   they would want to correct it.

15       Q.       And -- and you're aware that your other

16   client, who so far has given you the majority of your

17   work, has already been held in contempt of court for

18   having frivolous lawsuits, correct?

19       A.       You've told me that.

20       Q.       You -- you haven't done that research on

21   your own?

22       A.       I have not.

23       Q.       It hasn't been important to you until

24   now?

25       A.       My research -- what people choose to do

# **EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
_____

EDISON CORPUZ, DENIECE [sic]
DRAKE, DEBORAH BOWLING,
individually and on behalf of
all others similarly situated,


     Plaintiffs,

     v.                                   Case No.

BAYER CORPORATION,                3:22-cv-01085-MMA-JLB

     Defendant.

_____


VIDEOCONFERENCE DEPOSITION OF

DONIECE DRAKE

DATE:     Friday, January 19, 2024

TIME:     9:03 a.m.

LOCATION: Prevail Testimony Management Platform

         Shirley, New York 11967

REPORTER: Janet Wallravin

2

```
 1              A P P E A R A N C E S

 2   ON BEHALF OF PLAINTIFFS EDISON CORPUZ, DONIECE DRAKE,

 3   DEBORAH BOWLING:

 4        CHARLES D. MOORE, ESQUIRE

 5        Reese LLP

 6        100 South Fifth Street, Suite 1900

 7        Minneapolis, Minnesota 55402

 8        cmoore@reesellp.com

 9        212-643-0500

10

11   ON BEHALF OF PLAINTIFFS EDISON CORPUZ, DONIECE DRAKE,

12   DEBORAH BOWLING:

13        GEORGE V. GRANADE, ESQUIRE

14        Reese LLP

15        8484 Wilshire Boulevard, Suite 515

16        Los Angeles, California 90211

17        ggranade@reesellp.com

18        310-393-0070

19

20

21

22

23

24

25
```

3

```
 1           A P P E A R A N C E S (Cont'd)

 2    ON BEHALF OF DEFENDANT BAYER CORPORATION:

 3         JONATHAN F. COHN, ESQUIRE

 4         Lehotsky Keller Cohn LLP

 5         200 Massachusetts Avenue, Northwest

 6         Washington, DC 20001

 7         jon@lkcfirm.com

 8         512-693-8350

 9

10    ON BEHALF OF DEFENDANT BAYER CORPORATION:

11         ALEXIS SWARTZ, ESQUIRE

12         Lehotsky Keller Cohn LLP

13         919 Congress Avenue

14         Austin, Texas 78701

15         alexis@lkcfirm.com

16         512-693-8350

17

18    ON BEHALF OF DEFENDANT BAYER CORPORATION:

19         KATHERINE C. YARGER, ESQUIRE

20         Lehotsky Keller Cohn LLP

21         700 Colorado Boulevard, Suite 407

22         Denver, Colorado 80206

23         katie@lkcfirm.com

24         512-693-8350

25
```

4

1                          I N D E X

2    EXAMINATION:                                    PAGE

3        By Mr. Cohn                                 6

4

5                        E X H I B I T S

6    NO.              DESCRIPTION                     PAGE

7    Exhibit 1        First Amended Class Action      57
                      Complaint
8    Exhibit 2        Document - Bates Corpuz 000086  83

9    Exhibit 3        Unidentified Document           86

10   Exhibit 4        Nutrivein Document              97

11   Exhibit 5        Methyl Cellulose, The Chemical  100
                      Company
12   Exhibit 6        Title VII Agriculture Document  116

13   Exhibit 7        Unidentified Document           138

14   Exhibit 8        American Lung Association Document 160

15   Exhibit 9        Answers to Interrogatories      196

16   Exhibit 10       Facebook Action Advertisement   212

17

18                    INSTRUCTED NOT TO ANSWER

19                      PAGE        LINE

20                       56          7

21                      112          4

22                      114          4

23

24

25

135

1      Q.    What colors of the fruit bites did you get?

2      A.    I don't remember.

3      Q.    Did you get the red ones?

4      A.    I don't remember.

5      Q.    The green ones?

6      A.    I don't remember.

7      Q.    Do you have any recollection which colors you

8    got?

9      A.    No.

10      Q.    Do you have any recollection what shape it

11   was?

12      A.    No.

13      Q.    Were they the gummy bears?

14      A.    Trying remember the texture.  Gummy bears?  I

15   don't -- I don't remember if they were gummy bears.

16      Q.    Were they the round ones?

17      A.    It could have been.

18      Q.    Were they the ones that are shaped like

19   clovers?

20      A.    I don't remember.

21      Q.    You have no recollection what they look like,

22   right?

23      A.    No.  They might -- they could have been

24   round.  That's the only thing I can remember.

25      Q.    And what flavor did you get?

136

```
 1        A.    That I do not remember.

 2        Q.    The banana ones?

 3        A.    I don't remember.

 4        Q.    Peach?

 5        A.    I don't remember.

 6        Q.    Blue raspberry?

 7        A.    I don't remember.

 8        Q.    What is a blue raspberry, anyway?

 9        A.    Yeah.  I don't -- was it a flavor?

10        Q.    Yeah.  But you don't recall if you got the

11   blue raspberry ones, right?

12        A.    I don't recall.  I don't remember.

13        Q.    Do you recall anything about the product?

14        A.    The only thing that I can remember is that

15   they were round.  That's it.  A little round, like,

16   about this big maybe.  That's it.

17        Q.    Mm-hm.  Nothing else?  You remember nothing

18   else about it, right?

19        A.    No.

20        Q.    And you didn't talk about these with anyone,

21   did you?

22        A.    No.

23        Q.    And you didn't save the bottles, right?

24        A.    Correct.

25        Q.    And you didn't save the receipts, right?
```

137

1      A.    Right.

2      Q.    Where did you buy these?

3      A.    Oh, boy.  Most likely -- most likely any

4  store that sold vitamins or other things.

5      Q.    Yeah.  Walmart?

6      A.    No.

7      Q.    Walgreens?

8      A.    Probably.

9      Q.    CVS?

10     A.    Most likely.

11     Q.    Rite Aid?

12     A.    Probably.

13     Q.    Gas stations?

14     A.    No.

15     Q.    What other stores do you buy them at?

16     A.    Let's -- let's guess probably from CVS.  Most

17  likely CVS.  There wasn't -- I think the Rite Aid is

18  still there.  There used to be a route, I think.  Did

19  Hurricane Sandy wash it away?  I'm sorry.  I'm sorry.

20  Most likely CVS, Walgreens, and a Rite Aid.

21     Q.    Okay.  Did you ever buy the sour ones?

22     A.    That I -- I don't believe I have.

23     Q.    How about the -- the pear sugary ones?

24     A.    I don't believe I have.

25     Q.    You have no recollection which flavor you

# **EXHIBIT 3**

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

CASE NO. 3:22-CV-01085-MMA-JLB


EDISON CORPUZ, DENIECE DRAKE,
DEBORAH BOWLING, individually
and on behalf of all others similarly
situated,

      Plaintiffs,

v.

BAYER CORPORATION,

      Defendant.
------------------------------/


VIDEOTAPED DEPOSITION OF

DEBORAH BOWLING


DATE:              Tuesday, January 23, 2024

TIME:              9:00 a.m.  4:58 p.m.

LOCATION:          Prevail Testimony Management Platform

REPORTER:          Janet Wallravin

```
                                                                        Page  2
  1                               APPEARANCES

  2    ON BEHALF OF PLAINTIFFS EDISON CORPUZ, DONIECE DRAKE, DEBORAH
       BOWLING:
  3
               GEORGE V. GRANADE, ESQUIRE
  4            REESE LLP
               8484 Wilshire Boulevard, Suite 515
  5            Los Angeles, California 90211
               ggranade@reesellp.com
  6            310-393-0070

  7    ON BEHALF OF DEFENDANT BAYER CORPORATION:

  8            JONATHAN F. COHN, ESQUIRE
               LEHOTSKY KELLER COHN LLP
  9            200 Massachusetts Avenue, Northwest
               Washington, DC 20001
 10            jon@lkcfirm.com
               512-693-8350
 11
       ON BEHALF OF DEFENDANT BAYER CORPORATION:
 12
               KATHERINE C. YARGER, ESQUIRE
 13            LEHOTSKY KELLER COHN LLP
               700 Colorado Boulevard, Suite 407
 14            Denver, Colorado 80206
               katie@lkcfirm.com
 15            512-693-8350

 16    ALSO PRESENT:

 17            Janet Wallravin, Deposition Officer
               Lisa White, Notary Public
 18            Alexandro Acosta, Videographer

 19

 20

 21

 22

 23

 24

 25
```

Page 3

1                           INDEX

2          Direct Examination by Mr. Cohn              6

3          Declaration                                271

4          Certificate Of Oath                        272

5          Certificate Of Reporter                    273

6

                              EXHIBITS
7
    Exhibit 1   Oxford English Dictionary 7
8
    Exhibit 2   Centrum Women 50-plus MultiGummies     12
9
    Exhibit 3   Nature Made Multi For Her              13
10
    Exhibit 4   Nature's Bounty Hair, Skin & Nails     15
11
    Exhibit 5   Section 101.9 Nutrition               151
12
    Exhibit 6   Regulation from USDA                  154
13
    Exhibit 7   Plaintiff Bowling's Responses         162
14
    Exhibit 8   Interrogatories                       180
15
    Exhibit 9   Fermentation Document 183
16
    Exhibit 10  Complaint                             202
17
    Exhibit 11  Natural Fruit Bites Multivitamin      204
18
    Exhibit 12  Label                                 208
19
    Exhibit 13  Supplement Facts                      210
20
    Exhibit 15  List of Ingredients                   227
21
    Exhibit 16  Label of a CVS Hair, Skin, And Nail   230
22
    Exhibit 17  Supplement Facts                      234
23
    Exhibit 18  Photographs                           239
24
    Exhibit 19  Nature Made B12                       265
25

Page 4

1                                    EXHIBITS (Cont'd)

2

3        Exhibit 20   Supplement Facts                              265

4        Exhibit 21   Nature Made vitamin C                        266

5        Exhibit 22   Supplement Facts                              266

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

```
 1        A.    Yes.

 2        Q.    What product is at issue?

 3        A.    The One A Day gummies -- fruit bites.

 4        Q.    The gummy fruit bites; is that correct?

 5        A.    Right.  Right.  Natural fruit bites.

 6        Q.    Are you sure they're called natural fruit bites?

 7        A.    Yes.

 8        Q.    Does the word "natural" appear in the label?

 9        A.    Yes.  It did.  I -- I don't know what they are --

10   say now.

11        Q.    Where in the label did the word "natural" appear?

12        A.    Right before "fruit bites."

13        Q.    Do you recall anything else from the label?

14        A.    No, I don't.

15        Q.    Nothing at all?  You don't recall any of the

16   graphics?

17        A.    There might have been fruit on it.  I can't

18   remember.

19        Q.    Do you recall what fruit it might have been?

20        A.    It's been over a year.  No.

21        Q.    Could it have been a banana?

22        A.    I don't remember.  I don't remember.

23        Q.    Could it have been a cherry?

24        A.    Could have been.  I don't remember.

25        Q.    Could it have been a black cherry?
```

Page 29

```
 1        A.    No.

 2        Q.    Have you spoken to any of them?

 3        A.    No.

 4        Q.    Do you know any of their names?

 5        A.    Doniece Drake.  Her -- came -- name just came up on

 6   the screen.

 7        Q.    Have you met her?

 8        A.    No.

 9        Q.    Have you spoken with her?

10        A.    No.

11        Q.    Emailed with her?

12        A.    No.

13        Q.    Any correspondence with her?

14        A.    No.

15        Q.    The gummies that you -- you say you purchased, were

16   they gummy bears?

17        A.    No.

18        Q.    What do they look like?

19        A.    I think they were square.  I can't remember exactly.

20    I mean, I've purchased a lot of vitamins.

21        Q.    Do you recall anything else about their look?

22        A.    They're colored -- I mean, fruit-colored, I guess.

23        Q.    Were they the yellow ones?  Were they, like, the

24   banana?

25        A.    I can't remember.
```

Page  30

```
 1          Q.    Or the green apple?

 2          A.    I can't remember the --

 3          Q.    Blue raspberry?

 4          A.    I don't know.

 5          Q.    You remember they're colored, correct?

 6          A.    Right.

 7          Q.    But you cannot recall which color you bought,

 8     correct?

 9          A.    I think they were multicolored, but I can't -- I

10     can't remember how they were.

11          Q.    Okay.  Sort of like in that bottle, you see multi

12     colors, right?

13          A.    Right, and then this one's plain.  I -- I just don't

14     remember how the -- what they look like.

15          Q.    You remember which flavor you got?

16          A.    I don't think there was separate flavors.

17          Q.    Okay.

18          A.    I think they're multiflavored.

19          Q.    Multi flavors?

20          A.    That's -- I -- I don't remember what they  -- what

21     they look like or what they -- what colors they were.

22          Q.    How many bottles did you buy?

23          A.    I bought them for a couple of years, so once a

24     month.

25          Q.    When did you start taking them?
```