1   Jonathan F. Cohn* (NY 2972578)
2   Shannon Grammel* (KS 29105)
3   LEHOTSKY KELLER COHN LLP
    200 Massachusetts Ave., NW
4   Washington, DC 20001
    Email: jon@lkcfirm.com
5   Tel.: (512) 693-8350
6   Fax: (512) 727-4755
7
    *Attorneys for Defendant*
8   (*Additional Attorneys for Defendant on Subsequent Page*)

9

10

11                    **UNITED STATES DISTRICT COURT**
                    **SOUTHERN DISTRICT OF CALIFORNIA**
12
                                        )
13                                      )
14   DONIECE DRAKE, DEBORAH             )   Case No. 3:22-cv-01085-MMA-JLB
     BOWLING, individually and on behalf )
15   of all others similarly situated,   )   **DEFENDANT BAYER**
                                        )   **HEALTHCARE LLC'S**
16           Plaintiffs,                 )   **MEMORANDUM OF LAW IN**
                                        )   **OPPOSITION TO PLAINTIFFS'**
17       v.                              )   **MOTION FOR RULE 11**
                                        )   **SANCTIONS**
18   BAYER HEALTHCARE LLC,              )
                                        )
19                                      )
             Defendant.                  )   Date: June 24, 2024
20                                      )   Time: 2:30 p.m.
                                        )   Courtroom: 3C
21                                          Judge: Honorable Michael M. Anello
22
23                                          Complaint filed: July 25, 2022
24                                          Trial Date: Not Set
25
26
27   _____
28

*Additional Counsel for Defendant*

Katherine C. Yarger* (CO 40387)
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Tel: (512) 693-8350
Fax: (512) 727-4755

Alexis Swartz* (TX 24122045)
LEHOTSKY KELLER COHN LLP
408 W. 11th St. 5th Floor
Austin, TX 78701
Email: alexis@lkcfirm.com
Tel: (512) 693-8350
Fax: (512) 727-4755

* Admitted *pro hac vice*.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.    INTRODUCTION...................................................................................1

II.   BACKGROUND.....................................................................................3

   A.   The Named Plaintiffs' Depositions....................................................3

   B.   Dr. Matthews' Untimely Survey.........................................................4

   C.   Dr. Matthews' First Deposition ........................................................6

   D.   The Parties' Meet and Confers ........................................................7

   E.   Dr. Matthews' Second Deposition ....................................................8

III.  ARGUMENT ..........................................................................................8

   A.   Discovery disputes cannot form the basis for Rule 11 sanctions. ...................8

   B.   Plaintiffs' Rule 11 motion makes more misrepresentations. .........................12

   C.   Plaintiffs' Rule 11 motion was filed for an improper purpose—to harass Defendant's counsel...........................................................................17

IV.   CONCLUSION .......................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Cuevas v. Phillips Fractor & Co., LLC*,
   No. BC656142, 2017 WL 1229756 (Cal. Super. Mar. 30, 2017) ....................... 6

*Davis v. Pinterest, Inc.*,
   No. 19-cv-07650-HSG(TSH), 2021 WL 3045878 (N.D. Cal. July
   20, 2021) ........................................................................................................ 17

*Gonzalez v. Chattem, Inc.*,
   No. 23-cv-00102-HSG, 2023 WL 8101923 (N.D. Cal. Nov. 21,
   2023) ............................................................................................................... 17

*Miller v. Sanofi Consumer Healthcare*,
   No. 22 CIV. 574 (LLS), 2023 WL 112553 (S.D.N.Y. Jan. 5, 2023) ................ 17

*Price v. Gwinnett Fam. Dental Care, LLC*,
   No. 1:06-CV-2659-BBM-GGB, 2007 WL 3477771 (N.D. Ga. Oct.
   31, 2007) ......................................................................................................... 10

*REXA, Inc. v. Chester*,
   42 F.4th 652 (7th Cir. 2022) ........................................................................... 11

*Safe-Strap Co., Inc. v. Koala Corp.*,
   270 F. Supp. 2d 407 (S.D.N.Y. 2003) .............................................................. 18

*Sneller v. City of Bainbridge Island*,
   606 F.3d 636 (9th Cir. 2010) ............................................................................. 9

*Wi-LAN Inc. v. LG Elec., Inc.*,
   No. 18-cv-01577-H-BGS, 2019 WL 5067442 (S.D. Cal. Oct. 9,
   2019) ............................................................................................................... 11

*Zimmerman v. Bishop Estate*,
   25 F.3d 784 (9th Cir. 1994) ........................................................................... 1, 9

## Rules

Fed. R. Civ. P. 11 .................................................................................................. 16

Fed. R. Civ. P. 26 ........................................................................................ 1, 4, 9, 17

ii

Fed. R. Civ. P. 30 ................................................................................................... 1

Fed. R. Civ. P. 37 ................................................................................. 1, 2, 7, 9, 12

Cal. R. Pro. Ethics 1.2.1 ........................................................................................ 11

Cal. R. Pro. Ethics 4.1 ........................................................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' retaliatory Rule 11 motion is a transparent attempt to distract from their own frivolous claims. Plaintiffs know their case is doomed: The named Plaintiffs recall nothing about the Bayer product at issue and appear never to have bought it. Plaintiff Drake admitted she had no "expectation" the product was 100 percent natural. Ex. D at 209:21-210:2. Plaintiff Bowling similarly testified she was not deceived. And Plaintiffs' survey expert concluded that the word "Natural" on the Bayer label has no impact whatsoever on consumer beliefs.

But, instead of dismissing their case, as any reasonable attorney would do, Plaintiffs filed a baseless class certification motion, which misrepresented the record, ignored the named Plaintiffs' testimony, and claimed their expert had found deception when in fact she had found the exact opposite. Bayer promptly informed Plaintiffs that their lawsuit was sanctionable, but Plaintiffs refused to withdraw their claims and instead threatened Bayer with a retaliatory Rule 11 motion.

Plaintiffs have now followed through with that threat. The Court should deny Plaintiffs' retaliatory motion for three reasons.

*First*, the motion is facially improper. Rule 11 does not apply to discovery disputes or discovery sanctions, *Zimmerman v. Bishop Estate*, 25 F.3d 784, 790 n.3 (9th Cir. 1994), yet Plaintiffs' novel argument is based on purported deposition "misconduct." Specifically, Plaintiffs contend that Defendant asked inappropriate questions at depositions, somehow causing the named Plaintiffs to forget everything they knew about the taste and appearance of the Bayer product they supposedly took for over a year. Even if this challenge had merit (it does not), it is not the purview of Rule 11. The federal rules provide parties with opportunities to raise discovery disputes when they occur, *see generally* Fed. R. Civ. P. 26, 30, 37, but Plaintiffs did not avail themselves of any of them because Plaintiffs were never concerned with the questions in the first place.

1

Indeed, Plaintiffs' counsel did not object to the purported "misconduct" at either deposition. Plaintiffs did not raise the issue on the record, off the record, or at any time until nearly two months later, at a meet and confer—in response to Defendant explaining its bases for seeking sanctions. Plaintiffs never objected to the questions because they are unobjectionable. Plaintiffs cite no relevant authority supporting their newfound concerns.

**Second**, the motion is riddled with willful misrepresentations, not the least of which is a libelous accusation that Defendant's counsel's law firm used "bullying and deceptive tactics" in a different case in 2018, three years before the firm's founding. ECF 107-1 at 9 n.1. No one from Defendant's counsel's firm has ever been sanctioned, and the accusation is specious, like the rest of Plaintiffs' motion.

Also completely untrue is Plaintiffs' assertion that "Defendant manipulated the testimony of Plaintiffs' expert by forbidding her to discuss" a new survey—which Plaintiffs belatedly disclosed six weeks after the expert's report was due. Defendant learned about the survey for the first time *at the expert's deposition*. Knowing the disclosure was untimely, *Plaintiffs' counsel* suggested to Defendant that the deposition not address the new survey. Defendant agreed because it could not possibly depose an expert on a survey it had just received and not yet reviewed. Thus, limiting the deposition was Plaintiffs' counsel's own idea. Moreover, Defendant wanted to ask about the untimely survey in a second deposition before the class certification opposition brief was due, but *Plaintiffs' counsel* refused, contending the new survey was not "evidence" and may never be used in this case. Ex. H at 1-2 (April 15, 2024, exchanged Rule 37 letter).

In any event, the untimely survey does not remotely "contradict Defendant's argument." ECF 107-1 at 1-2, 5. When Plaintiffs finally permitted Defendant to redepose Dr. Matthews on June 6, she admitted the survey does not change her opinion—"the word 'natural' had no impact whatsoever" on "consumer perceptions" of the Bayer label. Ex. C at 55:16-21. Indeed, the survey does not even address the

2

Bayer label. It concerns a fictional generic label, which looks nothing like the Bayer label and contains none of the context that Dr. Matthews said affects consumer beliefs.

*Third*, Plaintiffs' motion was filed with an improper purpose—pure retaliation. Plaintiffs filed it only because Defendant filed a Rule 11 motion. But nothing they say changes the fact that neither named Plaintiff was deceived, and their own expert testified she had no evidence "of a single consumer on Earth" who thought the word "natural" on the Bayer label meant the product was "all natural." Ex. B at 122:7-10.

Plaintiffs have no case, their class certification motion misrepresented the views of their expert, and their meritless Rule 11 motion salvages nothing. Plaintiffs have a habit of making misrepresentations to this Court. *See* ECF 104-1 at 17-19. This motion is meritless, and sanctions against Plaintiffs are necessary to remind Plaintiffs' counsel to tell the truth.

## II.    BACKGROUND

Defendant's previous filings have extensively covered this case's background. *See* ECF 96 at 8-12 (Defendant's Opp. to Class Certification); ECF 104-1 at 7-12 (Defendant's Mot. for Rule 11 Sanctions). Here, Defendant will solely focus on: (1) the named Plaintiffs' depositions; (2) Dr. Matthews' untimely survey; (3) Dr. Matthews' first deposition; (4) the parties' meet and confers; and (5) Dr. Matthews' second deposition.

### A. The Named Plaintiffs' Depositions

The named Plaintiffs' depositions made clear that neither purchased the Natural Fruit Bites. Early in her deposition, Ms. Drake could not even identify who she was suing and where the case was pending. Ex. D at 25:12-13 ("Q. Are you suing Bayer? A. I don't know."); *id*. at 25:19-21 ("Q. Do you know where the case is pending, what court it's pending in? A. No."). Also, despite allegedly taking the product for about a year, she could not remember basic attributes of the product, such as the color, shape, and flavor. *Id*. at 135:1-136:1.

Neither could Ms. Bowling, who thought the products were "multicolored," "multi[-]flavored" "gummies." Ex. E at 24:3, 30:9-10, 18; *see also id.* at 30:20-21 ("I – I don't remember what they – what they look like or what they – what colors they were."). Defendant's opposition to class certification and Rule 11 motion extensively detail the issues with the named Plaintiffs' specific testimony, including that they were not deceived, *see, e.g.*, ECF 96 at 15 ("Q. And until this deposition, whether it's 100 percent natural didn't cross your mind, right? A. Correct."); *id.* at 16-17; ECF 104-1 at 8-9. Defendant incorporates those points by reference.

Notably, Plaintiffs' counsel did not object at either deposition to these questions or any of the follow-up questions about which they now complain.[1] Nor did Plaintiffs' counsel object at any time after the depositions until a meet and confer nearly two months later. The purpose of the meet and confer was to address the untimely survey from Dr. Matthews. But, after Defendant stated an intent to seek sanctions, Plaintiffs' counsel, Michael Reese (who did not attend the depositions), took issue with the questions, raising purported concerns that were never raised before.

**B. Dr. Matthews' Untimely Survey**

Plaintiffs' Rule 11 motion identifies a new survey by Dr. Matthews but fails to provide the relevant background. Defendant provides it here.

On February 20, Plaintiffs filed their class certification motion along with the "supporting expert reports." ECF 90; ECF 90-23. Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them," along with "the facts or data considered by the witness in forming them." To ensure that Plaintiffs abided by

---

[1] Plaintiffs' counsel were not shy about objecting at the depositions. *See, e.g.,* Ex. D at 120-25. During Ms. Drake's deposition, the objections were so disruptive and obviously coaching the witness that Defendant's counsel agreed that Plaintiffs would not waive objection to "form[] [or] foundation" by not raising those (and only those) objections. *Id.* at 177:9-12. Plaintiffs' counsel continued to make additional objections after that but did not object to the specific questions at issue here, which Plaintiffs now argue constitute deposition "misconduct." ECF 107-1 at 8.

this rule, Defendant asked Plaintiffs' counsel, Mr. Charles Moore of Reese LLP, to "confirm that both of your experts have fully complied with FRCP 26(a)(2)(B)?" Ex. F at 1. Mr. Moore responded affirmatively and unequivocally: "I can confirm the reports are complete pursuant to the rule, with the note that we intended to provide the Excel sheet—provided last week—as part of the report." *Id.*

This was misleading, at best. Minutes into the deposition of Plaintiffs' survey expert on April 3, Dr. Matthews revealed that she had conducted an additional survey, which was not included in the report, and that she had opinions on the survey that were also not disclosed in her report. *See* Ex. B at 11:11-14 ("There is an additional study that was conducted after this report was finalized that I believe the attorneys will want to use in this case, but it was completed after the report was written."). Defendant's counsel immediately went off the record to meet and confer with Mr. Moore. Decl. J. Cohn ¶ 16. His only defense was that the afternoon before (April 2), he attached the survey form and raw data to an email in a thread relating to scheduling logistics, without identifying what specifically he was sending or why he was sending it. Ex. G at 1; Decl. J. Cohn ¶ 17. Mr. Moore did not try to justify the additional survey on any other basis. Decl. J. Cohn ¶ 17. He had no explanation for why he had failed to disclose the survey previously or why he had told Defendant's counsel that the expert reports are "complete pursuant to the rule." *Id.*

Mr. Moore refused to answer questions about the new survey, including when it was conducted, when he learned about it, and why it was not previously disclosed. *Id.* At the time, Mr. Moore claimed that all this information was privileged, but he subsequently disclosed that the new survey had been designed and launched before Dr. Matthews' expert report was filed,[2] and before Mr. Moore represented to Defendant's counsel that her expert report was "complete pursuant to the rule." *Id.*

---

[2] In her second deposition, Dr. Matthews confirmed that she designed the survey and started collecting data before her initial report was due. Ex. C at 30:17-22.

Further, the survey was completed by February 26, over a month before the deposition. Ex. C at 30:8-10. Plaintiffs, however, chose not to disclose it until less than 24 hours before Dr. Matthews' first deposition.

Mr. Moore also refused to agree to strike the survey. Decl. J. Cohn ¶ 17. But, in light of the timing, he proposed that the deposition be limited to the previously disclosed materials and not cover the new survey. *Id.* Defendant's counsel agreed because he had no choice. Counsel could not depose an expert on a survey he had just received and never had a chance to review. *Id.* He instructed Dr. Matthews that he was "not going to ask about opinions that [she] might or might not have based upon reports [she has] not yet written." Ex. B at 17:3-5. Mr. Moore did not object to Defendant's limiting instruction because the limitation was his idea in the first place.

### C. Dr. Matthews' First Deposition

Dr. Matthews testified that she has only two clients, one of which is Reese LLP, for whom she has worked on five to ten cases. Ex. B at 75:19. She works for her dad, G. Michael Phillips, *id.* at 45:14-15, whose firm, Phillips Fractor & Co., has been sued for using falsified data in a report filed with a court. *See Cuevas v. Phillips Fractor & Co., LLC*, No. BC656142, 2017 WL 1229756 (Cal. Super. Mar. 30, 2017).

Dr. Matthews was a recalcitrant witness, at some points even disputing that Plaintiffs' theory of the case concerns the word "Natural" on the Bayer label. *See, e.g.*, Ex. B at 215:5-8; *id.* at 214:14-17, 246:12-247:8. By the end of the deposition, however, she testified 58 times that her self-proclaimed "gold standard" survey showed that the word "Natural" on the Bayer label did not impact consumer beliefs. *See* ECF 96-2. She also recognized that her client, Reese LLP, had misrepresented her findings in Plaintiffs' class certification motion. She testified that her report was "very clear" there was no evidence that the word "Natural" on the Bayer label confused anyone. Ex. B at 216:25-217:1. She agreed that Plaintiffs needed to file an "errata." *Id.* at 322:16-18.

6

**D. The Parties' Meet and Confers**

After Dr. Matthews' deposition, the parties had a meet and confer on April 9, 2024. Plaintiffs' counsel refused to strike the new survey. Plaintiffs indicated they may use the survey in their reply brief. Accordingly, Bayer drafted a Rule 37 letter, in accordance with Judge Burkhardt's local rules. Ex. H (April 15, 2024, exchanged Rule 37 letter); Ex. I (April 26, 2024, exchanged Rule 37 letter). In response, Plaintiffs argued that Defendant's request was premature because the survey was not "evidence" and Plaintiffs might never use the survey, despite their prior representation. Ex. H at 3-4; Ex. I at 3-4.

Defendant repeatedly followed up and asked Plaintiffs whether they intended to use the survey. *See* Ex. J; Ex. K; Ex. L. Plaintiffs never committed and eventually stopped responding. Ex. L; Ex. M. But, because of Plaintiffs' representation that the survey was not "evidence" and might never be used, the parties never filed the joint Rule 37 letter.

In their meet and confers, the parties also discussed Defendant's forthcoming Rule 11 motion. Defendant explained the motion was based on the testimony of the named Plaintiffs and the testimony and written report of Dr. Matthews. Plaintiffs' counsel, however, refused to withdraw their class certification motion and class action complaint, and instead served a retaliatory Rule 11 motion.

Defendant pointed out to Plaintiffs' counsel that their retaliatory motion rested on numerous misrepresentations. Ex. N. For instance, Defendant reminded Plaintiffs' counsel that it was Mr. Moore who suggested that Dr. Matthews' deposition testimony be limited to her original survey. Decl. J. Cohn ¶ 17. Defendant also asked Plaintiffs to explain what exactly was misleading about Defendant's deposition questioning, Ex. N at 3, but Plaintiffs never responded. Instead, Plaintiffs filed their frivolous motion containing multiple misrepresentations.

**E. Dr. Matthews' Second Deposition**

Plaintiffs relied on Dr. Matthews' untimely survey in their reply brief in support of class certification. Defendant asked again if it could redepose Dr. Matthews. This time, Plaintiffs agreed.

At the deposition, Dr. Matthews once again testified—as she did in the first deposition—that the word "Natural" on the Bayer label had no impact on consumers' beliefs. Exhibit A compiles the many instances in which Dr. Matthews testified in her second deposition that the word Natural on the Bayer label did not affect consumers' understandings of the ingredients in the product.

Dr. Matthews also admitted that her new survey did not test the Bayer label but instead tested a fictional "generic label" that "looks different" from the Bayer label "in many ways." Ex. C at 87:15-16; 96:11-13. That fictional label removed all of the language from the Bayer label except the word "natural and multivitamins." *Id*. at 100:7-12. She also admitted that consumers' perceptions of the word "Natural" depend upon context "[b]ecause the words on the label matter." *Id*. at 15:4-5. She acknowledged that she undertook this new survey only "after [she] saw that removing the word 'natural' from the Bayer label had no statistically significant effect." *Id*. at 44:20-45:11.

## III. ARGUMENT

Plaintiffs' retaliatory Rule 11 motion is meritless. The Court should deny it for three reasons. First, it is facially improper, raising a discovery dispute, and a specious one at that. Second, it is replete with misrepresentations. Third, it was filed for an improper purpose.

### A. Discovery disputes cannot form the basis for Rule 11 sanctions.

The bulk of Plaintiffs' two-page argument focuses on deposition questions, ECF 107-1 at 8, to which Plaintiffs never objected. Plaintiffs now contend that the questions somehow tricked the named Plaintiffs into forgetting everything they knew about the products, including the taste and appearance. This argument fails.

It is well-established that Rule 11 is not the proper means for raising a dispute about deposition questioning. *See, e.g.*, Fed. R. Civ. P. 26, 37; *see also Zimmerman*, 25 F.3d at 790 n.3 ("[W]e have held that Rule 11 does not govern most discovery-related sanctions. Sanctions for discovery abuses are governed primarily by Rule 26(g) . . . , rather than Rule 11, of the Federal Rules of Civil Procedure." (cleaned up)); *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 640 n.4 (9th Cir. 2010) ("The proper way to sanction discovery misconduct is through the procedures provided under Fed. R. Civ. P. 37, not under Rule 11.").

If Plaintiffs had been truly concerned about the questions, they could have objected, asked to meet and confer, or even raised the issue with Judge Burkhardt. But Plaintiffs' counsel did none of these things. Two different attorneys chose not to object to the questions—either on the record, off the record, or anytime thereafter. Instead, another attorney at their firm, Michael Reese, who did not attend either deposition, raised the issue two months later. He did so only after Defendant stated an intent to seek sanctions against Plaintiffs. Even then, Mr. Reese did not pursue any of the procedural options under the federal and local rules.[3]

Plaintiffs did not object to the questions because there was no basis for objecting. Defendant is allowed to ask questions, like the ones at issue, to test the recollection and veracity of Plaintiffs who claim they bought a product and were deceived. Here are the deposition questions, the answers to which Defendant used in its briefs to show that Plaintiff Drake remembered nothing about the product:

---

[3] Mr. Reese has a penchant for objecting at depositions. He defended Dr. Matthews in her second deposition, and in roughly 3.5 hours on the record, he objected or interrupted an astounding 131 times, including numerous speaking objections. He even objected when Defendant asked Dr. Matthews questions about the term "natural ingredients," which she used in her surveys. Mr. Reese took the inexplicable position that because the term "natural ingredients" does not appear on the Bayer label, Defendant could not ask about it, even though Dr. Matthews used it in her survey. Ex. C at 121:10-122:23. His nearly two pages of objections on that issue were strange to say the least.

1    *Q. What colors of the fruit bites did you get?*

2    A. I don't remember.

3    . . .

4    *Q. Do you have any recollection what shape it was?*

5    A. No.

6    . . .

7    *Q. And what flavor did you get?*

8    A. That I do not remember.

9    …

10    *Q. Do you recall anything about the product?*

11    A. The only thing I can remember is that they were round. That's it. A little

12    round, like, about this big maybe. That's it.

13    Ex. D at 135:1-136:13 (emphases added).

14    Plaintiffs claim that Defendant used the "fruit" of "misconduct" (ECF 107 at

15    8) but fail to indicate what is possibly wrong with these questions. Plaintiffs asked

16    similar questions when deposing Defendant's survey expert, Dr. Ran Kivetz. Ex. O at

17    222:9-23 (asking: "What shape was it?" and "What did it taste like?"). The only

18    difference is that Dr. Kivetz knew the answers. *See id.*

19    Plaintiffs take issue with follow-up questions (in the Drake deposition, not the

20    Bowling deposition)—which Defendant did not even quote, let alone rely on, in its

21    brief. *See* ECF 96 at 10-11. There was nothing wrong with those questions either. For

22    instance, after Ms. Drake said she could not recall the color of the Fruit Bites,

23    Defendant asked: "Did you get the red ones?"; "The green ones?" Ex. D at 135:3-4.

24    Plaintiffs contend the question about the "green ones" was inappropriate because the

25    product does not come in green, only brownish red. But Plaintiffs cite nothing

26    supporting their legal position, relying instead on inapposite authority prohibiting

27    lying to witnesses, making "false statements of material fact," and manipulating

28    documents. *See Price v. Gwinnett Fam. Dental Care, LLC*, No. 1:06-CV-2659-BBM-

GGB, 2007 WL 3477771, at *2-3 (N.D. Ga. Oct. 31, 2007) (quotation omitted); *see REXA, Inc. v. Chester*, 42 F.4th 652 (7th Cir. 2022); *Wi-LAN Inc. v. LG Elec., Inc.*, No. 18-cv-01577-H-BGS, 2019 WL 5067442 (S.D. Cal. Oct. 9, 2019).[4] None of these cases prohibits asking questions, like the ones at issue, designed to test a witness' recollections and credibility. Further, the questions Defendant asked were not difficult to answer for anyone who actually took the product, which had a distinctive appearance and taste.

The novel rule Plaintiffs seek to create makes little sense. Plaintiffs would allow Defendant to ask whether the product was "red" or a "square," but not whether it was "green" or a "gummy bear." But Defense counsel is not required to ask leading questions, steering the opposing witness to the correct answer. In any event, Defendant has not used the "fruit" of these follow-up questions, contrary to Plaintiffs' claim, *see* ECF 107 at 8.[5] Thus, not only were the questions permissible, they are also irrelevant to Defendant's arguments in this litigation.

The bottom line is that the named Plaintiffs could not recall the look or taste of the Natural Fruit Bites despite their distinctive appearance and taste. That is not the fault of Defendant's counsel, whose questions were unobjectionable. Plaintiffs can

---

[4] Plaintiffs' reliance on California Professional Rule of Ethics 4.1 is similarly inapt. The Comments to the rule state that "[a] lawyer . . . generally has no affirmative duty to inform an opposing party of relevant facts." Cmt. [1]. Notably, the same rules prohibit a lawyer from "counseling or assisting a client in conduct that the lawyer knows is criminal or fraudulent." Rule 1.2.1. Plaintiffs' counsel had an ethical duty to drop this case once it became apparent their clients had no valid basis for their claims.

[5] *After* Ms. Drake said she had no "recollection what shape it was," Ex. D at 135:10-12, Defendant asked about possible shapes, including "gummy bears," "clovers," and "[w]ere they the round ones," *id*. at 135:13-20. Ms. Drake did not remember and said "they could have been" round. *Id*. at 135:23. Defendant did not cite this testimony in its briefs. Defendant did, however, quote Ms. Drake's response to a later question, "Do you recall anything about the product?," because she answered: "The only thing I can remember is that they were round. That's it. A little round, like, about this big maybe. That's it." ECF 96 at 10. It appears Ms. Drake was recalling the little oval pill photographed in the attorney advertisement Reese LLP used to recruit class members. ECF 96-18. Oddly, Plaintiffs' counsel did not even show Bayer's product in its recruitment tool.

11

only blame themselves for suing Bayer over a product they never bought.

**B. Plaintiffs' Rule 11 motion makes more misrepresentations.**

Plaintiffs' Rule 11 motion runs afoul of Rule 11. Plaintiffs continue their habit of misleading this Court. By Defendant's count, there are **seven** new misrepresentations made in Plaintiffs' Rule 11 motion alone.

**1**. Defendant did not "forbid[]" Dr. Matthews from testifying or "manipulate" her testimony in any way. ECF 107-1 at 6. After Plaintiffs sandbagged Defendant by disclosing an untimely survey, it was Plaintiffs' counsel, Mr. Moore—not Defendant's counsel—who first suggested that Dr. Matthews' testimony that day be limited to her prior survey. Decl. J. Cohn ¶ 17. Defendant's counsel had no choice but to agree. Defendant received the raw data of Dr. Matthews' new survey less than 24 hours before her deposition began, in an unrelated email chain discussing deposition logistics. Ex. G. The email did not mention the new survey, and Defendant did not review the attachments—raw data and a blank survey form—because Defendant did not expect an untimely survey or anything pertaining to the deposition the very next morning. What's more, the email did not include a written report from Dr. Matthews on this new survey. The first time Defendant saw any opinions from Dr. Matthews on this survey was when Plaintiffs filed their reply brief on class certification several weeks later. There was no way Defendant could have deposed an expert on a survey it had not yet reviewed.

Plaintiffs' claims of manipulation are especially rich considering that for weeks after Matthews' first deposition, Plaintiffs asserted the new survey was not "evidence" and may never be evidence. Ex. H at 2-3. Defendant sought to strike the untimely survey, but Plaintiffs claimed, in the draft Rule 37 joint letter, that Defendant's argument was premature because Plaintiffs had not yet decided whether they would ever use the survey in this litigation. *Id*. Defendant also sought to redepose Dr. Matthews, but Plaintiffs objected to that as well. Ex. H (April 15, 2024, exchanged Rule 37 letter); Ex. I (April 26, 2024, exchanged Rule 37 letter). Despite Defendant's

1   numerous attempts to meet and confer, Plaintiffs refused to tell Defendant whether
2   they planned to use the survey. Ex. J; Ex. K; Ex. L; Ex. M. Thus, it was Plaintiffs who
3   manipulated the record by: (1) sandbagging Defendant with an untimely survey;
4   (2) claiming the survey was not evidence and may never be evidence when Defendant
5   sought to strike it; (3) refusing to let Defendant depose Dr. Matthews on the survey
6   before Defendant's class certification opposition brief was due; and then (4) using the
7   new survey in their reply brief.

8       **2.** Worse, Plaintiffs misrepresent what the survey tested. Plaintiffs claim it
9   discusses "the word 'Natural' on the Product's package," ECF 107-1 at 6, but that is
10  simply untrue. The survey tested a fictional "generic label," *not* the Bayer label. Ex.
11  C at 87:15-16, 96:11-13. The differences between the two are self-evident:

 v. 

*Natural Fruit Bites Label*          *Fictional Generic Label*

20      Dr. Matthews was clear: Her new survey "did not concern the Natural Fruit
21  Bites label at issue." *Id.* at 43:19-25. Although the generic label is "derived from the
22  Bayer label" insofar as it has "the shape of the bottle, the color scheme, [and] the
23  words 'natural' and 'multivitamin,'" Dr. Matthews "stripp[ed] out all the other claims
24  from the Bayer label." *id.* at 75:6-11. She removed the "context," *id.* at 78:4-6, and
25  eliminated the "visual and aesthetic components" on the label, *id.* at 26:23-27:2. She
26  also deleted all references to fruit and all of the specific language about how the
27  product has no "GMOs," "artificial sweeteners or flavors," or "synthetic colors," *id.*
28  at 32:2-24, which accurately describe the product.

Dr. Matthews admitted these changes were incredibly significant—they "[c]learly" had "an impact on consumers' understanding of the types of ingredients" in the product. *Id.* at 100:13-16. Throughout both depositions, Dr. Matthews testified repeatedly that "context is important" and that "it's important to replicate the marketplace conditions." Ex. B at 171:9-10, 174:6-9; Ex. C at 10:13-14, 20:4-13. As she explained, how a consumer defines the word "natural" "[d]epends upon" the "the product," "the label," and "the words on the label." Ex. B at 189:9-15; Ex. C at 9:13-10:17.

Her fictional generic label was "very different" from the Bayer label "in many ways." Ex. C at 96:21-97:1. In short, Plaintiffs' argument that the new survey "discusses the word 'Natural' on the Product's package," ECF 107-1 at 6, is false.

**3.** The new survey does not "contradict[] Defendant's argument" that Dr. Matthews found "no statistical impact" from the word "Natural" on the Bayer label. ECF 107-1 at 1-2. Dr. Matthews made this clear throughout her second deposition. She agreed with Defendant, just like she did before, that "the word 'natural' on the Bayer label had no impact whatsoever on consumers' understanding of the type of ingredients." Ex. C at 54:14-17; *see also* Ex. A (compilation of additional times Dr. Matthews testified to lack of statistical significance of "Natural" on Bayer label).

In her view, "the word 'natural' might still be confusing *if none of the other context cues were present*." Ex. C at 65:2-3 (emphasis added). The survey of the generic label showed that. But, on the Bayer label, which supplied context, the word "Natural" "had no impact on consumer confusion." *Id.* at 52:1-6. Any confusion regarding the Bayer label was not due to the word "Natural": "One thing that we do know is that none of that confusion is due to the word 'Natural' on the label. I would say we see there's no additional confusion based on the word 'natural' when all these other context cues are present." *Id.* at 64:23-65:1.

Further undermining Plaintiffs' case, Dr. Matthews explained that other words on the Bayer label—which are indisputably accurate and not challenged in the

14

litigation—"[c]learly" impacted consumers. *Id.* at 100:16-18 ("Clearly, they did, since over 50 percent of consumers in the edited Bayer label that did not say 'natural' still believed that it contained only natural ingredients.").[6] Language about "no artificial colors," "no artificial flavors," and "fruit" could explain why survey participants selected the answer choice, "only natural ingredients," on her survey. *Id.* at 100:19-101:1. Dr. Matthews' hypothesis is that "the other words, the other contextual cues on that label in the original survey, as an aggregate, have roughly the same impact as the word 'natural' on the generic label." *Id.* at 110:12-17. But the word "Natural" on the Bayer label "had no additional impact." *Id.* at 115:4-5. It had "no effect on consumers' understanding of the types of ingredients" in the Bayer product. *Id.* at 115:13-16.

Thus, the new survey did not "contradict[] Defendant's argument." ECF 107-1 at 2. Dr. Matthews' view remains the same: The word "Natural" on the Bayer label had no impact on consumer beliefs.

**4.** Plaintiffs misrepresent the timing and purpose of the new survey as well. According to Plaintiffs, it was "conducted ***after*** the filing of [Dr. Matthews'] opening report and in ***anticipation*** of potential arguments that may be raised in Defendant's opposition to Plaintiffs' opening brief." ECF 107-1 at 2. But, in fact, the survey was designed and commenced well ***before*** Dr. Matthews' opening report was filed on February 20, 2024, and it was completed ***over a month before*** Dr. Matthews' deposition. Ex. C at 30:17-22. Yet Plaintiffs waited until less than 24 hours before Dr. Matthews' deposition to provide the raw data to Defendant and did so by burying it

---

[6] The number of survey participants that selected the answer choice for "[o]nly natural ingredients" was likely inflated by the many flaws in Dr. Matthews' surveys, including focalism bias. *See* ECF 96-14 at 18 (Report of Dr. Ran Kivetz) (pointing out how Dr. Matthews' survey inappropriately focused test group participants on the word "natural," thus "guaranteeing attention to this claim" and failed to account for the fact that consumers have "widely differing interpretations of 'natural'"). Dr. Matthews stated that the results could be due, in her view, to the fact that "many consumers . . . are not intelligent" and are "ignorant." Ex. B at 58:20-59:1. Bayer does not share Dr. Matthews' dim view of consumers.

in an unrelated email chain about deposition logistics. Ex. G.

Moreover, the reason for the untimely survey was not to respond to "potential arguments." Rather, as Dr. Matthews testified, Plaintiffs' counsel asked her to do the survey after she told them the results of her original survey. Ex. C at 44:20-45:11. Dr. Matthews told Plaintiffs' counsel that she had found no impact whatsoever from the word "Natural" on the Bayer label, and only then did they ask her to create and test a fictional "generic label." *Id*. The new survey was a last-ditch attempt to shore up a frivolous case.

**5.** Defendant did not "knowingly misstat[e] facts in signed filings with the Court." ECF 107-1 at 2. Plaintiffs make this incendiary claim but fail to provide a single example. Defendant simply quoted the transcripts from the named Plaintiffs and Dr. Matthews. Plaintiffs do not like their own witnesses' testimony, but Defendant provided accurate quotes and cites. Further, as demonstrated above, there was nothing inappropriate about Defendant's questions, to which Plaintiffs did not even object.

**6.** Defendant did not "improperly threaten[] sanctions for tactical purposes." *Id*. Defendant properly provided notice (both informally and by service of motion 21 days prior to filing) to Plaintiffs of Defendant's intent to seek sanctions and then sought sanctions. *See* Fed. R. Civ. P. 11(c)(2); *see also id*. Cmt. ("In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion."). This was not a "threat" for "tactical purposes." Plaintiffs' case has no merit, the complaint should never have been filed, and Plaintiffs had no basis to seek class certification. Defendant has every right to pursue sanctions for the time expended and expenses incurred litigating this frivolous lawsuit, and they properly informed Plaintiffs' counsel of that intent.

Plaintiffs have no standing to complain about Defendant's decision to pursue sanctions after Plaintiffs engaged in sanctionable misconduct. Likewise, Plaintiffs

should not fault Defendant for reminding them and Dr. Matthews of their obligations under Rule 26 at the deposition. After all, they had just flouted the Rule by sandbagging Defendant with an untimely survey. And they could not and did not justify their actions. Plaintiffs still have not explained (1) why they disclosed the survey more than a month after it was completed; or (2) why they buried it in an email chain about scheduling logistics.

**7.** "Bullying and deceptive tactics" are not "Lehotsky Keller LLP's [sic] modus operandi." ECF 107-1 at 9 n.1. Plaintiffs cite a case from 2018 to suggest that Defendant's counsel's firm was somehow previously sanctioned. *Id.* But Lehotsky Keller Cohn did not exist in 2018. The firm was founded in 2021, and no attorney from the firm was involved in 2018 in the case Plaintiffs cite. Neither Lehotsky Keller Cohn LLP nor any of its attorneys has ever been sanctioned or reprimanded by a court for violating ethical duties of candor and truthfulness.

Plaintiffs' counsel cannot say the same about themselves. Not only has Judge Burkhardt reprimanded Plaintiffs' counsel in this litigation for making statements that "could not possibly be true," *see* ECF 104-13 at 11, numerous other courts have as well, *see, e.g.*, *Miller v. Sanofi Consumer Healthcare*, No. 22 CIV. 574 (LLS), 2023 WL 112553, at *2 (S.D.N.Y. Jan. 5, 2023) (Plaintiff, represented by Charles Moore, "misrepresent[ed]" product label); *Gonzalez v. Chattem, Inc.*, No. 23-cv-00102-HSG, 2023 WL 8101923, at *4 (N.D. Cal. Nov. 21, 2023) (finding that named Plaintiff in class action labeling lawsuit brought by Reese LLP could not have actually purchased product at issue and reminding Plaintiffs' counsel to "carefully consider their Rule 11 obligations"); *Davis v. Pinterest, Inc.*, No. 19-cv-07650-HSG(TSH), 2021 WL 3045878, at *1 (N.D. Cal. July 20, 2021) (calling motion to compel filed by Reese LLP "problematic").

### C. Plaintiffs' Rule 11 motion was filed for an improper purpose—to harass Defendant's counsel.

Plaintiffs have no case. The named Plaintiffs testified that they were not

17

deceived by the word "Natural." Their own expert wrote a report stating that the word "Natural" on the product's label had no impact on consumer beliefs. She then testified dozens of times that her conclusion was correct. In light of this evidence, no objectively reasonable attorney would have continued litigating this lawsuit. This case never should have been filed, let alone taken to the class certification stage. Plaintiffs' counsel had an ethical duty to dismiss this case once it was apparent their lawsuit was baseless.

Plaintiffs' counsel cannot defend their behavior or the merits of their lawsuit, so instead they are using a retaliatory Rule 11 motion based on falsities and misrepresentations to distract this Court from their unprofessional and unethical behavior throughout this litigation. This is not a legitimate use of Rule 11. *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) ("Thus, where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court may find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney." (cleaned up)). Sanctions on Plaintiffs' counsel are necessary to prevent them from continuing to harass Bayer, its attorneys, and future litigants, and to allow Bayer to recoup its legal fees and expenses incurred litigating this meritless lawsuit.

## IV.    CONCLUSION

This Court should deny Plaintiffs' motion for Rule 11 sanctions, grant Defendant's motion for Rule 11 sanctions, and award Bayer reasonable attorneys' fees and expenses.

1  Dated:  June 10, 2024                    Respectfully submitted,

2

3                                           */s/ Jonathan F. Cohn*
                                            Jonathan F. Cohn* (NY 2972578)
4                                           Shannon Grammel* (KS 29105)
                                            LEHOTSKY KELLER COHN LLP
5                                           200 Massachusetts Ave., NW
                                            Washington, DC 20001
6                                           Email: jon@lkcfirm.com
                                            Tel.: (512) 693-8350
7                                           Fax: (512) 727-4755
8

9                                           Katherine C. Yarger* (CO 40387)
                                            LEHOTSKY KELLER COHN LLP
10                                          700 Colorado Blvd., #407
                                            Denver, CO 80206
11                                          Email: katie@lkcfirm.com
                                            Tel: (512) 693-8350
12                                          Fax: (512) 727-4755
13

14                                          Alexis Swartz* (TX 24122045)
15                                          LEHOTSKY KELLER COHN LLP
                                            408 W. 11th St. 5th Floor
16                                          Austin, TX 78701
                                            Email: alexis@lkcfirm.com
17                                          Tel: (512) 693-8350
                                            Fax: (512) 727-4755
18

19

20                                          *Attorneys for Defendant*
                                            * Admitted *pro hac vice*.
21

22

23

24

25

26

27

28

19