# EXHIBIT D

```
             UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF CALIFORNIA
_____

EDISON CORPUZ, DENIECE [sic]
DRAKE, DEBORAH BOWLING,
individually and on behalf of
all others similarly situated,


      Plaintiffs,

      v.                              Case No.

BAYER CORPORATION,                    3:22-cv-01085-MMA-JLB

      Defendant.


_____

              VIDEOCONFERENCE DEPOSITION OF

                     DONIECE DRAKE

DATE:      Friday, January 19, 2024

TIME:      9:03 a.m.

LOCATION:  Prevail Testimony Management Platform

           Shirley, New York 11967

REPORTER:  Janet Wallravin
```

```
                                                                    2
 1                         A P P E A R A N C E S

 2    ON BEHALF OF PLAINTIFFS EDISON CORPUZ, DONIECE DRAKE,

 3    DEBORAH BOWLING:

 4          CHARLES D. MOORE, ESQUIRE

 5          Reese LLP

 6          100 South Fifth Street, Suite 1900

 7          Minneapolis, Minnesota 55402

 8          cmoore@reesellp.com

 9          212-643-0500

10

11    ON BEHALF OF PLAINTIFFS EDISON CORPUZ, DONIECE DRAKE,

12    DEBORAH BOWLING:

13          GEORGE V. GRANADE, ESQUIRE

14          Reese LLP

15          8484 Wilshire Boulevard, Suite 515

16          Los Angeles, California 90211

17          ggranade@reesellp.com

18          310-393-0070

19

20

21

22

23

24

25
```

```
                                                             3
 1              A P P E A R A N C E S (Cont'd)
 2   ON BEHALF OF DEFENDANT BAYER CORPORATION:
 3        JONATHAN F. COHN, ESQUIRE
 4        Lehotsky Keller Cohn LLP
 5        200 Massachusetts Avenue, Northwest
 6        Washington, DC 20001
 7        jon@lkcfirm.com
 8        512-693-8350
 9
10   ON BEHALF OF DEFENDANT BAYER CORPORATION:
11        ALEXIS SWARTZ, ESQUIRE
12        Lehotsky Keller Cohn LLP
13        919 Congress Avenue
14        Austin, Texas 78701
15        alexis@lkcfirm.com
16        512-693-8350
17
18   ON BEHALF OF DEFENDANT BAYER CORPORATION:
19        KATHERINE C. YARGER, ESQUIRE
20        Lehotsky Keller Cohn LLP
21        700 Colorado Boulevard, Suite 407
22        Denver, Colorado 80206
23        katie@lkcfirm.com
24        512-693-8350
25
```

```
                                                                25
 1        Q.   Have you published anything else?
 2        A.   No.
 3        Q.   What is this lawsuit about?
 4        A.   It's about, I believe, the misleading of the
 5   ingredients.
 6        Q.   Is it about a particular product or products?
 7        A.   Yeah, it's about the -- the One A Day for
 8   Women's fruit bites.
 9        Q.   Do you know who makes the One A Day fruit
10   bites?
11        A.   I believe it's Bayer.
12        Q.   Are you suing Bayer?
13        A.   I don't know.
14        Q.   What other products does this case involve?
15        A.   I don't know.
16        Q.   Do you know if there are other plaintiffs in
17   this case?
18        A.   No.
19        Q.   Do you know where the case is pending, what
20   court it's pending in?
21        A.   No.
22        Q.   Do you know the cases in California?
23        A.   That, I -- I have no idea.  I'm sorry.
24        Q.   Have you ever been to California?
25        A.   No.
```

120

1  A. Yes.

2  Q. Do you agree that that sentence pertains to
3  products that are sold, labeled, or represented as 100
4  percent organic?

5          MR. MOORE: Objection. Form and foundation.
6          You can answer.
7          THE WITNESS: It says excluding water and
8  salt, right?
9  BY MR. COHN:

10  Q. Correct.
11  A. And what was the question again? I'm sorry.
12  Q. Do you agree that this sentence pertains to
13  products sold, labeled, or represented as 100 percent
14  organic?

15          MR. MOORE: Objection. Form and foundation.
16          You can answer.
17          THE WITNESS: I'm sorry. I'm trying to --
18  I'm trying. I'm trying my best. I'm sorry. Process
19  part is what's getting the agricultural product shown.
20  Yes. I'm -- I apologize. I don't really know how to
21  answer that question reading this.
22  BY MR. COHN:
23  Q. Do you see the bold words after the "A" in
24  the parenthetical?
25  A. Yes.

```
                                                              121
1        Q.   And you agree it says, "Products sold,
2    labeled, or represented as quote, '100 percent
3    organic,'" correct?
4             MR. MOORE:  Objection.  Document speaks for
5    itself.
6    BY MR. COHN:
7        Q.   You may answer.  As a general matter, unless
8    Charlie instructs you not to answer, you're supposed to
9    answer.  Is that okay with you?
10       A.   I don't -- it says, "Products sold, labeled,
11   or represented as 100 percent organic."  It doesn't
12   really say.  I don't really know how to answer that
13   one.  I'm sorry.
14       Q.   Well, just yes or no.  Do you see the bold
15   words, "Products sold, labeled, or represented as 100
16   percent organic"?
17       A.   Yes, I see that.
18       Q.   Okay.  And then do you see below that
19   paragraph, there's another paragraph next to the letter
20   B?
21       A.   Yes.
22       Q.   What are the bold words that follow the
23   letter B?
24       A.   "Products sold, labeled, or represented as
25   organic."
```

122

1    Q.    It doesn't say 100 percent organic here,
2    correct?
3          MR. MOORE:  Objection.  Document speaks for
4    itself.
5    A.    No, it doesn't say it on -- it doesn't say it
6    right there.
7    Q.    So would you agree that paragraph A pertains
8    to products sold, labeled, or represented as 100
9    percent organic, but paragraph B just pertains to
10   products sold, labeled, or represented as organic,
11   correct?
12         MR. MOORE:  Objection.  Form and foundation.
13   She's not a lawyer.
14         THE WITNESS:  Yeah.  It's hard to answer
15   that.  I -- I'm -- I apologize.
16   BY MR. COHN:
17   Q.    All right. Can you just tell me if I'm
18   reading this correctly then?  Paragraph B begins,
19   "Products sold, labeled, or represented as organic."
20   Did I read that correctly?
21   A.    Yes.
22   Q.    And you agree it doesn't say "100 percent
23   organic" here, correct?
24   A.    Correct.
25   Q.    I'll read the next sentence.  "A raw or

1  processed agricultural product sold, labeled, or
2  represented as quote, 'organic,' end quote, must
3  contain (by weight or fluid volume excluding water and
4  salt) not less than 95 percent organically produced raw
5  or processed agricultural products."  Did I read that
6  correctly?
7       A.   Yes.
8       Q.   So would you agree, based upon what you see
9  in front of you, that a product can be labeled as
10 organic even if it does not have 100 percent organic
11 materials?
12          MR. MOORE:  Objection.  Form and foundation.
13      A.   That's -- that's what the document is saying.
14      Q.   In fact, you can use the word "organic" even
15 if the product has only 95 percent organically produced
16 raw or processed agricultural products, right?
17          MR. MOORE:  Objection.  Form.  Foundation.
18 Calls for a legal conclusion.  Calls for a -- asks for
19 a hypothetical.
20 BY MR. COHN:
21      Q.   You may answer.
22      A.   That's what the document says.
23      Q.   Okay.  So we're reading the document the same
24 way.  And you would agree that there's a difference
25 between organic and 100 percent organic, right?

```
 1            MR. MOORE:  Objection.  Calls for
 2   speculation.  Form and foundation.
 3       A.   That's what the document is saying.
 4       Q.   And you have no reason to believe that the
 5   Department of Agriculture got this wrong, right?
 6            MR. MOORE:  Objection.  Form.  Foundation.
 7       A.   It's -- it's on the document.
 8       Q.   Okay.  Let's now, if you may, and I can pull
 9   this up, but it's probably easier if you pull it up,
10   the bottle of the organic folic acid that you are
11   taking.  Can you hold it up for the camera, please?
12       A.   Oh, sure.  Where is it?  Okay.  Yes.
13       Q.   It says "certified organic folic acid,"
14   correct?
15       A.   Yes.
16       Q.   It doesn't say "100 percent organic," does
17   it?
18            MR. MOORE:  Objection.  Document speaks for
19   itself.
20            You can answer.
21            THE WITNESS:  It says "certified organic" on
22   the bottle.
23   BY MR. COHN:
24       Q.   Correct.  And you agree it does not say "100
25   percent organic," right?
```

1       MR. MOORE:  Same objection.
2       A.   On the bottle, it -- it just says "certified
3    organic."
4       Q.   Okay.  And you would agree that there's a
5    difference between 100 percent organic and organic,
6    correct?
7       MR. MOORE:  Objection.  Form and foundation.
8       A.   That I -- I don't know.  Oh, I'm sorry.  I
9    got to hold it up still?  I'm sorry.
10      Q.   No, you can put it back down now.
11      A.   Okay.  Okay.  Okay.
12      Q.   You don't think that product is 100 percent
13   organic, do you?
14      MR. MOORE:  Objection.  Form and foundation.
15      A.   I would like to hope so.
16      Q.   Do you think it's 100 percent organic?
17      MR. MOORE:  Same objection.
18      A.   What is 100 percent organic?
19      Q.   No, I'm asking you.  Do you think the product
20   is 100 percent organic?
21      MR. MOORE:  Same objection.
22      A.   Which -- which product?
23      Q.   The only product that you put in front of the
24   screen a second ago?
25      A.   Oh, okay.  Got it.  I would like to hope so.

1    Q.   What colors of the fruit bites did you get?
2    A.   I don't remember.
3    Q.   Did you get the red ones?
4    A.   I don't remember.
5    Q.   The green ones?
6    A.   I don't remember.
7    Q.   Do you have any recollection which colors you
8  got?
9    A.   No.
10   Q.   Do you have any recollection what shape it
11 was?
12   A.   No.
13   Q.   Were they the gummy bears?
14   A.   Trying remember the texture.  Gummy bears?  I
15 don't -- I don't remember if they were gummy bears.
16   Q.   Were they the round ones?
17   A.   It could have been.
18   Q.   Were they the ones that are shaped like
19 clovers?
20   A.   I don't remember.
21   Q.   You have no recollection what they look like,
22 right?
23   A.   No.  They might -- they could have been
24 round.  That's the only thing I can remember.
25   Q.   And what flavor did you get?

```
                                                                  136
 1        A.   That I do not remember.
 2        Q.   The banana ones?
 3        A.   I don't remember.
 4        Q.   Peach?
 5        A.   I don't remember.
 6        Q.   Blue raspberry?
 7        A.   I don't remember.
 8        Q.   What is a blue raspberry, anyway?
 9        A.   Yeah.  I don't -- was it a flavor?
10        Q.   Yeah.  But you don't recall if you got the
11   blue raspberry ones, right?
12        A.   I don't recall.  I don't remember.
13        Q.   Do you recall anything about the product?
14        A.   The only thing that I can remember is that
15   they were round.  That's it.  A little round, like,
16   about this big maybe.  That's it.
17        Q.   Mm-hm.  Nothing else?  You remember nothing
18   else about it, right?
19        A.   No.
20        Q.   And you didn't talk about these with anyone,
21   did you?
22        A.   No.
23        Q.   And you didn't save the bottles, right?
24        A.   Correct.
25        Q.   And you didn't save the receipts, right?
```

1   five-minute break.
2           MR. MOORE:  Yeah.
3           THE WITNESS:  Okay.
4           SESSION MANAGER:  Okay.  We're going off the
5   record at 2:51 p.m. Eastern Time.
6       (Off the record.)
7           SESSION MANAGER:  Okay.  The time is 3:05
8   p.m. Eastern.  We are back on the record.
9           MR. MOORE:  And just for the record, in our
10  prior break, the parties have stipulated that Plaintiff
11  does not waive former foundation objections if not
12  raised during the deposition.
13  BY MR. COHN:
14      Q.   Great.  Thank you.  Ms. Drake, welcome back.
15  Did you talk to anybody during the last break?
16      A.   Yes.
17      Q.   With whom did you speak?
18      A.   I spoke to my girlfriend.
19      Q.   Pardon?
20      A.   My girlfriend.
21      Q.   All right.  Did you speak with anyone else?
22      A.   Yes.
23      Q.   Was that a yes?
24      A.   Yes.
25      Q.   With whom did you speak aside from your

```
 1        A.   I'm sorry.
 2        Q.   Why did you file this lawsuit?
 3        A.   Because of what it says.  You know, my -- you
 4   know, and I read the bottle, and it said, "all
 5   natural."  It said, "natural."  I'm sorry.  Not "all
 6   natural."  It said "natural."  That's what I went
 7   about, and it wasn't natural.  And now there are terms
 8   of "all natural" and a whole bunch of things that I'm
 9   just learning about now.
10        Q.   Okay.  But you said repeatedly today that
11   when you bought the product you had no idea what
12   percent of it was natural, right?
13        A.   Yes, but I was just going off -- based off
14   what the bottle said.  The bottle said, "natural," so
15   that's what I went off of.
16        Q.   I understand, but you testified you didn't
17   have any expectation of what percent of the product was
18   natural, right?
19        A.   It didn't say what percentage was natural on
20   the -- on the front of the bottle, so I didn't know.
21        Q.   You didn't have an expectation of whether it
22   was 20 percent natural or 100 percent natural, right?
23        A.   I just thought it was natural.  I didn't know
24   the percentage of it.  I didn't know the percentage.
25        Q.   And sitting here today, you still don't know
```

```
                                                               210
 1   the percentage, right?
 2        A.   Correct.
 3        Q.   For all you know, there is a higher percent
 4   than what you thought there was, correct?
 5        A.   I -- I wouldn't know.  I would have to see.
 6        Q.   You have no idea whether Bayer has a higher
 7   amount of natural stuff than you ever thought, correct?
 8        A.   I don't know.
 9        Q.   When did you first decide to sue Bayer?
10        A.   I will have to go back and look in the
11   documents to see when I -- I filed the claim.
12        Q.   Do you recall when you first contacted an
13   attorney?
14        A.   Oh, boy.  No, I do not.
15        Q.   Do you recall how you got the attorney's
16   name?
17        A.   Yes.  It was a -- an action suit.
18        Q.   It was an action suit?
19        A.   Yes.
20        Q.   Did someone tell you about the action suit?
21        A.   No.  We just came across the -- the Facebook.
22        Q.   You saw something on Facebook; is that right?
23        A.   Yes.
24        Q.   Was it an attorney advertisement?
25        A.   I don't remember.  I don't remember if it was
```

```
                                                                 220
 1            CERTIFICATE OF ELECTRONIC COURT REPORTER

 2        I, JANET WALLRAVIN, the officer before whom the

 3   foregoing proceedings were taken, do hereby certify that any

 4   witness(es) in the foregoing proceedings, prior to

 5   testifying, were duly sworn; that the proceedings were

 6   recorded by me and thereafter reduced to typewriting by a

 7   qualified transcriptionist; that said digital audio

 8   recording of said proceedings are a true and accurate record

 9   to the best of my knowledge, skills, and ability; that I am

10   neither counsel for, related to, nor employed by any of the

11   parties to the action in which this was taken; and, further,

12   that I am not a relative or employee of any counsel or

13   attorney employed by the parties hereto, nor financially or

14   otherwise interested in the outcome of this action.

15

16
                                  [signature: Janet E. Wallravin]
17

18                                JANET WALLRAVIN,
                                  Court Reporter
19                                New York Notary
                                  Commission No. 01WA634911B
20                                Expiration: 10/17/2024

21

22

23

24

25
```

```
                                                                    221

 1                     CERTIFICATE OF TRANSCRIBER

 2         I, ANDREA BEILKE, do hereby certify that this

 3   transcript was prepared from the digital audio recording of

 4   the foregoing proceeding, that said transcript is a true and

 5   accurate record of the proceedings to the best of my

 6   knowledge, skills, and ability; that I am neither counsel

 7   for, related to, nor employed by any of the parties to the

 8   action in which this was taken; and, further, that I am not

 9   a relative or employee of any counsel or attorney employed

10   by the parties hereto, nor financially or otherwise

11   interested in the outcome of this action.

12

13

14                            [signature: Andrea Beilke]

15                            ANDREA BEILKE,
                              Certified Electronic
16                            Transcriber, CET-1235
                              Florida Notary
17
```