**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

DONIECE DRAKE, *individually and on behalf of all others similarly situated*, et al.,

Plaintiffs,

v.

BAYER HEALTHCARE LLC,

Defendant.

Case No. 22-cv-1085-MMA (JLB)

**ORDER:**

**(1) GRANTING MOTIONS TO FILE UNDER SEAL;**

[Doc. Nos. 87; 94; 102; 108]

**(2) GRANTING MOTION FOR CLASS CERTIFICATION; AND**

[Doc. No. 90]

**(3) DENYING MOTIONS FOR SANCTIONS**

[Doc. Nos. 104; 107]

Pending before the Court is Plaintiffs Doniece Drake's and Deborah Bowling's ("Plaintiffs") motion for class certification. Doc. No. 90. Defendant Bayer Healthcare LLC ("Defendant") filed an opposition, Doc. No. 96, to which Plaintiffs replied, Doc. No. 110. In addition, the Court granted Defendant leave to file a sur-reply, to which the Court also allowed Plaintiffs to respond. Doc. Nos. 117–119. Also pending before the Court are the parties' respective Rule 11 motions for sanctions, which are fully briefed.

Doc. Nos. 104; 107. The Court found the matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. Nos. 115; 117. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for class certification and **DENIES** the parties' motions for sanctions.

## I. Background

This case involves Defendant's popular "One A Day" ("OAD") line of multivitamins. Doc. No. 85 (Second Amended Complaint, the "SAC") ¶ 1. Specifically, Plaintiffs' SAC concerns Defendant's OAD Natural Fruit Bites Multivitamin products (the "Products"), including the following "four varieties: Men's, Women's, Men's 50+, and Women's 50+." *Id.* ¶ 1 n.1. Plaintiffs allege Defendant's "advertising and marketing campaign is false, deceptive, and misleading" because it holds its Products out as "natural" even though they "contain non-natural, synthetic ingredients." *Id.* ¶¶ 1–2.

Named Plaintiffs Drake and Bowling are two adult women who purchased Defendant's Products. *See id.* ¶¶ 8, 11. Drake purchased the Products in 2020 in retail outlets in Queens, New York, where she is a resident. *Id.* ¶ 8; Doc. No. 110-4 at 2. Bowling is a resident of Riverside County, California, and she purchased the Products in retail outlets in Los Angeles County, California in or around 2020. *Id.* ¶ 11; Doc. No. 110-5 at 3. Both Named Plaintiffs have stated that they read the word "natural" on the Products' labels and relied on the word "natural" in purchasing the Products. *Id.* ¶¶ 9, 12; Doc. No. 110-6 at 3–4; Doc. No. 110-7 at 2–3.

Named Plaintiffs bring suit as individuals as well as on behalf of two statewide classes in California and New York. SAC ¶¶ 41–76. The classes that Plaintiffs seek to certify are defined as follows in the instant motion:

> **California Class**. All persons who purchased at least one of the following Products in the State of California from March 1, 2020, to May 30, 2023:
>
> - One-A-Day Natural Fruit Bites Women's
> - One-A-Day Natural Fruit Bites Men's
> - One-A-Day Natural Fruit Bites Women's 50+

- One-A-Day Natural Fruit Bites Men's 50+

**New York Class**. All persons who purchased at least one of the following Products in the State of New York from May 31, 2020, to May 30, 2023:

- One-A-Day Natural Fruit Bites Women's
- One-A-Day Natural Fruit Bites Men's
- One-A-Day Natural Fruit Bites Women's 50+
- One-A-Day Natural Fruit Bites Men's 50+

Doc. No. 90-1 at 14.

Plaintiffs allege unlawful and deceptive business practices in violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, on behalf of Bowling and the California class, deceptive acts and practices in violation of the New York General Business Law ("GBL") § 349 on behalf of Drake and the New York class, and false advertising in violation of the New York GBL § 350 on behalf of Drake and the New York class. *See* SAC ¶¶ 41–76.

## II. Legal Standard

Federal Rule of Civil Procedure 23 governs class actions. "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23."[1] *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The burden is on the party seeking certification to show, by a preponderance of the evidence, that the prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Specifically, Rule 23(a) requires a showing that:

---

[1] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party seeking certification must then establish that one of the three grounds for certification applies. *See* Fed. R. Civ. P. 23(b). As stated in their motion, Plaintiffs invoke only Rule 23(b)(3) because they are no longer seeking injunctive relief.[2] *See* Doc. No. 90-1 at 14 n.2.

Rule 23(b)(3) provides that a class action may be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(2)(3). The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* In considering a motion for class certification, the substantive allegations of the complaint are accepted as true, but "the court need not accept conclusory or generic

[2] Plaintiffs note that the Products were last sold in May 2023. Doc. No. 90-1 at 14 n.2.

allegations regarding the suitability of the litigation for resolution through a class action." *Hanni v. Am. Airlines, Inc.*, No. 08-cv-00732-CW, 2010 WL 289297, at *8 (N.D. Cal. Jan. 15, 2010); *see also Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 447 (N.D. Cal. 2012) ("[Courts] need not blindly rely on conclusory allegations which parrot Rule 23 requirements."). Accordingly, "the court may consider supplemental evidentiary submissions of the parties." *Hanni*, 2010 WL 289297, at *8; *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

"A court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (internal quotation marks omitted). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## III. Motions to File Under Seal

The parties have moved to file under seal a number of documents in conjunction with the briefing on Plaintiffs' motion for class certification. *See* Doc. Nos. 87, 94, 108. In addition, Defendant has moved to file under seal portions of the deposition transcript of Plaintiff Bowling in connection with its Rule 11 motion for sanctions. Doc. No. 102. "Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). This is "because court records often provide important, sometimes the only, bases or explanations for a court's decision." *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (quotation omitted). Accordingly, when considering a sealing request, "a strong presumption in favor of access" is generally a court's "starting point." *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) (quotation omitted). That presumption can be

overcome only by a showing of a "compelling reason," that "outweighs the general history of access and the public policies favoring disclosure." *Id.* at 1194–95.

"Despite this strong preference for public access," courts have "carved out an exception" for certain court filings. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quotation omitted). Filings that are not "more than tangentially related to the merits of a case" need only satisfy "the less exacting 'good cause' standard" of Federal Rule of Civil Procedure 26(c). *Id.* The "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002) (citation omitted); *see also* Fed. R. Civ. P. 26(c). "Unless the denial of a motion for class certification would constitute the death knell of a case, the vast majority of courts within this Circuit treat motions for class certification as non-dispositive motions to which the 'good cause' sealing standard applies." *Ramirez v. GEO Grp.*, No. 18CV2136-LAB-MSB, 2019 WL 6782920, at *3 (S.D. Cal. Dec. 11, 2019) (quotation omitted).

However, some courts have recognized that the good cause standard may not be appropriate where a class certification motion is effectively dispositive because the stakes of the litigation are such that proceeding individually would not be viable from a practical perspective, and that in such circumstances a party must present compelling reasons for sealing. *See, e.g.*, *In re High–Tech Emp. Antitrust Litig.*, 2013 WL 5486230, at *2 n.1 (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ); *see also In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 10537440, at *3 (N.D. Cal. Aug. 6, 2014) (holding that the case at issue "present[ed] such a circumstance"). Although Plaintiffs have not indicated that the denial of their motion for class certification would constitute the death knell of the case, the Court finds that this is such a case because the Products sold for significantly less than the filing fee to bring an action in this Court, and therefore, individual litigation would not be practical and class

certification would be effectively dispositive. Accordingly, the parties must show particularized compelling reasons to seal documents.

Here, the documents attached to and paragraphs referenced in the parties' briefing on Plaintiff's motion for class certification include personal information of Named Plaintiffs and information from third-party Circana Inc. and Defendant that is the type "of business information that might harm a litigant's competitive standing" if they were made publicly available. *Nixon*, 435 U.S. at 598 (citation omitted). The Court finds that compelling reasons have been shown to seal the business information of Circana Inc. and Defendant, as well as Plaintiffs' personal information. Therefore, the Court **GRANTS** the parties' motions to seal.[3] However, as seen below, the Court does rely on certain facts contained in the sealed documents that relate to numerosity and materiality. The public has a strong interest in the disclosure of these facts and compelling reasons for their confidentiality do not exist.

## IV. Discussion

As explained below, the Court finds that Plaintiffs have satisfied the standards set forth in Rule 23(a) and Rule 23(b)(3).

### A. Rule 23(a)

Rule 23(a) enumerates four prerequisites for class certification, referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.

#### *1. Numerosity*

Rule 23(a)(1) requires that the "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity." *In re Rubber Chemicals Antitrust*

---

[3] The Court's ruling on the sealing of these documents and this information only applies at this stage in the proceedings and to the documents and briefing portions currently filed on the docket and has no bearing on the sealing of these documents or information at a later stage in the proceedings.

*Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). However, courts generally find that numerosity is satisfied if the class includes forty or more members. *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–06 (N.D. Cal. 2014); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). Here, Plaintiffs contend that the proposed classes consist of "thousands" of members. Doc. No. 89 at 17. In addition, Defendant does not dispute that the proposed classes satisfy the numerosity requirement. Therefore, the Court finds that this element has been satisfied.

*2. Commonality*

Rule 23(a)(2) requires questions of law or fact common to the class. According to Plaintiffs, common issues include whether Defendant's "natural" representation on its Products' labels was deceptive and likely to deceive the public. Doc. No. 90-1 at 18; *see Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664–65 (C.D.Cal.2009) ("The proposed class members clearly share common legal issues regarding [Defendant's] alleged deception and misrepresentations in its advertising and promotion of the Products.").

Defendant contends that commonality fails because individual issues predominate over common issues. Doc. No. 96 at 19. Because this argument overlaps with the Rule 23(b)(3) predominance analysis, the Court addresses it below, concluding that Plaintiffs have demonstrated both commonality and predominance.

*3. Typicality and Adequacy*

Typicality requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Adequacy of representation requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the class. *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012).

Here, Plaintiffs claim typicality is met because they and the proposed class assert exactly the same claim, arising from the same course of conduct—the "natural"

representation on the Products' labels. Doc. No. 90-1 at 26. Likewise, Plaintiffs claim adequacy is met because their interests and class members' interests are fully aligned in determining whether the Products' labels were likely to deceive a reasonable consumer. *Id.* at 27. In addition, Plaintiffs note that they have been engaged in the litigation, responding to multiple discovery requests and attending depositions. *Id.* at 28.

Defendant argues Plaintiffs are atypical and inadequate. Doc. No. 96 at 14–17. Defendants assert that it is "unlikely" that Plaintiffs purchased the Products, the word "natural" on the labels "was not material" to Plaintiffs' purchasing decisions, and that Plaintiffs are "overwhelmingly ignoran[t] regarding the nature of this action." *Id.* at 14–17. However, as Plaintiffs note, they testified multiple times that they purchased the Products and that they purchased the Products because of the "natural" representation on the labels. Doc. Nos. 110 at 3–4; 110-6; 110-7. This is enough to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality may be a bar to certification if other members would suffer because the named plaintiffs would be "preoccupied with defenses unique to" them. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Hanon*, 976 F.2d at 508). That is not the situation here. In addition, the Court does not find that this is a case where Named Plaintiffs "are startlingly unfamiliar with the case." *Dufour v. Be LLC*, 291 F.R.D. 413, 419 (N.D. Cal. 2013) (internal quotations omitted). And in any event, objections to adequacy based on a named representative's alleged ignorance are disfavored. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370–74 (1966).

Defendant also argues that Plaintiffs' counsel are inadequate. Doc. No. 96 at 17–18. However, the Court finds that the complained-of behaviors, such as certain discovery violations, do not rise to a level that suggest Plaintiffs' counsel are inadequate given that counsel has ample experience with consumer class actions and no conflicts with the proposed classes. Accordingly, the Court finds that typicality and adequacy have been met.

**B. Rule 23(b)(3)**

In addition to the prerequisites set forth in Rule 23(a), a class must be maintainable under Rule 23(b). Under Rule 23(b)(3), certification is appropriate if: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

*1. Predominance*

"In order to satisfy the predominance requirement, a plaintiff must demonstrate that the claims are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 528 (S.D. Cal. 2011) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311–12 (3rd Cir. 2008)). In analyzing predominance, "the Court must first examine the substantive issues raised by [p]laintiffs and second inquire into the proof relevant to each issue." *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006). Additionally, in order to satisfy Rule 23(b)(3), "plaintiffs must show that 'damages are capable of measurement on a classwide basis.'" *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *9 (C.D. Cal. June 7, 2017) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

"For purposes of class certification, the . . . CLRA [is] materially indistinguishable. [The] statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendant[ ] made what a reasonable person would consider a material misrepresentation." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014); *see also Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018). The same is essentially true for Plaintiffs' GBL causes of action. *See Sharpe v. A&W Concentrate Co.*, No. 19-CV-768 (BMC), 2021 WL 3721392, at *5 (E.D.N.Y. July 23, 2021) (noting that the element of materiality raises common questions, and "the centrality of those questions is strong evidence of predominance).

Here, Defendant argues there is no predominance because (1) Plaintiffs cannot show that the disputed claims were material, (2) Plaintiffs cannot show classwide deception/reliance, and (3) Plaintiffs fail to present a proper damages model. Doc. No. 96 at 20–30. The Court addresses each argument in turn.

a. Materiality

Defendant argues that Plaintiffs cannot establish predominance because they cannot show that Defendant's alleged misrepresentation—using the word "natural" on its gummy vitamin bottles that contain synthetic ingredients—was material to a reasonable consumer, a required element of each of Plaintiffs' causes of actions. Doc. No. 96 at 23–26; *see also Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 224 (N.D. Cal. 2015).

"A representation is 'material' . . . if a reasonable consumer would attach importance to it or if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Id.* (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013)) (internal quotation marks omitted). "[P]laintiffs must offer some means of providing materiality and reliance by a reasonable consumer on a classwide basis in order to certify a class." *Del Monte Foods*, 308 F.R.D. at 225.

Here, Plaintiffs offer several means of showing materiality, including Named Plaintiffs' depositions, internal documents from Defendant, and a materiality survey from one of Plaintiffs' experts, Dr. Andrea Lynn Matthews. Doc. No. 90-1 at 22. Although Defendant argues "Plaintiffs' own testimony makes clear that the word 'Natural' is not material to them when they make purchasing decision," the Court agrees with Plaintiffs that both Drake and Bowling testified in their depositions that they bought the Products because the label had the word "natural" on them. *See* Doc. Nos. 110-6 at 2–3; 110-7 at 2–3. As to Defendant's internal documents, Plaintiffs include emails from Defendant's marketing team and its "senior brand manager" indicating that Defendant had discussions on whether to include the word "natural" on its labels. For example, Defendant's senior

brand manager stated in an email that the "Regulatory [department] did not support" the use of the word "natural" on the labels "based on the presence of vitamins (which are synthetic) in the formula." Doc. No. 88-3 at 2. In another email, Defendant's vice president of marketing mentioned that she "would keep [the word "natural"] to test . . ." because "[c]onsumers loved those words . . ." Doc. No. 88-4 at 2. In opposition, Defendant argues that Plaintiffs "misrepresent the views" of its regulatory department. Doc. No. 96. Based on its review of Plaintiffs' evidence, the Court finds that at this juncture, Defendant's internal documents support that a reasonable consumer would attach importance to the claims at issue, and that Defendant knew that its consumers would regard these claims as important, which renders these claims material.

As to Plaintiffs' expert, Defendant argues that Dr. Matthews's survey is flawed and that its own expert report from Dr. Ran Kivetz "proves that the word 'Natural' on the [P]roducts' label is not material to consumers." Doc. No. 96 at 24. At this stage in the proceedings, the Court agrees with Plaintiffs that Defendant's attacks on Plaintiffs' expert presents common questions that cannot be resolved at this juncture and do not preclude certification. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 958 (N.D. Cal. 2022). Indeed, the Court finds that Defendant's arguments hinge on a classic "battle of the experts" that must be resolved by the trier of fact.

Accordingly, the Court finds that Plaintiffs have presented sufficient evidence to establish materiality at this stage of the proceedings.

b. Reliance

Next, Defendant argues that Plaintiffs cannot show predominance because Plaintiffs cannot show that there is a common, classwide interpretation of each disputed claim, such that individualized inquiries into how each consumer interpreted the claims are not necessary. As noted above, this inquiry is intertwined with the question of materiality for CLRA and GBL claims. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 576–77 (C.D. Cal. 2014) ("[I]f a misrepresentation is not material as to all class members, the issue of reliance 'var[ies] from consumer to consumer,' and no classwide

inference arises."); *Thurston v. Bear Naked, Inc.*, No. 3:11-CV-02890-H, 2013 WL 5664985, at *8 (S.D. Cal. July 30, 2013).

While Defendant argues that Plaintiffs have failed to present expert testimony or survey evidence showing uniform interpretation of each claim, Plaintiffs have established materiality, and in doing so, have offered evidence that the "natural" representation on the Products' labels was intended to meet consumers' desires. Because Plaintiffs have already established materiality of the claims as to all class members, this is sufficient to show that the issue of reliance does not vary from consumer to consumer. *See ConAgra Foods*, 302 F.R.D. at 576–77; *see also Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) ("Reliance can be established on a classwide basis by materiality. In short, if the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.") (internal quotation marks omitted).

c. <u>Damages Model</u>

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As part of this inquiry, plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34. Plaintiffs must present a damages model consistent with their theory of liability—that is, a damages model "purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory." *Id.* at 35. "Calculations need not be exact," *id.*, nor is it necessary "to show that [the] method will work with certainty at this time," *Khasin v. R. C. Bigelow, Inc.*, No. 12-CV-02204-WHO, 2016 WL 1213767, at *1 (N.D. Cal. Mar. 29, 2016).

In cases involving deceptive claims, plaintiffs can satisfy the injury-in-fact requirement by showing that they paid more for a product than they otherwise would have paid (e.g., a price premium), or that they would not have purchased a product at all absent the deceptive claims. *See Mazza*, 666 F.3d at 595.

As an initial matter, it should be noted that "class wide damages calculations under the CLRA are particularly forgiving[,]" because "California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019) (cleaned up). Here, Plaintiffs' theory of liability in this case is that Defendant misrepresented that the Products are "natural" even though they contain synthetic ingredients, and that this alleged misrepresentation caused consumers to pay a higher price for the Products. Doc. No. 90-1 at 24; *see, e.g.*, *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137, *6 (S.D. Cal. 2021) ("Plaintiffs' action is a classic mislabeling case, and their allegation is that the defendant's mislabeling of the Products caused Plaintiffs and the putative class members to pay more than they would have if the Products were properly labeled."). As a method for measuring class-wide damages, Plaintiffs point to their expert Dr. William Ingersoll's proposed "choice-based conjoint survey methodology," which will "measure the value of an individual product attribute, such as a specific understanding of the label" and in turn will help "determine the price premium attributable" to the label claims. Doc. No. 90-1 at 24.

Conjoint surveys, like the one proposed by Plaintiffs' expert, are a well-established method for measuring class-wide damages in mislabeling cases. *See, e.g.*, *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 409 (N.D. Cal. 2021) ("In mislabeling cases where the injury suffered by consumers was in the form of an overpayment resulting from the alleged misrepresentation at issue, . . . courts routinely hold that choice-based conjoint models that are designed to measure the amount of overpayment satisfy *Comcast*'s requirements."); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018) (noting that "[i]t is well-established that the 'price premium attributable to' an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling case under the [ ] CLRA," and that "conjoint analysis is widely-accepted as a reliable economic tool for isolating price premia") (quoting *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016); *Briseno v. ConAgra Foods, Inc.*, 674

F. App'x 654, 657 (9th Cir. 2017) (recognizing that a "conjoint analysis to segregate the portion of th[e] premium attributable to" a contested label claim was a "well-established damages model [ ]"); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 575 (N.D. Cal. 2020) ("[C]onjoint surveys and analyses have been accepted against *Comcast* and *Daubert* challenges by numerous courts in consumer protection cases challenging false or misleading labels."); *McMorrow*, 2021 WL 859137, at *14 (finding that the plaintiff's proposed conjoint survey, which would "isolate and measure the price premium attached only to the term 'nutritious,'" satisfied *Comcast*).

Relevant here, Defendant criticizes Dr. Ingersoll's proposed model because his conjoint analysis has not been applied yet to the proposed classes and because his report refers to "natural ingredients" rather than "natural vitamins." Doc. No. 96 at 28–29. First, the Court agrees with Plaintiffs' that the proposed model is sufficient even though it does not inquire as to "natural vitamins." Doc. No. 109 at 11. Indeed, Plaintiffs' have "always argued that the 'natural' label is deceptive because the Product[s] contain[ ] synthetic ingredients." *Id.*; *see, e.g.*, SAC ¶¶ 2, 9, 12. Second, the Ninth Circuit has held that "there is no general requirement that an expert actually apply to the proposed class an otherwise reliable damages model in order to demonstrate that damages are susceptible to common proof at the class certification stage." *Lytle v. Nutramax Lab'ys, Inc.*, No. 22-55744, 2024 WL 3915361, at *2 (9th Cir. Aug. 23, 2024). In addition, the *Lytle* Court held "that class action plaintiffs may rely on a reliable though not-yet-executed damages model to demonstrate that damages are susceptible to common proof so long as the district court finds that the model is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial." *Id.*

Upon review of Plaintiffs' proposed model, the Court is satisfied that Plaintiffs have sufficiently shown that their proposed damages model is reliable and consistent with their theory of liability under *Comcast*. *See, e.g.*, *Bailey*, 338 F.R.D. at 409 (Plaintiffs' proposed choice-based conjoint survey "seeks to measure the premium that consumers

paid, on average, as a result of the allegedly misleading conduct at issue and is therefore directly tied to the theory of liability in the case.”).

For these reasons, the Court agrees with Plaintiffs that common questions of fact and law predominate over individualized inquiries, and will thus evaluate whether class litigation is a superior method to adjudicate this controversy.

*2. Superiority*

The Court also agrees with Plaintiffs that a class action is superior to other available methods of adjudicating these issues. Judicial economy weighs in favor of a class action where, as here, liability turns on whether products’ labels were false or misleading. Likewise, it would be economically infeasible for class members to pursue their claims individually, since the expense of litigating the scientific adequacy of Defendant’s claims would be exponentially larger than the small amount in controversy for each individual consumer (around $11–$13 per purchase). *See, e.g.*, *Wiener*, 255 F.R.D. at 671. It is far more efficient to resolve the common questions regarding materiality and scientific substantiation in a single proceeding rather than to have individual courts separately hear these issues. The Court therefore concludes that Plaintiffs have met all the requirements of Rule 23(b)(3), as well as Rule 23(a).

## V. RULE 11 MOTIONS FOR SANCTIONS

Both parties have filed Rule 11 motions for sanctions. Doc. Nos. 104; 107. Federal Rule of Civil Procedure 11 provides in pertinent part that “[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person’s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support.” Fed. R. Civ. P. 11(b)(3). Rule 11 authorizes a court to sanction a party and the party’s counsel for filing a pleading, written motion, or other paper lacking evidentiary support. Fed. R. Civ. P. 11(c). The sanction may take many forms, including reasonable attorney’s fees and expenses, but must “must be limited to what suffices to deter

repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Rule 11 sanctions are an extraordinary measure. Defendant argues that Plaintiffs' "class certification motion and class action complaint are frivolous" requiring dismissal of this case with prejudice and attorneys' fees. Doc. No. 104-1 at 6–7. Given that the Court has denied two motions to dismiss in this case and has now granted class certification, the Court finds imposition of sanctions is not warranted, as this case is not frivolous. As discussed above, although Defendant contends that Plaintiffs' expert report from Dr. Matthews is flawed, the Court finds that those arguments are better suited for the trier of fact and that Plaintiffs presented other evidence sufficient to establish materiality at this stage of the proceedings. Indeed, "neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies." *Lytle*, 2024 WL 3915361, at *7. In addition, although the Court finds Plaintiffs' counsel's conduct disconcerting regarding the original named plaintiff, the Court declines to impose sanctions with the expectation that counsel will refrain from such conduct in the future.

In response to Defendant's Rule 11 motion, Plaintiffs filed their own Rule 11 motion against Defendant and its counsel for improperly threatening sanction for tactical purposes and for "knowingly misstating facts in signed filings with the Court." Doc. No. 107-1 at 2. First, the Court does not find that Defendant brought its motion for sanctions for an improper purpose. Second, the Court agrees with Defendant that Plaintiffs' arguments regarding "misstating facts" in a deposition is not applicable to a Rule 11 motion for sanctions. *See e.g., Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2011) (explaining "Rule 11(d) specifically exempts discovery motions and objections from its procedural requirements."); *see also Christian v. Mattel*, 286 F.3d 1118, 1131 (9th Cir. 2002) (reversing imposition of Rule 11 sanctions because the award was based, in part, on discovery abuse).

Therefore, the Court **DENIES** both parties' motions for Rule 11 sanctions. Doc. Nos. 104; 107.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for class certification, Doc. No. 90, and **DENIES** the parties' motions for sanctions, Doc. Nos. 104, 107. In addition, the Court **GRANTS** the pending motions to seal, Doc. Nos. 87, 94, 102, and 108. Accordingly, it is hereby **ORDERED** that Document Numbers 88–89, 95, 103, and 109 shall remain under seal as proposed documents.

As stated in U.S. Magistrate Judge Jill L. Burkhardt's November 1, 2023 Order, Doc. No. 81, the parties are **ORDERED** to contact Judge Burkhardt's chambers no later than **September 19, 2024** to request another Case Management Conference.

**IT IS SO ORDERED**.

Dated: September 16, 2024

HON. MICHAEL M. ANELLO
United States District Judge