FILED

APR 21 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DONIECE DRAKE; DEBORAH BOWLING,

Plaintiffs - Appellees,

v.

BAYER HEALTHCARE LLC,

Defendant - Appellant.

No. 24-7158

D.C. No.
3:22-cv-01085-CAB-JLB

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted December 10, 2025
Pasadena, California

Before: M. SMITH, CHRISTEN, and FORREST, Circuit Judges.
Partial Dissent by JUDGE FORREST.

Bayer Healthcare LLC (Bayer) appeals the district court's order certifying California and New York classes bringing product mislabeling claims under the California Consumers Legal Remedy Act (CLRA), Cal. Civ. Code §§ 1750–1784, and the New York General Business Law (GBL), N.Y. Gen. Bus. Law, §§ 349, 350.

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We have jurisdiction pursuant to 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). "We review the decision to certify a class . . . for an abuse of discretion." *Olean Wholesale Grocery Coop.*, *Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc). "We review the district court's determination of underlying legal questions de novo, and its determination of underlying factual questions for clear error." *Id.* (citation omitted). Because the parties are familiar with the facts of this case, we do not recount them here except as necessary to provide context for our ruling. We affirm.

1. The district court did not abuse its discretion in finding that common questions of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The CLRA makes "unlawful a variety of 'unfair methods of competition and unfair or deceptive acts or practices' used in the sale or lease of goods or services to a consumer." *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (Cal. Ct. App. 2011) (quoting Cal. Civ. Code § 1770(a)). To state a CLRA claim, a plaintiff must show that the defendant engaged in deceptive conduct and that the deception caused the plaintiff harm. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011); *accord In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 94 (Cal. Ct. App. 2009). Under the CLRA, a class may establish causation on a classwide basis by evidence of materiality: "If the trial court finds that material misrepresentations have been made to the entire class, an

inference of reliance arises as to the class." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 868 (9th Cir. 2025) (citation modified). The relevant sections of the GBL prohibit "[d]eceptive acts or practices in the conduct of any business, trade or commerce" or in the furnishing of any service and false advertising. *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1028 (9th Cir. 2024) (alteration in original) (quoting N.Y. Gen. Bus. Law §§ 349, 350) (citation modified). To succeed on a claim under the relevant sections of the GBL, "the plaintiff must show that the defendant 'engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Id.* (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)).

Plaintiffs adduced sufficient evidence that their CLRA and GBL claims raise common issues that prevail over individualized ones. *See Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024). Bayer's arguments to the contrary do not persuade.

First, Bayer and amici argue that the proposed classes include uninjured plaintiffs and that the district court accordingly abused its discretion by certifying both classes. We disagree. Plaintiffs' theory is premised on the notion that all class members were exposed to an alleged misrepresentation on the label of the product they purchased. Accordingly, the injury in this case is that the putative classes paid

"an inflated premium price" for Bayer's Natural Fruit Bites products. Under Plaintiffs' theory of injury, the presence or absence of a price premium is an objective, reasonable consumer inquiry. Thus, either all class members were injured or they were not. Contrary to Bayer's assertions, that is entirely consistent with this court's reasoning in *Olean*. *See* 31 F.4th at 668–69, 669 n.14, 673.

Next, Plaintiffs' expert's proposed damages model was sufficient to establish that injury is common to all class members, as required at the class-certification stage. In a mislabeling case based on a deception claim, Plaintiffs can demonstrate injury-in-fact by showing that putative class members paid more for the product than they otherwise would have paid or that, absent the misrepresentation, they would not have purchased the product at all. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012). Dr. Ingersoll's proposed conjoint analysis demonstrated that he could "measure the value of an individual product attribute, such as a specific understanding of the label" in order to "determine the price premium attributable to the label claims." Under Plaintiffs' "theory of harm, the amount of overpayment attributable to the challenged term—the 'price premium'—is the standard measure of damages," and Dr. Ingersoll's analysis "proposed to measure that overpayment." *Noohi*, 146 F.4th at 865.[1]

[1] The dissent contends that Dr. Ingersoll's survey may show a factual injury but that it is insufficient to show a legally cognizable injury because the CLRA requires reliance, and only the class members who relied on the misrepresentation were

As to Bayer's objection that Dr. Ingersoll's analysis was merely proposed and cannot constitute evidence of classwide injury, we have previously rejected that argument. In *Lytle v. Nutramax Labs., Inc.*, we held that "there is no general requirement that an expert actually apply to the proposed class an otherwise reliable damages model in order to demonstrate that damages are susceptible to common proof at the class certification stage." 114 F.4th 1011, 1019 (9th Cir. 2024) *cert. denied*, 145 S. Ct. 1308 (2025). "[C]lass action plaintiffs may rely on a reliable though not-yet-executed damages model to demonstrate that damages are susceptible to common proof so long as the district court finds that the model is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial." *Id.*; *see also Noohi*, 146 F.4th at 860–61.[2]

Bayer demands more from Plaintiffs at this stage of the litigation than Rule 23 requires. "At the class certification stage, the key inquiry . . . is simply whether Plaintiffs have demonstrated the nexus between their legal theory . . . and their

---

legally injured. We disagree. We have previously explained that "[t]here is no talismanic means of measuring damages for deceptive marketing claims" pursuant to the CLRA, and "courts have approved damages models that use conjoint analysis" as Dr. Ingersoll proposes to do. *Noohi*, 146 F.4th at 867; *see also Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1033 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 1308 (2025) (collecting cases).

[2] Bayer does not otherwise contend that Dr. Ingersoll's proposed analysis was unreliable and did not file *Daubert* motions challenging Dr. Ingersoll's reliability before the district court.

damages model." *Noohi*, 146 F.4th at 867 (citation modified). Dr. Ingersoll's "proposed damages model was designed to measure a price premium associated with the misleading label at the heart of [Plaintiffs'] claims." *Id.* Plaintiffs have demonstrated that the proposed conjoint analysis, when applied, can establish whether the putative classes in fact paid a premium price for the product. The answer to that question would necessarily apply classwide. *See Lytle*, 114 F.4th at 1025. That is all that Rule 23(b)(3) requires of Plaintiffs at this stage, and the district court did not abuse its discretion in holding the same.

Plaintiffs also adduced sufficient common evidence of deception and causation under the CLRA and the GBL. As for the CLRA, we have previously explained that "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises *as to the class*." *Lytle*, 114 F.4th at 1034 (emphasis added). That inference is rebuttable if "materiality or reliance . . . would vary from consumer to consumer," in which case "the issue is not subject to common proof," and the class should not be certified. *Vioxx*, 103 Cal. Rptr. 3d at 95 (affirming that materiality was not subject to common proof where the inquiry turned on individual patient's specific medical needs and history); *see also Knapp v. AT&T Wireless Servs., Inc.*, 124 Cal. Rptr. 3d 565, 574–75 (Cal. Ct. App. 2011) (affirming denial of class certification where class included members who never saw alleged misrepresentation). But California law does not require an

individualized inquiry into each CLRA-class member's reliance on the allegedly misleading statements. Instead, "[m]ateriality, and therefore an inference of reliance, can be established by reference to an objective, reasonable consumer standard." *Noohi*, 146 F.4th at 861. Accordingly, "reliance under the CLRA is generally susceptible to common proof," *Lytle*, 114 F.4th at 1034, and CLRA claims tend to be "ideal for class certification," *Noohi*, 146 F.4th at 868.

Plaintiffs here are "entitled to the inference that reliance can be shown via common proof." *Id.* at 869. Plaintiffs offered evidence of materiality through named Plaintiffs' deposition testimony, Bayer's internal documents, and Dr. Matthews's survey. Bayer's disagreements with the substance of Plaintiffs' evidence do not defeat class certification because the core inquiry at this stage is whether the element of reliance, or materiality, is susceptible to common proof. *See Lytle*, 114 F.4th at 1034. Plaintiffs' claims concern "classwide exposure" to Bayer's label and the "natural" language. *See Noohi*, 146 F.4th at 869 (explaining that under California law, "[i]n determining whether a statement is materially misleading . . . the primary evidence is the advertising itself" (internal quotation marks omitted)). Under the objective, reasonable consumer standard, the district court did not abuse its discretion in concluding that "the ultimate question" of whether the alleged misrepresentation "was material was a common question of fact suitable for treatment in a class action." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App.

4th 1282, 1294 (Cal. Ct. App. 2002); *see also Noohi*, 146 F.4th at 869 (concluding that "undisputed evidence of classwide exposure" suffices to establish the "inference that reliance can be shown via common proof" under "the objective standard for materiality").

The GBL likewise adopts an objective standard and asks whether a deceptive act is likely to deceive a reasonable consumer. *See Montera*, 111 F.4th at 1028. And, as in the CLRA context, we have explained that the objective, reasonable consumer standard applicable to GBL claims is particularly susceptible to resolution in a class action because it is "unnecessary to make any individualized inquiry into what each plaintiff knew and relied on in purchasing" the product. *Id.* at 1033 (citation omitted).

We thus conclude that Plaintiffs satisfied the predominance inquiry for Rule 23(b)(3).

2. Bayer additionally challenges the district court's finding that Plaintiffs satisfied Rule 23(a)'s prerequisites for class certification. Specifically, Bayer appeals the district court's findings with respect to the commonality, adequacy, and typicality requirements. Because we conclude that Plaintiffs have met their burden to demonstrate predominance under Rule 23(b)(3), we accordingly conclude that Plaintiffs have met their lower burden to demonstrate a question of law or fact common to the putative classes. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

359 (2011) (observing that "even a single common question will do" for purposes of Rule 23(a) (citation modified)).

Plaintiffs also met their burden with respect to typicality and adequacy. Both named Plaintiffs testified that they purchased Natural Fruit Bites products and did so because they believed them to be natural. At the class certification stage, the district court properly considered testimony consistent with Plaintiffs' theory of injury to determine that the interests of the named Plaintiffs aligned with the interests of each putative class.

We therefore conclude that the district court did not abuse its discretion in holding that Plaintiffs satisfied the requirements of Rule 23(a).

**AFFIRMED.**

FILED

APR 21 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Drake v. Bayer Healthcare LLC*, No. 24-7158
FORREST, Circuit Judge, dissenting in part:

I agree with the majority that the district court did not abuse its discretion in finding that common questions of law or fact predominate as to Plaintiffs' claim under the New York General Business law (GBL). But I disagree that common questions of law or fact predominate regarding Plaintiffs' California Consumers Legal Remedy Act (CLRA) claim. Because Plaintiffs advance a price-premium injury theory, to successfully bring a CLRA class claim they must demonstrate that all (or, perhaps, nearly all) members of the class relied on the alleged misrepresentation. Here, Defendant Bayer Healthcare LLC (Bayer) can point to undisputed evidence that a substantial proportion of class members was not misled, rebutting the inference of reliance. And because there is not classwide causation, neither is there classwide injury. Thus, the district court abused its discretion, and I would reverse certification of the California class.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). When bringing an action under this statute, "plaintiff[s] must show (1) the defendant engaged in deceptive conduct and (2) the deception caused plaintiff[s] harm." *Lytle v. Nutramax Lab'y, Inc.*, 114 F.4th 1011, 1034 (9th Cir. 2024) (as amended). "[C]ausation, on a classwide basis, may be established by *materiality.* If the trial court finds that material misrepresentations

have been made to the entire class, an inference of reliance arises as to the class." *Id.* (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011)).

Materiality is determined "by reference to an objective, reasonable consumer standard," which means that "reliance under the CLRA is generally susceptible to common proof." *Id.* But "[t]here is an important caveat to this reasoning." *Noohi v. Johnson & Johnson*, 146 F.4th 854, 868 (9th Cir. 2025). "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer[,]' and the class should not be certified." *Id.* (quoting *Stearns*, 655 F.3d at 1022–23). Defendants can "rebut the inference of reliance" by pointing to evidence "that the understanding of the [challenged] phrase . . . varies across the class." *Id.* at 869.

Here, Plaintiffs' theory of injury is that class members were injured by paying a price premium after relying on Bayer's alleged misrepresentation. To demonstrate injury, Plaintiffs point to their expert Dr. William Ingersoll, who proposed conducting a choice-based conjoint survey to demonstrate the premium associated with the product label's inclusion of the word "natural." Plaintiffs argue, and the court accepts, that on their price-premium injury theory, "either all class members were injured or they were not." To be sure, Dr. Ingersoll's survey may show that all class members suffered a factual injury in the sense that they were all charged a price premium and overpaid. But because the CLRA requires reliance, only those class

members who relied on the misrepresentation have suffered a legally cognizable injury.

Bayer has pointed to undisputed evidence that reliance was not universal across the class. Specifically, it highlights that Dr. Matthews, Plaintiffs' expert on materiality, concluded that the challenged statement was not universally misleading. Likewise, neither the named plaintiffs' depositions nor Bayer's internal documents can demonstrate classwide reliance. Thus, I disagree with the majority that the results of Dr. Ingersoll's proposed conjoint analysis will necessarily answer whether the entire class suffered legal injury.

For these reasons, I respectfully dissent in part.